Megan K. Bannigan
(mkbannigan@debevoise.com)
Jyotin Hamid
(jhamid@debevoise.com)
Justin Ferrone
(jcferrone@debevoise.com)
Kathryn C. Saba
(ksaba@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

David Mayberry
(DMayberry@kilpatricktownsend.com)
Rob Potter
(RPotter@kilpatricktownsend.com)
KILPATRICK TOWNSEND &
STOCKTON LLP
1114 Avenue of the Americas
New York, New York 10036
(212) 775-8733

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

NIKE, INC.,

                        Plaintiff,

           v.

STOCKX LLC,

                        Defendant.

No. 22-CV-983-VEC

**ANSWER**

**JURY DEMANDED**

---------------------------------------------------------------x

      StockX LLC ("StockX"), by and through its undersigned counsel, hereby submits its Answer to the Complaint, filed by Nike, Inc. ("Nike") on February 3, 2022.

<u>**PRELIMINARY STATEMENT**</u>

      StockX is an online global marketplace that provides its customers access to items of current culture, including coveted sneakers, apparel, collectibles, trading cards, and accessories, among other products.  Customers use StockX's platform not only to sell or acquire physical products for consumption, but also to trade such physical products for investment purposes. StockX's recent introduction of non-fungible tokens ("NFTs") to track ownership of frequently

traded physical products is transforming the trading experience on its marketplace by increasing efficiencies and decreasing transaction costs for buyers and sellers. Using NFTs in this manner is lawful and violates no legitimate right of Nike or any of the manufacturers of the underlying goods. Nike's claims lack merit, disregard settled doctrines of trademark law, including the doctrines of first sale and nominative fair use, and show a fundamental misunderstanding of the various functions NFTs can serve.

Unlike most online marketplaces, which do not authenticate goods sold on their platforms, StockX uses a proprietary, multi-step authentication process for every product sold on its platform. This process ensures that items traded on StockX conform to the product descriptions and condition standards advertised by StockX, and that the products offered for sale are what they claim to be, and are not counterfeit, defective, or used—meaning StockX's customers can trust that transactions made through StockX are safe. StockX has authenticated tens of millions of products since its formation, combining its authentication team's expert knowledge with AI-enhanced technology to allow global customers to trade with confidence.

While StockX's authentication process is critically important, it does not come without costs. Upon each sale, the seller ships the product to one of StockX's eleven authentication centers around the world; StockX performs its multi-step authentication process; and StockX then ships the product to the buyer and ensures that the seller is paid. As a practical matter, this means that for each subsequent trade of the same item, consumers not only incur costs and fees associated with multiple legs of shipping and authentication, but also experience a delay in ownership and payout until the process is complete.

For many reasons, including StockX's reputation as a place to purchase authentic products, as well as the incorporation of stock market-like mechanics inspired by the world's financial

exchanges, StockX's platform has attracted a significant number of customers who are interested in acquiring and trading current culture products, without any interest in immediately or ever wearing (or "consuming") those products or taking physical possession of those products. Nonetheless, until recently, such customers had to incur the transaction costs and shipping times commonly associated with e-commerce experiences, even though physical possession was unnecessary to these customers' goals and needs.

To innovate and expedite the process of trading physical products, StockX recently turned to NFTs. NFTs are traded on a blockchain, which permanently stores records of each NFT transfer, visible to all users in the network. In contrast to most NFT projects to date, which consist of digital images (including JPEGs or GIFs) created for the metaverse, with or without additional utility attached, StockX Vault NFTs are one of the first NFT applications tied to a physical product. StockX's Vault NFT program enables secondary trading on StockX to be more efficient, track ownership of goods, and cut out unnecessary costs and fees for customers.

StockX Vault NFTs *are absolutely not* "virtual products" or digital sneakers. Rather, each Vault NFT is tied to a specific physical good that has already been authenticated by StockX. Consumers purchase the Vault NFTs and have two choices regarding ongoing possession: (1) retain digital possession of the Vault NFT and leave the authenticated physical good in StockX's climate-controlled, high-security vault (a "Stored Item"); or (2) take possession of the physical good from the vault at any time, in which case the Vault NFT is removed from the customer's digital portfolio and permanently removed from circulation. The Vault NFT itself has no intrinsic value—it is effectively a claim ticket, or a "key" to access the underlying Stored Item. Nor can the Vault NFT be traded separately, or decoupled, from ownership of the underlying Stored Item. As explained on StockX's product pages, a "Vault NFT represents and tracks proof of ownership

of the actual sneaker stored within [the] StockX Vault." The actual product of value is the underlying Stored Item, and there is no mark-up for the actual Vault NFT. While StockX sets the initial price for Vault NFTs, StockX does not set or control prices for subsequent trades, which are dictated completely by StockX users.

The benefit of taking possession of the Vault NFT, rather than the Stored Item, is that the owner can make a future trade without incurring transaction costs, delay, or risk of damage or loss associated with shipping physical sneakers to StockX and then to the ultimate recipients. Instead, the owner need only transfer the Vault NFT, which can be performed almost instantaneously through the Internet. The Stored Item remains safe in the StockX vault, and the transfer of ownership to the buyer is immediate. Because the Stored Item never leaves the StockX vault, the product does not need to be authenticated again. This novel process is ideal for a growing group of consumers (who already make up a significant portion of StockX's customer base), who trade current culture products and do not want to take physical possession of products for use.[1]

To date, StockX has released Vault NFTs associated with twenty-eight different types of physical products, including sneakers, trading cards, and collectibles. Eleven of these products are styles of shoes originally manufactured and sold by Nike, adidas, and Puma. In selecting the styles of shoes to include in the Vault NFT program, StockX looked to best-selling products of which sufficient quantities in a certain shoe size were available for purchase. Examples of Vault NFTs and Stored Items that StockX offers for sale are included below.

_____

[1]   In addition, customers experiencing storage constraints due to their existing physical inventory may choose to purchase StockX Vault NFTs to take advantage of the convenience of storing physical goods in the StockX vault, allowing them to sell or hold the underlying physical goods without the inconvenience of managing the storage logistics or risks.



**StockX Vault NFT adidas Yeezy Boost 350 V2 Beluga Reflective - US M 10**

A StockX token representing ownership of a physical pair. (250/500 available to date)

NFT   StockX Verified   Edition of 500

Buy for $295

Sell This Item for $276

Last Sale:
$272
-- (0%)

View Asks   View Bids   View Sales

**StockX Vault NFT Puma MB.01 LaMelo Ball Rick and Morty - US M 10**

A StockX token representing ownership of a physical pair. Drops 3/11 at 1pm ET.

NFT   StockX Verified   Edition of 50

Buy or Bid   Lowest Ask   $240

Sell or Ask   Highest Bid   --

Last Sale:
--
No Sales Yet

View Asks   View Bids   View Sales

**StockX Vault NFT Nike Dunk Low Retro White Black - US M 10**

A StockX token representing ownership of a physical pair.

NFT   StockX Verified   Edition of 100

Buy or Bid   Lowest Ask   $410

Sell or Ask   Highest Bid   $375

Last Sale:
$415
▲ $5 (1.2%)

View Asks   View Bids   View Sales



As shown above, each Vault NFT prominently includes the StockX trademark, as does the product page where the physical goods are offered for sale.  In addition, much like a product page or advertisement on any other e-commerce site, Vault NFTs accurately depict and describe the underlying physical goods that the consumer is purchasing.  For example, the Vault NFT for the Nike Low Dunk Retro White Black shows an image (generated by StockX) of the Stored Item held in the StockX vault and the relevant product name.  Because the owner of the Stored Item need not initially receive the physical goods but can subsequently use the Vault NFT to transfer title to the Stored Item, the image and product name on the Vault NFT play a critical role in describing what goods are actually being bought and sold.

Further, the product page for each Vault NFT displays a description of how the StockX Vault NFT functions, as well as a disclaimer of any association or affiliation with product brands, which is depicted below.



At every point in the process, consumers are made aware they are purchasing physical goods that StockX has authenticated, that StockX is storing such physical goods in its vault, that such physical goods may be traded via blockchain and tracked using a StockX-branded Vault NFT, and that the Vault NFT may be redeemed for the physical goods themselves.  To date, consumers have enjoyed their experience, successfully completing 2,853 Vault NFT transactions through StockX's website since the Vault NFT program launched.  Consumers have therefore recognized, and will continue to recognize, that StockX's Vault NFTs are a cutting-edge technology to revolutionize the trading of authenticated physical goods.  No one has been—or could be—confused as to the source.

Nike's Complaint is nothing more than a baseless and misleading attempt to interfere with the application of a new technology to the increasingly popular and lawful secondary market for the sale of its sneakers and other goods.  Nike's position is that resellers of products are legally prohibited from accurately describing the physical products they seek to trade in a digital world, contrary to trademark law.  StockX's use of images of Nike sneakers and descriptions of re-sale

Nike products in connection with StockX Vault NFTs is nominative fair use.  It is no different than major e-commerce retailers and marketplaces who use images and descriptions of products to sell physical sneakers and other goods, which consumers see (and are not confused by) every single day.  Nike's suit threatens the legitimate use of NFTs not just by StockX, but by other innovators that also use NFTs to track title to physical goods held in a vault, such as fine art, whiskey, and wine.  The use of NFTs to digitally track ownership of physical products is not only lawful, but also increases efficiency for and decreases costs to consumers, promotes sustainability, and should not be disturbed.

## GENERAL DENIAL

Except as otherwise expressly admitted herein, StockX denies each and every allegation contained in the Complaint, including, without limitation, any allegations contained in the preliminary statement, headings, subheadings, footnotes, or incorporated images within the Complaint, and specifically denies any liability to Nike.  Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, allegations in the Complaint to which no responsive pleading is required shall be considered denied.   StockX expressly reserves the right to seek leave to amend and/or supplement this Answer as may be necessary.

## RESPONSE TO SPECIFIC ALLEGATIONS

## NIKE'S PRELIMINARY STATEMENT

1.      Deny, except deny knowledge or information sufficient to form a belief as to whether NFTs are "pervasive in their use by brand owners" or as to how NFTs "are commonly understood," and admit that NFTs are an exciting technology for which diverse commercial applications have emerged, including tracking title to physical goods, and that NFTs appear to be "[f]ar more than a fleeting trend," and "part of the future of commerce."

2.      Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

3.      Deny, and refer to the contents of StockX advertisements and social media content, which speak for themselves, except admit that StockX provides a platform for the resale and authentication of sneakers, apparel, electronics, collectibles, trading cards and accessories, and that StockX lawfully sells Nike goods, as well as goods from brands including, but not limited to New Balance, Puma, adidas, Reebok, Asics, and Converse.

4.      Deny, except admit that StockX creates Vault NFTs, which include an image generated by StockX of the associated Stored Item that StockX offers for sale to consumers and to which the NFT is tied.  StockX further admits that the images included in paragraph four of the Complaint appear to be images of StockX-branded Vault NFTs depicting the physical Nike SB Dunk Low Ben & Jerry's Chunky Dunky, Nike Dunk Low Retro White Black, and KAWS Sacai Nike Blazer Low Blue shoes that StockX stores in its physical vault and offers for sale to consumers through the Vault NFT program.  StockX further avers that some Vault NFTs are currently trading at values below that of the comparable physical product, not associated with the Vault NFT program; for example, as of March 22, 2022, the last sale price for a Vault NFT tied to an adidas Yeezy Boost 350 V2 Beluga Reflective was $273, whereas the last sale price for the comparable physical product was $282.

5.      Deny, and refer to the contents of StockX's public statements on its website, which speak for themselves, except admit that StockX plans to continue its Vault NFT program, which includes the sale of stored Nike, adidas, and Puma products.

6.      Deny, and refer to the contents of StockX's public statements on its website at the time of Nike's complaint, and StockX's current Terms and Conditions of Use, which speak for

themselves and are attached hereto as Exhibit A, except admit that Vault NFT owners may redeem the NFT and take possession of the associated physical shoes for a small fee; that StockX has successfully completed redemptions.

7.      Paragraph 7 states a legal conclusion to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations regarding consumer perception and otherwise deny.

8.      Deny, except admit and aver that Nike is not entitled to play any role in decision-making regarding the StockX-branded Vault NFT program.

9.      Paragraph 9 states legal conclusions to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations regarding Nike's historical use of its trademark and investment in NFT technology and services, and otherwise deny.

## THE PARTIES

10.      Admit.

11.      Admit.

12.      Admit.

## JURISDICTION AND VENUE

13.      Paragraph 13 states a legal conclusion to which no response is required.

14.      Paragraph 14 states a legal conclusion to which no response is required.

15.      Paragraph 15 states a legal conclusion to which no response is required.  To the extent a response is required, admit that the StockX Website and StockX App are accessible to consumers in New York and that StockX is recruiting employees for open positions based in New York, including Sr. Engineering Manager – NFT and Checkout, a Senior Engineering Manager, Category Expansion, and Staff Software Engineer – Marketplace.

16.     Paragraph 16 states a legal conclusion to which no response is required.  To the extent a response is required, admit that the StockX Editorial Director is based in New York and that StockX is recruiting employees for open positions based in New York.

## FACTUAL BACKGROUND

17.     Admit.

18.     Admit.

19.     Admit.

20.     Admit.

21.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

22.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

23.     Paragraph 23 states a legal conclusion as to the fame of Nike's trademarks, to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

24.     Paragraph 24 states a legal conclusion as to the fame of Nike and its brands, to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

25.     Paragraph 25 states a legal conclusion as to Nike's ownership of the right, title, and interest in and to the listed trademarks ("Asserted Marks"), to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations and, to the extent relevant, refer to the United States Patent and Trademark Office records, which speak for themselves.

26.     Paragraph 26 states a legal conclusion as to the validity of the alleged U.S. registrations for the Asserted Marks, to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations and, to the extent relevant, refer to the United States Patent and Trademark Office records, which speak for themselves.

27.     Paragraph 27 states a legal conclusion as to the incontestability of the Asserted Marks, to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations and, to the extent relevant, refer to the United States Patent and Trademark Office records, which speak for themselves.

28.     Paragraph 28 states a legal conclusion as to common law rights in the Asserted Marks, to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

29.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

30.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

31.     Paragraph 31 states a legal conclusion as to the strength and fame of the Asserted Marks, to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

32.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

33.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

34.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

35.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

36.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations and, to the extent relevant, refer to the relevant United States Patent and Trademark Office records, which speak for themselves.

37.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations and refer to the linked announcement, the contents of which speak for themselves.

38.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

39.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

40.     Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations regarding its initiatives, and otherwise deny.

41.     Deny, except admit that StockX provides an online marketplace for the resale of sneakers, apparel, electronics, collectibles, trading cards and accessories; further admit that while StockX users can buy and sell goods from each other, they can also buy goods directly from StockX in limited circumstances; and further admit that StockX is not an authorized distributor of Nike goods but engages in the lawful resale of goods from brands including, but not limited to Nike, Puma, New Balance, adidas, Reebok, Asics, and Converse.

42.     Deny, except admit that when a sale of a good that is not associated with the Vault NFT program occurs, the seller ships the item to StockX, StockX authenticates the item using a proprietary, multi-step authentication process, StockX ships the item to the buyer, and StockX pays the seller less a transaction fee.  However, when the sale of a Vault NFT and associated Stored Item occurs, several of these steps are unnecessary and do not occur; the seller does not have to ship the product to StockX for authentication because the product is already authenticated and stored in the StockX vault, where it remains until an associated Vault NFT is redeemed for the physical good.

43.     Deny, except admit that the Jordan, Nike, and Converse brands were among the top five trading footwear brands by volume on StockX's marketplace in 2021 and otherwise refer to the contents of StockX's most recent annual report, which speak for themselves.

44.     Admit and refer to the full contents of the January 18, 2022 announcement "StockX Launches Vault NFTs," which speak for themselves.

45.     Deny, except admit that consumers can purchase a Vault NFT that is created and first offered by StockX reflecting the "key" or "claim ticket" to the Stored Item depicted on the Vault NFT and held in StockX's vault, and further admit that by selling a Vault NFT, a user is transferring title to the associated Stored Item.

46.     Deny, except admit that StockX sets the initial price for Vault NFTs and that StockX does not set or control prices for subsequent trades by its users, and that prices for subsequent trades fluctuate; for example, as of March 22, 2022, the last sale price for the Vault NFT product referenced in paragraph 46 of the Complaint was $275.

47.     Deny, except admit that StockX sets the initial price for Vault NFTs and that StockX does not set or control prices for subsequent trades by its users, and that prices for

subsequent trades fluctuate; for example, as of March 22, 2022, the last sale price for the Vault

NFT product referenced in paragraph 47 of the Complaint was $200.

48.    Admit that Nike accurately quotes a portion of StockX's "Collect What's Next –

Introducing NFTs on StockX" webpage, and refer to the full contents of that webpage, which speak

for themselves.  Aver that Section 28 of the StockX Terms and Conditions of Use, available at

https://stockx.com/terms, states that:

> Each Vault NFT is backed by a physical item held in StockX's custody and does not have
> value beyond that associated with the underlying physical good.  Other types of NFTs
> ("Experiential NFTs") may grant the NFT holder rights to obtain certain additional
> products, or benefits or to engage in certain experiences, such as unlocking a reward or
> access to an exclusive sale (collectively, "Experiences"). All NFTs on the Services may be
> subject to any additional terms provided by StockX from time to time ("Additional NFT
> Terms").  In addition, from time to time StockX may offer incentives and rewards for users
> of StockX Services generally, but not as a component of the value of any particular NFT,
> unless otherwise expressly stated in the applicable Additional NFT Terms.

A copy of the current StockX Terms and Conditions of Use are attached hereto as Exhibit A.

49.    Deny, except refer to the contents of StockX's webpages, which speak for

themselves; admit that upon redemption of a StockX Vault NFT, StockX will charge a $35

withdrawal fee and between $5 and $14.95 for shipping and sales tax to send the Stored Item to its

owner, and that StockX will remove the associated Vault NFT from the owner's portfolio; and

aver that redemption is now available using the form at <https://stockx.com/help/contact/nft-

redeem>, and that redemptions have, in fact, occurred.

50.    Admit that the Terms and Conditions of Use include a section on "Vault Terms,"

(Section 29), which governs Vault NFTs and relatedly, use of StockX's vault services, and a

section on "NFT Terms," (Section 28), which more broadly provides terms pertaining to the

various types of NFTs that StockX offers or may offer in the future, which include not only Vault

NFTs but also Experiential NFTs, which entitle holders to obtain certain additional products,

benefits, or access to certain experiences, such as unlocking a reward or access to an exclusive sale, and refer to the full contents of the StockX Terms and Conditions, attached hereto as Exhibit A, which speak for themselves.

51.     Deny, except refer to the contents of the StockX Terms & Conditions attached hereto as Exhibit A, which speak for themselves.  Further aver that StockX FAQs, available at https://stockx.com/help/articles/What-are-Vault-NFTs, inform consumers that:

> Vault NFTs are digital tokens that represent ownership of physical items and, therefore, do not have any intrinsic value beyond that of the underlying physical good. Each Vault NFT is backed by a physical item held in StockX's custody, tied directly one to one via the blockchain. Any item in the StockX Vault is Verified Authentic via StockX's authentication process. This means that if you buy an edition of a Vault NFT, you are the owner of the corresponding physical good which is secured and stored in StockX's Vault. You can trade that NFT to someone else, which will also transfer ownership of the corresponding physical good, you can hold it for any length of time, or you can redeem the item from the StockX Vault and take possession of the physical item.

A copy of the StockX FAQ article "What are Vault NFTs?" is attached hereto as Exhibit B.

52.     Deny, except admit that Vault NFTs do not have any intrinsic value beyond that of the associated Stored Item and that Vault Services are currently provided at no additional cost, but that users may be required to pay fees as outlined in the Terms and Conditions, and refer to the contents of the StockX Terms and Conditions, attached hereto as Exhibit A, which speak for themselves.

53.     Admit and refer to the full contents of the StockX Terms and Conditions, attached hereto as Exhibit A, for context.

54.     Deny, and refer to the contents of the StockX Terms & Conditions attached hereto as Exhibit A, which speak for themselves and now specifically include the following statement: "For the avoidance of doubt, Vault NFTs are not Experiential NFTs and do not contain an Experience that would give rise to automatic redemption, and Vault NFTs do not have an

16

expiration date.  A Vault NFT is only removed from your portfolio once it is redeemed for the associated product or sold to another buyer."  Exhibit A, Section 29.  Aver that Vault NFTs can be redeemed only for the physical product to which they are tied.

55.     Deny.

56.     Deny, except admit that as of February 2, 2022, StockX offered Vault NFTs for nine different types of products, and eight of the nine types of products were genuine Nike shoes. Aver that StockX's Vault NFT collection, as shown on the landing page available at https://stockx.com/lp/nfts/, has continued to evolve as StockX has released more Vault NFTs.  A copy of the current Vault NFT landing page is attached hereto as Exhibit C.

57.     Deny, except admit that StockX has sold 1,473 individual StockX-branded Vault NFTs; that some of the Vault NFTs associated with Nike products are offered in editions of 1, 3, 100, and 250, with each Vault NFT tied one-to-one to a physical pair of sneakers held in StockX's vault; and that StockX is not an authorized Nike retailer.  Aver that each and every Vault NFT is backed by a physical product.  Further, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations as to what is or is not apparent or clear to Nike.

58.     Deny, except admit that StockX product pages accurately state the name of the Stored Item and include an image that accurately depicts the Stored Item.

59.     Deny, except admit that StockX authenticates the Stored Items that are depicted in and associated with its Vault NFTs, and informs consumers that StockX verifies the authenticity of the Stored Items and that StockX's authentication process is in no way affiliated with Nike. Aver that an example of a current product description page, available at https://stockx.com/retro-black-and-white-dunk-vault-nft, clearly indicates that the products are "StockX Verified."



60.     Admit that StockX product pages for Vault NFTs include "Product Details" and a "Product Description," which include a fair use of the Nike brand to accurately describe the underlying Stored Item; further admit that Nike accurately quotes portions of a Vault NFT product page; and refer to the full contents of the Vault NFT product pages, which speak for themselves.

61.     Deny, except admit that when a consumer purchases a physical pair of Nike shoes via the StockX marketplace, the consumer receives a paper receipt; aver that a paper receipt is distinct from a Vault NFT, as it accompanies the physical product when shipped rather than acting as a claim ticket for the physical product; and refer to the contents of the Vault NFT product pages, which speak for themselves.

62.     Deny; except admit that Vault NFT product pages include a "How it Works" image, which disclaims association with any brand, and refer to the full contents of the Vault NFT product pages, which speak for themselves.

63.     Deny, except refer to the contents of the Vault NFT product pages, which speak for themselves.

18

64.     Deny, except refer to the contents of the StockX Website, StockX App, and StockX social media accounts, which speak for themselves.  A copy of the current StockX Vault NFT landing page is attached hereto as Exhibit C.

65.     Deny, except refer to the contents of StockX Google advertisements, which speak for themselves.

66.     Deny, except refer to the contents of the StockX Twitter account (@stockx) and website, which speak for themselves.

67.     Deny, except refer to the contents of the referenced StockX Instagram posts, which speak for themselves.

68.     Admit that Nike accurately quotes the caption of the referenced StockX Instagram post (which, when viewed in its entirety, displays multiple images of Nike and adidas products) and refer to the full contents of the referenced StockX Instagram post and associated linked pages, which speak for themselves.

69.     Deny, except refer to the contents of the referenced StockX Instagram posts, which speak for themselves.

70.     Admit that Nike accurately quotes the caption of the referenced StockX Instagram post and refer to the full contents of the referenced StockX Instagram post and associated linked pages, which speak for themselves.

71.     Deny, except refer to the contents of the referenced StockX January 26, 2022 tweet, which speak for themselves.

72.     Deny.

73.     Admit that StockX's Vault NFTs are not Nike products, but that they are instead keys or claim tickets to access certain Stored Items, which include Nike products.  Further admit

that StockX's Vault NFTs are tied to the lawful resale of physical Nike products, and that there is no collaboration between Nike and StockX as to Vault NFTs, StockX did not and does not need to obtain a license or authorization from Nike to accurately describe and depict the Stored Items underlying its Vault NFTs, and StockX disclaims any association or affiliation with Nike (or any other brand) as to its Vault NFT program.

74.    Deny, except admit that Vault NFTs confer title to genuine Nike products.

75.    Deny, except admit that Nike is not involved in decision-making regarding Vault NFTs, which are tied to physical Nike goods lawfully resold to consumers.

76.    StockX repeats and re-alleges each of its responses to Paragraphs 46 and 47.

77.    Deny and refer to the contents of the referenced article, which speak for themselves.

78.    Deny.

79.    Deny.

80.    Deny, except refer to the contents of the referenced social media posts, which speak for themselves.

81.    Deny, except refer to the contents of the referenced social media post, which speak for themselves.

82.    Deny, except refer to the contents of the referenced social media post, which speak for themselves.

83.    Deny, except refer to the contents of the referenced social media post, which speak for themselves.

84.    Deny, except refer to the contents of the referenced social media post, which speak for themselves.

85.   Paragraph 85 states a legal conclusion to which no response is required.  To the extent a response is required, deny.

86.   Paragraph 86 states a legal conclusion as to dilution to which no response is required.  To the extent a response is required, deny.

87.   Paragraph 87 states a legal conclusion as to the fame of Nike's trademarks to which no response is required.  Otherwise admit.

88.   Paragraph 88 states a legal conclusion to which no response is required.  To the extent a response is required, deny.

89.   Paragraph 89 states a legal conclusion to which no response is required.  To the extent a response is required, deny.

90.   Paragraph 90 states a legal conclusion to which no response is required.  To the extent a response is required, deny.

91.   Paragraph 91 states a legal conclusion to which no response is required.  To the extent a response is required, deny.

## FIRST CAUSE OF ACTION
## TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

92.   StockX repeats and re-alleges each of its responses to Paragraphs 1 to 91, as if fully set forth herein.

93.   Deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations and, to the extent relevant, refer to the United States Patent and Trademark Office records, which speak for themselves.

94.   Paragraph 94 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

95.     Paragraph 95 states legal conclusions as to which no response is required.  To the extent a response is required, deny, except admit that StockX lawfully describes and depicts Nike products that it sells.

96.     Paragraph 96 states a legal conclusion as to which no response is required.  To the extent a response is required, deny, except admit that StockX lawfully describes and depicts the Nike products that it sells.

97.     Paragraph 97 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

98.     Paragraph 98 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

99.     Paragraph 99 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

100.    Paragraph 100 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

101.    Paragraph 101 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

102.    Paragraph 102 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

103.    Paragraph 103 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

**SECOND CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**

104.    StockX repeats and re-alleges each of its responses to Paragraphs 1 to 91, as if fully set forth herein.

105.     Paragraph 105 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

106.     Paragraph 106 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

107.     Paragraph 107 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

108.     Paragraph 108 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

109.     Paragraph 109 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

**THIRD CAUSE OF ACTION**
**TRADEMARK DILUTION**
**15 U.S.C. § 1125(c)**

110.     StockX repeats and re-alleges each of its responses to Paragraphs 1 to 91, as if fully set forth herein.

111.     Paragraph 111 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

112.     Paragraph 112 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

113.     Paragraph 113 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

114.    Paragraph 114 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

115.    Paragraph 115 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

116.    Paragraph 116 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

117.    Paragraph 117 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

118.    Paragraph 118 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

119.    Paragraph 119 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

**FOURTH CAUSE OF ACTION**
**INJURY TO BUSINESS REPUTATION AND DILUTION**
**NEW YORK GENERAL BUSINESS LAW § 360-1**

120.    StockX repeats and re-alleges each of its responses to Paragraphs 1 to 91, as if fully set forth herein.

121.    Deny, except admit that Nike purports to seek, on behalf of itself and the general consuming public, recovery from StockX for violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-1, *et seq*.

122.    Paragraph 122 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

123.    Paragraph 123 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

124.    Paragraph 124 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

125.    Paragraph 125 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

126.    Paragraph 126 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

**FIFTH CAUSE OF ACTION**
**COMMON LAW TRADEMARK INFRINGEMENT**
**AND UNFAIR COMPETITION**

127.    StockX repeats and re-alleges each of its responses to Paragraphs 1 to 91, as if fully set forth herein.

128.    Paragraph 128 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

129.    Paragraph 122 states a legal conclusion as to which no response is required.  To the extent a response is required, deny knowledge or information sufficient to form a belief as to the truth of Nike's allegations.

130.    Admit that permission, license, and/or authorization from Nike are not necessary and, accordingly, StockX has not obtained permission, license, and/or authorization.

131.    Paragraph 131 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

132.    Paragraph 132 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

133.    Paragraph 133 states a legal conclusion as to which no response is required.  To the extent a response is required, deny.

## ANSWER TO DEMAND FOR JURY TRIAL

No response is required to Nike's demand for a jury trial.

## ANSWER TO PRAYER FOR RELIEF

To the extent paragraphs 1–11 of Nike's "Prayer For Relief" could be construed as allegations that Nike is entitled to such relief, this is a legal conclusion to which no response is required.  To the extent a response is required, deny that Nike is entitled to the relief requested, or to any other relief.

## AFFIRMATIVE DEFENSES

StockX sets forth the below affirmative defenses.  Each affirmative defense is asserted as to all claims asserted against StockX in the Complaint.  By setting forth these defenses, StockX does not assume the burden of proving any fact, issue, or element of claim where such burden properly belongs to Nike.  StockX does not in any way waive or limit any defenses that are or may be raised by its denials and averments.  These defenses are pled in the alternative, to preserve the rights of StockX to assert such defenses, and are without prejudice to the ability of StockX to raise other and further defenses.  StockX reserves the right to seek leave to assert additional affirmative defenses based upon further investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1.    Nike's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**
**(Fair Use)**

2.      Nike's claims are barred, in whole or in part, as the acts of StockX alleged in the

Complaint constitute descriptive fair use and/or nominative fair use.

**THIRD AFFIRMATIVE DEFENSE**
**(First Sale Doctrine)**

3.      Nike's claims are barred, in whole or in part, by the first sale doctrine permitting

purchasers of lawfully trademarked goods to display, offer, and sell those goods under their

original trademark.

**FOURTH AFFIRMATIVE DEFENSE**
**(No Injury)**

4.      Nike's claims are barred because it has suffered no harm or damages.

**FIFTH AFFIRMATIVE DEFENSE**
**(Failure to Mitigate)**

5.      Nike's claims are barred, in whole or in part, because Nike failed to mitigate

damages, if such exist.

**SIXTH AFFIRMATIVE DEFENSE**
**(Adequacy of Remedy at Law)**

6.      The alleged injury or damage suffered by Nike, if any, would adequately be

compensated by damages.


**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, StockX demands a trial by

jury of this action.

**WHEREFORE**, StockX prays for judgment as follows:

1.      That Nike take nothing by way of its Complaint;

2.      That the Complaint be dismissed in its entirety with prejudice;

3.      The StockX be awarded its costs of suit incurred herein in connection with this action, including reasonable attorneys' fees; and

4.      For such other and further relief as the Court deems just and proper.


Dated:          March 31, 2022
                New York, New York


                        DEBEVOISE & PLIMPTON LLP


                        By:  _/s/ Megan K. Bannigan_____
                        Megan K. Bannigan (mkbannigan@debevoise.com)
                        Jyotin Hamid (jhamid@debevoise.com)
                        Justin Ferrone (jcferrone@debevoise.com)
                        Kathryn C. Saba (ksaba@debevoise.com)
                        919 Third Avenue
                        New York, New York, 10022
                        (212) 909-6000

                        KILPATRICK TOWNSEND & STOCKTON LLP
                        David Mayberry (DMayberry@kilpatricktownsend.com)
                        Rob Potter (RPotter@kilpatricktownsend.com)
                        1114 Avenue of the Americas
                        New York, New York 10036
                        (212) 775-8733

                        *Attorneys for StockX LLC*