```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NIKE, INC.,

              Plaintiff,

       v.                                22 CV 983 (VEC)

STOCKX, LLC.,

              Defendant.

------------------------------x
                                         New York, N.Y.
                                         April 11, 2022
                                         3:00 p.m.

Before:

              HON. VALERIE E. CAPRONI,

                                         District Judge

                      APPEARANCES

DLA PIPER, LL
     Attorneys for Plaintiff Nike
BY:  TAMAR Y. DUVDEVANI

DEBEVOISE & PLIMPTON, LLP
     Attorneys for Defendant Stockx
BY:  MEGAN K. BANNIGAN
     KATHRYN C. SABA


KILPATRICK TOWNSEND & STOCKTON LLP
     Attorneys for Defendant Stockx
BY:  JOHN D. MAYBERRY
```

1           (Case called)

2           THE COURT:  You need to identify yourself each time
3    before you speak.  If you are in an area where there's ambient
4    noise, you need to mute your phone if you are not talking.

5           Let me tell every member of the public to mute your
6    telephone.  If I start getting a racket, I am going to kick you
7    off the telephone call.  So please mute your telephone.

8           And lastly, because I've just turned off the bell so
9    we're not being interrupted by them, I will periodically
10   confirm that I still have a court reporter on the line.  So
11   just bear with me when I do that.

12          So, we're here for an initial conference in this case
13   involving NFTs.  And let me just say I have about the same
14   understanding of NFTs as I have of people who would buy shoes
15   they are going to put in a vault and not wear.  So with that, I
16   have a question for the defendant and I think, Ms. Bannigan,
17   you told me you were going to be talking for the defendant.

18          Your argument is that these NFTs don't have any
19   extrinsic value.  Does that mean they are not sold
20   independently of the shoes to which they are connected?

21          MS. BANNIGAN:  Yes, your Honor.  And that's exactly
22   right.  Essentially Stockx has this marketplace where people
23   buy and sell shoes, self-identified sneaker heads use this
24   service and they invest in these shoes more like a fungible
25   asset, like a stock.  And essentially, what they're doing is

1  trading these sneakers.  And so with trading the sneakers comes
2  transaction costs because they have to ship the shoes.  They
3  send the shoes to Stocks.  Stockx has a service where they eye
4  authenticate the shoes to make sure they are not counterfeit.
5  That takes time and costs money.  Then Stockx has to send them
6  to the buyer.  And what they're doing with these NFTs is tying
7  the NFTs to an actual physical pair of sneakers or other goods
8  because they are not just for sneakers and they're acting as a
9  claim ticket.
10          So Stockx has that pair of sneakers in its climate
11 controlled vault.  The physical goods actually exist there.
12 The NFT -- to the goods that exist in the vault.  and the
13 purchaser can trade the NFT and once somebody buys the NFT,
14 they can either decide to change it, redeem that ticket and
15 have the physical pair of shoes shipped to them so they can
16 hold them or they can keep the NFT knowing that it's being
17 stored like a bank account in this vault where they're safe and
18 then they don't have to incur the shipping costs or the
19 authentication cost.
20          THE COURT:  So the defendant's theory is that these
21 are sort of like an old styled stock certificate or something
22 else?
23          MS. BANNIGAN:  Exactly, that's right.  A claim ticket
24 a stock ticket, a stock certificate, a key just saying that
25 says you own that physical pair of shoes that's sitting in

1     Stockx's vault.
2              THE COURT:  Okay.  All right.  I'm not going -- who is
3     going to talk for the plaintiffs?  Ms. Duvdevani, right?
4              MS. DUVDEVANI:  Yes, your Honor.
5              THE COURT:  Do you want to say something in response
6     to that?  I was really just trying get an understanding of what
7     the case is.
8              MS. DUVDEVANI:  All I would say today, your Honor, is
9     that Nike certainly disagrees with defendant's characterization
10    of their vault NFT program as stated to the Court in the joint
11    submission and in the answer.  And in fact to this day there is
12    marketing collateral on the Stockx website and out in the
13    public that states that there are additional benefits that
14    accompany the purchase of these vault NFT Stockx benefits which
15    we still don't know what they are and we hope to learn in
16    discovery.
17             I'll also add that the idea that the stock NFTs
18    themselves have no intrinsic value, it's frankly quite belied
19    by the fact that these NFTs are selling for significantly
20    higher price points than the physical shoes, not just on
21    Nike.com but on Stockx.com's old platform.  Last I checked, one
22    of these Nike branded NFTs is selling for $9,000 a pop and it's
23    hard for me to imagine that that type of price point is simply
24    compensating for the cost of shipping fees.
25             THE COURT:  Well, it's also storing the shoes.

1      MS. DUVDEVANI:  Or storing the shoes, your Honor.  I
2 mean it doesn't add up to us and it's Nike's position that
3 these are what Stockx has characterized them to be before the
4 lawsuit which are digital assets that owners can sell and trade
5 that, yes, might be linked to authentic Nike products, but that
6 it is the NFT itself that they're selling to consumers that
7 consumers can own the NFTs.  They can store them in the shiny
8 new portfolio that Stockx has created for them and that in this
9 way it is really not that different from the NFTs that are
10 entering the marketing over the last couple of years.
11      THE COURT:  Okay.  So this is really a fascinating
12 case.  Thank you, both of you, for providing your position on
13 what this thing is.  So the initial dispute is over a fact
14 discovery.
15      Let me just say, Ms. Bannigan, I appreciate the
16 defendant's desire to move things along quickly but I think
17 you're being unrealistic about how long discovery is this case
18 is going to take, just as a realistic latter.  So I am going to
19 set a discovery deadline of October the 15th, which is
20 approximately six months from now.  The defendants want the
21 discovery to go faster.  I encourage you to produce your
22 documents quickly.  But reasonable document requests to Nike
23 and offer your witnesses up on a quick schedule.
24      All of that said, that is a firm deadline.  Both
25 parties have indicated that that's a doable deadline.  So you

1  need to meet, plan, schedule.  Figure out who is going to do
2  what when so everything will be complete by October 15th.  I
3  didn't look at my calendar to find out when the Jewish holidays
4  are but you know they are going to be in September or early
5  October some time.  So work around them.
6          That brings us to expert discovery here again, I just
7  think, Ms. Bannigan, you are not being realistic about how
8  long this is actually going to take and I would rather set a
9  realistic deadline that you beat than an unrealistic deadline
10 that you need to extend several times.
11         So your deadline for expert discovery is January 15,
12 2023.  That is for everything.  Work out all the interim
13 deadlines of who is going to provide reports when and when
14 depositions will take place.  I don't really care about any of
15 those interim deadlines just as long as everything is complete
16 by January the 15th.
17         The parties have indicated that you are going to need
18 a protective order and that you want an ESI and 502P protocol.
19 That's fine.  The sooner I get a draft, the sooner I can sign
20 it and you can get going.
21         Because I am giving you a gracious amount of time for
22 your fact discovery, I am going to require promptly joint
23 discovery reports.  The first report is due on May 15 and
24 thereafter it's due on the 15th is of each month or the first
25 business day after the 15th is on a weekend.

1    So there was some indication in your joint letter that
2    there may be some interest in talking settlement.  I gather
3    that Nike thinks you need some discovery before you think
4    settlement would be productive; is that correct?
5         MS. DUVDEVANI:  We do agree with that, yes.
6         THE COURT:  Okay.  Here is what I suggest.  This
7    sounds to me like this case maybe can settle reasonably quickly
8    or it may be it can be very expensive litigation.  So if I were
9    your clients I would opt for the former.  So if there's
10   particular discovery that you are going to get and that you
11   think would be helpful to figure out where you are on
12   settlement, you and Stockx should talk about that and maybe do
13   some informal discovery off of your normal discovery schedule
14   just so you have what you think you need in order to make the
15   settlement conference productive.
16        So I am prepared to give you a referral now to your
17   magistrate judge for a settlement conference with a note
18   indicating that that conference should not be scheduled for at
19   least two or three months.
20        Does that makes sense or do you want to just punt on a
21   settlement conference until you actually have enough discovery
22   so you know what your position is?
23        MS. DUVDEVANI:  That's fine, your Honor.  We were
24   willing, actually, once we saw defendant's position on
25   mediation, if that was really going to be the roadblock to

1   sufficient time for discovery that we'd potentially be willing

2   to settle, to have a settlement conference before magistrate

3   after document discovery is sufficiently complete but prior to

4   depositions which I do think could take some of the expense off

5   the table if we're able to settle at that point.  So two to

6   three months sounds about right.

7           THE COURT:  Okay.  How about you, Ms. Bannigan, does

8   that sound about right to you?

9           MS. BANNIGAN:  Yes, your Honor.  In our view the

10  sooner the better.  We really think that the question is, there

11  aren't many facts.  We know what, it's very obvious what Stockx

12  is doing.  We're happy to provide Nike with some more

13  information, but we haven't had a chance to talk business to

14  business.  And we truly think that it's just a misunderstanding

15  about what's happening here.  And the sooner we can have that

16  conversation, the sooner we can avoid a protracted litigation.

17          THE COURT:  Okay.  That's fine.  So what I'll do,

18  actually, what I'm going to do then is I'm going to tell

19  Magistrate Judge Netburn that I am going to make the referral

20  for the settlement conference, that it still sounds like based

21  on you're saying they're either going to need a couple of

22  months with documents or you are going to sit down and explain

23  what you are doing and they are going to say oh, Ms. Bannigan,

24  now we see.  This is all a mistake.  Then they'll dismiss.

25          MS. DUVDEVANI:  I can assure you that Nike does not

1     have the fundamental misunderstanding of NFTs that Stockx
2     claims that we have, but we're happy to listen to anything that
3     they're willing to tell us.
4              THE COURT:  Well, good luck.  I'm only half teasing.
5     It is a significant case to both sides but it does sound like
6     perhaps settlement conference could be helpful after both sides
7     have a common understanding of the facts are.  So that's what
8     I'll do in terms of referral.
9              Anything further from you, Ms. Duvdevani?
10             MS. DUVDEVANI:  No.  Thank you very much for your time
11    today.
12             THE COURT:  It's pronounced just like it's spelled but
13    it just has some syllables that I stumble over.
14             MS. DUVDEVANI:  That's all right. no problem.  I'm
15    used to it.
16             THE COURT:  I'm sure.
17             Ms. Bannigan, anything further from the defendant?
18             MS. BANNIGAN:  Nothing from defendant, your Honor.
19             Thank you very much.
20             THE COURT:  Okay.  Thanks, everybody.
21             (Adjourned)
22
23
24
25