# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| NIKE, INC., | Civil Action No.: 1:22-cv-00983-VEC |
| Plaintiff, | |
| v. | |
| STOCKX LLC, | |
| Defendant. | |

## PLAINTIFF NIKE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.   FACTUAL BACKGROUND..................................................................................... 4

III.   PROCEDURAL HISTORY....................................................................................... 6

IV.   ARGUMENT ............................................................................................................ 7

  A.  Applicable Legal Standard................................................................................... 7

  B.  Nike Should Be Granted Leave to Amend ......................................................... 9

     1.  Nike's Did Not Excessively Delay In Filing Its Motion................................ 9

     2.  Nike's Motion Is Made In Good Faith And For Legitimate Purpose ........................ 10

     3.  Nike's Proposed Amendment Is Not Futile ................................................... 11

     4.  Nike's Proposed Amendment Will Not Unduly Prejudice StockX ............................ 14

V.   CONCLUSION....................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
   87 F. Supp. 2d 281 (S.D.N.Y. 2000)...............................................................................16, 17

*Agerbrink v. Model Serv. LLC*,
   155 F. Supp. 3d 448 (S.D.N.Y. 2016)............................................................... *passim*

*Altowaiti v. Cissna*,
   2020 WL 2036703 (S.D.N.Y. Apr. 28, 2020).............................................................8

*Am. Med. Ass'n v. United Healthcare Corp.*,
   2006 WL 3833440 (S.D.N.Y. Dec. 29, 2006) .........................................................11

*Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*,
   2019 WL 3066328 (S.D.N.Y. July 12, 2019) .........................................................10

*Artists Rts. Enf't Corp. v. Est. of King*,
   2017 WL 2062988 (S.D.N.Y. May 15, 2017) ...........................................................9

*Bemben v. Fuji Photo Film U.S.A., Inc.*,
   2003 WL 21146709 (S.D.N.Y. May 19, 2003) .........................................................8

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993)...................................................................................16

*Bodum Holding AG v. Starbucks Corp.*,
   2020 WL 6135714 (S.D.N.Y. Oct. 16, 2020) .........................................................16

*Chanel, Inc. v. RealReal, Inc.*,
   449 F. Supp. 3d 422 (S.D.N.Y. 2020)..............................................................12, 13

*Christians of Cal., Inc. v. Clive Christian N.Y., LLP*,
   2014 WL 3605526 (S.D.N.Y. July 18, 2014) .........................................................16

*Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*,
   2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020) .........................................................12

*Conopco Inc. v. Wells Enterprises, Inc.*,
   2015 WL 2330115 (S.D.N.Y. May 14, 2015) .........................................................14

*DGI-BNSF Corp. v. TRT LeaseCo, LLC*,
   2019 WL 5781973 (S.D.N.Y. Nov. 6, 2019) (Caproni, J.)..................................7, 11

*Dube v. Signet Jewelers Ltd.*,
   2017 WL 1743853 (S.D.N.Y. May 4, 2017) ........................................................11

*El Greco Leather Prod. Co. v. Shoe World, Inc.*,
   806 F.2d 392 (2d Cir. 1986).........................................................................10

*Eliya, Inc. v. Steven Madden, Ltd.*,
   2017 WL 1190943 (E.D.N.Y. Mar. 30, 2017) .........................................................18

*Friedl v. City of New York*,
   210 F.3d 79 (2d Cir. 2000)). .........................................................................7

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d Cir. 2003)..........................................................................15

*Gucci Am., Inc. v. Guess*
   *?, Inc.*, 868 F. Supp. 2d 207 (S.D.N.Y. 2012) .........................................................11

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
   2013 WL 3718071 (S.D.N.Y. July 15, 2013) .........................................................11

*Hanlin v. Mitchelson*,
   794 F.2d 834 (2d Cir. 1986)..........................................................................15

*Ideavillage Prod. Corp. v. Copper Compression Brands LLC*,
   2021 WL 5013799 (S.D.N.Y. Oct. 27, 2021) .........................................................17

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*,
   2009 WL 1357946 (S.D.N.Y. May 12, 2009) .........................................................17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019)..................................................................14

*Kleeberg v. Eber*,
   331 F.R.D. 302 (S.D.N.Y. 2019) ..................................................................8, 9

*Lemberg L., LLC v. eGeneration Mktg., Inc.*,
   2020 WL 2813177 (D. Conn. May 29, 2020)..........................................................14

*Levin v. Bank of New York*,
   2020 WL 8812043 (S.D.N.Y. Dec. 10, 2020) ................................................8, 9, 12

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   83 F. Supp. 3d 501 (S.D.N.Y. 2015)..................................................................14

*Loftex USA LLC v. Trident Ltd.*,
   2012 WL 5877427 (S.D.N.Y. Nov. 20, 2012) .........................................................10

*Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*,
  2018 WL 317850 (S.D.N.Y. Jan. 8, 2018), *aff'd*, 764 F. App'x 39 (2d Cir.
  2019) ..................................................................................................................10, 11

*United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*,
  889 F.2d 1248 (2d Cir. 1989).......................................................................16

*Margel v. E.G.L. Gem Lab Ltd.*,
  2010 WL 445192 (S.D.N.Y. Feb. 8, 2010) .................................................. *passim*

*Milanese v. Rust-Oleum Corp.*,
  244 F.3d 104 (2d Cir. 2001)......................................................................7, 11

*Monahan v. New York City Dep't of Corr.*,
  214 F.3d 275 (2d Cir. 2000).........................................................................15

*Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*,
  551 F. Supp. 3d 408 (S.D.N.Y. 2021) (Caproni, J.) ....................................2

*Oneida Indian Nation of New York v. Cty. of Oneida, N.Y.*,
  199 F.R.D. 61 (N.D.N.Y. 2000)....................................................................15

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
  681 F.3d 114 (2d Cir. 2012).........................................................................12

*Quaratino v. Tiffany & Co.*,
  71 F.3d 58 (2d Cir. 1995)...............................................................................8

*United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*,
  285 F.Supp.3d 759 (S.D.N.Y. 2018)...........................................................7, 12

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald*,
  2015 WL 4097927 (S.D.N.Y. 2015).............................................................15

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008).........................................................................15

*Sacerdote v. New York Univ.*,
  9 F.4th 95 (2d Cir. 2021) ........................................................................4, 7, 10

*Scott v. Chipotle Mexican Grill, Inc.*,
  300 F.R.D. 193 (S.D.N.Y.2014) ..................................................................16

*State Teachers Ret. Bd. v. Fluor Corp.*,
  654 F.2d 843 (2d Cir. 1981).........................................................................15

*Travelers Indem. Co. of Am. v. Starr Indem. & Liab. Co.*,
  2022 WL 912700 (S.D.N.Y. Mar. 29, 2022) ...............................................12

iv

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   2021 WL 240737 (S.D.N.Y. Jan. 25, 2021) (Caproni, J.) .........................................................7

**Statutes**

15 U.S.C. § 1114(1)(a) ...........................................................................................................12, 13

15 U.S.C. § 1125(a)(1)(B) .....................................................................................................12, 13

Lanham Act ......................................................................................................................10, 14, 17

**Other Authorities**

Fed. R. Civ. P. 15(d) ..............................................................................................................2, 7, 8

2 McCarthy on Trademarks and Unfair Competition § 11:91 (5th ed. 2022) ...................11

Plaintiff Nike, Inc. ("Nike") respectfully submits this memorandum of law in support of its Motion for Leave to File a First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 15(a)(2) and (d) (the "Motion").[1]  Nike's Motion is timely made pursuant to the Court's April 11, 2022 Civil Case Management Plan and Scheduling Order (the "Order"), which states that any motion to amend shall be filed within 30 days from the date of the Order.  (Dkt. No. 25.)

## I.    PRELIMINARY STATEMENT

Nike filed this trademark infringement and dilution action against StockX on February 3, 2022.  In the approximately three months since that date, additional facts transpired or were discovered that are highly relevant to Nike's claims against StockX.  These facts can be grouped into three categories.

First, since Nike filed its Complaint, StockX has made a series of modifications to its representations surrounding its Vault NFT offerings.  For example, after Nike shined a spotlight on several problematic and deceptive terms governing the infringing Nike-branded NFTs, StockX deleted and/or replaced those terms.  StockX also modified Vault NFT marketing that, *e.g.*, promised owners of the infringing Nike-branded NFTs exclusive StockX benefits.  Those changes do nothing to excuse StockX's ongoing infringement of Nike's marks or to resolve its past infringement and, indeed, by the time those modifications were made, StockX had already offered for sale, sold, and/or released into the stream of commerce all of the infringing Nike-branded NFTs.  StockX's revisionary conduct is nonetheless relevant to Nike's claims, but instead of admitting that certain terms that existed during a critical infringement period were altered, StockX's Answer to Nike's Complaint obfuscated the fact that it scrambled to revise its

---

[1] The proposed FAC is annexed as Exhibit A to the Declaration of Tamar Y. Duvdevani ("Duvdevani Decl.") filed herewith.  Pursuant to this Court's Individual Practices, a redlined version of the proposed FAC comparing the revisions made to Nike's original Complaint is annexed as Exhibit B to the Duvdevani Decl.

representations to consumers in the wake of Nike's claims of trademark infringement and dilution.[2]

Nike thus proposes allegations in the FAC relating to this recent conduct that supplements Nike's

original causes of action and "happened after the date" of Nike's original pleading.  FED. R. CIV.

P. 15(d).

Second, on April 22, 2022, Nike entered the NFT market.  In particular, Nike and RTFKT

released the Nike Dunk Genesis CryptoKicks™ NFTs, along with the Evo Skin Vial NFTs, which

allow owners of the Nike Dunk Genesis NFTs to customize the colorway of the digital shoes.

Examples of the Nike Dunk Genesis CryptoKicks™ and Evo Skin Vial NFTs are depicted below:



Nike's original Complaint had alleged that it would soon release its own virtual products.  (Dkt.

No. 1 at ¶ 39.)  It now has done so.  Two key factors in the likelihood of confusion analysis are

"proximity of the products and their competitiveness with one another" and "evidence that the

senior user may 'bridge the gap' by developing a product for sale in the market of the alleged

infringer's product."  *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.,*

551 F. Supp. 3d 408, 427 (S.D.N.Y. 2021) (Caproni, J.).  Sure enough, after Nike's drop of these

NFTs, additional actual confusion between the parties' occurred because of StockX's infringing

---

[2] For example, when Nike alleged a fact regarding a term that StockX later removed *after* the Complaint was filed, StockX did not admit that the term existed during the initial infringement period.  Instead, StockX denied the allegation and averred its current terms.  (*See e.g.,* Dkt. No. 21 at ¶ 54).  Likewise, where StockX later revised a term to address an inconsistency Nike had alleged in its initial Complaint, StockX denied the allegation and averred the revised terms without acknowledging any such change.  (*See e.g., id.* at ¶ 48).

Nike-branded NFTs.  (Duvdevani Decl. Ex. A at ¶ 104.) Nike thus proposes supplementing its pleading with highly relevant factual allegations regarding its post-action entry into the NFT market.

Third, when StockX answered Nike's Complaint, it set forth its defensive contentions in a "Preliminary Statement."  (Dkt. No. 21 at 1-8.)  StockX argued in this opening to its answer that it is not liable because each accused NFT is just a "claim ticket" to a pair of Nike shoes that StockX authenticated using its "proprietary, multi-step authentication process" and then stored in its "vault."  (*Id*. at 3.)  But despite StockX's numerous guarantees of authenticity, Nike recently obtained four confirmed pairs of counterfeit "Nike" shoes, which were purchased within a two-month period on StockX's platform.  StockX affixed its "Verified Authentic" hangtag to each pair of counterfeit shoes and included a paper receipt in the shoe box stating that each pair of counterfeit shoes is "100% Authentic."  At least one pair of those counterfeit shoes are the same style as one of the infringing Nike-branded Vault NFTs:





Nike therefore proposes factual allegations regarding StockX's counterfeiting activities and its false and/or misleading claims regarding its "proprietary" authentication process.  These facts not only supplement Nike's allegations relating to its original five causes of action, they also

support Nike's proposed sixth cause of action for counterfeiting and seventh cause of action for false advertising.

It is well established that motions for leave to amend filed prior to a scheduling order deadline should be freely granted absent bad faith, prejudice or futility. *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). Because Nike timely filed this Motion pursuant to the Court's Civil Case Management Plan and Scheduling Order, and none of the exceptions discussed below apply, this Motion should be granted.

## II.      FACTUAL BACKGROUND

This action arose from StockX's unauthorized and infringing use of Nike's famous marks in connection with StockX's entry into the Non-Fungible Token ("NFT") market. (*See generally* Dkt. No. 1.) Specifically, without Nike's authorization or approval, StockX is "minting" NFTs that prominently use Nike's trademarks, marketing those NFTs using Nike's goodwill, and selling those NFTs at heavily inflated prices to unsuspecting consumers who believe or are likely to believe that those "investible digital assets" (as StockX has called them) are, in fact, authorized by Nike when they are not. (*Id.*)

For its defense, StockX claims that the "100% Authentic" Nike-branded "Vault NFTs" it has sold are no more than "claim tickets" for specific physical Nike shoes StockX has purportedly authenticated using its "proprietary, multi-step authentication process" and stored in its "vault" to ensure "that the products offered for sale are what they claim to be, and are not counterfeit, defective, or used." (Dkt. No. 21 at 2.)

In the short time since Nike initiated this action, StockX has repeatedly revised its statements to consumers, hoping to erase some of the unsavory conduct that Nike's Complaint identified. (Duvdevani Decl. Ex. A at ¶ 73.) Moreover, the consumer confusion caused by StockX's infringement is now affecting Nike's recent entry into the NFT market with its genuine

Nike-branded NFTs.  After this action was filed, Nike launched the highly anticipated and revolutionary MNLTH and CryptoKicks™ NFTs.  (Duvdevani Decl. Ex. A at ¶ 45-46.)  Nike and RTFKT released the Nike Dunk Genesis CryptoKicks™ NFTs on April 22, 2022, along with the Evo Skin Vial NFTs, which allow owners of the Nike Dunk Genesis NFTs to customize the colorway of the digital shoes.  (Duvdevani Decl. Ex. A at ¶¶ 45-46.)  The public has already conflated the parties' NFT offerings.  (Duvdevani Decl. Ex. A at ¶ 104.)  For example, one commentator incorrectly reported that Nike and RTFKT's CryptoKicks™ NFTs debuted on StockX's platform (they did not) and that users of StockX's platform can buy NFTs supported by Nike (they cannot).  (Duvdevani Decl. Ex. A at ¶ 104.)  This was precisely the sort of confusion that Nike feared would ensue when it filed this action.

Nike's continuing investigation into StockX's conduct has also revealed that StockX has been and is currently dealing in counterfeit Nike goods.  (Duvdevani Decl. Ex. A at ¶¶ 12-15, 107.)  Notwithstanding StockX's repeated guarantees that every item sold through its platform is "100% Verified Authentic," since December 2021 and continuing through the filing of this action, Nike has obtained from StockX four pairs of purportedly "authenticated" Nike-branded shoes that Nike has verified are, in fact, counterfeit.  (Duvdevani Decl. Ex. A at ¶¶ 12-13, 107.)  Those four pairs of counterfeit shoes were all purchased within a two-month period on StockX's platform, all had affixed to them StockX's "Verified Authentic" hangtag, and all came with a paper receipt from StockX in the shoe box stating that the shoes are "100% Authentic."  (Duvdevani Decl. Ex. A at ¶ 12.)  Indeed, at least one pair of those counterfeit shoes are the same style as one of the infringing Nike-branded Vault NFTs.  (Duvdevani Decl. Ex. A at ¶ 13.)  The confirmed purchase of counterfeit Nike goods on StockX's platform directly undermines StockX's "100% Verified Authentic" claims and its claims about the "proprietary multi-step verification process" it employs

to authenticate goods and renders these statements false and/or misleading.  (Duvdevani Decl. Ex. A at ¶ 173.)  StockX is knowingly deceiving consumers with these false and/or misleading statements about the authenticity of the Nike goods for sale on its platform, continuing to engage in such improper and unlawful business practices to attract consumers to its platform and induce consumers to purchase supposedly genuine Nike goods and purchase and trade the infringing Nike-branded Vault NFTs.  (Duvdevani Decl. Ex. A at ¶ 113.)  The continued sale of counterfeit Nike goods on StockX's platform and StockX's false and/or misleading claims about its authentication process has caused and is causing Nike injury as a result of, *inter alia*, harm to reputation, diverted sales, consumer confusion, dilution, and tarnishment of its valuable trademarks.  (Duvdevani Decl. Ex. A at ¶ 114.)

For these reasons, Nike moves this Court for leave to supplement and amend its Complaint to include additional causes of action for counterfeiting and false advertising.

## III.   PROCEDURAL HISTORY

Nike initiated this action by filing its Complaint on February 3, 2022.  (Dkt. No. 1.)  StockX filed its Answer to Nike's Complaint on March 31, 2022.  (Dkt. No. 21.)  The Court held the Initial Pretrial Conference on March 11, 2022 and issued its Civil Case Management Plan and Scheduling Order on the same day.  (Dkt. No. 25.)  The Order states that any motion to amend shall be filed within 30 days from the date of the Order.  (*Id*. at ¶ 2.)  The parties served Rule 26(a)(1) Initial Disclosures on April 18, 2022.  (*Id*. at ¶ 3.)  Fact discovery closes on October 15, 2022 and expert discovery closes on January 15, 2023.  (*Id*. at ¶ 5.)  The parties have exchanged first sets of discovery requests but have not yet begun to produce documents in connection with those requests.  A settlement conference before Magistrate Judge Netburn is scheduled for July 18, 2022.  (Dkt. No. 28.)

## IV.   ARGUMENT

### A.   Applicable Legal Standard

Rule 15(a)(2) of the Federal Rules of Civil Procedure governs amendment of pleadings and states that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). When plaintiff moves the court for leave to amend, courts in this Circuit "should grant such leave 'freely...when justice so requires,' pursuant to Rule 15(a)(2)." *Sacerdote.*, 9 F.4th at 115. "This is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, or futility." *Id.* (internal quotations and citations omitted); *see also Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 2021 WL 240737, at *1 (S.D.N.Y. Jan. 25, 2021) (Caproni, J.) ("Leave to amend should only be denied if there is 'substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility.'") (quoting *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000)). "While the party seeking to amend its pleading must explain any delay, the party opposing the amendment bears the burden of showing prejudice, bad faith, and futility of the amendment." *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F.Supp.3d 759, 766 (S.D.N.Y. 2018) (internal quotations and citation omitted). A motion for leave will be denied as futile "only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *DGI-BNSF Corp. v. TRT LeaseCo, LLC*, 2019 WL 5781973, at *3 (S.D.N.Y. Nov. 6, 2019) (Caproni, J.) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).

Relatedly, Rule 15(d) empowers a court "on just terms, [to] permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." FED. R. CIV. P. 15(d). "Where the plaintiff seeks to add

related claims against the same defendant[], the analysis used to determine whether supplementation is appropriate under Rule 15(d) is identical to the analysis used to determine whether amendment is appropriate pursuant to Rule 15(a)."  *Kleeberg v. Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019) (granting leave); *see also Bemben v. Fuji Photo Film U.S.A., Inc*., 2003 WL 21146709, at *1 (S.D.N.Y. May 19, 2003) (granting motion under FED. R. CIV. P. 15(d) to supplement by applying liberal standards of FED. R. CIV. P. 15(a)).  "Thus, courts will grant leave to supplement a pleading so long as the supplemental facts are connected to the original pleading and there is no good reason to deny the request."  *Kleeberg*, 331 F.R.D. at 315.  As with leave to amend, "[l]eave to supplement thus ought to be freely given in the absence of 'undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility.'"  *Levin v. Bank of New York*, 2020 WL 8812043, at *1 (S.D.N.Y. Dec. 10, 2020) (quoting *Quaratino v. Tiffany & Co*., 71 F.3d 58, 66 (2d Cir. 1995)).  The analysis of "Rule 15(d) reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties."  *Altowaiti v. Cissna*, 2020 WL 2036703, at *3 (S.D.N.Y. Apr. 28, 2020) (internal quotations omitted) (granting motion for leave).

As discussed above and is evidenced from the proposed FAC, Nike seeks to amend its original Complaint to add causes of action against StockX for counterfeiting and false advertising, claims that are supported by facts that were discovered after this action was filed by Nike on February 3, 2022.  (Duvdevani Decl. Ex. A. at ¶¶ 7, 12, 73 .)  Some of those facts also relate directly to Nike's original causes of action for trademark infringement and StockX's defenses to those claims.  For example, Nike's proposed allegations that StockX has sold counterfeit Nike products, including styles of shoes purportedly associated with infringing Nike-branded Vault NFTs, relate directly to statements StockX made in its answer that its Vault NFTs are no more

than "claim tickets" to a pair of Nike shoes that StockX guarantees are 100% authentic.  (Dkt. No. 21 at 2.)

Nike also sets forth in its proposed FAC additional events that occurred after Nike filed this action that supplement its original causes of action.  For instance, Nike's Complaint described in detail the terms that govern StockX's Vault NFT offerings, yet in the weeks after this action was filed, StockX repeatedly modified those terms, apparently to better align with its defensive strategy.  (Duvdevani Decl. Ex. A. at ¶¶ 7, 73 .)  StockX likewise scrambled to modify or remove certain marketing statements and materials on its platform that, *inter alia*, promised owners of Vault NFTs exclusive StockX benefits as part of the purchase of a Vault NFT.  (*Id.* at ¶ 73.)  Nike's proposed FAC includes allegations relating to this post-February 3, 2022 conduct.  (*See generally* Duvdevani Decl. Ex. A.)  Nike also proposes facts relating to its recent entry into the NFT market with the February 7, 2022 and April 22, 2022 launch of the highly anticipated and revolutionary MNLTH and CryptoKicks™ NFTs, and the confusion that ensued.  (*Id.* at ¶¶ 44-45, 104.)  Nike's original Complaint had noted that Nike's entry was imminent.  (Dkt. No. 1 at 14.)

Because Nike is both supplementing its Complaint to account for conduct and facts discovered or occurring after February 3, 2022 and amending its Complaint to allege other new facts and assert additional, related causes of action, Nike's Motion is made pursuant to both Rule 15(a) and (d), which, in any event, share the same lenient standard for granting leave to amend. *See Kleeberg*, 331 F.R.D. at 315; *Levin*, 2020 WL 8812043, at \*1.

### B.   NIKE SHOULD BE GRANTED LEAVE TO AMEND

#### 1.   Nike's Did Not Excessively Delay In Filing Its Motion

Where a court's scheduling order permits the filing of a motion to amend within thirty days of that order and the moving party files its motion within that period, a motion for leave is not untimely and a claimant did not engage in undue delay.  *See e.g., Artists Rts. Enf't Corp. v. Est. of*

*King*, 2017 WL 2062988, at *2 (S.D.N.Y. May 15, 2017) (finding amendment filed within thirty day limit set by scheduling order was not "untimely"); *Loftex USA LLC v. Trident Ltd.*, 2012 WL 5877427, at *4 (S.D.N.Y. Nov. 20, 2012) (finding where Plaintiff filed its motion for leave to amend within the schedule proposed by the parties and adopted by the court that the proposed amendment was not unduly delayed nor prejudicial).  Here, the Court's Civil Case Management Plan and Scheduling Order permitted amendment within thirty days of April 11, 2022.  (Dkt. No. 25.)  This Motion is therefore timely and subject to Rule 15(a)(2)'s "liberal" and "permissive" standard.  *Sacerdote*, 9 F.4th at 115 (discussing Rule 15 and 16's three standards for amending pleadings that depend on when the amendment is sought).

In addition, Nike's FAC is premised on multiple facts that occurred or were discovered after this action was filed.  (*See, e.g.*, Duvdevani Decl. Ex. A at ¶¶ 7, 12, 73 .)  Nike therefore did not delay in making its Motion.  *See, e.g., Apotex Corp. v. Hospira Healthcare India Priv. Ltd.*, 2019 WL 3066328, at *10 (S.D.N.Y. July 12, 2019) (finding "the amendment is timely in that it adds allegations of conduct that post-date the FAC").

### 2.     Nike's Motion Is Made In Good Faith And For Legitimate Purpose

As noted above, Nike's proposed FAC alleges new and recently discovered facts that support both its original claims and its new causes of action for counterfeiting and false advertising. (Duvdevani Decl. Ex. A at ¶¶ 7, 12, 164-175.)  Nike's trademarks and accompanying goodwill are some of the cornerstones of its business, and Nike as a trademark owner is obligated to police infringing uses of its marks.  *See Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 2018 WL 317850, at *3 (S.D.N.Y. Jan. 8, 2018), *aff'd*, 764 F. App'x 39 (2d Cir. 2019) (recognizing "the fact that the law compels trademark owners to police their marks or risk losing their rights."); *El Greco Leather Prod. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986) (recognizing that "[o]ne of the most valuable and important protections afforded by the Lanham Act is the right to control

the quality of the goods manufactured and sold under the holder's trademark."); *see also* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:91 (5th ed. 2022) ("[T]he corporate owners of trademarks have a duty to protect and preserve the corporation's trademark assets though vigilant policing and appropriate acts of enforcement.").   Nike is especially compelled to police its rights when the infringement rises to the level of counterfeiting, which courts in this district hold is "the 'hard core' or 'first degree' of trademark infringement."   *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012).   Here, Nike in its proposed FAC seeks relief from StockX's sale counterfeit of Nike shoes to unsuspecting consumers, consumers motivated to give their business to StockX due to its repeated claims that it is sells "100% Verified Authentic" goods that consumers should "trust" because of its "proprietary" authentication process that supposedly prevents counterfeits from "slipping through the cracks."   *Louis Vuitton Malletier, S.A.*, 2018 WL 317850, at *3.   Nike's Motion for leave and the proposed FAC's allegations are therefore made in good faith.[3]

### 3.      Nike's Proposed Amendment Is Not Futile

"[L]eave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief."   *DGI-BNSF Corp. v. TRT LeaseCo, LLC,* 2019 WL 5781973, at *3 (S.D.N.Y. Nov. 6, 2019) (Caproni, J.) (quoting *Milanese*

---

[3] Courts have found that a party seeks to amend in bad faith or with dilatory tactics when done so, *e.g.*, "in anticipation of an adverse ruling," (*Am. Med. Ass'n v. United Healthcare Corp*., 2006 WL 3833440, at *5 (S.D.N.Y. Dec. 29, 2006)), in a pattern "calculated to frustrate any attempt by defendants to formulate meaningful responses," (*Gurvey v. Cowan, Liebowitz & Latman, P.C*., 2013 WL 3718071, at *10 (S.D.N.Y. July 15, 2013)), or motivated by a desire to remain lead plaintiff/counsel in a class action (*Dube v. Signet Jewelers Ltd*., 2017 WL 1743853, at *2 (S.D.N.Y. May 4, 2017)).   None of this sort of conduct exists here.   Moreover, because the Motion is Nike's first request to amend to its Complaint, another factor considered by courts—repeated failure to cure deficiencies by amendments previously allowed—is inapplicable.

*v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *see also Travelers Indem. Co. of Am. v. Starr Indem. & Liab. Co.*, 2022 WL 912700, at *1 (S.D.N.Y. Mar. 29, 2022) (leave to amend where no futility under 12(b)(6) standard); *Levin*, 2020 WL 8812043, at *1 (leave to supplement where proposed pleading would not be subject to "immediate dismissal").   "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).   "Accordingly, the proposed amendment must be viewed in the light most favorable to the party moving to amend and leave to amend should only be denied if the moving party can prove no set of facts which would entitle them to relief." *Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, 2020 WL 5089444, at *5 (S.D.N.Y. Aug. 28, 2020) (internal citations omitted).   The party opposing the amendment has the burden of demonstrating that a proposed amendment would be futile.  *United States ex rel. Raffington*, 285 F. Supp. 3d at 766 (collecting cases).

Nike's Motion is not futile because its newly proposed claims of counterfeiting and false advertising are supported by well-plead and non-conclusory factual allegations.  (*See, e.g.*, Duvdevani Decl Ex. A at ¶¶ 164-175.)  The conduct alleged by Nike—that StockX is actively and directly selling counterfeit goods on its platform—states a claim under 15 U.S.C. § 1114(1)(a). Nike's allegations that StockX is guaranteeing those sales as "100% Verified Authentic" based on its "proprietary" authentication process when they are not, and that those statements are material to purchasing decisions, states a claim for false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B). Indeed, a court in this District recently denied a Rule 12(b)(6) motion to dismiss nearly identical causes of action for counterfeiting and false advertising.  *See Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 441-42 (S.D.N.Y. 2020).

In *Chanel*, the court held that Chanel had alleged facts sufficient to assert a claim for direct trademark infringement under 15 U.S.C. § 1114(1)(a) based on the sale of counterfeit goods.  *Id*. In particular, the court held that "Chanel has adequately averred that its own investigation revealed that The RealReal marketed and sold counterfeit Chanel products, and Chanel has also alleged that The RealReal's own customers have complained about the receipt of counterfeit merchandise." *Id*.  The court also held that Chanel had alleged sufficient factual content to plausibly state a claim for false advertisement under 15 U.S.C. § 1125(a)(1)(B) based on The RealReal's authenticity advertisements.  *Id*. at 446.  In particular, the court held that, "[g]iven Chanel's allegations that certain products advertised and sold by The RealReal are counterfeit," Chanel plausibly alleged "literal false advertising based on The RealReal's representation that all the products it offers have been authenticated and are 100% the real thing."  *Id*. at 444.

Here, just like Chanel in *Chanel v. RealReal*, Nike states plausible claims for counterfeiting and false advertising because the proposed FAC sufficiently alleges that StockX has been and is currently dealing in counterfeit Nike goods, which renders false and/or misleading StockX's "100% Verified Authentic" claims and its claims about the "proprietary multi-step verification process" it employs to authenticate goods.  Nike alleges that, since December 2021 and continuing through the filing of this action, Nike has obtained from StockX four pairs of purportedly "authenticated" Nike-branded shoes that Nike has verified are, in fact, counterfeit.  Those four pairs of counterfeit shoes were all purchased within a short two-month period on StockX's platform, all had affixed to them StockX's "Verified Authentic" hangtag, and all came with a paper receipt from StockX in the shoe box stating that the condition of the shoes is "100% Authentic."

The confirmed purchase of counterfeit Nike goods on StockX's platform directly undermines StockX's claim that goods sold on its platform are "100% Verified Authentic" and its

other claims about the "proprietary multi-step verification process" it employs to authenticate goods. Nike also sufficiently alleges that StockX is knowingly deceiving consumers with these false and/or misleading statements about the authenticity of the Nike goods for sale on its platform, continuing to engage in such improper and unlawful business practices to attract consumers to its platform and induce consumers to purchase supposedly genuine Nike goods and purchase and trade the infringing Nike-branded Vault NFTs. Nike also alleges that the continued sale of counterfeit Nike goods on StockX's platform and StockX's false and/or misleading claims about its authentication process has caused and is causing Nike injury as a result of, *inter alia*, harm to reputation, diverted sales, consumer confusion, dilution, and tarnishment of its valuable trademarks.

Accordingly, because Nike's proposed FAC alleges sufficient factual content to plausibly state claims for counterfeiting and false advertising, Nike's proposed amended is not futile.[4]

### 4. Nike's Proposed Amendment Will Not Unduly Prejudice StockX

"Although prejudice to the opposing party has been described as the most important reason for denying a motion to amend, only undue prejudice warrants denial of leave to amend." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016) (internal citations

---

[4] Moreover, Lanham Act claims for false advertising are fact-intensive and, therefore, are not ordinarily resolved at the pleading stage. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* 383 F. Supp. 3d 187, 247–48 (S.D.N.Y. 2019) (finding that "[a]t the motion to dismiss stage, an allegation that the representation was false and misleading in certain respects is sufficient to go forward with the discovery process to substantiate [plaintiff's] claim that the [representation] was clearly false, clearly material, and clearly likely to induce reasonable reliance."); *Lemberg L., LLC v. eGeneration Mktg., Inc.,* 2020 WL 2813177, at *9 (D. Conn. May 29, 2020) ("whether a disclaimer effectively turns an otherwise false advertisement into a true one is a matter of fact, which may not, in many circumstances, be properly decided on a Rule 12(b)(6) motion to dismiss."); *.LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015) (denying motion to dismiss Lanham Act false advertising claim as "materiality is generally a question of fact poorly suited to a determination at the pleadings stage."); *Conopco Inc. v. Wells Enterprises, Inc*., 2015 WL 2330115, at *5 (S.D.N.Y. May 14, 2015) (same).

omitted).  "In deciding whether such prejudice exists, courts evaluate whether the amendment would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  *Id.* (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)).  "Courts also consider the particular procedural posture of the case." *Agerbrink*, 155 F. Supp. 3d at 454 (citing *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'"); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of leave to amend sought after discovery had closed and while summary judgment motion was pending).  "This 'inquiry involves a balancing process,' weighing any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied." *Agerbrink*, 155 F. Supp. 3d at 454 (quoting *Oneida Indian Nation of New York v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000)). In addition, courts will "consider the extent to which the new claims are related to the existing ones and whether a party has had prior notice of a proposed new claim." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald*, 2015 WL 4097927, at *8 (S.D.N.Y. 2015) (citing *Monahan*, 214 F.3d at 284); *Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) (finding that "new claims are merely variations on the original theme"); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (granting leave where "the amended claim was obviously one of the objects of discovery and related closely to the original claim").  "The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" *Agerbrink*, 155 F. Supp. 3d at 454.  Here, StockX will suffer no undue prejudice should the Court grant the Motion.

As an initial matter, mere allegations that an amendment "will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice." *Christians of Cal., Inc. v. Clive Christian N.Y., LLP*, 2014 WL 3605526, at \*5 (S.D.N.Y. July 18, 2014) (internal quotation marks and alterations omitted) (quoting *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)); *Agerbrink*,155 F. Supp. 3d at 454 ("This alleged prejudice does not rise to a level that justifies denying leave to amend.").  "[T]he fact that the opposing party will have to undertake additional discovery, 'standing alone, does not suffice to warrant denial of a motion to amend a pleading.'"  *Id*. (quoting *United States ex rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1255 (2d Cir. 1989)); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (granting leave where defendants argued prejudice resulted "solely because of the time, effort, and money they expended in litigating this matter."); *Bodum Holding AG v. Starbucks Corp.*, 2020 WL 6135714, at \*9 (S.D.N.Y. Oct. 16, 2020) ("the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial.")

Moreover, Nike has filed this Motion within the Civil Case Management Plan and Scheduling Order's deadline for filing such motions, (Dkt. No. 25 at ¶ 2), and "well before the close of discovery." *Agerbrink*, 155 F. Supp. 3d at 454.; *compare with Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y.2014) ("A court is more likely to find an amendment prejudicial if discovery has closed.").  Indeed, fact discovery has just opened—the parties have recently served their first sets of written discovery requests, and neither party has produced any documents.  Depositions are not likely to occur until well into July 2022.  Fact discovery is currently set to close on October 15, 2022 and expert discovery on January 15, 2023.  (Dkt. No.

25 at ¶ 5.)  While the next pretrial conference is set for October 28, 2022, (*id*. at. ¶ 10), the Court

has not yet set a summary judgment briefing schedule or a trial date.  *See Agerbrink*, 155 F. Supp.

3d at 455; *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, 2009 WL 1357946, at *5 (S.D.N.Y.

May 12, 2009) (allowing amendment and citing lack of pending dispositive motions or trial date);

*A.V. by Versace, Inc.*, 87 F. Supp. 2d at 299 (granting leave to amend where trial date had not been

set and discovery had not been completed)).  "Therefore, although the amendment may warrant

additional discovery, it should not significantly prolong the resolution of the action."  *Agerbrink*,

155 F. Supp. 3d at 455.

The proposed amendment will not impose any undue burden on StockX by expanding the

scope of discovery either.  "While some additional discovery will certainly be necessary, the

possibility 'that an amendment will require the expenditure of additional time, effort, or money

[does] not constitute 'undue prejudice.'"  *Agerbrink*, 155 F. Supp. 3d at 455 (quoting *A.V. by*

*Versace*, 87 F. Supp. 2d at 299); *see also Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at

*12 (S.D.N.Y. Feb. 8, 2010) (noting that any "prejudice that would flow from any additional

required discovery can generally be mitigated by adjustments to the discovery schedule," and

collecting cases); *JPMorgan Chase Bank, N.A.*, 2009 WL 1357946, at *4 ("[An] adverse party's

burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to

amend a pleading.")  As discussed in detail above, Nike's new allegations are either directly tied

to Nike's original Lanham Act causes of action and/or give rise to interrelated causes of action

under the same federal statute.  *See Ideavillage Prod. Corp. v. Copper Compression Brands LLC*,

2021 WL 5013799, at *5 (S.D.N.Y. Oct. 27, 2021) (finding that the proposed amendment to add

false advertising claims "does not [...] entail significant additional expenditure by Defendants, as

the amendment relates to precisely the same products implicated by Plaintiffs' preexisting Lanham

17

Act claims."); *Eliya, Inc. v. Steven Madden, Ltd.*, 2017 WL 1190943, at *3 (E.D.N.Y. Mar. 30, 2017) (rejecting argument that amendment to include trade dress infringement claim would be prejudicial as it related to same underlying subject matter as originally plead trademark infringement claims).

In sum, Nike's proposed amendment is supported by newly discovered facts concerning the same parties, several of the same asserted trademarks, and related conduct. These proposed amendments do not meaningfully change the scope of anticipated discovery such that Nike's Motion should be denied, particularly given the "prejudice that [Nike] would experience if the amendment were denied." *Agerbrink*, 155 F. Supp. 3d at 454.

Accordingly, StockX will not be unduly prejudiced by the proposed amendment.

## V.   CONCLUSION

For the foregoing reasons, Nike respectfully requests the Court grant it leave to file the Proposed First Amended Complaint.

18

Date:  May 10, 2022

By:  */s/ Tamar Y. Duvdevani*

**DLA PIPER LLP (US)**

Tamar Y. Duvdevani
Marc E. Miller
Jared Greenfield
1251 Avenue of the Americas 27th Fl.
New York, New York 10020-1104
tamar.duvdevani@us.dlapiper.com
marc.miller@us.dlapiper.com
jared.greenfield@us.dlapiper.com

Michael Fluhr
555 Mission Street
San Francisco, CA 9410
michael.fluhr@us.dlapiper.com

*Attorneys for Plaintiff Nike, Inc.*