**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NIKE, INC.,

        Plaintiff,

    v.

STOCKX LLC,

        Defendant.

Case No.: 22-CV-983 (VEC)

---

### STIPULATED [PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

**I.    PURPOSE**

This Order supplements the provisions of Rules 26 and 34 concerning discovery of electronically stored information ("ESI"), Local Rules, and any other applicable orders and rules. This Order does not displace Rules 26 or 34 or diminish a party's obligations to search for, collect, and produce discoverable information that is kept in the ordinary course as ESI.

**II.    COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith consistent with this ESI Order.

**III.    DEFINITIONS**

The following definitions will apply in this Order:

**A.    Bates Number** means a unique alphanumeric identifier associated with every physical sheet of paper, electronic file, electronically stored TIFF image, or other tangible thing, consisting of (1) an alphabetic portion identifying the producing party and/or other characteristics of the production; and (2) a numeric portion incremented according to a scheme defined at the producing party's discretion to ensure that the alphanumeric identifier for each physical sheet of

paper, electronic file, electronically stored TIFF image, or other tangible thing is unique. The alphanumeric identifier shall be no more than sixteen (16) characters in length.

      **B.**     **Document** is defined as in Federal Rule of Civil Procedure 34(a) and in Local Rule 26.3(c)(2) of the United States District Court for the Southern District of New York. This definition includes without limitation and whether in hard copy or electronic form all documents, records, communications, and data, including memoranda, letters, spreadsheets, databases, calendars, telephone logs, computer files and disks, emails (including attachments), audio- and videotapes, CDs and DVDs, text messages (including those stored on party-owned and personal devices), messages on electronic applications (including Google Chat, AOL Instant Messenger, WhatsApp, Slack, Signal, Telegram, Viber, Skype, Microsoft Teams, Facebook Messenger, and similar applications), social media posts and content on party-controlled accounts (including YouTube, Facebook, Instagram, etc.), telephone records, voicemails, handwritten notes, sound recordings and transcriptions, meeting minutes, calendars, ledger sheets, vouchers, statements of accounts, statistical compilations, minutes, summaries of investigations, opinions and reports, press releases, financial statements, bank statements, corporate records, minutes of board of directors or committee meetings, calendars, appointment books, diary entries and notes, photographs, checks, invoices, applications, ledger sheets, studies, drafts, files, archives, and other materials related in any way to the categories of documents requested, and any drafts of the foregoing items or any copy or reproduction of any of the foregoing items upon which any notation, work, figure or form is recorded or has been made which does not appear on the original or as to whose existence, either past or present, the responding party has any knowledge or information. The term "document" or "documents" includes each copy that is not identical to the original or to any other produced copy and any drafts of any document or any working papers or drafts related thereto. In instances where two or more exact duplicates of any document exist, this request calls for the most legible copy.

      **C.**     **ESI** means electronically stored information or data that is generated, received, processed, and recorded by computers and other electronic devices, and includes, without limitation, system metadata (e.g., author, recipient, file creation date, file modification date) and

user-generated metadata (e.g., spreadsheet formulas). ESI further includes, without limitation, the following: (i) output resulting from the use of any software program, such as word processing documents, spreadsheets, database files, charts, graphs, and outlines, (ii) electronic mail, (iii) message logs from Google Chat, AOL Instant Messenger, Facebook Messenger, Slack, Signal, Telegram, Viber, Skype, Microsoft Teams, WhatsApp, and similar programs, (iv) audio and video files, (v) internal (intranet) or external websites and (vi) activity listings of electronic mail receipts and/or transmittals. ESI includes electronic information or data wherever it resides, including, without limitation, (i) in an active file on a computer network or individual computer hard drive, (ii) on backup/storage media, (iii) on removable media, such as a floppy disk, memory stick, portable hard drive, or zip drive and (iv) on a party-owned smart phone or personal digital assistant. ESI also includes Documents, containers, and labels appended to or concerning any physical storage device associated with responsive electronic information or data.

      **D.**     **Hard Copy Document** means a Document kept in physical form, as opposed to electronic form, in the ordinary course of a party's business.

      **E.**     **Native Format** means the associated file structure defined by the original application with which an electronic file was created. For example, the Native Format associated with a Microsoft Word 2007 file is .docx and the Native Format associated with an Adobe Acrobat file is .pdf.

      **F.**     **Spreadsheet** means an electronic file that displays multiple cells that together make up a grid consisting of rows and columns, each cell containing either alphanumeric text or numeric values, including, but not limited to, files created with Microsoft Excel.

**IV.**    **PRODUCTION PROTOCOLS FOR ESI**

      **A.**     **ESI**. Electronically stored information ("ESI") and paper documents that are produced as scanned images shall be produced as black and white Group IV single-page TIFF (300 DPI, 1 bit) with the following exceptions: (1) documents that are in color such as those containing images of marks and/or advertising should be produced as single page color jpegs (.JPG); and (2) certain documents identified in B., below, may be produced in native format. If after reviewing

any black and white document, a Receiving Party believes that color is critical to a document, the parties agree to engage in discussion regarding production of documents in color, which production will not be unreasonably withheld. The parties shall provide image load files in Concordance (.OPT) format so as to facilitate the use of the produced images by a document management or litigation support system. The extracted, relevant metadata should be provided in a Concordance .DAT format, or other standard, compatible file format and extension as the receiving party specifies, and the searchable text (OCR) for non-native or non-searchable native files will be provided as multi-page text (.txt) files or other standard, compatible file format as specified by the receiving party. Additional specifications for the production of ESI, including the preferred metadata fields, are attached hereto as **Exhibit A.**

      B.    **Native Format**. Parties may produce agreed-upon ESI in native format, such as spreadsheets (e.g., Excel, Google Sheets, OpenOffice, CSV, TSV, etc.) and other files that cannot be converted to TIFF (such as audio, video and XML files). Native files should contain the Bates number and confidentiality designation of the file in the file title. In addition, native files should be accompanied by an image (TIFF) placeholder that contains the beginning Bates number and confidentiality designation. Wherever feasible, the producing party shall include accompanying metadata in the load file. The Parties agree not to remove metadata from native production. Additionally, if after reviewing production of other ESI in a non-native format, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the parties agree to engage in discussion regarding production of discrete documents in native form, which production will not be unreasonably withheld.

      C.    **Hard Copy Documents**. The parties agree to use reasonable efforts to ensure that hard copy (paper) documents shall be scanned, logically unitized, and produced electronically as specified in the form of production above. This provision does not obligate any party to produce documents in a manner other than in which those documents were kept in the ordinary course of business such that hard copy documents that are not scanned into electronic form prior to the date of production may be produced in the same manner in which they are maintained (e.g., hard

copies).  Copies of such hard copy documents may be made available for inspection and copying or may be delivered to the office of counsel for the requesting party.

    **D.** **Parent-Child Relationships**.  Parent-child relationships (the association between an attachment and its parent Document) shall be preserved whenever reasonable in such a way that a Document and any attachments to that Document are produced in the same production set and are identifiable as parent and child.

    **E.** **Attachments.**  As a standard practice, responsive documents should be provided with full family members (parent emails and attachments), even if some attachments may be non-responsive, with the exception that parent emails or attachments that may contain information that is otherwise protected may be withheld.  This provision does not prohibit the parties from agreeing to withhold additional documents from production, in which case a non-responsive slipsheet should be provided in place of the document.

    **F.** **De-duplication**. The parties will use their best efforts to de-duplicate documents as necessary prior to producing them; meaning that, if agreed upon, exact duplicates of a document (*i.e.*, all duplicates having the same MD5 hash value as the original document) will be removed to the best of the producing party's ability from the entire population of documents to be produced.

    **G.** **Email Thread Analysis.**  Email thread analysis may be used to reduce the volume of emails reviewed and produced.  The produced emails must include all of the responsive information from a thread, including attachments.  For example, if an email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual email and its attachments shall also be produced.

    **H.** **Email Redactions.**  In the event that the producing party finds that redactions are needed, the producing party shall redact only privileged information within the body of the email, in addition to the subject line, if it reveals privileged information.  Other identifying information, such as the To/From/Bcc, for example, shall not be redacted.  The parties may redact certain metadata if it reveals privileged information.

    **I.** **Native Redactions.**  In the event that the producing party finds the redaction of

certain documents in image form to be overly burdensome, it may elect to redact such documents in their native form. The produced documents must clearly indicate which portions have been redacted, and the searchable text provided must accurately reflect the contents of the document as produced.

**J.     Privilege Logs.**  Parties will provide a log of all documents withheld on the basis of attorney-client privilege, work product protection, or other applicable immunity and/or privilege.

    1.     If You claim the attorney-client privilege, or any other privilege or work-product protection for all or any portion of any Document, produce so much of the Document that is not subject to privilege or work-product protection and provide the following information with respect to each such Document:

        a.     The type of Document (e.g., a letter, memorandum, not, etc.);

        b.     Date of the Document;

        c.     The identity of each individual who was an author, addressee or recipient of the Document;

        d.     The title or subject of the Document;

        e.     The basic grounds for nondisclosure being asserted, e.g., attorney-client privilege, work product protection, or other privilege claim; and

        f.     A brief description of the subject matter of the Document detailed enough to permit analysis of the basis upon which it is being withheld.

    2.     Documents dated after the filing of the lawsuit containing privileged and/or work product material relating to the lawsuit do not need to be logged.

**K.     Databases**.  Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Access or other database software. If the Producing Party objects to such form, the parties shall undertake reasonable efforts, and, if

necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production.  Where a party produces Microsoft Access or other database software files only in native format, the producing party shall provide a corresponding image (TIFF) placeholder that contains the Bates number and Confidentiality designation of the file.

      **L.**     **Rule 26 Standard.**  The parties agree that if a party designates a data source as not reasonably accessible, it shall be assessed using the factors established in FED. R. CIV. P. 26 (and case law interpreting the same).

      **M.**     **No Backup Restoration Required.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, backup tapes, disks, SAN or other forms of media, in order to comply with its discovery obligations in the present case.

      **N.**     **Voicemail and Mobile Devices.**  The parties agree that voicemails, PDAs and mobile devices are generally deemed not reasonably accessible and therefore need not be preserved and collected.

      **O.**     **Data Subject to EU Privacy Laws.**  The parties agree to make reasonable efforts to protect any data or information subject to the General Data Protection Regulation (GDPR) or other similar laws and regulations regarding data privacy and cross border data transfer, and agree that such data or information may be redacted in accordance with the GDPR or other laws or regulations, to the extent reasonably practicable.  Nothing herein is meant to conflict with the requirements of the GDPR or impose any obligations that would conflict with protections afforded under the GDPR.

      **P.**     **Metadata Fields**.  Preferred metadata fields are identified in the attached Exhibit A, titled "Specifications for the Production of ESI."

Q. **Non-English ESI**. Textual information associated with ESI will be produced at least in the language in which it is kept in the usual course of business. This protocol does not affect translation of documents that may be produced in discovery.

R. **No Obligation to Convert Third Party Productions**. The parties agree that any document production received from a third party shall be produced in the format in which it was received.

S. **Rolling Productions.** The parties agree to produce documents on a rolling basis.

T. **Method of Production**. The parties agree that documents produced will be made available via secure file transfer. If a production is too large for secure file transfer, documents will be produced on a secure CD/DVD, thumb drive, hard drive or similar media.

V. **SOURCES, CUSTODIANS, AND METHODS OF SEARCHING FOR ESI**

A. The parties agree that by June 14, 2022, each party will provide a list of: (1) its custodians to be searched for responsive ESI; (2) its non-custodial data sources that are likely to contain non-duplicative discoverable information for production consideration; and (3) proposed search terms for the opposing party to run after the data has been collected and loaded to an e-discovery management tool (such as Relativity).

B. The parties agree to meet and confer by June 14, 2022, if necessary, to finalize custodian lists and search terms and determine the appropriate phasing of production, by prioritizing sources and custodians of ESI for early production.

C. The parties agree to be bound by the following standards:

1. Each requesting party shall limit its custodian-based production requests (which includes both personal ESI and email) to a total of no more than ten (10) custodians.

2. Absent a showing of good cause, each party shall be limited to no more than twenty-

five (25) search strings, to be run after the data has been collected and loaded to an e-discovery management tool (such as Relativity), to generate the universe of documents that will be reviewed for possible production.

3. The parties may jointly agree to modify the name and number of custodians without the Court's leave, and to the extent that either party amends its pleadings to add claims and/or defenses, or has a good faith and well-founded belief that critical relevant discovery exists only in the possession of specific custodian beyond the initial list of ten, the parties agree to meet and confer regarding whether documents may be collected from additional and reserve all rights to seek judicial relief, if necessary..

4. The parties may jointly agree to modify the search terms without the Court's leave.

## VI. SCOPE OF AGREEMENT

This Order may be modified by a Stipulated Order of the parties, by agreement, or by the Court for good cause shown. Nothing in this Order is intended to, nor does, waive any objections to discovery or admissibility, or any other privileges or immunities or, except as specifically provided herein, impose obligations different than those contained in the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence. The parties recognize that additional issues or unforeseen circumstances may arise in the course of discovery, and nothing in this Order is intended to, nor does, restrict the ability of any party to request additional information or seek additional relief from the Court. The parties each retain the right to seek exceptions, amendments, or modifications to this Order from the Court.

**SO STIPULATED.**

Dated:  June 29, 2022

| | |
|---|---|
| */s/ Tamar Y. Duvdevani* | */s/ Megan K. Bannigan* |
| Tamar Y. Duvdevani | Megan K. Bannigan |
| Marc E. Miller | David H. Bernstein |
| Andrew J. Peck | Jyotin Hamid |
| Jared Greenfield | Justin Ferrone |
| **DLA Piper LLP (US)** | Kathryn C. Saba |
| 1251 Avenue of The Americas, 27th Fl. | **Debevoise & Plimpton LLP** |
| New York, NY 10020 | 919 Third Avenue |
| Telephone: (212) 335-4500 | New York, New York, 10022 |
| Facsimile: (212) 335-4501 | Telephone: (212) 909-6000 |
| | |
| Michael Fluhr | Christopher S. Ford |
| **DLA Piper LLP (US)** | **Debevoise & Plimpton LLP** |
| 555 Mission Street, Suite 2400 | 650 California Street |
| San Francisco, CA 94105 | San Francisco, CA 94108 |
| Telephone: (415) 836-2500 | Telephone: (415) 738-5705 |
| Facsimile: (415) 836-2501 | |
| | David Mayberry |
| *Attorneys for Plaintiff Nike, Inc.* | Rob Potter |
| | **Kilpatrick Townsend & Stockton LLP** |
| | 1114 Avenue of the Americas |
| | New York, New York 10036 |
| | Telephone: (212) 775-8733 |
| | |
| | Jeffrey B. Morganroth |
| | **Morganroth & Morganroth, PLLC** |
| | 344 N. Old Woodward Ave, #200 |
| | Birmingham, MI 48075 |
| | Telephone: (248) 864-4001 |
| | |
| | *Attorneys for Defendant StockX LLC* |

**PURSUANT TO STIPULATION, IT IS SO ORDERED**.

Dated:  _____        _____
                                              U.S. District Court Judge

# EXHIBIT A:  Specifications for Production of ESI

**Production Folders**
- Production folders should be delivered as shown below and restricted to 1,000 files per subfolder.
    - DATA
    - IMAGES
    - NATIVES
    - TEXT

**Required Metadata and Database Fields**
- Metadata load file should be encoded in Unicode (UTF-8) and provided in Concordance .DAT format.

| Value | Character | ASCII Number |
|---|---|---|
| Column | ¶ | 20 |
| Quote | þ | 254 |
| Newline | ® | 174 |
| Multi-Value (Do not follow with space) | ; | 59 |
| Nested Value | \ | 92 |

- The first row of each metadata load file should contain the field names listed in the attached table of preferred metadata fields OR as specified by party agreement (such as an ESI order) or agency specifications. All requested fields should be present in the metadata load file regardless of whether data exists. Field order should remain consistent in subsequent productions.
- Date & Time format should be MM/DD/YYYY  HH:MM  (06/30/2009 13:30), unless otherwise specified to be provided as separate fields. If date and time fields are to be provided separately, date format should be MM/DD/YYYY and time format should be HH:MM.
- All attachments should sequentially follow the parent document/email.

**Images**
- Images should be provided for all documents that can be imaged.
- Format should be black-and-white Group IV single-page TIFFs (300 DPI, 1 bit).
- Single-page images should be provided with an Opticon Image load file (.OPT).
- If color images are required, they should be provided in single-page .JPG format.
- When a file is provided natively, an image (TIFF) placeholder (or slipsheet) should be supplied in the appropriate IMAGES folder and should contain the BEGDOC number, Confidentiality Designation and "File Provided Natively."
- Image file names should match the page identifier for that specific image and end with the appropriate extension.
- File names cannot have embedded spaces, commas, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention (,& \ / # + % ! : * ? " < > | ~ @ ^).

**Native Documents**
- Spreadsheets (e.g., excel, google sheets, OpenOffice, CSV, TSV, etc.) and other files that cannot be converted to TIFF, such as media files (AVI, MOV, MP4, MP3), should be provided natively.
- Native files should be named for the BEGDOC number for that specific file followed by an underscore and then the Confidentiality Designation and appropriate file extension. (e.g., ABC00000001_Confidential.xls).
- Native files should be accompanied by a TIFF placeholder as described above.

**Text**
- Text should be provided for each file in separate text file (.txt) with document level text and a relative link to the file in the DAT.  DO NOT place extracted text or OCR in the DAT file.

- Text files should be named for the BEGDOC number for that specific file.
- All records should have a text file even if the file has no text.
- All text should be processed and delivered in Unicode (UTF-8).  If any other text encoding is present in the deliverable, please let the receiving party know at the time of delivery.
- Text files for redacted documents should be the OCR text of the document as redacted.

## Preferred Metadata Fields

| CATEGORY | FIELD NAME | FIELD DESCRIPTION |
|---|---|---|
| *All* | BEGDOC | Starting number of a document; aka BegDoc, BeginDoc |
| | ENDDOC | Ending number of a document; aka EndDoc, EndingDoc |
| | BEGATTACH | Starting number for parent document within a group; aka BegAttach |
| | ENDATTACH | Ending number for child document within the group; aka EndAttach |
| | CUSTODIAN | Custodian(s) / source(s); Last, First |
| | ALL CUSTODIANS | Custodian(s) information for original and de-duplicated file(s); Last, First |
| | SOURCE/ORIGINAL FILEPATH | File path indicating the original location of the document |
| | ALL SOURCES/FILEPATHS | Path information for original and de-duplicated file(s) |
| | CONFIDENTIALITY | Confidentiality designation of a document |
| | FILEEXTENSION | Actual file extension of the eDoc or email; aka Extension |
| | MD5HASH | Identifying value of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm |
| | PARENTID | Document ID of the parent document; this field will only be available on child items |
| | CHILDID | Attachment document IDs of all child items in family group delimited by semicolon; this field will only be present on parent items; aka AttachmentDocID |
| | NATIVELINK | Path to native files if natives are delivered |
| | TEXTLINK | Path to text files |
| *Email* | FROM | Sender of the email; aka SentFrom, SenderNames |
| | TO | Recipient(s) of the email; aka SentTo, RecipientNames |
| | CC | Recipient(s) of the email in the "CC" field; aka CCRecipientNames |
| | BCC | Recipient(s) of the email in the "BCC" field; aka BCCRecipientNames |
| | SUBJECT EMAIL | Subject of the message |
| | SENTDATE (DATE & TIME) | Date and time the email was sent |
| | DATERECEIVED (DATE & TIME) | Date and time the email message was received |
| | ATTACHMENTCOUNT | Number of attachments an email has |
| | MESSAGE TYPE | Outlook bound property indicating type of entry in store; aka MsgClass. Possible values include Appointment, Contact, Distribution List, Delivery Report, Message, or Task |
| | MESSAGEID | Message number created by an email application and extracted from the email's metadata; aka int_msgID |
| *E-Doc* | FILENAME | Name of the original file; aka Filename, Original Filename, Name |
| | AUTHOR | Author of the eDoc; Last, First |
| | DATE CREATED (DATE & TIME) | Date the eDoc was created; aka CreationDate, HeaderCreatedDateTime |
| | DATE LAST MODIFIED (DATE & TIME) | Date & Time the eDoc was last modified; aka ModifiedDate, ModificationDate, HeaderModifiedDateTime |