

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

September 12, 2022
*VIA ECF*

The Honorable Valerie Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

**Re:** *Nike, Inc. v. StockX LLC*, Case No. 1:22-cv-00983-VEC (S.D.N.Y.)

**Dear Judge Caproni:**

Pursuant to the parties' September 7, 2022 call to Chambers requesting a discovery dispute conference with the Court, plaintiff Nike, Inc. ("Nike") respectfully submits this letter motion to compel defendant StockX LLC's ("StockX") to produce highly relevant information responsive to certain Nike discovery requests that seek StockX's Form S-1 Registration Statement, communications with investors, and documents related thereto.

## I. Background of this Discovery Dispute

This Lanham Act action arises from StockX's: (1) infringing and dilutive use of Nike's marks in connection with minting and sale of Nike-branded NFTs; (2) sale of counterfeit "Nike" goods purportedly verified by StockX as authentic; and (3) knowing deception of consumers with advertising claims about the verified authenticity of the goods sold on its platform despite Nike's ongoing discovery of StockX's sales of counterfeit goods.

On April 19, 2022, Nike served the following requests (the "RFPs"):

- **No. 146**: "All Documents and Communications concerning Your planned initial public offering that mention or refer to Accused Products, including without limitation memoranda, pitch decks, and roadshow materials."
- **No. 147**: "All Documents and Communications concerning Your Form S-1 filing, including without limitation the final as-submitted version of Your Form S-1 and drafts thereof."
- **No. 148**: "All Documents and Communications concerning any references to Accused Products in Your Form S-1."
- **No. 149**: "All Documents and Communications concerning any references to this Action in Your Form S-1."

StockX objected to the RFPs wholesale and refused to produce any documents "on the grounds that any StockX plans for an initial public offering (and relatedly, any S-1 filing) are not relevant to the claims and defenses and this Request is therefore, overly broad, unduly burdensome, and disproportionate to the needs of this case."

The parties exchanged correspondence concerning StockX's objections on May 31 and June 9, met and conferred on June 13, exchanged further correspondence on June 14 and 15, and met and conferred again on June 29.  During the meet and confer process, StockX would only agree to produce the responsive documents (including its Form S-1) by redacting all information that did not relate to the infringing NFTs.  While Nike firmly disagreed that responsiveness redactions were proper given this Circuit's general rule against such redactions, in an effort to compromise and move discovery forward, Nike reserved its rights to object to the redactions and renew its request that StockX produce responsive documents in unredacted form upon receipt.

StockX produced documents on July 8, 14, and 29, but none were responsive to the RFPs.  So, on August 9, Nike requested in writing that StockX produce responsive documents, including the Form S-1, in unredacted form.  Nike explained that time had run out to negotiate about redactions, given the August 31 document production deadline and October 15 fact discovery deadline.  Nike further explained that these documents very likely contain information relevant to Nike's counterfeiting and false advertising claims, not just the claims related to the infringing NFTs.  Nike also suggested that should StockX have confidentiality concerns it could designate the documents as "Highly-Confidential Outside Counsel Eyes Only" under the Stipulated Protective Order.  On August 16, StockX refused, stating it would only produce responsive documents in redacted form.

StockX produced thousands of additional documents on August 18 and 26, but still none responsive to the RFPs.  On August 30, Nike again requested that StockX produce the responsive documents, including the Form S-1, in unredacted form.  StockX again refused and stated, for the first time, that it would produce just *two* documents responsive to the RFPs, both in redacted form.

StockX produced thousands of additional documents on August 31, including two heavily redacted "Shareholder Letters," but it did *not* produce the Form S-1 or any other documents or communications responsive to the RFPs.[1]  StockX's redactions to these two documents are so extensive as to render them devoid of context and meaning.  For example, in the twenty-page Q2 2021 Shareholder Letter (STX0190727), StockX redacted all but three sentences of text.

The parties exchanged further correspondence between August 31 and September 6 regarding StockX's improper redactions and withholding of the Form S-1 and other documents or communications responsive to the RFPs.  StockX did not withdraw the redactions to the two shareholder letters or produce the Form S-1 or any other documents.  This letter motion follows.

II.     **StockX Should Be Compelled to Produce Documents Responsive to the RFPs**

   A.     **The Unredacted Shareholder Letters Are Relevant to Nike's Claims**

The two redacted shareholder letters indisputably contain information relevant to Nike's NFT-related claims.  But these documents also contain information relevant to Nike's other claims, which StockX has redacted for responsiveness.  Nike knows this for two reasons.  First, StockX widely promotes its authentication processes as a key market differentiator, and its related advertising claims reach every sale made on its platform.  These letters must include information relevant to StockX authentication and its impact on the business.  Second, StockX produced slides

---

[1] StockX designated the shareholder letters as confidential under the Protective Order.  Should the Court wish to review the redacted shareholder letters Nike can submit them directly to Chambers, although it likely makes more sense for StockX to submit to the Court the unredacted versions for *in camera* review.

from its marketing department (STX0088152), which include an unredacted excerpt from the Q2 2021 Shareholder Letter (STX0190727). This excerpt definitively shows that StockX redacted revenue and adjusted EBITDA figures, and discussions about how sales of Nike-branded products drive StockX revenues; topics highly relevant to Nike's request for profits disgorgement.

"In this Circuit, the weight of authority goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy." *Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 2022 WL 621957, at *2 (S.D.N.Y. Mar. 3, 2022) (citations and quotes omitted). "Similarly, unilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed, particularly where a protective order is in place allowing the parties to designate that information 'confidential' and restrict its use." *Id*. StockX has not established good cause for its unilateral redaction of these admittedly responsive and relevant documents, especially given the Court's Stipulated Protective Order. The Court should thus order StockX to remove all redactions applied for reasons other than privilege to these documents and re-produce them in unredacted form.

## B. The Form S-1 and Related Documents Are Relevant to Nike's Claims

The RFPs seek StockX's Form S-1 and other documents concerning StockX's planned IPO that mention or refer to the Vault NFTs. A Form S-1 requires companies to clearly describe important information about its business operations, financial condition, results of operations, risk factors, and management—and it must include audited financial statements. Any statements StockX has made to investors concerning its Vault NFT program are relevant to liability and damages here, including StockX's intent and affirmative defenses. The Form S-1 also likely contains other relevant information concerning StockX's target consumers, channels of trade, channels of marketing, future plans for its Vault NFT program, revenues, costs, and profits.

Statements that StockX made to investors concerning its authentication process and its corresponding advertising claims are also highly relevant to Nike's counterfeiting and false advertising claims.[2] As noted above, StockX touts its "proprietary" authentication processes as a market differentiator and a core value proposition to consumers. What has StockX said to investors about these topics? These are discoverable facts that StockX may not withhold.

StockX's statements to investors about the sale of counterfeit goods on its platform are also highly relevant. Between December 2021 and January 2022, Nike purchased from StockX at least 4 confirmed counterfeit "Nike" goods bearing a StockX "Verified Authentic" tag. Nike has since discovered that StockX has sold dozens more fake "Nike" shoes to consumers this year alone. Has StockX disclosed these facts to investors or is it touting a flawed system of guaranteed authenticity? Has it substantiated that rate? These are material facts that bear on StockX's knowledge and intent and are thus relevant to Nike's claim for willful counterfeiting.

Accordingly, Nike respectfully requests that the Court order StockX to produce the Form S-1 and all other documents responsive to Nike's Request for Production Nos. 146-149.

---

[2] The Form S-1 and related documents are responsive to later Nike discovery, such as Request No. 232 seeking "Documents sufficient to show StockX's business plans, prospectuses, offering memorandums, or other Documents and Communications concerning StockX's business, competitive advantages and/or disadvantages, and competitors."

Respectfully submitted,

*/s/ Tamar Y. Duvdevani*

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*


cc: Counsel of Record via ECF