

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

December 12, 2022

Hon. Sarah Netburn, United States Magistrate Judge
United States District Court for the Southern District of New York
40 Foley Square, Room 219
New York, New York 10007

***Nike, Inc. v. StockX LLC***, No. 22 CV 983 (VC) (SN)

Dear Judge Netburn:

      We represent Defendant StockX LLC ("StockX") in the above-captioned matter and write pursuant to the Court's December 9, 2022, Order (ECF No. 79), to describe discovery disputes that require the Court's intervention.[1]  Plaintiff Nike Inc. ("Nike") brought this case alleging that consumers sold counterfeit goods on StockX's secondary marketplace, yet has repeatedly refused to engage in discovery about Nike's failure to stop those very unauthorized products from reaching the market, and to protect its brand and consumers from counterfeiters.  While stonewalling to distract from its own conduct at every turn, Nike has sought to bury StockX in discovery requests – including its latest tactic of sending 427 requests for admission ("RFAs") that are duplicative, burdensome, and inappropriate.  Nike must be compelled to engage equally in discovery, and barred from using RFAs as a discovery device.

**I.     Nike Has Refused to Produce Relevant Documents and 30(b)(6) Testimony.**

      **a.   *Nike Must Produce Documents Relating to the Products It Alleges Were Counterfeited (RFP No. 87; 30(b)(6) Topic Nos. 20-21).***

      Nike has impermissibly refused to produce discovery relevant to the specifications, design details, and quality control standards for the products it alleges were counterfeited.  Discovery has revealed that ███████████████████████████████, and such inspections are a commonplace part of the counterfeiting analysis in this District.  *See, e.g.*, *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 488 (S.D.N.Y. 2012) (evaluating whether product was genuine or counterfeit by looking to whether the plaintiff had pointed to indicia like specific visual markings "not found in a non-counterfeit product").  StockX is entitled to discovery relating to the means Nike itself uses to identify counterfeit products.  Further, the extent to which the items Nike alleges were counterfeit deviated from Nike's quality control standards (if at all) is highly relevant to Nike's claims that StockX has acted willfully in failing to identify those allegedly counterfeit products when they were sold by consumers on StockX's marketplace.

      **b.   *Nike Cannot Withhold Discovery Relevant to Its Counterfeiting Claims and Allegations of Willfulness (RFP Nos. 84-85, 88-90, 93-95, 98-100; 30(b)(6) Topic Nos. 24-27, 28-29, 31, 33).***

      Nike has claimed that it is entitled to tens of millions of dollars in damages on the theory that StockX willfully permitted the sale of counterfeit goods.  Yet Nike has refused to produce discovery

---

[1]  Two hard copy sets of the relevant discovery materials have been hand delivered to the Court.

The Hon. Sarah Netburn                          2                          December 12, 2022

relevant to industry practice and standards relating to counterfeiting, which would place StockX's conduct in the relevant context and shed light on whether StockX acted willfully. *See, e.g.*, *Cengage Learning, Inc. v. Davis Textbooks*, No. 15 CV 2401 (TLN) (AC), 2016 WL 8730729, at *6 (E.D. Cal. Sept. 2, 2016) (compelling discovery of industry anti-counterfeiting standards as relevant to willfulness). Nike has also refused to produce discovery relevant to whether unauthorized Nike goods (which are not counterfeits) are present in the market. *See Chanel, Inc. v. WGACA, LLC*, No. 18 CV 2253 (LLS), 2022 WL 902931, at *15, n. 9 (S.D.N.Y. 2022) (finding "a shoe which is made in the manufacturer's factory, and meets its specifications, but is unauthorized for sale, is . . . not a counterfeit.").

StockX is entitled to a complete evidentiary record as to the allegedly counterfeited products at issue in this case. If Nike failed to control its own factories' production of unauthorized goods, recognized that counterfeit products are difficult to identify with certainty, and expressed confidence in StockX as a reliable partner, any and all such information is relevant to Nike's willfulness allegations, particularly in light of StockX's extensive and well-documented anti-counterfeiting efforts.

### c. Nike Cannot Withhold Discovery Relevant to Its Unjust Enrichment Claim and Request for Disgorgement (RFP Nos. 54-56; 30(b)(6) Topic Nos. 15-16).

Nike has refused to produce documents or designate a 30(b)(6) witness concerning its revenues and profits, which are plainly relevant to Nike's claim for unjust enrichment and its request for disgorgement of profits. Unjust enrichment is "limited to situations in which the defendant's profits represent unjust enrichment derived from diversion of business that clearly would otherwise have gone to the plaintiff." *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984). Discovery has revealed that ███████████████████████████████████████████████████████████ and, according to deposition testimony from a Nike employee, ███████████████████████ ████████████████████. Discovery relating to Nike's estimated and actual revenues for the lines of business at issue in this case is accordingly relevant to whether StockX's activities in fact diverted any business from, or caused any actual harm to, Nike. Nike cannot seek damages from StockX while withholding its own documents that could rebut its litigation theories.

### d. Nike Cannot Withhold Discovery Relevant to Its Reputation (RFP Nos. 103-112).

Nike has refused to produce documents concerning Nike's historical failure to control "backdooring" and/or counterfeiting of its own sneakers, as well as its public association with an extensive number of individuals (*e.g.*, Lance Armstrong) or issues (*e.g.*, conditions for Nike's global employees) that have received public criticism. Yet Nike's pleading alleged that StockX has "exploit[ed] the immense goodwill and reputation that Nike has amassed through many years." Dkt. 39 ¶ 4.

Nike alleged "harm to reputation" and "tarnishment of its valuable brands," *Id.* ¶ 114, and brings claims for trademark dilution and/or injury to business reputation under federal and state law. In doing so, Nike broadly alleged that its marks "have become universally associated in the public mind with Nike, its products and services, and *the very highest quality and reputation*." *Id.* ¶ 124 (emphasis added). To test whether Nike's allegations are accurate, and whether StockX has in fact "harmed" Nike's "reputation," StockX is entitled to discovery into what that reputation is. In refusing entirely to comply with any of these RFPs, Nike is inappropriately attempting to create a one-sided record by withholding evidence of the negative aspects and attributes of its brand, marks, and reputation. But such information is plainly relevant to Nike's claims. *See, e.g.*, *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 111 (2d Cir. 2009) (observing in the tarnishment context that "the similarity between Charbucks and Starbucks in that they are both '[v]ery high quality' coffees may be relevant in determining dilution");

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 422–23 (S.D.N.Y. 2002) (holding that "the *sina qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use," and finding no dilution where there was "no evidence on whether there is a disparity in quality between" the parties' products).

Although StockX attempted during the meet and confer process to compromise on the scope of these RFPs, by requesting only that Nike conduct a reasonably diligent search in connection with the specific issues StockX identified in its Requests, Nike nonetheless categorically refused to comply with any of these RFPs, and must be compelled to respond.[2]

> e. **Nike Cannot Withhold Discovery Relating to Other Third-Party Marketplaces (RFP Nos. 113-115).**

Nike's false advertising claim puts at issue consumers' perception of StockX's claims about its secondary marketplace, and Nike accordingly cannot refuse to produce discovery relating to its awareness of, and reaction to, related or identical claims made by other secondary marketplaces. Whether StockX's claims are "misleading" depends on the "commercial context" of those claims – *i.e.*, the prevalence and consumer perceptions of similar claims made by third parties. *See Johnson & Johnson Merck Consumer Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2d Cir. 1992). Nike's response (or lack thereof) to other third-party resellers' claims (like "100% authentic" or "guaranteed authentic") in connection with Nike products is plainly relevant to consumers' understanding of StockX's claims. Similarly, if Nike was not harmed by (or even concerned about harm from) other resellers making similar claims, that evidence is relevant to whether StockX's actions have caused any harm to Nike.

> f. **Nike Cannot Withhold Discovery Relevant to Digital Sneaker Products (30(b)(6) Topic Nos. 2-6, 14-15, 17-18).**

Nike has inappropriately refused to produce discovery relating to digital sneaker products not linked to NFTs, despite repeatedly arguing that digital goods relating to, or portraying, sneakers are at the core of its allegations in this case. Nike's attempt to narrowly cabin discovery about digital sneaker products to one type of technology cannot be squared with its own arguments, and must be rejected.

## II. Nike Has Failed to Meet Its Discovery Obligations (RFP Nos. 6, 38, 40, 52, 62, 64-66, 74-75).

At the outset of the discovery process, Nike repeatedly represented to StockX that the five custodians it identified would suffice for all of StockX's requests. The course of discovery has demonstrated this was not the case, and Nike must be ordered to supplement its inadequate production.

> a. **Nike Has Failed to Produce Documents Relevant to Confusion (RFP Nos. 6, 74, 75).**

Nike's production of documents to date has failed to include documents sufficient to show *all* digital sneaker products Nike has sold; the current, historic, and recommended retail prices for those

---

[2] Nike further objected to producing documents earlier than January 2020. But the Federal Circuit, using "common-sense reasoning," has held that evidence "impact[ing] perceptions of the consuming public" dating back to "the last five years" is "most relevant" to the distinctiveness of a mark. *Converse, Inc. v. Skechers USA, Inc.*, 909 F.3d 1110, 1121 (Fed. Cir. 2018). Accordingly, Nike should be ordered to produce documents from at least January 2018 to the present.

products; and all channels of trade for those products. It is simply impossible to believe that Nike does not have documents relating to each of the digital sneaker products it has sold. This information is plainly relevant to assessing the proximity of the trademarks and the likelihood of confusion. *See O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 522 (S.D.N.Y. 2008). While StockX attempted to uncover this information via depositions, Nike's 30(b)(6) witnesses ███████████ ██████████████████████████████████████████.

Nike has also failed to produce consumer complaints regarding relevant Nike products. Deposition testimony ██████████████████████████, but Nike's 30(b)(6) witness was █████ ██████████████████████████████████████, making document production necessary.

  b. **Nike Has Failed to Produce Documents Relevant to** ██████████████ ██████████████ **(RFP Nos. 38, 40, and 62).**

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

  c. ***Nike Cannot Refuse to Produce Documentation of the Chain of Custody and Its Own Examination of the Alleged Counterfeits (RFP Nos. 64-66).***

Nike's production to date does not contain documents that establish the chain of custody for the allegedly counterfeited products in this case. Nike has failed to locate and produce any documents that identify the persons who collected the information on which Nike bases its belief that the Alleged Counterfeits are not genuine (RFP No. 65); their employment roles (RFP No. 66); as well as the dates on which Nike determined the products in question were allegedly counterfeit (RFP No. 64). StockX cannot defend against Nike's counterfeiting allegations without a complete evidentiary record.

  d. ***Nike Has Failed to Produce Documents Relevant to Its Anticounterfeiting Efforts (RFP No. 43)***

To date, Nike has produced only a handful of documents relating to anti-counterfeiting efforts concerning third parties, and claims that those documents demonstrate the entirety of its response to the sale of counterfeit Nike goods on third-party websites, marketplaces, or platforms. Yet publicly available articles suggest that Nike recently terminated a relationship with Amazon because Nike could not meaningfully curb counterfeiting on that site – a topic nowhere mentioned in Nike's production to date.[3]

**III. Nike Cannot Redact "Commercially Sensitive Information" from Responsive Documents.**

Nike has inappropriately redacted two documents for responsiveness (NIKE0039801 and NIKE0040131) based on Nike's assertion that these redactions hide "commercially sensitive

---

[3] *See* Jason Del Rey, *Nike's breakup with Amazon is a lose-lose situation for everyone — including you*, Vox (Nov. 14, 2019), https://www.vox.com/recode/2019/11/14/20965434/nike-amazon-partnership-deal-breakup-counterfeits.

information." The Court has entered a Protective Order that permits Nike to designate "commercially sensitive information" as attorney's eyes only – or even outside counsel's eyes only. Nike's responsiveness redactions are inappropriate given this three-tiered protective order, and it must produce unredacted versions of these two documents. *See Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, 20-CV-5015 (VEC) (BCM), 2022 WL 621957, at *2 (S.D.N.Y. Mar. 3, 2022).

### IV. Nike's 427 RFAs Are Unreasonably Burdensome and Should Be Quashed.

The 427 RFAs in Nike's Second Set of Requests impose an unreasonable and unnecessary burden on StockX. Rather than simply seek to authenticate documents, as Rule 36 permits, the vast majority of Nike's RFAs set forth a series of repetitive questions that go beyond the documents and seek discovery into underlying issues. *Cf. T. Rowe Price Small-Cap Fund v. Oppenheimer & Co.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) ("Rule 36 is not a discovery device."). In addition to 74 requests asking StockX to authenticate StockX emails produced by third parties, Nike includes an additional four requests for each of those 74 documents, which improperly seek further substantive admissions from StockX as to "the content and interpretation—rather than genuineness—of documents." *BAT LLC v. TD Bank, N.A.*, 15 CV 5839 (RRM) (CLP), 2018 WL 3626428, at *6 (E.D.N.Y. July 30, 2018) (granting protective order). Unless Nike's RFAs are intentionally duplicative, Nike must be asking substantive questions about what third parties saw or understood from the documents (none of which were produced by StockX itself), or is seeking discovery that Nike failed to obtain via proper discovery devices. That is not a proper use of RFAs. *See BAT LLC*, 2018 WL 3626428, at *6 (granting protective order against 157 "intentionally overreaching discovery requests" that were "repetitive, confusing, of dubious utility and, most importantly, incredibly burdensome"). StockX is willing to respond to a reasonable number of properly formed RFAs that, for example, seek to establish that documents are genuine, but should not be required to sort through hundreds of repetitive RFAs to determine which of Nike's RFAs are proper.

Additionally, dozens of Nike's RFAs are improper attempts to have StockX admit to on contested fact issues (like whether or not a particular product is genuine) for which Nike bears the burden of proof. Such requests are not an appropriate use of RFAs. *Republic of Turk. v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y. 2018) (holding that "the RFAs in dispute are not consonant with the purpose of Rule 36" because they "do not seek to establish admission of facts about which there is no real dispute" but "[r]ather, they seek information as to fundamental disagreement at the heart of the lawsuit"). The Court should accordingly grant StockX a protective order as to Nike's Second RFAs.

* * *

StockX deserves a full and fair opportunity to defend against Nike's claims based on a complete record. In addition to the disputes above, deposition testimony last week revealed further significant gaps in Nike's production of documents to date. While depositions are scheduled to resume early in the new year, StockX submits that an appropriate extension of the fact discovery schedule will be necessary to ensure that depositions take place after all relevant documents have been produced.

Respectfully submitted,

*/s/ Megan K. Bannigan*
Megan K. Bannigan
Christopher S. Ford

cc      All counsel of record (via ECF)