

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

December 19, 2022
*Via ECF*

The Honorable Sarah Netburn
United States District Court, SDNY
40 Foley Square, Room 219
New York, New York 10007

**Re:** *Nike, Inc. v. StockX LLC*, Case No. 1:22-cv-00983-VEC (S.D.N.Y.)

**Dear Judge Netburn:**

Nike, Inc. ("Nike") respectfully submits this letter pursuant to the Court's December 14, 2022 Order (Dkt. 85) to explain why StockX, LLC ("StockX") is not entitled to discovery concerning Nike's NFT-related or footwear-related revenues as sought in its Request for Production ("RFP") Nos. 54-56 and Rule 30(b)(6) Deposition Topic Nos. 15-16.

## Introduction

Because Nike will not seek monetary damages specifically in connection with its claims against StockX's unauthorized Nike-branded NFTs, Nike's revenues related to its own metaverse offerings are not relevant to any claims or defenses in this action. This is not to say that Nike cannot seek monetary damages in connection with its NFT claims, only that it has expressly chosen not to do so. Under the Lanham Act, for example, Nike is entitled to disgorge StockX's ill-gotten profits for the unauthorized infringing and dilutive Nike-branded NFTs. *See* 15 U.S.C. § 1117. And Nike would stand to gain by seeking a monetary recovery: far from the "claim-ticket" theory StockX has manufactured to avoid liability for trademark infringement, several of the accused Nike-branded NFTs sold for many thousands of dollars over the price of the supposedly linked physical shoe, then traded multiple times, and StockX earned revenue on each sale and subsequent trade. But Nike brought this action against StockX's unauthorized Nike-branded NFTs to stop StockX from selling its inferior goods and services and tarnishing Nike's famous marks in the emerging metaverse market, where unsuspecting consumers are likely to believe that those "investible digital assets" (as StockX called them) are authorized by Nike when they are not.

Nike accordingly seeks only injunctive relief in connection with its NFT claims, to remove StockX's infringing and dilutive Nike-branded NFTs from the marketplace and protect Nike's brands and its consumers from further irreparable harm. Because Nike does not seek monetary damages in connection with its NFT claims, Nike's own metaverse-related revenues are not relevant as a matter of law. StockX nonetheless attempts a fishing expedition into Nike's projected and annual revenues earned from its sale of virtual creations branded with Nike's trademarks. The law is clear that there is no relevance to this information outside of a damages demand, which does not exist here. As discussed further below, the Court should deny StockX's request to compel production of this information in response to RFP Nos. 54-56 and 30(b)(6) Topic No. 15.

With 30(b)(6) Topic 16, StockX is attempting another fishing expedition into Nike's projected and annual revenues earned from its sale of the specific Nike shoes (not NFTs) for which StockX has authenticated and sold counterfeit versions on its marketplace. Discovery has revealed that StockX has ███████████████████████████████████████████████████████████████████ This makes establishing Nike's actual damages and StockX's ill-gotten profits on the sales of these counterfeit goods exceedingly difficult to ascertain. In such cases, the Lanham Act provides that Nike may elect to pursue statutory damages for StockX's use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods. *See* 15 U.S.C. § 1117(c). Nike's revenues on its sales of any specific shoes are not relevant to Nike's pursuit of statutory damages for StockX's counterfeiting. As such, the Court should also deny StockX's request to compel production of this information.

## I. Nike's Asserted Causes of Action

Nike has asserted the following causes of action: (1st) trademark infringement under 15 U.S.C. § 1114 in connection with StockX's sale, distribution, and advertising of its Nike-branded Vault NFTs; (2nd) false designation of origin / unfair competition under 15 U.S.C. § 1125(a) in connection with StockX's sale, distribution, and advertising of its Nike-branded Vault NFTs; (3rd) trademark dilution under 15 U.S.C. § 1125(c) in connection with StockX's sale, distribution, and advertising of its Nike-branded Vault NFTs; (4th) injury to business reputation and dilution under New York's Anti-Dilution Statute, N.Y. GEN. BUS. LAW § 360-1, et seq. in connection with StockX's sale, distribution, and advertising of its Nike-branded Vault NFTs; (5th) common law trademark infringement and unfair competition in connection with StockX's sale, distribution, and advertising of its Nike-branded Vault NFTs; (6th) counterfeiting under 15 U.S.C. § 1114 in connection with StockX's acquisition, offer for sale, sale, and shipment directly to consumers shoes bearing counterfeits of Nike's registered trademarks; and (7th) false advertising under 15 U.S.C. § 1125(a)(1)(B) in connection with StockX's false and/or misleading claims that all Nike products sold on StockX's platform are "100% Verified Authentic" genuine Nike products when they are not. (Dkt. 39 at ¶¶ 122-175.) Yet, StockX represented to the Court in its December 12 letter (Dkt. 82 at 2) and at the December 14 conference, that "Nike brought an unjust enrichment claim against StockX as one of the claims in the First Amendment complaint." Dec. 14, 2022 Hr'g Electronic Sound Recording Tr. at p. 21. StockX is wrong on the facts. Nike does not assert a "claim for unjust enrichment."

As noted above, Nike seeks injunctive relief pursuant to 15 U.S.C. § 1116 and the relevant New York law in connection with its First through Fifth causes of action, and monetary and injunctive relief under 15 U.S.C. §§ 1116 and 1117 in connection with its Sixth and Seventh causes of action.

## II. StockX's RFP Nos. 54-56 and 30(b)(6) Topic No. 15

With these RFPs and this Topic, StockX seeks detailed financial data related to Nike's revenues from the sale of Nike NFTs branded with the asserted Nike trademarks:

- **Request No. 54:** Documents sufficient to show Nike's quarterly and annual (to the extent annual is available) projected net and gross revenues from the sale of NFTs and/or Digital Sneakers bearing the Asserted Marks for the years 2020 through 2023 (and any additional calendar years during which this litigation is pending).

- **Request No. 55:** Documents sufficient to show Nike's quarterly and annual (to the extent annual is available) actual net and gross revenues from the sale of NFTs and/or Digital Sneakers bearing the Asserted Marks for the years 2020 through 2022 (and any additional calendar years during which this litigation is pending).

- **Request No. 56:** Documents sufficient to show any analyses as to why Nike's projected net and gross revenues differed from actual net and gross revenues from the sale of NFTs and/or Digital Sneakers bearing the Asserted Marks, for the years 2020 through 2022 (and any additional calendar years during which this litigation is pending).

- **Topic No. 15:** Nike's projected and actual revenues from the sales of NFTs and Digital Sneakers bearing the Asserted Marks, and any analysis explaining differences between the projected and actual revenues.

Nike objected to these RFPs and Topic as, *inter alia*, neither relevant nor proportional to the case. In subsequent meet and confers, StockX initially argued to Nike only one basis that the requested revenue information was relevant: Nike's claims for damages. Once StockX was told that that damages are not part of the NFT portion of this case, however, StockX pivoted, and now supports its requests on the new and erroneous basis that Nike is asserting a "claim for unjust enrichment."[1] For support, StockX looks not to the operative First Amended Complaint, but rather focuses on one sentence in Nike's Rule 26(a)(1) Initial Disclosures, which states: "StockX has also been unjustly enriched and profited in an amount to be determined through discovery."

## III.     StockX's 30(b)(6) Topic No. 16

With this Topic, StockX seeks information relating to Nike's revenues for the Nike shoes for which StockX sold counterfeit versions. In other words, StockX claims that to defend itself, it needs to know what revenues Nike earned from the sale of, *e.g.*, genuine pairs of Jordan 1 Retro High OG Patent Bred shoes because Nike obtained two such counterfeits on the StockX platform:

- **Topic No. 16:** Nike's projected and actual revenues from the sales of Allegedly Counterfeited Products, and any analysis explaining differences between the projected and actual revenues.

Nike objected to this Topic as overly broad, unduly burdensome, not relevant, and not proportional to the needs of this case. There is no legal basis for StockX to discover this information because Nike's revenues on sales of its genuine products are not relevant to Nike's claims or StockX's defenses, including in connection with Nike's demand for statutory damages for StockX's use of

---

[1] During the parties' December 16, 2022 meet and confer on this issue, StockX also contended—for the first time—that Nike's revenues from its sale of Nike-branded virtual creations is relevant to Nike's false advertising claim. Nike's false advertising claim is directed to StockX's false and/or misleading claims that every good sold on its platform is "100% Guaranteed Authentic," not to its sale of Nike-branded NFTs. StockX sold consumers NFTs with Nike-branded imagery and several utilities, one of which was the right to redeem the physical Nike shoes from StockX. StockX's sale of these Nike-branded NFTs could be relevant to Nike's false advertising only to the extent that StockX falsely and/or misleadingly claimed to consumers that the physical Nike shoes held by StockX are "100% Guaranteed Authentic," when they are not. But Nike's revenues from its sale of Nike-branded virtual goods are not relevant to Nike's claims—or damages flowing therefrom—directed to StockX's false and/or misleading advertising claims regarding the authenticity of physical shoes sold on its marketplace.

counterfeit "Nike" marks. *See* 15 U.S.C. § 1117(c). StockX's position that Nike's revenues are relevant to a "claim for unjust enrichment" is wrong, as discussed further below. As such, the Court should also deny StockX's request to compel production of this information.

IV. **StockX's Request to Compel the Production of this Information Should be Denied**

As noted, StockX first contended that Nike's revenues from the sale of Nike NFTs branded with the asserted Nike trademarks are relevant and must be produced because they relate to Nike's damages claim. But, as discussed above, Nike seeks only injunctive relief in connection with its trademark infringement and dilution claims (its First, Second, Third, Fourth, and Fifth causes of action) directed to StockX's sale of Nike-branded NFTs. Because Nike does not seek monetary damages in connection with these claims, Nike's own metaverse-related revenues are not relevant as a matter of law. *See City of New York v. Blue Rage Inc.*, 2018 WL 2709203, at *4 (E.D.N.Y. June 5, 2018) (plaintiff's revenue irrelevant to plaintiff's trademark infringement damages claim where "Plaintiff has stated it is not relying on actual damages to support its damages claim").

After Nike advised StockX that it was pursuing only injunctive relief in connection with these claims, StockX drummed up an additional relevance argument, now pointing to a sentence in Nike's Rule 26(a)(1)(A)(iii) Initial Disclosures which states: "StockX has also been unjustly enriched and profited in an amount to be determined through discovery." As a threshold matter, StockX mischaracterizes this sentence in support of its erroneous contention that Nike is asserting a "claim for unjust enrichment," which is a distinct cause of action that does not appear in Nike's operative pleading.[2] But even if it were true that Nike asserted a claim for "unjust enrichment," its revenues on Nike-branded virtual creations would still not be relevant because Nike is not pursuing monetary relief in connection with its trademark infringement and dilution claims directed to StockX's sale of unauthorized Nike-branded NFTs.

In order to claim that Nike's revenue information is relevant, StockX promotes the myth that Nike is asserting an unjust enrichment claim because it then connects unjust enrichment to diversion of sales. (Dec. 14, 2022 Hr'g Electronic Sound Recording Tr. at p. 21.) For this argument, StockX relies on *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 777 (2d Cir. 1984), and contends that the profits disgorgement remedy is "limited to situations in which the defendant's profits represent unjust enrichment derived from the *diversion of business* that clearly would have gone to the plaintiff." (Dkt. 82 at 2) (emphasis added). This reading of *Burndy* is incorrect.

*Burndy* itself recognized that diverting sales from plaintiff is not the only manner in which a defendant may be unjustly enriched, finding that "[u]njust enrichment warranting an accounting exists ***when the defendant's sales were attributable to its infringing use*** of plaintiff's trademark and the burden of proving this connection is on the plaintiff." *Burndy*, 748 F.2d at 772 (internal quotations and citations omitted) (emphasis added). Indeed, courts in the Second Circuit routinely order profits disgorged where defendant was unjustly enriched due to its infringement or its false advertising, not because it diverted sales from plaintiff. *See e.g., W. E. Bassett Co. v. Revlon, Inc.,*

---

[2] StockX also mistakenly claims that this sentence discusses Nike's trademark infringement and dilution claims directed to StockX's sale of Nike-branded NFTs and its counterfeiting claim directed to StockX's sale of fake "Nike" shoes. StockX is wrong. This sentence relates to Nike's pursuit of monetary relief under 15 U.S.C. § 1117(a) in connection with its false advertising claim (its Seventh Cause of Action)—a separate claim that is also not directed to StockX's sale of Nike-branded NFTs.

4

435 F.2d 656, 664 (2d Cir. 1970) ("Revlon would be unjustly enriched here if its sales of the 'Cuti-Trim' implements were attributable to its infringing use of Bassett's name."); *Cartier, Inc. v. Four Star Jewelry Creations, Inc.,* 348 F. Supp. 2d 217, 253 (S.D.N.Y. 2004) (ordering an accounting of profits and finding "Defendants have been unjustly enriched by any profit they have gained from their infringing use."); *Juicy Couture, Inc. v. L'Oreal, USA, Inc.*, 2006 WL 559675, at *1 (S.D.N.Y. Mar. 7, 2006) ("An accounting for unjust enrichment profits is available even when the parties do not directly compete…since an infringer is required in equity to yield up his gains to the true owner of a mark"); *Century 21 Real Est., LLC v. Raritan Bay Realty*, Ltd., 2008 WL 4190955, at *8 (E.D.N.Y. Sept. 3, 2008) (recommending "that the court award [plaintiff] Lanham Act damages based solely on the defendants' ill-gained profits" even where plaintiff failed to show actual damage"); *Malletier v. Artex Creative Int'l Corp.,* 687 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (awarding the plaintiff profits from sale of infringing products where plaintiff "has presented no evidence of lost profits as a result of defendants' counterfeit sales.").[3]

Moreover, in the Second Circuit, "[i]n determining whether to award an infringer's profits as part of a recovery, a court must balance equitable factors including, but not limited to: '(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating the infringement; (4) any delay by the plaintiff; and (5) plaintiff's clean (or unclean) hands.'" *Romag Fasteners, Inc. v. Fossil, Inc.*, 2021 WL 1700695, at *2 (D. Conn. Apr. 29, 2021) (quoting *4 Pillar Dynasty LLC v. Ney York & Co.*, 933 F.3d 202, 214 (2d Cir. 2019))). Diversion of sales is **not** among the equitable factors that courts in this Circuit consider in determining whether to disgorge defendant's profits under an unjust enrichment rationale or any other rationale for that matter.

With regard to Topic No. 16, StockX has not been forthcoming with its position as to why Nike's revenues for sales of genuine Nike shoes for which StockX sold counterfeit versions are relevant here. Regardless of StockX's failure to articulate a cogent argument, Nike seeks only statutory damages, under 15 U.S.C. § 1117(c), for StockX's sale of counterfeit "Nike" shoes. As such, Nike's revenues for sales of its genuine shoes are not relevant to Nike's counterfeiting claim and its statutory damages remedy nor StockX's defenses thereto.

In sum, because Nike has elected to only seek injunctive relief against StockX's Vault NFT offerings, StockX's RFP No. 54-56 and Topic No. 15 relating to Nike's NFT revenues are not relevant to this case in any way. And because Nike seeks statutory damages for StockX's sale of counterfeit Nike goods, StockX's Topic No. 16 relating to Nike's revenues on sales of specific genuine shoes are also not relevant to any claim or defense in this case. Nike thus respectfully submits that the Court should deny StockX's request to compel production of this information.

---

[3] In this case, Nike is pursuing monetary damages for its false advertising claim, including disgorging StockX's ill-gotten profits that are attributable to its false and/or misleading claims. To the extent that Nike's disgorgement remedy is supported by an unjust enrichment rationale, Nike's position is that StockX's profits represent unjust enrichment derived from its false and/or misleading claim that all Nike goods sold on its platform are "100% Guaranteed Authentic," when it knows that is not true. Diversion of sales is **not** relevant to this rationale either.

Respectfully submitted,

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*

cc: Counsel of Record via ECF