

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

VIA ECF

December 19, 2022

Hon. Sarah Netburn, United States Magistrate Judge
United States District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

### *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VEC) (SN)

Dear Judge Netburn:

We represent Defendant StockX LLC ("StockX") in the above-captioned matter and write pursuant to the Court's December 15, 2022, Order (ECF No. 85), in further support of StockX's request that Plaintiff Nike Inc. ("Nike") be compelled to produce documents and corporate witness testimony relevant to Nike's claim for damages based on its theory that StockX has been unjustly enriched. The parties met and conferred on this issue on December 16, 2022, by audio conference, but were unable to reach a resolution.

Nike's operative First Amended Complaint seeks disgorgement of StockX's profits as a remedy for Nike's false advertising claim. *See* ECF No. 39, First Am. Compl., at pp. 70–71. And the First Amended Complaint makes clear that Nike's false advertising claim relates to *both* Vault NFT sales *and* the sales of other Nike goods on StockX's marketplace. *See, e.g.*, *id.* at ¶ 172 ("In its pervasive advertising and marketing, StockX explicitly claims and guarantees that every item it sells—*including those items purportedly associated with the Vault NFTs*—has been independently verified by StockX as '100% Verified Authentic' through its 'proprietary' process." (emphasis added)).

In this Circuit, there are three bases upon which a plaintiff may seek disgorgement of profits: unjust enrichment, actual damages, or deterrence. *See George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) ("The rule in this circuit has been that an accounting for profits is normally available 'only if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary to deter a willful infringer from doing so again.'") (quoting *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 772 (2d Cir. 1984)).

Nike has explicitly chosen to seek disgorgement based on an unjust enrichment theory. In Nike's operative Third Amended Initial Disclosures, when required to explain its computation of damages pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii), Nike explained that it was seeking its false advertising disgorgement remedy based on an unjust enrichment theory, stating that "*StockX has also been unjustly enriched* and profited in an amount to be determined through discovery." Plaintiff Nike Inc.'s Third Amended Initial Disclosures (Nov. 1, 2022) (emphasis added). Far from a recent theory of StockX's creation, this

language explicitly invoking unjust enrichment as Nike's basis to claim damages from StockX has been present in Nike's initial disclosures since August 2022. *See* Plaintiff Nike Inc.'s First Amended Initial Disclosures (Aug. 24, 2022) ("StockX has also been unjustly enriched and profited in an amount to be determined through discovery.").

StockX expects to show that Nike's false advertising claim is meritless, but nevertheless is entitled to a full and fair opportunity during discovery to learn the facts relevant to Nike's damages theory. Nike argued during the meet-and-confer process that it is not obligated to establish unjust enrichment to be entitled to disgorgement, but that is irrelevant: Nike chose to articulate unjust enrichment as its damages theory in its initial disclosures, and cannot feign surprise when asked to produce evidence relevant to that theory.

Nike cannot have it both ways, asserting a claim for unjust enrichment damages "in an amount to be determined through discovery"—and then refusing to provide discovery relevant to that very theory. Nor can Nike avoid discovery on the theory that the relevant evidence would come from StockX. The Second Circuit and courts in this District have made clear that *a plaintiff must produce* evidence to establish that its sales were diverted to a defendant in order to establish an entitlement to an unjust enrichment remedy. Thus, in order to evaluate Nike's unjust enrichment theory, the trier of fact will need to determine whether StockX diverted business from Nike. *Burndy Corp.*, 748 F.2d at 772 (unjust enrichment "appears to have been limited to situations in which the defendant's profits represent unjust enrichment *derived from diversion of business that clearly would otherwise have gone to the plaintiff* . . . ." (emphasis added)).

Following *Burndy*, courts in this District have held that, to recover under the Lanham Act based on a theory of unjust enrichment "a plaintiff ***must*** produce evidence which indicates that *its own sales were diverted* as a result of the infringement." *Life Indus. Corp. v. Ocean Bio-Chem, Inc.*, 827 F. Supp. 926, 933 (S.D.N.Y. 1993) (citing *George Basch Co.*, 968 F.2d at 1540–41; *Burndy Corp.*, 748 F.2d at 773) (emphasis added). Whether or not Nike's revenues were affected by StockX's actions will assist the trier of fact in determining whether StockX diverted sales from Nike, which is the core question raised by Nike's unjust enrichment theory. Courts have made clear that the absence of evidence that a plaintiff's sales were diminished because of a defendant's actions can be highly relevant – even dispositive – of a claim for damages based on unjust enrichment. *See, e.g.*, *7-Eleven, Inc. v. Z-Eleven Convenience Store, Inc.*, No. 16 CV 4116, 2018 WL 1521859, at *3 (E.D.N.Y. Jan. 17, 2018), *report and recommendation adopted*, 2018 WL 1466799 (E.D.N.Y. Mar. 26, 2018) (declining to find unjust enrichment in Lanham Act case where the plaintiff's evidence did "not assert that [defendant] siphoned any sales away from [plaintiff]," because "unjust enrichment can only exist if a defendant diverted sales from the plaintiff") (emphasis added); *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 136, 142 (S.D.N.Y. 2000) ("The record does not contain sufficient evidence to support the jury's award of [defendant's] profits to [the plaintiff] under the unjust enrichment rationale, because [the plaintiff] failed to produce any evidence of lost sales.").

Nike must therefore provide documents and testimony relevant to whether its revenues were adversely affected by StockX's activities, which evidence will allow StockX,

and ultimately the trier of fact, to evaluate whether revenue was diverted from Nike to StockX. StockX has sought from Nike documents and testimony regarding Nike's projected and actual revenues relating to its digital goods business and its primary sales of sneakers. Both categories of information are relevant to Nike's false advertising claim. In particular, StockX has sought, and Nike has categorically refused to provide:

- Documents sufficient to show Nike's projected and actual revenues from the sales of NFTs or digital sneakers bearing the trademarks at issue in this litigation from 2020 to 2022 (StockX RFP Nos. 54 and 55);

- Documents sufficient to show any analyses as to why Nike's projected revenues from the sales of NFTs or digital sneakers differed from actual revenues (StockX RFP No. 56);

- Testimony from Nike regarding Nike's projected and actual revenues from the sales of NFTs, digital sneakers, and any sneakers that are the subject of Nike's counterfeiting allegations, as well as any analysis Nike has done to explain the difference between its projected and actual revenues (StockX's 30(b)(6) deposition notice to Nike Inc., topic nos. 15 and 16).

Although Nike attempted to argue at the parties' meet-and-confer that evidence of Nike's projected and actual revenues for NFTs and digital sneakers was not relevant because Nike is not seeking disgorgement for trademark infringement, Nike's counsel refused to rule out seeking disgorgement for *false advertising* based on StockX's sales of its Vault NFTs. As noted above, Nike's operative pleading also explicitly ties its false advertising theory to the Vault NFTs. There is no basis to limit discovery on false advertising damages to exclude StockX's Vault NFTs when Nike refuses to limit its own claim to exclude them. And, even if Nike were to stipulate that it will not seek *any* disgorgement of profits relating to the Vault NFTs based on *any* of its causes of action, that still would not establish a basis for Nike to refuse to produce a witness in response to StockX's 30(b)(6) topic seeking information about Nike's projected and actual revenues for the sales of physical sneakers, since Nike will still need to establish that StockX's allegedly false advertising diverted business from Nike in connection with the secondary market sale of sneakers on StockX's marketplace (unless, of course, Nike withdraws its request for disgorgement altogether).

Documents relating to Nike's estimated and actual revenues for the lines of business at issue in this case, and corporate testimony regarding the same, are plainly relevant under Rule 26(b)(1) to whether StockX's activities in fact diverted any business from, or caused any actual harm to, Nike. As StockX explained in more detail in its sealed letter to this court dated December 12, 2022 (ECF No. 82), the limited deposition testimony to date has already revealed highly relevant information about the health of Nike's digital goods business. But that limited testimony is not a complete record on this issue, and StockX is entitled to a complete record in order to defend against Nike's own clearly articulated damages theory.

Nike cannot seek damages from StockX while withholding its own documents that are plainly relevant to its claims. The Court should order Nike to produce documents

3

responsive to StockX's RFPs No. 54, 55, and 56; and produce a witness for topics 15 and 16 in StockX's Rule 30(b)(6) notice of deposition to Nike Inc.

Respectfully submitted,

*/s/ Megan K. Bannigan*

Megan K. Bannigan

cc　　All counsel of record (via ECF)