

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

December 23, 2022
*VIA ECF*

The Honorable Sarah Netburn
United States District Court, SDNY
40 Foley Square, Room 219
New York, New York 10007

**Re:** *Nike, Inc. v. StockX LLC*, Case No. 1:22-cv-00983-VEC (S.D.N.Y.)

**Dear Judge Netburn:**

Nike, Inc. ("Nike") respectfully submits this letter pursuant to the Court's December 14, 2022 Order (Dkt. 85) to (1) update the Court of outstanding discovery disputes and (2) set forth an additional discovery dispute regarding StockX's refusal to produce financial information that has ripened since the December 14, 2022 conference.

### I. Outstanding Disputes from the December 14, 2022 Conference

Although the Parties made significant progress at the December 14, 2022 discovery conference with the Court, there are several StockX RFPs and 30(b)(6) Topics which remain at issue: RFPs Nos. 6, 64-66, 74-75, 84-85, 103-112, 30(b)(6) Topic Nos. 2-6, 14-15, 17-18, as well as Nike's redactions to NIKE0039801 and NIKE0040131.

Nike respectfully refers the Court to Section II of Nike's December 12, 2022 letter ("Dec. 12 Ltr") (Dkt. 80) for its position with respect to StockX RFP Nos. 6, 64-66, and 74-75 concerning the completeness of Nike's production (*Id*. at 2-3), and Section III for its position on StockX RFP Nos. 84-85, seeking Nike's purported plans to acquire and/or designate StockX an official reseller of Nike goods, and Nos. 103-112, seeking broad and varied categories of documents relating to a purportedly negative perceptions of Nike as a company. (*Id*. at 4-5). For Nike's position with respect to StockX's defined term "Digital Sneakers," which serves as the basis for the still pending discovery disputes related to StockX's 30(b)(6) Topic Nos. 2-6, 14-15, 17-18, Nike refers the Court to Section III. (*Id*. at 3). For Nike's position on the propriety of its redactions in NIKE0039801 and NIKE0040131, Nike refers to the Court to Section IV. (*Id*. at 5).

### II. Background Relating to the Financial Documents Dispute

Nike is pursuing monetary damages against StockX for its false advertising, including disgorgement of StockX's ill-gotten profits derived from its false and/or misleading claims that all goods sold on its platform are "100% Guaranteed Authentic," when it knows that is a literally false claim. *See Chanel, Inc. v. RealReal, Inc.,* 449 F. Supp. 3d 422, 444 (S.D.N.Y. 2020) ("Given Chanel's allegations that certain products advertised and sold by The RealReal are counterfeit, the above context suffices to establish a plausible allegation of literal false advertising based on The

RealReal's representation that all the products it offers have been authenticated and are 100% the real thing."). To calculate StockX's profits—a remedy available to Nike under the Lanham Act—Nike must "prove defendant's sales only," while StockX "must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117. Nike first sought both categories of information months ago, and despite multiple demands that StockX comply with the requests, StockX continues to evade its discovery obligations, ultimately producing only one summary document, likely created by an outside damages expert, but no underlying documentation.

On August 12, 2022, Nike served on StockX RFP Nos. 221-224, 227, and 234-236 (together, "Nike's Financial Requests"), which seek relevant financial information from StockX including:

- **Request No. 221:** To the extent not already produced, Documents sufficient to show the source and amount of all revenues, cost of goods sold, gross profits, operating expenses, and operating income earned by StockX quarterly since January 1, 2020.

- **Request No. 222:** Documents sufficient to show, on a quarterly basis since January 1, 2020, the quantity or unit sales, price, commissions, returns, discounts, and Your revenues by transaction for Nike-branded products sold on the StockX Website or StockX App.

- **Request No. 223:** Documents sufficient to show, on a quarterly basis since January 1, 2020, any costs incurred by StockX to sell or offer for sale Nike-branded products on the StockX Website or StockX App.

- **Request No. 224:** To the extent not already produced, Documents sufficient to show, on a quarterly basis since January 1, 2021, any costs incurred by StockX to sell or offer for sale Nike Vault NFTs on the StockX Website or StockX App.[1]

- **Request No. 227**: To the extent not already produced, all monthly or quarterly internal financial reports since January 1, 2020 that were prepared for StockX management, leadership, or executives, including actual and projected revenues, costs, profits, and comparisons of projected or budgeted amounts to actual results.

- **Request No. 234**: Documents sufficient to show StockX's chart of accounts.

- **Request No. 235:** Documents and Communications sufficient to show analyses or breakdowns of expenses by the nature of the expense (e.g., expenses classified as fixed or variable).

- **Request No. 236:** All Documents which summarize StockX's overhead, indirect or other cost pool allocations for the sale of products on the StockX Website or StockX App.

---

[1] Given Nike's position that it will not seek monetary damages in connection with its First, Second, Third, and Fourth Causes of Action related to StockX's sale of unauthorized Nike-branded NFTs, Nike will not pursue production of documents in response to this Request.

StockX responded to the RFPs on September 12, 2022, by lodging objections and refusing to produce documents. Nike promptly raised concerns regarding StockX's objections and refusal on September 23, 2022. Following several rounds of correspondence and an October 17, 2022 meet and confer, StockX agreed on November 4, 2022 to produce this information, but by producing documents in response to *other* Nike RFPs (Nos. 89, 95, 144, 188, 201).

Despite that agreement, StockX continued to evade its obligations, prompting Nike to again raise the issue on October 25, 2022. The Parties again met and conferred on November 4 and November 17, 2022, and StockX then confirmed in writing on November 21, 2022 that it had completed its production as to RFP Nos. 89, 95, and 144, "other than the financial documents that will be produced in response to Request Nos. 221-224." In that same email, StockX also stated: "With respect to Request Nos. 221-224, we still expect to produce responsive documents either this week or early next, but cannot provide a date certain."

On November 23, 2022, StockX produced one Excel worksheet summarizing some financial information. This summary document does not appear to be one that existed in the ordinary course of business but rather appears to be a litigation-created document drafted by StockX's damages experts. On December 1, 2022, Nike again requested production of StockX's financial information responsive to RFP Nos. 221-224 and StockX confirmed that, with the Excel sheet, its production was complete. StockX refuses to produce any of the data underlying this summary document.

On December 16, 2022, the parties met and conferred again on Nike's Financial Requests and reached an impasse over StockX's refusal to produce documents responsive to these RFPs. After months of trying to pry this relevant information out of StockX, Nike now seeks the Court's assistance on this dispute.

### III.  StockX Must Produce the Requested Financial Documents

Nike's Financial Requests seek relevant and discoverable financial information necessary to calculate StockX's profits. StockX's revenue, cost, profit, expenses, overhead, cost pool allocations, and its charts of account are relevant and necessary for Nike to adequately develop and prove StockX's revenues, and to evaluate and respond to any deductions that StockX may seek to establish. See *Hasemann v. Gerber Prod. Co.*, 2018 WL 5651210, at *2 (E.D.N.Y. Aug. 28, 2018) (granting motion to compel defendant's production of documents relating to pricing practices including price analyses, margin and cost data, sales projections and other financial data as relevant in a false advertising case).

StockX's single summary document, STX0774283, is a "black box" and does not adequately respond to Nike's RFPs. The document provides ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This is grossly insufficient, as StockX cannot produce a summary document without producing the underlying data that was maintained in the ordinary course of business and was used to create the summary document at issue. *See Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 260 (W.D.N.Y. 2013) (where "financial documents at issue include summaries of costs associated with and revenues generated" by a party, that party "had a duty to disclose these documents, *as well as the underlying data on which the summaries are based*.") (emphasis added); *FUJIFILM N. Am. Corp. v. Big Value*

*Inc.*, 2018 WL 4210132, at *2 (E.D.N.Y. Sept. 4, 2018) (granting motion in limine to preclude defendants from relying on evidence of "disputed deductions" due to their refusal to produce the underlying documents to substantiate the figures in the produced summary spreadsheet.)

Further, by producing only one summary document, and withholding the underlying data used to create this document, as well as any audited financials, profit & loss statements, balance sheets, and the like, StockX is depriving Nike the ability to independently calculate StockX's revenues derived from its false advertising, and instead forcing Nike to simply accept StockX's own suspect calculations.[2]  To be sure, Nike is not seeking anything more than the financial information that StockX maintains in the ordinary course of business.  But StockX may not deprive Nike of the information it has requested in discovery by limiting its production to a made-for-litigation document, manipulated to suggest that StockX ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, without providing the underlying data it unquestionably maintains in the ordinary course.

StockX's one summary document is also expressly contradictory.  It includes a statement that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ yet then sets forth ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  Because StockX is refusing to produce the underlying data, Nike is unable to discern how StockX chose to calculate revenue on a brand level for its litigation-created document when it also states that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nike, at minimum, is entitled to the underlying data that was used for this calculation so that it may conduct its own calculation of Nike and Jordan specific brand revenues to evaluate and challenge StockX's calculation.[3]

Overall, while StockX has the burden to "prove all elements of cost or deduction claimed," it is not entitled to deprive Nike of the relevant financial information necessary to evaluate and rebut any claimed costs or deductions StockX may claim.  *See* 15 U.S.C. § 1117.  When "assessing the parties' claims over the appropriateness of certain deductions," the Court must evaluate whether there is "a sufficient nexus between each expense claimed and the sales of the unlawful goods" before it may deduct any indirect expenses from its profits." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.,* 642 F. Supp. 2d 276, 281 (S.D.N.Y. 2009) (internal quotations omitted). Additionally, where a Lanham Act violation is found to be willful, "'the district court should give extra scrutiny to the categories of overhead expenses claimed by the infringer to insure that each category is directly and validly connected to the sale and production of the infringing product.'" *Id.* (quoting *Hamill Am., Inc. v. GFI*, 193 F.3d 92, 107 (2d Cir.1999)).

By grouping together ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and denying Nike the underlying categories and broken-down costs that comprise these "expenses," StockX is unfairly attempting to force Nike to accept its assessment of what appropriately qualifies as a deduction. Nike is currently unable to evaluate and challenge specific categories of expenses or costs that may

---

[2] For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[3] Further, by stating that StockX ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in the ordinary course of business, StockX is admitting that this spreadsheet was created for this litigation while simultaneously depriving Nike any of the underlying documentation required to challenge this manufactured calculation with relevant financial documents.

lack "a sufficient nexus" to "the sales of the unlawful goods" at issue in this case, *i.e.,* falsely advertised and/or counterfeit "Nike" goods. *Fendi Adele S.R.L.,* 642 F. Supp. 2d at 281. Furthermore, as StockX's violations are willful, "extra scrutiny" to the specific categories of "operating expenses" is called for. *Id.*

StockX's one summary document also states that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Again, without provision of the breakdown of costs or expenses that were used in either the initial calculation of ▆▆▆▆▆▆▆▆ and the subsequent calculation used by StockX ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ in the ordinary course of business, this once again improperly forces Nike to rely on StockX's calculation of ▆▆▆▆▆▆▆▆ instead of making its own determinations.

Accordingly, the Court should compel StockX to produce, at a minimum, audited financials, profit and loss statements, balance sheets, and any and all documents relied upon in the creation of STX0774283.

Respectfully submitted,

*[signature]*

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*


cc: Counsel of Record via ECF