

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

January 6, 2023
*VIA ECF*

The Honorable Sarah Netburn
United States District Court, SDNY
40 Foley Square, Room 219
New York, New York 10007

**Re:** *Nike, Inc. v. StockX LLC*, Case No. 1:22-cv-00983-VEC (S.D.N.Y.)

**Dear Judge Netburn:**

Plaintiff Nike, Inc. ("Nike") respectfully submits this letter pursuant to the Court's December 14, 2022 Order (Dkt. 85) regarding the status of any outstanding discovery disputes.

## I. StockX's Financial Documents

During the December 30, 2022 discovery conference, the Court, in reference to the single summary spreadsheet produced by StockX, ordered StockX to (1) produce the "underlying financial documents" and (2) work with Nike "to figure out what is the most efficient and manageable set of documents that are responsive." [Dec. 30, 2022 Hr'g Tr. at 65:2-13.]. The parties met and conferred on January 3, 2023 regarding the scope of StockX's search for relevant underlying financial documents, and StockX agreed to provide, amongst other things, revenue figures that segregate trades that include a U.S. individual on at least one side of the transaction from trades between non-U.S. persons. While the majority of outstanding issues regarding StockX's deficient financial production has been resolved, Nike is asking that the Court order StockX's production of revenues to ███████████████████████████████████████████████ ███████████████████████████████ Further, Nike respectfully requests that the Court order StockX to produce these responsive financial documents by a date certain.

## II. Nike's Rule 30(b)(6) Corporate Designees To Date Were Adequately Prepared

Nike's 30(b)(6) corporate designees have been adequately prepared and provided sufficient testimony. StockX, however, raises concerns regarding the adequacy of testimony with respect to its Topic Nos. 4, 12, and 13, which are addressed below.

### i. Topic No. 4

Topic 4 seeks "[t]he prices at which Nike sells, has sold, or plans to sell NFTs and Digital Sneakers bearing the Asserted Marks." Mr. Faris – the Vice President & General Manager of Nike Virtual Studios – was adequately prepared for this Topic. He testified ███████████████████

███████████████████████████████████████. Nike also produced documentation reflecting the prices at which Nike sells or has sold other collections of NFTs bearing the asserted Nike marks, but StockX, for reasons unknown, did not show that document to Mr. Faris and otherwise completely failed to fairly question him on the same.

"[A] Rule 30(b)(6) deposition should not be a memory contest of topics better suited to a written response or a supplemental document production." *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 9400671, at *2 (S.D.N.Y. Apr. 27, 2017) (internal quotations omitted) (Netburn, M.J.). This is particularly true where, as is here, the "would result in a witness merely testifying to information readily available through document production." *Id.* at 2. As noted above, although Mr. Faris did not testify to the exact prices of every single NFT bearing the asserted Nike marks offered for sale by Nike, that information was readily available through Nike's document production and, as such, Mr. Faris was not required to memorize the exact prices for the hundreds of NFTs bearing the asserted Nike marks that have been sold to date. StockX could have, and should have, shown him the documents and questioned him on the same. Any shortcomings are entirely of StockX's own making.

StockX also now claims that this topic somehow includes the pricing methodology or strategy used to set the prices of these NFTs and complains that Mr. Faris was not adequately prepared to testify. This is outside the scope of the topic and it is not reasonable to have expected Nike to believe otherwise. Courts have found that, "if the [30(b)(6)] deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *Falchenberg v. New York State Dep't of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008), aff'd, 338 F. App'x 11 (2d Cir. 2009) (internal quotations omitted). Mr. Faris was adequately prepared to testify on the noticed topic, ████████████████████████████████████████████████████████████████████████████████████████████████████ In light of the plain text of Topic 4, StockX cannot accuse Mr. Faris of being unprepared. The Court should thus find that Nike's testimony on this topic is complete.

  ii.  *Topic Nos. 12 and 13*

Nike maintains that Mr. Faris was adequately prepared to testify on Topic Nos. 12 and 13.

Topic 12 concerns analyses Nike performed, received, or reviewed on the impact of the secondary market for sneakers on Nike's current business. Mr. Faris is the former Global Vice President of SNKRS, Nike's sneaker release application, and he testified that any analyses related to the secondary market's impact on Nike's business "were the key elements that [he] was aware of in [his] day-to-day." (Faris Depo Tr. 184:14-184:19). Mr. Faris testified ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ StockX complains that Mr. Faris's personal knowledge was outdated (Nike disagrees given the relevant time frame) and that he did not speak with any other employees to acquire more current information. However, where, as here, a corporate designee has adequate personal knowledge to testify on the corporation's behalf, there is no additional need to seek out other corporate information. *Rahman v. The Smith & Wollensky Rest. Grp.*, Inc., 2009 WL 773344,

2

at *3 (S.D.N.Y. Mar. 18, 2009) (30(b)(6) deponent adequately prepared even where the witness "explained that formal preparation was unnecessary because he was intimately familiar with the topics of his deposition."). Additionally, every single pair of Nike and Jordan brand sneakers allegedly underlying the Vault NFT was released in the primary market well before Mr. Faris' left his role at SNKRS. Mr. Faris was adequately prepared and able to speak to Nike's analyses regarding the impact of the secondary market for sneakers on Nike's business as it relates to the products at issue responsive to Topic No 12.

Topic No. 13 covers "Nike's plans to enter the secondary market for physical sneakers." Mr. Faris testified



That StockX is dissatisfied with the content of Mr. Faris's testimony does not render him unprepared on this topic nor does it render his testimony insufficient. StockX seeks to expand the scope of this topic post facto to include information regarding                                                                                           and patented technology, neither of which have any relation to                                                  . Mr. Faris was adequately prepared to testify on Topic No. 13 and did so.

These topics additionally raise the potential of becoming a "trial within a trial" [Dec. 30, 2022 Hr'g Tr. at 31] and have no relevance to the claims and defenses in this case. Accordingly, Court should find that Nike's testimony on these topics is complete and deny StockX's motion to compel additional testimony.

### III. Nike's Proper Searches for Documents Responsive to StockX's Requests

Despite StockX's complaints with Nike's search efforts, detailed below, Nike's extensive document search - conducted in accordance with the stipulated ESI Protocol entered in this action - is compliant with its discovery obligations pursuant to the Federal and Local Rules. The Court should find Nike's search efforts reasonable and deny StockX's harassing request that Nike collect, search, and produce additional documents that are beyond the scope agreed to by the parties.

*i. Nike's Refusal to Produce Irrelevant and Nonresponsive Data Science Documents*

StockX points to Mr. Faris's testimony



, as a basis to argue that Nike is withholding documents responsive to StockX's Request No. 16. In response to this request, Nike already agreed to produce documents concerning the impact to Nike's business *resulting from StockX's sale of infringing NFTs, sale of counterfeit Nike goods, and/or its false and/or misleading claims regarding authenticity of counterfeit Nike goods*.                                                                                           such analyses are not relevant to the claims and defenses at issue in this case and, as such, Nike did not agree to produce them.                                                                                           do not concern the impact to Nike's business from StockX's sale of infringing NFTs, sale of counterfeit Nike goods, and/or its false and/or misleading claims regarding authenticity of counterfeit Nike goods. StockX's motion to compel Nike to produce such documents should thus be denied.

3

ii.  *Nike's Reasonable Search of the Box File Sharing Tool*

StockX complains about Nike's search of Box, a cloud-based file sharing tool, for documents responsive to StockX's requests for production. Nike witnesses testified that Nike employees can use Box to share files from their personal computer that exceed the file size limitation for e-mail attachments. (Faris Depo Tr. 227:4-5 (testifying that he "only uploaded to Box when [h]e want[s] a heavy file to be sent to a peer.")). Pursuant to the ESI Protocol, Nike collected from its identified custodians custodial ESI such as e-mail, Slack, and files from their personal computers and ran the agreed upon search terms across that data. Nike also conducted a targeted collection of ESI from non-custodial sources such as network drives and the Box repositories of custodians with oversight from counsel. *See Compass, Inc. v. Real Est. Bd. of New York, Inc.*, 2022 WL 2256290, at *4 (S.D.N.Y. June 23, 2022) (entering a stipulated ESI order which includes identification of "non-custodial data sources (*e.g.*, shared drives, servers, structured data sources, cloud resources, etc.")). Nike then produced any non-privileged, responsive documents.

Following Nike's substantial completion of its production, StockX requested that Nike produce additional documents that were associated with hyperlinks to Box.com included in e-mails produced. Nike objected to this demand based on the ESI Protocol, which does not define "Attachments" to e-mails to include hyperlinked documents. (*See* Dkt. 47 at § IV. D-E.) Courts uphold objections like Nike's where, as here, the ESI protocol "does not state that hyperlinked documents are part of family groups," and where "there was no meeting of the minds on whether hyperlinks were attachments." *Nichols v. Noom Inc.*, 2021 WL 948646, at *3 (S.D.N.Y. Mar. 11, 2021) (stating that "the Court does not agree that a hyperlinked document is an attachment."). Notwithstanding and without waiving its objections, Nike agreed to collect and produce hyperlinked documents from Box that were included in particular e-mails that StockX identified. Nike had already collected from Box and produced most, if not all, of these requested hyperlinked documents. Nike produced any non-duplicative documents that were not previously produced.

StockX complains that Nike's search of Box was insufficient, even though Nike already collected and produced these documents. StockX has not set forth any valid basis for alleging that Nike's search was insufficient, contrary to the protocol or the Rules, or that there are responsive documents missing from Nike's production. Nike conducted a reasonable search of Box for responsive documents, *beyond* that required or contemplated by the ESI protocol in this action. (*See* Dkt. 47). In a similar case, when analyzing a party's collection of documents from Google Drive (another cloud-based document storage system), the Court "held that [the collecting party] could use its preferred software to collect email documents, finding that method reasonable and deferring to the principle that a producing party is best situated to determine its own search and collection methods so long as they are reasonable." *Nichols* 2021 WL 948646, at *2 (citing Sedona Principle 6). Here too, the Court should find Nike's collection and search of its Nike Box repository was reasonable and deny StockX's motion to compel Nike to produce such documents.

iii.  *Telegram and WhatsApp Are Not Reasonably Accessible*

In another flouting of the ESI Protocol it negotiated last year, StockX also demands that Nike collect and search WhatsApp and Telegram messages based on deposition testimony that such channels may have been used to discuss marginally relevant topics. Nike does not maintain

WhatsApp or Telegram messages on its company servers. To the extent that any individual employees use WhatsApp and Telegram, they do so on their own mobile devices. The stipulated ESI protocol memorialized the parties' agreement that "mobile devices are generally deemed not reasonably accessible and therefore need not be preserved and collected." (Dkt. 47 at § IV.N.). Having already stipulated that WhatsApp and Telegram messages are "not reasonably accessible," (Dkt. 47 at § IV.N.), the Court should not order Nike to search these channels as StockX cannot show "good cause" to compel Nike to do so. Fed. R. Civ. P. 26(2)(B).

StockX has not shown good cause for Nike to search Telegram. The only evidence StockX has proffered to date regarding the relevance of this inaccessible messaging service has been Mr. Child's and Ms. Faris's deposition testimony regarding communications via a Telegram channel to share "news happening in the space." (Faris Depo Tr. 135-36). While StockX asserts that these communications would be responsive to Request No. 58, which seeks "[a]ll Documents and Communications referencing StockX and Concerning Nike's competitors, comparing competitor product and service offerings, competitor advantages and/or disadvantages, product pricing, market segments and/or market share," Nike never agreed to produce documents in response to that Request. Instead, based on its duplicativeness objections, Nike represented that it had searched for and produced documents identifying Nike's competitors for Nike's current and planned sales of NFTs bearing the asserted Nike marks and physical sneakers in the secondary market in response to other requests. StockX did not raise any deficiencies related to that production after Nike represented its search was complete and cannot now assert that Nike has to search and collect from an inaccessible channel to collect additional responsive documents when Nike has already produced sufficient relevant documents via more accessible means.

StockX has similarly not shown good cause to order Nike to search WhatsApp. The only evidence that StockX has pointed to is that Mr. Child testified that he used WhatsApp to "communicate with members of the RTFKT team." (Child Depo Tr. 109:19-22). However, Mr. Child did not testify that he exclusively communicated with the RTFKT team via WhatsApp messaging nor what the content of his messages were. In fact, he testified that he "prefer[s] to use email." (Child Depo Tr. 109:12). Nike has already collected and searched Mr. Child's emails as part of its custodial search. While StockX has asserted that WhatsApp messages would be responsive to Request No. 2 which seeks "[d]ocuments sufficient to show Nike's considered, current, or planned sale, use, or Advertising of NFTs bearing the Asserted Marks," Nike has already produced documents responsive to this request from reasonably accessible channels. StockX cannot demonstrate good cause to order Nike to search inaccessible WhatsApp messages when sufficient responsive information has already been produced.

Notably, StockX itself has not searched for and produced responsive text messages, which are analogous to WhatsApp/Telegram messages, despite StockX witnesses testimony that texting is often used as a channel for relevant communications. (*See e.g.,* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆)). Nike did not push the issue given the parties' agreement, but to the extent the Court does not deny this request, StockX should likewise be ordered to search the additional sources used by its witnesses.

Respectfully submitted,

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*

cc: Counsel of Record via ECF