

DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

March 15, 2023
V<small>IA</small> ECF

The Honorable Sarah Netburn
United States District Court, SDNY
40 Foley Square, Room 219
New York, New York 10007

Re:   *Nike, Inc. v. StockX LLC*, Case No. 1:22-cv-00983-VEC (S.D.N.Y.)

**Dear Judge Netburn:**

Nike, Inc. ("Nike") respectfully submits this letter motion pursuant to Your Honor's Individual Practices II.C. to compel StockX's LLC ("StockX") to produce highly relevant documents and testimony that it is withholding based on improper objections. The parties have exchanged rounds of written correspondence and met and conferred by telephone on March 14, 2023.

### I.   StockX Must Produce Documents Related to Counterfeits Sold to ▇▇▇

As the Court may recall, between March and July 2022, StockX "authenticated" and sold at least 38 pairs of counterfeit "Nike" shoes to a consumer named ▇▇▇▇, who is a sneaker collector and reseller. After receiving these shoes, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Nike contacted ▇▇▇▇ and visited ▇▇ on July 22, 2022 to inspect the "Nike" shoes that ▇▇ bought on StockX's platform. Nike confirmed that at least 38 pairs of "Nike" shoes ▇▇▇▇ bought on StockX's platform are counterfeit. Nike did not take possession of these shoes and ▇▇ ultimately returned the shoes to StockX for a full refund.

Before Nike's inspection, StockX's then Senior Director of Account Management, Russ Amidon, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mr. Amidon ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[1] (Ex. 4.) At his November 30, 2022 deposition, Mr. Amidon testified that StockX's employees ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ returned shoes, ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 1, Amidon Tr. 89:14-90:21.) ▇▇▇▇▇▇▇ also testified that Mr. Amidon ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 3, ▇▇ Tr. 90:10-19.)

---

[1] While StockX does not accept returns, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 1, Amidon Tr. 24:2-25:17; Ex. 2, Lopez Tr. 243:12-17.)

On July 25, 2022, Nike sent a letter to StockX advising that Nike inspected ▇▇▇▇▇'s shoes and enclosing for service Nike's Third Set of Requests for Production ("Nike's 3d RFPs"). Nike's 3d RFPs seek documents and communications related to the events described above, including:

- **Request No. 218**: "All documents and communications regarding ▇▇▇▇▇ purchase of Nike-branded shoes on the StockX Website or the StockX App between March-July 2022, including any purported "authentication" of those shoes by StockX both prior to original shipment to ▇▇▇▇▇ and upon receipt of the shoes that ▇▇▇▇▇ returned to StockX on or about July 23, 2022."
- **Request No. 219**: "Images of the Nike Shoes returned to StockX by ▇▇▇▇▇ on or about July 23, 2022, including images of each product and its packaging and all labels affixed to each shoe box and shoe."

StockX produced a couple of emails between Mr. Amidon and ▇▇▇▇▇ and a single internal communication related to ▇▇▇▇▇▇▇▇▇▇▇▇, which was partially redacted for privilege. But StockX did not produce **any** documents and communications related to StockX's ▇ ▇▇▇▇▇▇▇▇▇▇▇▇ returned shoes. These documents are highly relevant to the claims and defenses at issue and directly responsive to Nike's Request Nos. 218 and 219 above.

StockX did not log as privileged any documents related to the ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇ but, nonetheless, now claims that those documents are privileged. On February 23, 2023, Nike deposed John Lopez, an "authenticator" and StockX's current Knowledge Manager for Sneakers. When questioned about ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ shoes, counsel objected, claiming that the ▇▇▇▇▇▇▇▇▇▇ these shoes was done at the direction of counsel and was therefore protected work product. (Ex. 2, Lopez Tr. 290:2-6; 291:3-9; 291:18-21; 293:3-10; 293:20-294:10; 296:2-6.) Mr. Lopez took counsel's instruction not to answer. (*Id*.) The parties subsequently met and conferred and are at an impasse on this issue.

The results of StockX's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ returned shoes are highly relevant and, based on the Amidon and ▇▇▇ testimony, likely contain admissions from StockX that it sent one of its consumers dozens of counterfeit "Nike" shoes. StockX improperly attempts to hide this damning evidence behind a privilege objection. But this information is not privileged. The attorney work-product privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "[T]hree conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Allied Irish Banks v. Bank of Am., N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007) (internal quotations omitted). To be eligible for work product protection, "the materials must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) (internal quotations omitted).

StockX's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ retuned shoes is not protected work product "opinion," as StockX claims. (Ex. 2, Lopez. Tr. 293:23.) "To be entitled to protection for opinion work product, the party asserting the privilege must show a real, rather than speculative, concern that the work product will reveal counsel's thought processes in relation to pending or anticipated

litigation." *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013), aff'd, 29 F. Supp. 3d 142 (E.D.N.Y. 2014) (internal quotations omitted). Yet whatever StockX did to ███████████████████ returned shoes—and the conclusions of those ███████████—are facts and highly relevant evidence. They are not protected work product that in any way reveal StockX's counsel's thought process or legal strategy.

Additionally, StockX did not ███████████████ shoes solely because of this litigation. As noted in footnote 1, *infra*, StockX ███████████████████████████████████████ ███████████████████████████████████████ (Ex. 1, Amidon Tr. 24:2-25:17; Ex. 2, Lopez Tr. 243:13-17.) "[W]ork product protection is not available for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation." *Allied Irish Banks,* 240 F.R.D. at 106. These documents were prepared in the ordinary course of StockX's business. Moreover, StockX's internal communications clearly show that it decided to contact ██████████████████████████████ ███████████████████████████████████████, not because of legal strategy related to this litigation. (*See* Ex. 4.) Regardless, even if some part of this process was related to Nike's allegations, "[w]here documents have been prepared for both litigation and business purposes, the question of whether the documents are entitled to immunity under the work product doctrine turns on whether the material would have been prepared irrespective of the expected litigation." *Koch v. Greenberg*, 2012 WL 1449186, at *6 (S.D.N.Y. Apr. 13, 2012) (if defendant "had concerns regarding the authenticity of some of the wine in his inventory, then, as a business matter, he would have wanted to engage an expert to inspect the bottles, regardless of whether the results might be useful in anticipated litigation" and thus any report prepared by such an expert "could not be afforded work product immunity from disclosure."). Here, StockX would have accepted ████████ returned shoes and ██████████████ them irrespective of this litigation because ██████████████████ and because ██████████████████████████████████ █████████. As such, this information cannot be afforded work product immunity from disclosure.

Finally, even if these facts are protected work product (and they are not), StockX waived any such protection when Mr. Amidon disclosed ██████████████████████ to ████████ a third party, and testified about the same without objection. (Ex. 1, Amidon Tr. 90:8-11; Ex. 3, ████ Tr. 90:10-19.) Courts have found that deposition testimony about "privileged" information operates as a subject matter waiver under F.R.E. 502(c). *See e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 17 F. Supp. 3d 400, 406–07 (S.D.N.Y. 2014) (collecting cases).

Nike thus respectfully requests the Court to overrule StockX's objections and compel it to produce all documents and communications related to StockX's ████████████████████ shoes and to produce Mr. Lopez to answer questions regarding the same.

   II.   **StockX's Deficient Production of Documents Responsive to Nike's Fifth Set of Requests ("Nike's 5th RFPs")**

StockX asserts acquiescence and estoppel defenses, alleging that "Nike has collaborated with StockX on authentication efforts, sent Nike representatives to one of StockX's authentication centers in or around October 2018 and again in 2019, and has worked with StockX to combat counterfeiting." (Dkt. 41 at 38, ¶ 8). StockX claims that it "has detrimentally relied on Nike's

3

praise and approval of StockX's authentication and anti-counterfeiting efforts," (Dkt. 41 at 39, ¶ 12) and that "Nike's perceived support" of its authentication efforts "and related delay in asserting any counterfeit claims has caused StockX undue prejudice." (*Id.* at 40, ¶ 17). StockX also served requests on Nike for the parties' prior communications related to counterfeiting.

Considering these allegations and requests, Nike's 5th RFPs seek, *inter alia*, communications regarding StockX's actual or potential collaborations with Nike, including:

- **Request No. 240**: "All Communications between You and Nike about efforts to prevent the sale of counterfeit goods or remove listings for counterfeit goods, and all internal Documents and Communications concerning such Communications with Nike."
- **Request No. 241**: "All Documents and Communications reflecting Your knowledge that You do not have the capability to authenticate Nike goods in the same manner as Nike."
- **Request No. 242**: "All Documents and Communications Concerning Your actual or potential collaborations or other business relationships with Nike, including any actual or potential collaborations regarding brand protection or authentication of Nike goods."
- **Request No. 243**: "All Documents and Communications Concerning Your actual or potential collaborations or other business relationships with Nike, including any actual or potential collaborations regarding brand protection or authentication of Nike goods."

StockX's objections and responses to these Requests improperly narrowed the relevant time period of StockX's search for responsive documents from July 1, 2020 to May 25, 2022, despite the fact that StockX required Nike to search back to January 1, 2017 for reciprocal information, which it did.[2] The parties met and conferred via telephone on December 16, 2022 regarding the appropriate time period, which Nike stated should cover January 1, 2017 onward just as StockX had demanded.

StockX has not rejected Nike's position outright, but rather contends that its production of documents responsive to Nike's Requests is complete. This contention is troubling to Nike. Nike is aware of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ in response to StockX's requests that have not been produced by StockX to date. Nike is thus not relying on "mere speculation that [t]here ha[s] to be more records" but rather "concrete evidence" that additional documents indeed exist. *In re Terrorist Attacks on Sept. 11, 2001*, 2018 WL 4062638, at *2 (S.D.N.Y. Aug. 27, 2018) (Netburn, M.J.). Further, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ "actual or potential collaborations regarding brand protection or authentication of Nike goods," sought by Request No. 243 has been produced. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, far more internal communications <u>must</u> exist. Yet StockX has not proffered any explanation of these gaps in its production. Nike has received other documents from StockX from 2017, so it appears that StockX's systems retain documents dating back to at least that year.

For these reasons, Nike respectfully asks that the Court compel StockX to conduct a more thorough search and produce additional documents responsive to Nike's Fifth Set of Requests dating back to January 1, 2017, or, at the least, explain in detail why those documents cannot be located.

---

[2] The Court already found documents of this nature and during this period to be relevant when ordering Nike to produce similar documents from 2017 onward. (*See* Dec. 30 Hr'g Tr. at 35:15-17 ("StockX is entitled to Nike's evaluation in real time as it had accessed the information to StockX's authentication and anticounterfeiting efforts.").

### III. StockX's Improper Refusal to Search for and Produce Relevant and Responsive Documents Regarding its "Authentication" of Nike Shoes

Mr. Lopez testified that StockX recently  (Ex. 2, Lopez Tr. at 18:18-19; 17:13-14). Mr. Lopez also testified to conversations (*Id.* 73:7-22.)

On March 7, 2023, Nike requested that StockX produce communications and documents related to the above testimony. Any documents that relate to StockX's ▮▮▮▮▮ are directly responsive to Nike's Request No. 189 ("[d]ocuments sufficient to show the steps taken by [StockX] each year since 2016 to verify the authenticity of each of the Nike products sold or offered for sale by [StockX], broken down by product") and Request No. 191 ("[d]ocuments sufficient to show all training provided to employees to authenticate the Nike products sold or offered for sale by" StockX). During the parties' March 14, 2023 meet and confer, StockX agreed to produce only one exemplary presentation regarding StockX's ▮▮▮▮▮ but refused to produce everything else on the basis that such documents relate to events that occurred after Nike filed its amended complaint.

This position is wrong. "A party who… has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the…response is incomplete or incorrect." Fed. R. Civ. P. 26 (e)(1)(A). StockX cannot refuse to produce responsive, relevant documents on the basis that they were created *after* Nike filed the Amended Complaint. Nike has identified a clear gap in StockX's production of responsive document and StockX is under a duty to supplement its document production and rectify this omission. For these reasons, Nike respectfully asks that the Court compel StockX to produce documents related to use of ▮▮▮▮▮.

Nike thanks the Court for its consideration of this matter.

Respectfully submitted,

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*

cc: Counsel of Record via ECF