

**Debevoise & Plimpton LLP**
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

March 20, 2023

Hon. Sarah Netburn, United States Magistrate Judge
United States District Court for the Southern District of New York
40 Foley Square, Room 219
New York, New York 10007

***Nike, Inc. v. StockX LLC***, No. 22 CV 983 (VC) (SN)

Dear Judge Netburn:

    StockX LLC ("StockX") respectfully submits this response to the letter motion of Nike, Inc. ("Nike") to compel discovery pursuant to Your Honor's Individual Practices II.C (ECF No. 136, the "Motion"). The Motion should be denied in its entirety for the reasons set forth below.

### I. StockX Properly Asserted Work Product Protection Over its Investigation into Alleged Counterfeits Identified by Nike During this Litigation.

    After having repeatedly relied upon work product protection to shield its own investigation into possible counterfeits throughout this litigation, Nike now seeks discovery into work done by StockX employees to understand the basis for Nike's claims that certain items were counterfeits, and prepare StockX's defenses to those claims, all of which was performed at the direction of counsel and months after this litigation began. Nike has provided no basis for piercing the very protection that it claimed for itself. Nor does Nike have any substantial need for the information it seeks, given that it has already inspected all of the shoes in question. While it may not be surprising that Nike again[1] seeks to compel admissions from StockX to legal conclusions regarding the shoes at issue in this case, given the extensive problems that discovery has revealed in Nike's case – ██████████████████████████████████████████████████████████████████████████ – those are not a basis for Nike to overcome StockX's properly asserted work product protection.

    By way of background, Nike moved for leave to file its First Amended Complaint, which asserted a claim for counterfeiting based on shoes that Nike purchased from third parties on StockX's marketplace, on May 10, 2022. Months later, on July 25, 2022, Nike's counsel sent a

---

[1] Nike's Motion seeks the same type of improper discovery into StockX's internal views of the legal issues in this case that this Court previously prohibited. Nike's Motion argues that it should be permitted to seek "admissions from StockX that it sent one of <u>its consumers dozens of counterfeit 'Nike' shoes</u>." (Motion, p. 2.) But back in December 2022, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Exhibit A (Excerpt of Dec. 14, 2022 Hrg. Tr.).

www.debevoise.com

letter asserting that Nike ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ that had been purchased by ▓▓▓▓▓▓ from third parties on the StockX marketplace, and simultaneously sent StockX requests for production related to Mr. ▓▓▓▓ purchases. *See* Exhibit B (July 25, 2022, Letter from DLA Piper).

After receiving Nike's July 25th letter and requests for production, StockX's in-house counsel instructed StockX employees to preserve the shoes at issue (which had not yet been returned to StockX) because they were the subject of active litigation, and to investigate the circumstances underlying Nike's claims. *See* Exhibit C (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓), ¶¶ 5–6. One of the specific tasks StockX's counsel directed ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id.*, ¶¶ 6–9.

Nike now seeks documents and testimony regarding the investigation that StockX employees undertook at the direction of counsel after receiving Nike's July 25th letter, which was plainly conducted because of and in anticipation of litigation. The counsel-directed investigation was not done (or analogous to work done) in the ordinary course of business, given Nike's legal claims and express letter relating to these products. *See United States v. Adlman*, 134 F.3d 1194, 1195, 1202 (2d Cir. 1998) ("In anticipation of litigation" means "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation").

None of the work that was done to investigate these shoes in light of Nike's claims, or to report on the conclusions of the investigation to counsel, would have been done in the ordinary course of StockX's business. While StockX's verification process resulted in the rejection of over 330,000 products last year before products reached the buyer, in the event a customer believes a mistake in the verification process was made, StockX conducts a second verification in the ordinary course of business only in order to determine whether a customer should receive a refund, consistent with its longstanding policy to accept returns from any of its customers if the product a buyer received was not the product the buyer expected. *See* What is the StockX Buyer Promise?, https://stockx.com/help/articles/What-is-the-StockX-Buyer-Promise. That second verification is intended only to determine whether the products in question meet StockX's standards—if they do not, StockX accepts the return and provides the customer with a refund. *See* Exhibit D (▓▓▓▓▓▓), at 246:7–11. But Nike's July 25th letter asserted that the products Nike had inspected were considered counterfeit by Nike, and demanded that StockX preserve all evidence, including the physical shoes themselves, following their return to StockX. Accordingly, and at the direction of counsel, on July 25th, StockX employees were instructed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Nike's arguments that the discovery it seeks would have been prepared in the ordinary course of StockX's business are simply incorrect, and ignore the factual circumstances in this case that *Adlman* instructs must be considered.

Simply put, Nike is not entitled to discovery into StockX's privileged investigation into these shoes. Rule 26 is clear that Nike "may not discover documents and tangible things that [were] prepared in anticipation of litigation or for trial by or for another party or its representative

(including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).  StockX's protection under Rule 26 "applies both to the tangible work product and deposition testimony concerning the substance of that work product." *In re Circle K. Corp.*, 199 B.R. 92, 98 (S.D.N.Y. 1996); *see also Winfield v. City of New York*, No. 15 CV 5236, 2018 WL 716013, at *20 (S.D.N.Y. Feb. 1, 2018) (sustaining counsel's privilege objection during deposition testimony and finding that "under the work product doctrine, [the witness would] not be required to describe the specifics of her analyses to the extent they were conducted at the direction of counsel").[2]  The Supreme Court has also made clear that work product protection is not limited to materials created by attorneys or containing attorneys' mental impressions. *See United States v. Nobles*, 422 U.S. 225, 238–39 (1975) (recognizing that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," and therefore "the doctrine protect[s] material prepared by agents for the attorneys as well as those prepared by the attorney himself.").

Nike's arguments to the contrary, Motion at 2, are belied by their own previous positions in this very litigation.  When StockX sought to understand the basis for Nike's privilege claims over Nike's own investigations into allegedly counterfeit shoes, Nike responded by arguing that "communications among non-attorneys in a corporation may be privileged if made at the direction of counsel to gather information to aid counsel in providing legal services" and that "the work product doctrine protects not only materials which are prepared by attorneys themselves, but also their agents."  *See* Exhibit F (October 11, 2022 Letter from DLA Piper) at 1–2.  Nike accordingly refused to disclose documents and communications ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Nike's remaining argument, that StockX waived its work product protection, is without merit, and Nike's citation to *John Wiley & Sons, Inc. v. Book Dog Books, LLC* is inapposite.  17 F. Supp. 3d 400 (S.D.N.Y. 2014) (evaluating the waiver of privilege in the context of attorney-client communications).  Unlike the attorney-client privilege, work product privilege is not automatically waived by disclosing the material to a third party. *In re Pfizer Inc. Sec. Litig.*, No. 15 CV 5236, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993*).*  In fact, work product may be shown to others "simply because there [is] some good reason to show it" without waiving the protection. *United States v. Adlman*, 134 F.3d 1194, 1200 n.4 (2d Cir. 1998).  The testimony Nike identified relates solely to a non-privileged communication between a StockX employee ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Mr. ▮▮▮ regarding the products Mr. ▮▮▮ returned.  Those comments did not "substantially increase" Nike's ability to

---

[2]     Nike's argument that StockX has not identified documents from this investigation on a privilege log is a red herring.  The parties agreed at the outset of discovery not to log privileged documents post-dating the complaint, and Nike has similarly not identified any documents relating to its own privileged discussions or investigation relating to Mr. ▮▮▮ shoes in any privilege log.

The Hon. Sarah Netburn                                    4                                    March 20, 2023

obtain substantive information about StockX's investigation, which this motion seeks, because the StockX employee ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See Cellco P'ship d/b/a Verizon Wireless v. Nextel Commc'n, Inc.*, No. 15 CV 5236, 2004 WL 1542259, at *1 (S.D.N.Y. July 9, 2004) (work-product privilege is waived only if disclosure to the third party "substantially increases the opportunity for potential adversaries to obtain the information.").

StockX's investigation into the shoes Nike expressly identified as the subject of its claims in this litigation is accordingly appropriately protected from disclosure under Rule 26. Nike has demonstrated no substantial need to overcome that protection – nor could it, since Nike already had an independent opportunity to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Exhibit B. Nike's request to compel ▮▮▮▮▮▮ to "answer questions regarding" these issues, Motion at 3, should be denied for the reasons set forth above. To the extent the Court is inclined to allow any questions to proceed, which it should not, StockX notes that Nike's questioning on this topic began with less than 10 minutes remaining on the record ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Exhibit G ▮▮▮▮, at 161–64 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. No further deposition testimony or document discovery should be required.

II. **StockX Has Already Agreed to Produce Additional Documents Responsive to Nike's Fifth Set of Requests for Production.**

Nike's motion to compel is premature, and omits the fact that during the parties' March 14, 2023, meet and confer on this issue, StockX *agreed* to conduct additional searches for responsive documents, and produce responsive documents, based on Nike's explanation of the material it was seeking. StockX has already produced additional documents following the meet and confer, and is continuing to search for any remaining responsive materials. As Nike's Motion notes, the documents in question are up to five years old, and many of the individuals involved are no longer with StockX, rendering it considerably more challenging for StockX to determine what, if any, additional materials may exist. Given StockX's agreement to continue its search for responsive documents, there is no dispute that requires the Court's attention.[3] StockX will continue to supplement its production as responsive documents are identified.

III. **Nike's Request for Materials Concerning StockX's Use of RFID Technology Are Outside of the Agreed-Upon Relevant Time Period and Irrelevant.**

Nike's final request in the Motion is an eleventh-hour attempt to improperly expand the scope and time period of document discovery to include information about "recently implemented changes" in StockX's verification process (Motion, at p. 5.) that have no relevance to its claims. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] To the extent Nike seeks to compel StockX to re-produce "communications between Nike and StockX that *Nike* produced in response to StockX's requests that have not been produced by StockX to date" (Motion at 4), such a request is unnecessarily duplicative and inappropriate.

▮.  *See* Exhibit G, at 19:17–20, 299:1–11.  Nike does not argue ▮▮▮▮▮▮▮▮▮ is relevant to any of its claims: counterfeiting is a strict liability offense, and nothing Nike has identified in connection with its false advertising claim relates in any way ▮▮▮▮▮▮▮▮▮▮▮▮.  The burden and cost of identifying new custodians, collecting and reviewing new documents at this late date in this litigation thus far outweighs any hypothetical minor benefit Nike may obtain from the materials in question.

Nike's true purpose for seeking these materials appears to be nothing more than a fishing expedition.  While StockX appreciates that Nike would like to know more about how StockX has continued to enhance and improve its market-leading verification process, discovery in this case is limited to the claims and defenses, and is not a license for Nike to conduct an endless probe.



Nike's Motion also should be denied because it seeks discovery outside of the agreed-upon relevant time period without good cause.  Nike's motion ignores the fact that on July 18, 2022 – more than eight months ago – StockX responded to RFPs 189 and 191 (which are at issue in the Motion) with an objection to producing documents outside of the parties' agreed-upon "Relevant Time Period" of July 1, 2020 through May 25, 2022.  These objections were and are entirely appropriate under Fed. R. Civ. P. 34 – and Nike's Motion does not challenge them at all.  *See id.* 2015 Adv. Comm. Notes (noting a proper objection would be "a statement that the responding party will limit the search to documents or electronically stored information created within a given period of time prior to the events in suit").

For that reason, StockX had no obligation to produce *any* materials in response to RFPs 189 and 191 dated after May 25, 2022, and it has no obligation to supplement its productions with materials it objected to producing in the first instance.  *See, e.g.*, *Lankford v. Taylor*, No. CV-17-02797, 2021 WL 151550474188, at *7 (D. Ariz. Apr. 16, 2021) ("Defendants have not identified any case suggesting that a party who objects to an interrogatory, and whose objection goes unchallenged, nevertheless has an ongoing duty of supplementation under Rule 26(e) to supply the very information that is the subject of the standing objection. This would seem to defeat the whole point of raising objections under Rule 33(b)(4).").

Respectfully submitted,

*/s/ Megan K. Bannigan*

Megan K. Bannigan

cc          All counsel of record (via ECF)