

Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001
+1 212 909 6000

March 21, 2023

Hon. Sarah Netburn, United States Magistrate Judge
United States District Court for the Southern Disrict of New York
40 Foley Square, Room 219
New York, New York 10007

### *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VEC) (SN)

Dear Judge Netburn:

      We represent Defendant StockX LLC ("StockX") in the above-captioned matter and write regarding outstanding discovery disputes. Having met and conferred by teleconference and reached an impasse, StockX asks the Court to compel Nike to produce relevant documents and remedy inadequate 30(b)(6) testimony. Attached as Exhibits A–D are excerpts from the depositions of Nike witnesses Heather Paulson, Barbara Delli Carpini, Laura Rizza, and Joe Pallett, respectively, and attached as Exhibit E is the transcript of the December 14, 2022, discovery conference.

      **I.**    **Nike's Document Production Remains Substantially Deficient.**

          **A.**  **Nike Has Withheld Documents Relevant to Counterfeit Allegations**

      Testimony has revealed that Nike's process for identifying the alleged counterfeit shoes in this case involved ████████████████████████████████████████████████ ████████████████████████████████████████████████ Nike is accusing StockX of knowingly and willfully selling counterfeit shoes. StockX is entitled to understand Nike's full process – ████████████████████████████████████████████████ ████████████████████ – to defend against these aggressive claims. Nike has consistently pushed back at providing full information. In connection with StockX's requests for documentation of Nike's processes, during a December discovery hearing, Nike insisted that it had already produced ████████████████████████████████████████████████ and specifically represented that ████████ ████████████████████████████████████████████████ *See* Ex. E at 22:7-22:14; *see also id*. at 22:20-23 ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████.

      Testimony has shown, however, that multiple different categories of documents exist that ████████████████████████████████████████████████ ████████████████ For example, ████████████████████████████████████████████████ ████████████████████████████████████████████████ testified that:

- ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

- ████████████████████████████████████████████████ ████████████████████████████████████████████████

www.debevoise.com



Nike's attempts to withhold these documents, and its representations to the Court ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are unjustifiable. Each and every one of these categories of documents was responsive to StockX's requests for production, including requests for documents "sufficient to show how [Nike] verif[ies] whether or not a product is a genuine Nike product," and all documents concerning "actual or potential programs to share technology used to authenticate [Nike] products with third parties, including but not limited to StockX and/or retailer consumers." Yet, it was not until Friday, after weeks of StockX's requests (and those from before the December hearing), that Nike finally produced two of the documents discussed above (attached as Exs. F-G).



Despite Nike's assertions that relevant documents have been produced, Nike's witnesses have made clear that additional information exists that has unjustifiably been withheld from Nike's productions. These yet-unproduced documents are critical because (1) Nike has consistently withheld ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and (2)

Hon. Sarah Netburn 3 March 21, 2023



At every turn, Nike's counsel's representations either have not withstood scrutiny or have clearly illustrated that Nike has adopted an impermissibly narrow view of its discovery obligations. During the parties' conference relating to these documents, Nike's counsel argued that neither of Exhibits F and G have any relevance to this case. Yet, as the Court itself can see from the two documents Nike produced, that is simply not accurate. If Nike believes that Exhibits F and G are not relevant, that calls into question what similar, relevant materials Nike it is unjustifiably withholding. StockX requests that the Court order Nike to produce all documents relating to authentication training for Nike employees and/or third parties, and all documents relating to

### B. Nike Has Withheld Documents About Counterfeits on Other Marketplaces.

Nike continues to withhold documents concerning its awareness of, and efforts to police for, counterfeits on secondary marketplaces, which this Court has already held are relevant to Nike's allegation that StockX has acted willfully. *See Cengage Learning, Inc. v. Davis Textbooks*, No. 15-2401, 2016 WL 8730729, at *6 (E.D. Cal. Sept. 2, 2016) (compelling discovery of industry anti-counterfeiting standards as relevant to willfulness). On December 14, 2022, this Court directed Nike to produce

Nike has not complied with that order.



### C. Nike Has Withheld Directly Relevant Authentication Reports.



These reports are highly relevant to the threshold question of whether the products at issue are, in fact, counterfeit. *See* 15 U.S.C. § 1114(1)(a).

During the nearly eleven months of fact discovery, Nike has not produced ▮▮▮▮▮ ▮▮▮▮▮ It is unclear why Nike is hiding this information and whether that is because ▮▮▮▮▮ ▮▮▮▮▮. *See, e.g.,* Exhibit H (NIKE0025918). But StockX is entitled to a complete documentary record, including ▮▮▮▮▮



**II. Nike Inadequately Prepared Its 30(b)(6) Witnesses on Key Topics.**

**A. Inadequate 30(b)(6) Testimony on Nike's Collaborations with StockX.**



### B. Inadequate 30(b)(6) Testimony on Nike's Authentication Process and Awareness of Counterfeits on Third-Party Marketplaces.

Nike's witness was not adequately prepared to testify on 30(b)(6) Topic Nos. 22, 23, and 28, which respectively addressed "Nike's process for identifying Counterfeit sneakers, including any known weaknesses, deficiencies, or gaps in that process, and any changes to that process over time,"; "[a]ll resources Nike consults to determine whether a product is a genuine Nike product, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and "Nike's knowledge of, and responses to, the sale of allegedly Counterfeit products bearing the Asserted Marks, including in secondary marketplaces."



Discovery should not be a guessing game or a connect-the-dots exercise. StockX was entitled to depose properly prepared witnesses who could provide Nike's knowledge on the 30(b)(6) topics that StockX proffered. Nike also should not be permitted to game the discovery process by withholding the important documents discussed above until after depositions take place, depriving StockX of the ability to question witnesses about them. StockX accordingly requests that the Court direct Nike to produce a properly prepared 30(b)(6) witness on Topic Nos. 22, 23, and 28, as well as all of Nike's belatedly produced relevant documents. To allow Nike to benefit from its delay in producing highly relevant material (that should have been produced months ago) and evade 30(b)(6) testimony on that material would only incentivize parties to engage in the kind of discovery gamesmanship that Nike has displayed in this case from the start.

There is a clear pattern here. Nike has withheld key, sensitive information until the very last moment possible—waiting until after depositions were completed to start to fill the significant gaps in its production of relevant and responsive documents. Even despite this Court's prior Order, Nike continues to withhold ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ StockX deserves a full and fair opportunity to defend against Nike's claims based on a complete record. Accordingly, as outlined above, Nike should be compelled to produce this highly relevant information.

Hon. Sarah Netburn                                6                                March 21, 2023

Respectfully submitted,

*/s/ Megan K. Bannigan*
Megan K. Bannigan

*Attachments*

cc        All counsel of record (via ECF)