# Exhibit F

Page 1

1            UNITED STATES DISTRICT COURT
2         FOR THE NORTHERN DISTRICT OF NEW YORK
3                       ---oOo---
4
5  NIKE, INC.,                  )
                                )
6           Plaintiff,          )
                                )
7  vs.                          )  No. 1:22-cv-00983-VEC
                                )
8  STOCKX LLC,                  )
                                )
9           Defendant.          )
   _____)
10
11
12        H I G H L Y   C O N F I D E N T I A L
13            OUTSIDE ATTORNEYS' EYES ONLY
14         VIDEOTAPED DEPOSITION OF JOHN LOPEZ
15              SAN FRANCISCO, CALIFORNIA
16             THURSDAY, FEBRUARY 23, 2023
17
18
19
20
21  STENOGRAPHICALLY REPORTED BY:
22  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
23  CSR LICENSE NO. 9830
24  JOB NO. 5688745
25

Page 289

1       MR. MILLER:  Q.  Did you speak to Mr. Amidon
2  about the products that Mr. Kim was going to return to
3  StockX?
4       A   No, I did not.
5       Q   Did you receive the products that Mr. Kim
6  returned to StockX?
7       A   Once they were returned, yes, I did review
8  them.
9       Q   So you received them?
10      A   The Tempe authentication center did receive
11 them.
12      Q   Okay.  And you reviewed them personally?
13      A   Once they were received, yes.
14      Q   Did anyone else at the company review them
15 once they were received?
16      A   Yes.
17          MR. FORD:  Yeah, just a yes-or-no answer.
18          And just pause with these just so that I
19 can...
20          MR. MILLER:  Q.  Who else at the company
21 reviewed them once they were received?
22      A   From my understanding, it was Abe, our
23 operations manager in Tempe, and Alfredo Soto, our
24 team lead in Tempe, Arizona.
25      Q   And what did Abe, the operations manager,

1  review Mr. Kim's returned products for?
2          MR. FORD:  So I'm going to direct the witness
3  not to answer that, because the investigation that was
4  conducted of these products was done after we received
5  a letter from Nike about them, and it was conducted at
6  the direction of counsel.
7          MR. MILLER:  Q.  What did Mr. Soto review
8  Mr. Kim's products for?
9          MR. FORD:  I'm going to give the same
10 direction to the witness not to answer.
11         MR. MILLER:  Q.  Did you authenticate
12 products that Mr. Kim returned once they were
13 received?
14         MR. FORD:  You can give a yes-or-no answer to
15 the question.
16         THE WITNESS:  Yes, I did.
17         MR. MILLER:  Q.  And what was your findings?
18         MR. FORD:  And I'm going to direct the
19 witness not to answer, because the investigation that
20 was conducted into these documents was done at the
21 direction of counsel.
22         Sorry.  By "documents," I mean products.
23 Force of habit.
24         MR. MILLER:  Just to be clear that I
25 understand your position, Counsel, is that the

1   authentication that was done by Mr. Lopez once these
2   products were received is covered by privilege?
3           MR. FORD:  My position is that the answers to
4   questions about the work that was -- the substantive
5   work that was done within the company regarding these
6   products, which were the subject of a letter we
7   received from -- I believe it was Tamar, prior to
8   receiving any of them back, was done at the direction
9   of counsel and is work product.
10          MR. MILLER:  I'm not sure if I agree with
11  that.  And that might be an issue that we'll have to
12  take up outside of this deposition.
13          But I'm going to ask a few more questions of
14  the witness.
15      Q   Mr. Lopez -- Mr. Lopez, did you reach a
16  conclusion when you authenticated the shoes that
17  Mr. Kim returned to StockX?
18          MR. FORD:  I'm again going to direct the
19  witness not to answer anything about the investigation
20  that he and others within the company conducted at the
21  direction of counsel.
22          MR. MILLER:  That's a yes-or-no question
23  about whether he did reach a conclusion.  I'm not
24  asking for the substance of it.
25      Q   Can you answer that question, sir?

Page 292

1      MR. FORD:  I'll -- if you can answer that
2  question yes, no, or I don't know, did you reach a
3  conclusion, I'll -- you can answer that.
4      THE WITNESS:  Yes.
5      MR. MILLER:  Q.  And did you communicate that
6  conclusion to someone?
7      That's a yes or a no as well.
8      MR. FORD:  Yeah.  Again, yes, no, I don't
9  know, I don't remember, whatever.
10     THE WITNESS:  Yes.
11     MR. FORD:  Nothing more than that.
12     MR. MILLER:  Q.  And to whom did you
13  communicate your conclusions to?
14     MR. FORD:  Just the name, or multiple names
15  if there were multiple people.
16     THE WITNESS:  Abe and Alfredo.
17     MR. MILLER:  Q.  You didn't communicate the
18  conclusions of your authentication of Mr. Kim's
19  products to counsel?
20   A   No.
21     MR. MILLER:  I would like to go off the
22  record for a moment, please.
23     THE VIDEOGRAPHER:  We are off the record at
24  6:38 p.m.
25     (Recess taken.)

Page 293

1           THE VIDEOGRAPHER:  We are back on the record
2     at 6:47 p.m.
3           MR. MILLER:  Q.  Mr. Lopez, were the results
4     of your re-authentication of Mr. Kim's returned shoes
5     different than the results of StockX's original
6     authentication of those same shoes?
7           MR. FORD:  I'm again going to direct the
8     witness not to answer the substance of information or
9     the substance of the results of his investigation that
10    was conducted at the direction of counsel.
11          MR. MILLER:  Okay.  Counsel, we strongly
12    disagree that the substance of the results of
13    Mr. Lopez's re-authentication of those shoes are
14    covered by any privilege, work product or otherwise.
15    They're simply a fact.
16          And if you're going to stand on that
17    objection, we will hold this deposition open and
18    reserve the right to recall Mr. Lopez after we take
19    this issue to the court for resolution.
20          MR. FORD:  So I disagree with your
21    characterization of this as a fact.  As I think he's
22    told you throughout, it's a subjective process.  And
23    he had opinions that were conveyed that are work
24    product.
25          We got a letter from you, identi- -- from you

Page 294

1  or Tamar, identifying the substance of these products
2  as covered by your claims and something that you were
3  asking us to preserve and all of that.
4           The investigation that was conducted at the
5  company was privileged.  It was done at the direction
6  of in-house and outside counsel.  And the substance of
7  that investigation, even if it involved individual
8  nonlegal employees, was privileged as well.
9           So I'm going to stand on the direction.  And
10 you can continue asking questions if you want to.
11          MR. MILLER:  Okay.  I disagree.  As I said,
12 we are going to reserve the right to recall Mr. Lopez
13 and get those questions answered.  They are absolutely
14 not privileged.  The products are evidence in this
15 case.  They were the subject of an investigation done
16 by Nike.  And the facts related to Mr. Lopez's
17 re-authentication of them are certainly not
18 privileged.
19          MR. FORD:  If you want to ask him about those
20 facts, you are welcome to.  You have the time
21 remaining --
22          MR. MILLER:  I --
23          MR. FORD:  -- in your deposition.
24          MR. MILLER:  I just did, and you objected.
25          MR. FORD:  You did not.  What was the facts

Page 295

1   that you were asking for?
2          MR. MILLER:  I'm asking --
3          MR. FORD:  Substance --
4          MR. MILLER:  -- about the results --
5          MR. FORD:  -- of the results --
6          STENOGRAPHIC REPORTER:  Okay.  One at a time.
7          MR. FORD:  I'm sorry.
8          You were asking him about the substance of
9   the results of the process that he conducted.
10  That's -- that's his opinion as it was communicated,
11  and that's not a fact.
12         MR. MILLER:  His --
13         MR. FORD:  If you want to ask him about
14  facts, you have -- you have the time.
15         MR. MILLER:  Q.  Mr. Lopez, what was the
16  conclusion of your re-authentication of Mr. Kim's
17  shoes that he returned to StockX?
18         MR. FORD:  Again, I'm going to direct the
19  witness not to answer what his conclusions were that
20  were the result of a privileged investigation.
21         MR. MILLER:  Q.  Mr. Lo- --
22         I disagree, but I'm not going to go over it
23  again.
24      Q   Mr. Lopez, did you agree with the original
25  authentication determination that was done on

Page 296

1   Mr. Kim's shoes?
2           MR. FORD:  Again, I'm going to direct the
3   witness not to answer about what his conclusions were,
4   what his beliefs were as -- during the course of a
5   privileged investigation that was done at the
6   direction of counsel.
7           MR. MILLER:  Okay.  Well, clearly, you are
8   obstructing on answering facts.  His opinion, as
9   you're calling it, about whether the shoes are
10  authentic or not is a fact.  And so we'll just have to
11  take this up with the court.
12          And as long as that's the case, I'm done with
13  my questions, subject to any redirect.
14          MR. FORD:  Okay.
15
16                    EXAMINATION
17  BY MR. FORD:
18      Q   Mr. Lopez, you have a stack of documents in
19  front of you.  I think you've been putting them upside
20  down.  Do you want to turn that over for me --
21      A   Sure.
22      Q   -- just because it will be quicker.  And you
23  can find Exhibit 2.
24          So much earlier today, Mr. Miller asked you a
25  couple of questions about this document.