

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

August 3, 2023
*VIA ECF*

The Honorable Sarah Netburn
United States District Court, SDNY
40 Foley Square, Room 219
New York, New York 10007

**Re:    *Nike, Inc. v. StockX LLC*, Case No. 1:22-cv-00983 VEC (S.D.N.Y.)**

**Dear Judge Netburn:**

Plaintiff Nike, Inc. ("Nike") respectfully submits this letter pursuant to this Court's Individual Practices in Civil Cases § II.C. to compel StockX LLC ("StockX") to produce a narrow subset of information related to ███████████████████████████████████████████ ███████. Nike first discovered this information on June 29, 2023 during StockX's continued 30(b)(6) deposition. This information is highly relevant to Nike's false advertising and counterfeit claims, and StockX's position on willfulness pertaining to those claims.

## I.      Background of the Parties' Dispute

Fact discovery formally closed on March 21, 2023 (Dkt. No. 131.) On April 26, 2023, following Nike's partial objections to this Court's March 23, 2023 order (Dkt. No. 148), Judge Caproni ordered StockX to produce documents related to the "conclusions reached by StockX when it investigated the authenticity of the shoes sold to Mr. Kim." (Dkt. No. 171.) Accordingly, on May 2, 2023, StockX made a production that included STX0806024, an excel spreadsheet containing information that appeared to pertain ████████████████████████████████████ ████████████████████████████████. The spreadsheet is dense and required interpretation by a StockX witness. (*See* Ex. 1, STX0806024.) For example, almost all of the ███████████ ████████████████████████████████ but Nike was not provided any information about what that meant. On May 24, StockX agreed to designate Mr. Huber as StockX's 30(b)(6) witness and make him available on June 29, 2023 in ███████████ to answer questions pertaining to StockX's May 2 production, including STX0806024. (*See* Ex. 2 at 1.)

During the deposition, Nike learned that the ████████████████ Mr. Kim's counterfeit sneakers identified as █████████████████ were in fact ██████████████████████████████ █████████████████████████ (*See* Ex. 3, (June 29, 2023 StockX 30(b)(6) Depo Tr. 42:2-43:13).) Mr. Huber testified that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. (*Id*. at 60:11-23.) When asked about ██████████████████████████████████████████████████████████████████████████ Mr. Huber testified that ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id*. at 43:14-23.) Mr. Huber explained that the basis for that belief was (1) ████

█████████████████████████████████████████████████████████
documented in STX0806024) and (2) that StockX "████████████
██████████████████████████████████████████.  (*Id*. at 43:24-44:8.)  However, to the
extent the ████████████████████████████████████, StockX's position that it has no
basis to believe that ████████████████████████████████████████████████  lacks
credibility.  To that end, Mr. Huber testified that ███████████████████████████████
████████████████████████.  (*Id*. at 62:25-63:18.)

Following this testimony, Nike requested on the record that StockX produce ████████████
████████████████████████████  (*Id*. at 63:19-23.)  The following then took place:

Q.     ███████████████████████████████████████████████
        ███████████████████████████████████████████████
        ██████████████████████████

THE WITNESS:     ██████████████████████████████████████

MR. FORD:     ██████████████

MS. DUVDEVANI:     ██████████████████████████████

MR. FORD:     ███████████████████████████████████████████
            ████████████████████████████████

MS. DUVDEVANI:     ██████████████████████████████

MR. FORD:     ███████████████████████████████████████████
            ████████████████████████████

(*See* Ex. 3, (June 29, 2023 StockX 30(b)(6) Depo Tr. 63:19-64:11).)

Nike followed up on this oral request by email on July 20 and again July 26, 2023.[1]  On July 31, 2023, the parties met and conferred but reached an impasse, with StockX objecting to producing the requested information only on the basis of timeliness.

---

[1] It is well accepted that an oral request for documents during a deposition is proper even in the absence of a written request, where, as is here, the party's request is "targeted and particularized based on information that the questioner learns of during the course of the deposition and that can be readily located by the deponent." *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr.* Co., 2017 WL 11810957, at *3 (S.D.N.Y. Dec. 26, 2017) (Netburn, M.J.); *see also Kara Holding Corp. v. Getty Petroleum Mktg., Inc*., 2002 WL 475125, at *5 (S.D.N.Y. Mar. 28, 2002) ("Plaintiff notes a number of documents that it requested formally at depositions. If those documents are within the control and possession of defendants, those documents should be produced to plaintiff."); *Jackson v. Novell, Inc*., 1995 WL 144802, at *1 (S.D.N.Y. Apr. 3, 1995) (same).

II.      **Nike's request for** ███████████████████████████████████
███████████████████████████████████ **is proper.**

   a. *Nike's Request is Timely in Light of StockX's Improper Withholding of Relevant Information Until After the Close of Discovery*

The decision to re-open discovery or to compel documents after the close of fact discovery is within the Court's discretion and can be ordered upon a finding of good cause. *Ciaramella v. Zucker,* 2021 WL 4206779, at *1 (S.D.N.Y. Aug. 10, 2021).  Good cause is determined by the diligence of the moving party as well as "1) the imminence of trial; 2) whether the request is opposed; 3) whether the moving party foresaw the need for additional discovery, in light of the discovery deadline set by the court; 4) prejudice to the non-moving party; and 5) whether further discovery is likely to lead to relevant evidence."  *Krawec v. Kiewit Constructors Inc.*, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013).  These factors weigh in Nike's favor.

   i.      *Nike did not have the opportunity to pursue relevant documents during the discovery period as a result of StockX's withholding of documents and subsequent belated document production.*

Nike was as diligent as it could have been in requesting the narrow subset of information pertaining to ██████████ identified on June 29, 2023.  Nike first requested information pertaining to the fake shoes sold to Roy Kim on July 25, 2022.  (*See* Dkt. No. 155 at 7.)  StockX lodged various objections, including by objecting to Nike's questions at the February 23, 2023 deposition of StockX employee John Lopez pertaining to StockX's own conclusions about the Roy Kim shoes.  (*Id.* at 7.)  Nike then moved to compel the information after an unsuccessful meet and confer; the information was received only after Judge Caproni's April 26, 2023 order.  (Dkt. No. 171.)  Following StockX's May 2, 2023 production made pursuant to the April 26 order, Nike promptly sought a deposition in order to question a StockX witness about the production. (*See* Ex. 2 at 7-8.)  After some back and forth, on May 24 StockX ultimately agreed to make Mr. Huber available for a 3-hour deposition on June 29, 2023; Nike immediately accepted the date.  (*See generally id.*)  It was only at the June 29, 2023 deposition that Nike finally learned ██████████████████, spurring Nike to ask about ███████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

Courts in this Circuit routinely find that documents produced after the close of fact discovery merit a finding of "good cause" necessary to re-open discovery.  *See also Ciaramella*, 2021 WL 4206779, at *1 ("Courts may reopen discovery for depositions concerning documents that were produced after the close of fact discovery."); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.,* 328 F.R.D. 100, 125 (S.D.N.Y. 2018) ("The Court also finds that reopening discovery at Plaintiffs' expense is appropriate to allow Defendants to obtain additional discovery regarding the newly produced documents."); *Scantibodies Lab'y, Inc. v. Church & Dwight Co.,* 2016 WL 11271874, at *29 (S.D.N.Y. Nov. 4, 2016), report and recommendation adopted, 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017);  (permitting depositions and follow-up requests pertaining to documents produced after discovery closed).

Where a party has produced relevant documents and a witness for deposition after discovery closes, courts have found that "that a witness, at deposition, may identify relevant documents not

previously produced, and that [the taking party] should then be permitted to make a follow-up request for such documents." *Scantibodies Lab'y, Inc.,* 2016 WL 11271874, at \*39.  Nike too should be permitted to make a routine follow-up request for additional information regarding newly adduced deposition testimony.  Given the belated disclosure of the Roy Kim information, Nike "did not have adequate opportunity to seek the information presently at issue prior to the close of discovery." *Genova v. City of Glen Cove*, 2015 WL 6143718, at \*3 (E.D.N.Y. Oct. 19, 2015) ("good cause exists to reopen discovery and allow [requesting party] to inquire further…"). This factor thus favors Nike.

> ### ii.    A trial date is not imminent.

There is no dispute that trial is not imminent as no trial date has been set. *See Pharmacy, Inc. v. Am. Pharm. Partners, Inc*., 2008 WL 4415263, at \*4 (E.D.N.Y. Sept. 24, 2008) (trial not imminent where no trial date had been set). This factor also favors Nike.

> ### iii.    StockX's opposition to Nike's request is baseless.

Although StockX opposes Nike's motion to compel, its sole basis is that the request is untimely. However, as explained above, Nike was unable to request documents during the discovery period related to ███████████████████████████ because this fact was unknown to Nike until June 29, 2023.  StockX's "attempt to shift blame to [Nike] for not requesting documents regarding an entity that, during the discovery period, [StockX] never identified as relevant…is nonsensical." *Scantibodies Lab'y, Inc.,* 2016 WL 11271874, at \*29.  The information that Nike seeks is narrow, highly relevant, and StockX has not claimed that it would be burdensome to produce.  Its opposition should therefore carry little weight.

> ### iv.    Nike could not have foreseen the need for this discovery.



StockX did not produce information during the discovery period identifying ██████████ ██████████████████, let alone ████████████████████████████ This information was improperly withheld and produced only after a court order and after the close of fact discovery.  On June 29, during Mr. Huber's deposition regarding StockX's belated production, Nike first learned ██████████████████████████████████████████████████ and, promptly requested additional information on the record (Ex. 3, (June 29, 2023 StockX 30(b)(6) Depo Tr. at 42:2-43:13; 63:19-23).)

StockX has asserted during the parties' communications that Nike was aware that StockX maintained ████████ and should have therefore requested it during discovery.  That Nike knew generally that Mr. Kim's purchases █████████████████ does not negate that prior to June 29, Nike had no way of knowing that █████████████████████████████████████ ██████████████████████████."[2]

---

[2] StockX argued to Nike that it previously produced information regarding ██████████ ██████████████████████████, but the only document it cited shows the opposite. (*See* Ex. 4, (Amidon Dep. Ex. 7 (STX0772981 (describing ██████████████████

StockX's position that Nike should have acted with more diligence rings particularly hollow given multiple document requests propounded by Nike during discovery seeking the source of counterfeit "Nike" goods sold on its platform. (*See e.g.,* Ex. 5 (Nike's Request No. 229 (seeking "[d]ocuments sufficient to show the source (i.e., seller of the product that was authenticated by StockX and shipped to the end customer) of each counterfeit Nike product, known or unknown to be counterfeit at the time of shipment, sold on the StockX Website or StockX App."); Nike's Request No. 230 (seeking "[d]ocuments sufficient to show the source (i.e., seller of the product that was authenticated by StockX and shipped to the end customer) of each Nike product sold on the StockX Website or StockX App that were returned because the Nike product was claimed to be counterfeit.")))  This factor thus favors Nike.

> *v.      StockX will not be prejudiced by Nike's narrow and limited request.*

StockX has not asserted any undue burden associated with Nike's request, and any prejudice to StockX would be minimal given the narrow scope of Nike's request, which is limited to ███████ ████████████████████████████████████████████████████████████████ █████████████ Mr. Huber testified that █████ ██████████. (Ex. 3, (June 29, 2023 Huber Depo Tr. at 63:5-18).)  This factor also favors Nike.

> *vi.      This discovery will lead to highly relevant evidence.*

StockX claims that it cannot be considered a "willful" counterfeiter because of its rigorous authentication standards.  StockX has also denied that its statements pertaining to 100% authenticity are false.  Yet there is no dispute that StockX's authenticators ██████████ █████. StockX has also recently admitted that ████████████████████████ ████ while at the same time claiming that ███████████████████████████ ████████████████████████████████████████████████████

To the extent ████████████████████████████████████████████████████ ████████████████████████████████████████████████—just like the ones that were sold to Mr. Kim—████████████████████████████████████████████████ ████████████████████████████████. Moreover, ████████████████████ ████████████ that fact would be powerful evidence demonstrating that StockX (1) sold far more fake Nike shoes than it claims, and (2) cannot accurately authenticate products despite its many advertising claims.  As such, ██████████████████████ ███████ is highly relevant to multiple claims and defenses in this case.

This factor heavily weighs in Nike's favor.

For the reasons set forth above, the Court should grant Nike's motion to compel.

---

████████████████████████████████████████████████████████████)) Nor does this document contain any of the context provided by Mr. Huber, including that StockX identified a ███████

Respectfully submitted,

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*


cc: Counsel of Record via ECF