# Exhibit G

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STOCKX LLC, <br><br> Defendant. | Civil Action No.: 1:22-cv-00983-VEC |

**PLAINTIFF NIKE, INC.'S NOTICE OF RULE 30(b)(6)**
**DEPOSITION TO STOCKX LLC**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Nike, Inc. ("Nike"), by and through its counsel, will take the deposition upon oral examination of Defendant StockX LLC ("StockX"), on date(s) and time(s) to be mutually agreed upon by the parties, regarding the subject matter described in the Deposition Topics set forth in **Attachment A** hereto.  The deposition will be held in person at the offices of Veritext Legal Solutions, 175 Cass Ave., Mount Clemens, MI 48043 before an officer duly authorized to administer oaths, and it will be recorded by stenographic means and/or audio-visual means.  The deposition will continue day to day, excluding Saturdays, Sundays, and holidays, until completed.  The deposition will be taken for the purposes of discovery, for use in the present suit, for use at trial or a hearing in this case, and for any other purpose permitted under the Federal Rules of Civil Procedure.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, StockX is directed to designate and produce a competent representative to testify on its behalf regarding the information known or reasonably available to StockX concerning the Deposition Topics set forth in **Attachment A**.  Nike requests that StockX provide the names and titles of the person or persons

they will designate to give testimony and note in advance the Deposition Topic(s) on which each designated person will give testimony at least three days in advance of the deposition.

| | |
|---|---|
| Date: October 18, 2022 | By: */s/ Tamar Y. Duvdevani* |

**DLA PIPER LLP (US)**

Tamar Y. Duvdevani
Marc E. Miller
Andrew J. Peck
Jared Greenfield
1251 Avenue of The Americas, 27th Fl.
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Michael Fluhr
555 Mission Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 836-2500
Facsimile: (415) 836-2501

Melissa Reinckens
401 B Street, Suite 1700
San Diego, CA 92101
melissa.reinckens@us.dlapiper.com

Jane W. Wise
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4149
Facsimile: (202) 863-7849

*Attorneys for Plaintiff Nike, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 18, 2022, I served a copy of Nike, Inc.'s Notice of Rule 30(b)(6) Deposition to StockX on all counsel of record for Defendant StockX LLC via email:

Megan K. Bannigan - mkbannigan@debevoise.com
David H. Bernstein - dhbernstein@debevoise.com
Chris S. Ford - csford@debevoise.com
Jyotin Hamid - jhamid@debevoise.com
Justin Ferrone - jcferrone@debevoise.com
Kathryn C. Saba - ksaba@debevoise.com
David Mayberry - DMayberry@kilpatricktownsend.com
Rob Potter - RPotter@kilpatricktownsend.com
Jeffrey Morganroth - jmorganroth@morganrothlaw.com


      BY: */s/ Marc E. Miller*

## SCHEDULE A

## DEFINITIONS

1. "StockX" as used herein refers to Defendant StockX LLC, its officers and employees.

2. "Nike" as used herein refers to Plaintiff Nike, Inc.

3. The term "concerning" shall mean all documents which explicitly or implicitly, in whole or in part, concern, constitute, were received in conjunction with, or were generated as a result of the subject matter of the request, including all documents which reflect, record, memorialize, discuss, describe, consider, constitute, embody, evaluate, analyze, review, report on, comment on, impinge upon or impact the subject matter of the request.

4. "Communication" means any contact between any two or more persons or entities and shall include, but not be limited to, written contacts by such means as letters, memoranda, notes, e-mail, instant message, direct message, and reports and oral contacts by such means as face-to-face meetings and telephone conversations.

5. The terms "You" and "Your" shall include whomever is involved in responding to these Requests, in part or in whole, including StockX (as defined above) and StockX's counsel.

6. "Action" means *Nike, Inc. v. StockX LLC*, Civ. No. 1:22-cv-00983-VEC, United States District Court for the Southern District of New York.

7. "FAC" means the operative First Amended Complaint filed by Nike in this Action. (ECF No. 39.)

8. "Nike Product" means and refers to any physical, tangible good designed, produced, manufactured, distributed, marketed, sold, and/or offered for sale by Nike, including without limitation apparel and footwear goods bearing Nike's Trademarks.

9. "Nike Trademark" means and refers to Nike's registered and unregistered trademarks and service marks, including without limitation those referenced in Paragraph 31 of the FAC. (ECF No. 39.)

10. "NFT" or "non-fungible token" means and refers to an indivisible and uniquely identifiable blockchain-based asset.

11. "Vault NFT" means and refers to a non-fungible token advertised, marketed, promoted, offered for sale, sold, and/or traded on the StockX Website and/or StockX App under the "Vault NFT" designation, including without limitation the Vault NFTs listed on the "Collect What's Next" page on the StockX website, currently located at https://stockx.com/lp/nfts/.

12. "Vault NFT business" means and refers to StockX's commercial activities concerning and surrounding the creation, design, engineering, coding, development, minting, advertising, marketing, promotion, offering for sale, and sale of Vault NFTs.

13. The term "individuals affiliated with StockX" shall mean any employees or officers of StockX, as well as any third parties or independent contractors retained by StockX that assisted StockX with its Vault NFT business.

14. "Vault" means and refers to the "brand new, climate-controlled, high-security vaults inside StockX facilities" described on the "Collect What's Next" page on the StockX website (currently located at https://stockx.com/lp/nfts/) and referenced throughout the "Vault Terms" section of StockX Terms and Conditions of Use (currently located at https://stockx.com/terms) and "About Vault NFTs" section of the StockX NFT FAQs (currently located at https://stockx.com/help/articles/StockX-NFT-FAQs).

15. "StockX Website" means and refers to the website StockX owns and operates, currently located at https://stockx.com.

16. "StockX App" means and refers to the "StockX – Access the Now" mobile application for iOS and Android that StockX owns and operates, and makes available for download from the Apple App Store, currently located at https://apps.apple.com/us/app/stockx-access-the-now/id881599819, and Google Play Store, currently located at https://play.google.com/store/apps/details?id=com.stockx.stockx&hl=en_US&gl=US.

17. "Advertisement," "Advertisements," or "Advertising" mean any and all Documents used in marketing, sales, or promotion, including without limitation website pages, social media posts, brochures, television spots, radio broadcasts, collateral materials, direct mail, fact sheets, flyers, in-store displays, in-store presentations, journal ads, package inserts, price sheets, product labeling, product packaging, press releases, rebate and sales offers, sales sheets, sample offers, specification sheets, and trade show displays and exhibits.

18. "Advertising Claims" means and refers to StockX's claims, statements, representations, and Advertisements concerning its purported authentication and/or verification of products, including without limitation the claims, statements, representations, and Advertisements referenced in Paragraphs 50-53, 110, and 172 of the FAC including without limitation: (1) "100% Verified Authentic"; (2) "Every item sold goes through our proprietary multi-step verification process with our team of expert authenticators"; (3) StockX's authentication process uses "100+ data points"; (4) StockX "authenticators are better equipped than anyone to ensure a product's authenticity"; (5) "StockX's "multi-step verification process"; (6) StockX's "proprietary" authentication process; (7) "Guaranteed Authenticity" as related to products sold on the StockX Website and the StockX App; (8) StockX's authentication process uses "Advanced Technology"; (9) StockX's authentication process uses "Quality Assurance"; (10) StockX's "99.96% authentication accuracy rate"; (11) "Always Authentic, Never Fake"; (12) "Guaranteed

Authenticity. Every item. Every time. Shop on StockX with complete confidence knowing every purchase is Verified Authentic."; and (13) "A final check in our authentication practice, our QA experts ensure nothing slips through the cracks." (ECF No. 39.)

19. "Authentication process" means and refers to StockX's polic(ies), procedure(s), and/or process(es) of authentication and/or verification that it takes to determine whether products are genuine and not counterfeit, including without limitation the measures currently and previously referenced on the Authentication section of StockX's Website (previously located at https://stockx.com/about/authentication/ and now currently located at https://stockx.com/about/verification/).

## DEPOSITION TOPICS

1. Your organizational structure.

2. Your knowledge of the Nike Trademarks and sale or offering for sale of Nike Products.

3. Your use of Nike Trademarks and imagery in connection with the sale, distribution, and Advertising of the Vault NFT business.

4. Your selection and design of the imagery, description, and pricing for the Vault NFTs using the Nike Trademarks.

5. Your design of the Vault NFTs.

6. Your past, current, and future business plans for the marketing and sale of Vault NFTs, or other NFT and Virtual products, using any of Nike's Trademarks.

7. All facts and circumstances of which You are aware concerning all instances of actual, possible or alleged confusion or mistake of origin, source, sponsorship, or affiliation concerning Your use of Nike Trademarks in connection with the Vault NFT business.

8. The channels of trade through which You have offered, currently offer or plan to offer Vault NFTs using the Nike Trademarks.

9. The channels of advertising, including social media and Discord, through which You promoted, marketed, Advertised, offered, currently offer or plan to offer Vault NFTs using the Nike Trademarks.

10. Your consumer demographics and Your target market(s) for the Vault NFTs using the Nike Trademarks.

11. Your Advertising, marketing, and promotional expenditures concerning the Vault NFTs, including without limitation the dollar amounts expended on promoting and Advertising each of the Vault NFTs using the Nike Trademarks.

12. Benefits, including product giveaways and promotional giveaways, offered by You in connection with the sale or ownership of Vault NFTs.

13. Your representations and communications to the public, investors and/or potential investors concerning Your: Vault NFTs; NFTs/Virtual goods business; authentication processes; Advertising Claims; the sale of genuine or counterfeit Nike products on the StockX Website or StockX App; and this litigation.

14. Your competitors for (a) the sale of Vault NFTs and (b) the resale of Nike Products.

15. Your analysis, clearance, and decision-making concerning the permissibility of Your use of third-party intellectual property in connection with the marketing and sale of goods on your platform, including NFTs.

16. Any communications between You and third parties concerning Your use of their intellectual property in connection with Your sale of NFTs or future plans to sell NFTs, including but not limited to Vault NFTs.

17. Your sourcing of Nike Products for sale on the StockX Website and the StockX App in general and for placement in the Vault, including without limitation any efforts You take to determine whether products bearing the Nike Trademarks are genuine and not counterfeit.

18. Your design and location of the Vault, including any decision-making behind such design and location.

19. The factual basis underlying Your first sale defense asserted in Your Answer.

20. The factual basis underlying Your nominative fair use defense asserted in Your Answer.

21. Your Advertising containing the Advertising Claims in the U.S., including: (a) the forms and media for all such Advertising; (b) the dates of such Advertising; (c) the geographic area(s) in which the Advertising appeared; (d) the targeted audience(s) for such Advertising; (e) the Advertising agencies retained by or on behalf of You in connection with the Advertising Claims, including the dates of such retention; and (f) the Persons at each such advertising agency responsible for such Advertising.

22. Your analysis and decision-making concerning changes to Your Advertising Claims since this Action was filed.

23. Your knowledge of whether and to what extent consumers rely on the Advertising Claims when making purchasing decisions on the StockX Website and the StockX App and other factors considered by Your customers or potential customers when making purchasing decisions.

24. Your communications with third parties, including without limitation communications with customers and potential customers, concerning Your Advertisements or the Advertising Claims. Such communications include without limitation all third-party comments, feedback, opinions or complaints concerning the quality of the products that have undergone Your authentication process, including any communications that were received via any sales support, customer support, technical support hotline, email address(es), or other media maintained by You or on behalf of You.

25. Your communications with third parties, including without limitation communications with customers and potential customers, concerning counterfeit goods sold or offered for sale by You, the facts and circumstances surrounding such communications, and Your response thereto.

26. Your polic(ies), procedure(s), and/or process(es) for goods that undergo Your authentication process and are sold or offered for sale by You.

27. The research and development process for the process to identify authentic, non-counterfeit products underlying the Advertising Claims, including without limitation any work, research, tests, experiments or studies, whether contemplated, planned, complete, incomplete, or prematurely terminated or other facts You relied on to substantiate any express or implied claim in the Advertising Claims.

28. Your knowledge of counterfeit goods acquired, offered for sale, sold, or shipped to consumers through the StockX Website and the StockX App.

29. Your efforts to combat the sale of counterfeit goods on the StockX Website and the StockX app, including policies related to sellers who attempt to sell counterfeit goods on the StockX Website and the StockX app.

30. Your knowledge of counterfeit products that pass Your process to identify authentic, non-counterfeit products, including counterfeit products returned to You and the polic(ies), procedure(s), and/or process(es), including (1) any differences in Your polic(ies), procedure(s), and/or process(es) between the authentication process You use for an initial sale and a returned product and (2) any changes You have made since Nike filed this Action.

31. Any report or other analysis concerning the number of counterfeit products that are incorrectly authenticated by You and subsequently shipped to consumers.

32. Communications with and concerning Your customer Roy Kim concerning his allegation of the receipt of counterfeit goods from You.

33. Communications with and concerning Zadeh Kicks LLC and its principles or employees concerning the receipt of counterfeit goods from You.

34. The factual basis for Your claim that estoppel, acquiescence, or "undue delay" limit or prevent Nike from pursuing any of its claims.

35. Your monthly domestic volume of sales to date (a) in units and (b) in U.S. dollars, of each of the Nike-branded Vault NFTs.

36. The revenue, sales, costs of goods sold, and profitability for each Nike-branded Vault NFT, including any premium at which the Vault NFT sold over the cost to acquire the physical Nike product for the Vault.

37. The source and amount of all revenues, cost of goods sold, gross profits, operating expenses, and operating income earned by You for Nike Products on a quarterly basis since January 1, 2020.

38. The quantity or unit sales, price, commissions, returns, discounts, and Your revenues by transaction for Nike Products sold on the StockX Website or StockX App.

39. Your monthly domestic volume of sales to date (a) in units and (b) in U.S. dollars, of the authenticated Nike Products sold by You.

40. Any revenues for Nike Products sold by You directly or indirectly derived from Your use, advertisement, marketing, and/or promotion of the Advertising Claims, and the costs associated with marketing the Advertising Claims.

41. Your financial statements, costs, expenses, revenues, and profits associated with the marketing and sale of Nike products on the StockX Website and the StockX App, including how You document that revenue and profit such as ledgers and receipts.

42. Your responses to each and every one of Nike's Interrogatories to You, including the identity of each person who provided information relevant to such responses and the information provided by such persons.

43. To the extent You intend to rely on advice or opinion of counsel to support any of Your defenses, the substance of Your communications with counsel.