# Exhibit 02

Redacted Public Version

Nike, Inc.

v.

StockX LLC


Case No. 1:22-cv-000983-VEC



Expert Rebuttal Report of John L. Hansen



TM Financial Forensics, LLC
June 2, 2023



_____

John L. Hansen


HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

I.     **INTRODUCTION**......................................................................................................... **2**

   A.  Retention, Assignment, and Assumptions .......................................................... 2

   B.  Information Considered ....................................................................................... 3

II.   **SUMMARY OF THE VIGIL REPORT**....................................................................... **4**

III. **REBUTTAL OPINIONS TO THE VIGIL REPORT** ................................................ **5**

   A.  Responses to Dr. Vigil's Opinions.......................................................................... 5

   1.   Dr. Vigil's Opinion That There Is No Evidence of Material Harm from StockX's Trading of Vault NFTs Is Irrelevant ................................................................................................ 5

   2.   Dr. Vigil's Opinions That Nike Has Not Been Harmed Do Not Cause Me To Change Any Of The Opinions I Offered In My Amended Opening Report .................................................... 6

   B.  Responses to Dr. Vigil's Opinions Regarding StockX's Profitability and Factors that Contribute to StockX's Popularity ................................................................................ 6

   1.   StockX's Overall Company Profitability is Not a Proper Analysis of Deductible Costs for Disgorgement ................................................................................................................ 7

   2.   Dr. Vigil's Opinions on Other Factors that Allegedly Contribute to StockX's Popularity are Flawed, Misleading and Not a Profit Apportionment Analysis ......................................... 10

   C.  The Opinions in My Amended Opening Report Remain Unchanged .............................. 12

   D.  Pre-Judgment Interest .......................................................................................... 14

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

## I.  **INTRODUCTION**

1.  I submitted the Expert Report of John L. Hansen dated May 5, 2023 ("Opening Report"). After receiving updated financial disclosures from StockX, I submitted the First Amended Expert Report of John L. Hansen dated May 30, 2023 ("Amended Opening Report"), which incorporated StockX's updated financial disclosures and superseded the Opening Report.

2.  I incorporate herein my opinions, analysis and support relied on in my Amended Opening Report, and this Expert Rebuttal Report should be used in conjunction with my Amended Opening Report and its accompanying attachments.  Where I have defined terms in the Amended Opening Report, I adopt the same definitions in this Rebuttal Report. Additionally, my Amended Opening Report including background information regarding Nike, StockX, StockX's authentication claims and false advertising, and StockX's sales of Nike and Jordan branded products.[1]

3.  My curriculum vitae, including publications during the last ten years, is included as **Attachment 1** to my Amended Opening Report.  The current listing of cases in which I have testified as an expert witness at trial, arbitration, and/or deposition in the last four years is included as **Attachment 2.U** to my Amended Opening Report.  My hourly billing rate on this matter is $650.  TMF's compensation is not dependent on the outcome of this matter.  TMF's work on this matter was performed by me or under my supervision.

### A.  **Retention, Assignment, and Assumptions**

4.  I incorporate the scope of my Retention, Assignment and Assumptions from my Amended Opening Report.  I have now been asked to respond to certain of  the opinions contained in the Expert Report of Robert L. Vigil, Ph.D. submitted on May 5, 2023 (the "Vigil Report"), and because the Vigil Report offered contrary opinions to the ones I submitted in my Amended Opening Report concerning harm and the analysis of StockX's profits, I was also asked to evaluate whether Dr. Vigil's opinions caused me to change any of the

---

[1] Amended Opening Report.

opinions I offered in my Amended Opening Report. I understand that other expert reports are rebutting specific portions of the Vigil Report.

### B. Information Considered

5. **Attachment 3.U.U** to this Rebuttal Report contains a list of various documents, data, and other information considered in forming my opinions in this matter. I have also considered the applicable legal and accounting principles supporting a disgorgement award. **Attachment 3.U.U** to this Rebuttal Report updates **Attachment 3.U** to add additional documents and information received and considered in forming my opinions in this Rebuttal Report. Select pages of the documents and information listed in **Attachment 3.U.U** may be used as exhibits to summarize or support my opinions. Additionally, I may prepare graphical or illustrative exhibits to use at trial based on the documents and information relied upon and my analysis of those documents and information.

6. The opinions in this Rebuttal Report are based on currently available information. If representatives of Nike, StockX, third parties, and/or experts retained on behalf of the StockX present additional information, then my opinions and conclusions may be supplemented, amended, or revised.

7. I expect to offer testimony at trial regarding the opinions described within this Rebuttal Report. I may also be asked to testify in response to any rebuttal testimony offered by StockX, including the methodology for calculating damages used by StockX's damages expert.

8. TMF received and executed a copy of the protective order in this matter. Some of the documents considered have been designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY" pursuant to the protective order. Accordingly, I understand that portions of this Rebuttal Report and Attachments may be designated as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY."

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

## II.    SUMMARY OF THE VIGIL REPORT

9.    Dr. Vigil was "asked to examine 1) the extent to which Nike has suffered harm due to StockX's alleged false advertising, and 2) the extent to which StockX has profited from its alleged false advertising."[2]

10.   As to "the extent to which Nike has suffered harm due to StockX's alleged false advertising," Dr. Vigil opines ███████████████████████████████████ ██████████████████████████████████[3] Dr. Vigil further claims that evidence suggests that Nike has not been "materially" harmed because (1) "Nike and StockX generally are not direct competitors"; (2) "There is no evidence of diverted sales or other material harm to Nike"; and (3) "Nike has benefited from StockX's platform and actions."[4]

11.   With respect to StockX's profits from its false advertising, Dr. Vigil opines ██████ ████████████████████████████████████████████████ ████████████████████████████ Dr. Vigil analyzed StockX's companywide operating profit from Q1 2020 through Q3 2022 and determined that ████████████████████████████████████████████████████ ██████ Based on these calculations of StockX's total companywide profitability, Dr. Vigil concludes that "██████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████[7]

12.   Dr. Vigil then opines that numerous factors have contributed to StockX's popularity that are unrelated to the allegations in this case.[8] Dr. Vigil claims that in addition to authentication, "other variables [that] similarly factor into the consumer purchase

---

[2] Vigil Report: ¶1.
[3] Vigil Report: ¶¶3, 35-38.
[4] Vigil Report: ¶¶4-7, Section III.D.
[5] Vigil Report: ¶¶8, 81.
[6] Vigil Report: ¶¶82-83, Figure 1, Figure 2, Figure 3
[7] Vigil Report: ¶84.
[8] Vigil Report: Section IV.C

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

4

decision making process" are speed of delivery, scarcity of the product, and value for the price.[9]

13.   My rebuttals to Dr. Vigil's opinions are discussed below.

## III.   REBUTTAL OPINIONS TO THE VIGIL REPORT

### A.   Responses to Dr. Vigil's Opinions

14.   I respond to certain of Dr. Vigil's opinions regarding harm to Nike in the following sections of this Rebuttal Report.   Where I do not specifically address an opinion or contention of Dr. Vigil does not mean that I agree.   I find much of Dr. Vigil's report not relevant to the allegations underlying Nike's claims for false advertising and counterfeiting.

### 1.   Dr. Vigil's Opinion That There Is No Evidence of Material Harm from StockX's Trading of Vault NFTs Is Irrelevant

15.   In Section III.C.1 of the Vigil Report, Dr. Vigil opines that there is no evidence of "material" harm from StockX's trading of Vault NFTs.[10]   I do not express an opinion on whether Nike was harmed by StockX's trading of Vault NFTs.   However, I understand that a plaintiff in a trademark lawsuit is not required to prove "material harm" to establish liability, and that irreparable injury is presumed to flow from a showing of a likelihood of confusion.[11]   Therefore, because I understand that Nike seeks only injunctive relief in connection with StockX's sale of Vault NFTs,[12] Dr. Vigil's opinion in Section III.C.1. is irrelevant to Nike's claim.

---

[9] Vigil Report: ¶90.
[10] Vigil Report: ¶¶30-34.
[11] 15 USC Sec. 1116(a) (as amended by the Trademark Modernization Act, 2020) provides "A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order." *See also*, *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd*., No. 17 CIV. 4259 (LLS), 2022 WL 4093752, at *11 (S.D.N.Y. Sept. 7, 2022); *Kelly Toys Holdings, LLC v. alialialiLL Store*, No. 21CV8434AKHRWL, 2022 WL 1948311, at *7 (S.D.N.Y. May 19, 2022)
[12] Amended Opening Report: footnote 2, 121; First Amended Complaint: pp. 68-69.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

### 2. Dr. Vigil's Opinions That Nike Has Not Been Harmed Do Not Cause Me To Change Any Of The Opinions I Offered In My Amended Opening Report

16. In Sections III.C.2 and III.D of the Vigil Report, Dr. Vigil opines that Nike has provided no evidence of "material" harm, and then addresses purported "evidence" that Nike has not been materially harmed.[13]  In fact, throughout the Vigil Report, Dr. Vigil appears to caveat his statements about Nike's alleged lack of harm by using the qualifiers *actually* and *materially* to describe the purported lack of harm.[14]  Dr. Vigil does not explain how these qualifiers fit into the applicable legal framework on damages, and I am not aware of any.

17. Dr. Vigil further states, "Nike has not cited or produced any evidence of lost sales or evidence suggesting there has been any change in consumer perception of the quality of Nike products resulting from any purchase of allegedly counterfeit Nike products from StockX anywhere in the world, let alone from sales on the StockX platform in particular, or from StockX's advertising claims that Nike alleges to be false."[15]  Nothing stated by Dr. Vigil in Sections III.C.2 and III.D of the Vigil Report causes me to change any of the opinions I offered in my Amended Opening Report and, in response, I incorporate paragraphs 50-57 of my Amended Opening Report herein by reference.  I also understand that other Nike expert witnesses are responding to Sections III.C.2 and III.D of the Vigil Report.

### B. Responses to Dr. Vigil's Opinions Regarding StockX's Profitability and Factors that Contribute to StockX's Popularity

18. Section IV of Dr. Vigil's report addresses StockX's profitability and popularity. Specifically, Dr. Vigil concludes that ███████████████████████ ███████████████████████ and Dr. Vigil discusses other factors which he claims contribute to StockX's popularity that are not related to its false advertising statements. Notably, Dr. Vigil agrees that authenticity is a factor that drives consumer purchase

---

[13] *See, for example*, Vigil Report: ¶¶ 35-36.
[14] *See, for example*, Vigil Report: ¶¶ 3-4.
[15] Vigil Report: ¶36.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

6

decisions.[16]  I respond to Dr. Vigil's opinions on these topics in the following sections of this Rebuttal Report.

> 1.    **StockX's Overall Company Profitability is Not a Proper Analysis of Deductible Costs for Disgorgement**

19.    Dr. Vigil opines [17]  Dr. Vigil analyzed StockX's companywide operating profit from Q1 2020 through Q3 2022 and determined [18]  Dr. Vigil performed an additional analysis whereby he adjusted the operating profits/losses "to account for depreciation to obtain StockX's adjusted earnings before interest, taxes, depreciation, and amortization ('Adjusted EBITDA')" which he claims is "the profitability metric utilized by StockX."[19]  Based on these calculations of StockX's total company-wide profitability, Dr. Vigil concludes that [20]

20.    As required under 15 U.S.C. § 1117(a), StockX is responsible for proving "all elements of cost or deduction claimed" from accused revenue.[21]  To determine StockX's profits, deductible costs must be subtracted from StockX's revenue from the sale of accused products.  In trademark infringement and false advertising matters, I understand that defendants "must show a 'sufficient nexus between each expense claimed and the sales of the unlawful goods' before it may deduct any indirect expenses from its profits."[22]  I further understand the Second Circuit has held that generally "'[o]verhead' which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases."[23]  I understand the court

---

[16] Vigil Report: ¶90.
[17] Vigil Report: ¶81.
[18] Vigil Report: ¶82, Figure 1
[19] Vigil Report: ¶83, Figure 2, Figure 3.
[20] Vigil Report: ¶84.
[21] 15 U.S.C. § 1117(a).
[22] *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276 (S.D.N.Y. 2009).
[23] *Hamil America Inc. v. GFI*, 193 F.3d 92 (1999)

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

"must first 'determine what overhead expense categories ... are actually implicated by the production of the infringing product', a process that requires a determination whether there is 'a sufficient nexus ... between a category of overhead and the production or sale of the infringing product.'"[24]   The second step is to determine "a fair, accurate, and practical method of allocating the implicated overhead to the infringement."[25]

21.   Dr. Vigil's adjusted EBITDA calculation is not sufficient for StockX to meet its burden to separately establish a valid nexus between any operating expense line item and the StockX revenues presented in **Table 2** below (reproduced **Table 1** from my Amended Opening Report) in order to deduct any operating expenses to calculate StockX's profits relevant to disgorgement for false advertising in this case.   There is no qualitative or quantitative analysis of any of StockX's operating expenses performed by Dr. Vigil.   Dr. Vigil does not even mention, let alone describe, any of StockX operating expense department categories or the basis to deduct these costs, all of which he indicates are wholly deductible.   Dr. Vigil's statement that his calculated adjusted EBITDA is "the profitability metric utilized by StockX" is also not a sufficient basis to deduct 100% of StockX operating expenses in a disgorgement analysis in this case.

22.   Furthermore,  as  addressed  in  my  Amended  Opening  Report ████████████████
████████████████████████████████████████████████████████████████

---

[24] *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276 (S.D.N.Y. 2009); *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999).  I understand this Court has further instructed that the "Defendant has the burden of proving by a preponderance of the evidence any costs or expenses to be deducted from its gross revenue. You may not deduct the costs of goods sold and other direct costs associated with those goods because defendant can point to no evidence in the record which would differentiate the costs of assertedly infringing goods from those that are not asserted to be infringing. Also, defendant must demonstrate a sufficient connection between each claimed overhead expense and the sale of infringing products in order to deduct the expense from its gross revenues for infringing sales. An item of overhead may be deducted if, but only if you find that the entirety of the overhead expense is attributable to the infringing goods. If defendant fails to establish any expense by a preponderance of the evidence, you should not deduct that expense from the gross revenues." In this instance "overhead" was defined as "the ongoing costs to operate a business other than the cost of goods sold and other direct costs associated with those goods. Overhead includes items such as rent, utilities and support staff salaries. If defendant has proven that an overhead expense applies exclusively to the infringing goods, then you may deduct it from gross revenues attributable to the infringing goods. If defendant has not so proven, then you may not deduct it from gross revenues attributable to the infringing goods." *Lexington Furniture Industries, Inc. v. Lexington Company*, AB, 2022 WL 13848274, at *7 (S.D.N.Y Oct. 24, 2022)
[25] *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276 (S.D.N.Y. 2009).

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY



23. Additionally, in my Amended Opening Report, I identified examples of StockX operating expense departments that evidence indicates would not be properly deductible, including Finance Expenses, Legal Expenses, Communications Expenses, Supply Acquisition Expenses, and Facilities.[30]  As another example, included in StockX overall company profit margins (and Dr. Virgil's calculated adjusted EBITDA) are the costs StockX incurred to facilitate the sale of Vault NFTs which Nike is not pursuing damages for in its disgorgement claim.

24. Although I understand proving deductible costs is StockX's responsibility, in my Amended Opening Report, and summarized on **Table 2** below (reproduced **Table 1** from my Amended Opening Report), I have accounted for StockX's cost of revenues in my analysis.  The "analysis" put forth by Dr. Vigil does not support that any additional costs should be deducted.

25. If StockX through Dr. Vigil or any other individual provides analyses or claims any other deductions from accused revenue are proper, I reserve the right respond to such positions.

---

[26] Amended Opening Report: ¶¶74-78.
[27] Deposition of Brock Huber (StockX VP of Corporate and Strategic Development), February 22, 2023: p. 89:2-9.
[28] Deposition of Brock Huber (StockX VP of Corporate and Strategic Development), February 22, 2023: pp. 95:11-16; 96: 7-11.
[29] Deposition of Brock Huber (StockX VP of Corporate and Strategic Development), February 22, 2023: p. 97:10-15.
[30] Amended Opening Report: ¶79.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

### 2. Dr. Vigil's Opinions on Other Factors that Allegedly Contribute to StockX's Popularity are Flawed, Misleading and Not a Profit Apportionment Analysis

26.  As addressed extensively in my Amended Opening Report, authentication "is at the core of the experience" and StockX uses its claimed guarantee of product authenticity to gain a competitive advantage in the marketplace.[31]  Notably, Dr. Vigil agrees that authenticity is a factor that drives consumer purchase decisions.[32]  Nevertheless, Dr. Vigil opines that numerous factors have contributed to StockX's popularity that are unrelated to the allegations in this case.[33]  Dr. Vigil claims that in addition to authentication, "other variables [that] similarly factor into the consumer purchase decision making process" are speed of delivery, scarcity of the product, and value for the price.[34]  Dr. Vigil also claims that StockX "strives to provide a quality shopping experience."[35]

27.  First, Dr. Vigil has not quantified any form of apportionment of StockX's revenues or profits anywhere in his report.  In fact, Dr. Vigil does not use the word "apportion" anywhere in the Vigil Report.  Nothing in Dr. Vigil's report provides sufficient support for quantifying any amount of apportionment of the StockX's revenues and profits calculated in my Amended Opening Report and summarized on **Table 2** below (reproduced **Table 1** from my Amended Opening Report) apart from StockX's false and/or misleading statements.  If StockX or Dr. Vigil provides any quantified or qualified apportionment of StockX's revenues and profits, I reserve the right respond to such positions.

28.  Even assuming that Dr. Vigil was right that factors other than StockX's authentication and false and/or misleading statements about authentication are factors that impact StockX's "popularity," he does nothing to show that these factors *without* StockX's false and/or misleading statements about its authentication capabilities would impact consumer purchasing decisions.  Instead, Dr. Vigil states only that "other variables…factor into the

---

[31] Amended Opening Report: ¶36.
[32] Vigil Report: ¶90.
[33] Vigil Report: Section IV.C
[34] Vigil Report: ¶90.
[35] Vigil Report: Section IV.C.3

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

consumer purchase decision making process."[36]   While consumers may consider the bundle of features StockX offers, that does not demonstrate that consumers would purchase products from StockX if false and/or misleading statements about one of those features were removed.  Dr. Vigil appears to base his opinion on speculation that StockX would retain its popularity if its false and/or misleading statements to consumers about authenticity were removed, as opposed to any consumer testing he could have performed or relied on.[37]

29.   As addressed in my Amended Opening Report, authentication (and therefore the StockX false and/or misleading statements regarding authentication) "is at the core of the experience" and StockX uses its claimed guarantee of product authenticity to gain a competitive advantage in the marketplace.[38]

30.   Additionally, the results of a survey included in StockX's March 2022 US Segmentation Report indicates that ▮▮ of respondents selected ▮▮▮▮▮▮▮▮▮▮▮▮



▮▮ of respondents selected ▮▮▮▮▮▮▮▮ and ▮▮ ▮▮▮▮▮▮▮▮[40]   StockX's CEO, Scott Cutler, believes that StockX's authentication process builds trust.   Specifically, Mr. Cutler stated "the authentication process stands in the middle of every transaction for us.   It results in an

[36] Vigil Report: ¶90.
[37] The surveys Dr. Vigil cites in this section do not test this issue. *See* Vigil Report: ¶¶90-95; STX0021868 – 951 (at 872-875, 894, 897, 912);  STX0092496-544 (at 499, 501, 512-516, 533-535).
[38] Amended Opening Report: ¶36.
[39] StockX x Decode_M US Segmentation Report, March 2022: STX0018799-840 (at 827).  *See also*, Deposition of Jacob Fenton (StockX VP of Customer Experience and Insights), December 2, 2022: pp. 58:4-60:17; Fenton Ex. 6, StockX Decode_M Segment Results Presentation: STX0018453-499 (at 465-466) (The study commissioned by StockX shows that in the U.S., ▮▮▮ of survey respondents said that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ an ▮▮ of survey respondents said that having "▮▮▮▮▮▮; StockX US Brand Tracker, November 2020: STX0096562-613 (at 578-582) (demonstrating product quality and authenticity are high purchase drivers).
[40] StockX x Decode_M US Segmentation Report, March 2022: STX0018799-840 (at 827).

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

end buyer's high degree of trust in us as a brand to authenticate the products that are sold on our market."[41]

### C.  The Opinions in My Amended Opening Report Remain Unchanged

31.  As addressed above, Dr. Vigil opines that Nike was not harmed by StockX's false advertising.[42]  Dr. Vigil also opines that StockX did not generate any profits, and any "popularity" it did generate comes from reasons other than its false advertising.[43]  These opinions are contrary to the opinions I offered in my Amended Opening Report.

32.  I considered whether any of the evidence Dr. Vigil referenced or opinions he offered would cause me to update my opinions on the same subject matter in my Amended Opening Report.  Specifically, in my Amended Opening Report, I opined that Nike suffered harm from StockX's false advertising statements, and that while ███████

███████████████████████████████████████████████

█████████████████████████████████[44]

33.  I reached those opinions by reviewing substantial evidence (much of which was either not considered by Dr. Vigil or Dr. Vigil agrees with)[45] that StockX's business is centered around authentication, and StockX used its authentication service to gain a competitive advantage in the marketplace.  Assuming that StockX's advertising claims about its authentication service were false, as experts are required to do when evaluating damages,

---

[41] Marc Bain, *For StockX, selling sneakers is just the beginning*, QUARTZ (May 8, 2021), https://qz.com/2005457/for-stockx-selling-jordans-is-just-the-beginning; *StockX Launches Vault NFTs*, STOCKX (Jan. 18, 2022), https://stockx.com/about/stockx-launches-vault-nfts/ ("our marketplace is centered on authenticity, liquidity, and market visibility with pricing based solely on supply and demand.")

[42] Vigil Report: Section III.C.2.

[43] Vigil Report: Sections IV.B – C.

[44] Amended Opening Report: ¶¶ 15-17.

[45] *See e.g.*, Amended Opening Report ¶¶ 29, 36, 43 (StockX promoting pre-releases of Nike sneakers before released by Nike); 53 footnote109 (complaints received by Nike about StockX), For example, pre-release Nike sneakers available for sale by StockX that have not yet been released by Nike as of June 1, 2023 include: (1) Nike Zoom Vomero 5, first recorded sale on StockX March 31, 2023 with 241 sales made to date (https://stockx.com/nike-zoom-vomero-5-varsity-maize-laser-orange); (2) Nike Air Flight Huarache OG, first recorded sale on StockX April 8, 2023 with 149 sales made to date (https://stockx.com/nike-air-flight-huarache-og-white-varsity-purple); (3) Nike Air Max 1 The Bay, first recorded sale on StockX May 14, 2023 with 24 sales made to date (https://stockx.com/nike-air-max-1-the-bay); (4) Nike Dunk Low LX Blue Suede (Women's), first recorded sale on StockX April 14, 2023 with 204 sales made to date (https://stockx.com/nike-dunk-low-lx-blue-suede-womens). Dr. Vigil's failure to consider this evidence undermines his opinions on harm.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

combined with the undisputable fact that StockX authenticated and facilitated the sale of counterfeit Nike/Jordan-branded shoes, my analysis indicates that StockX has benefitted by earning ill-gotten profits derived from falsely and/or misleadingly claiming that every "Nike" and "Jordan" branded good sold on its platform was "100% Authentic." Additionally, based on the documents and testimony discussed in my Amended Opening Report, StockX's false advertising claims directly harm Nike's valuable brands and the significant goodwill Nike has amassed in those brands. While I did not quantify Nike's reputational injury in my Amended Opening Report, that does not mean that StockX's false advertising did not "actually harm" Nike's goodwill and reputation as Dr. Vigil concludes.

34.     Further, in my Amended Opening Report, I calculated that during the Relevant Period StockX generated ▮▮▮▮▮▮▮▮ dollars in revenue from trades of Nike and Jordan branded shoes where at least one side of the trade included a U.S. individual.[46]   I understand that after identifying the ▮▮▮▮▮▮▮ dollars of revenue at issue, the burden shifts to StockX to prove claimed elements of costs or other deductions. Nonetheless, in my Amended Opening Report, I deducted ▮▮▮▮▮▮▮ of StockX "cost of revenues" to calculate gross profits related to StockX's falsely advertised sales of "100% Authentic" Nike and Jordan-branded shoes. As summarized in **Table 2** below, after deducting StockX's cost of revenues from revenue, StockX generated ▮▮▮▮▮▮▮n gross profit over the Relevant Period from facilitating resale trades of Nike and Jordan branded shoes where at least one side of the trade included a U.S. individual.

---

[46] I reserve the right to supplement my opinion should StockX present a different calculation of revenues attributable to its false advertising.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

[black redaction block]

35.   For the reasons explained above, despite offering opinions on the same issues I addressed, namely harm to Nike and StockX's profits, nothing in the Vigil Report causes me to modify the opinions I reached in the Amended Opening Report.

### D.   Pre-Judgment Interest

36.   I understand that Nike may be entitled to pre-judgment interest.  Accordingly, I may be asked to provide opinions related to pre-judgment interest as directed by the court.  For example, I may provide opinions as to the appropriate interest rate and methodology used to calculate pre-judgment interest.  I reserve the right to provide such opinions before or at trial, as necessary.  If StockX or Dr. Vigil provides analyses or opinions related to pre-judgment interest, I also reserve the right respond to such positions.

---

[47] Amended Opening Report: **Attachment 5.U**.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**Documents Considered**        **Attachment 3.U.U**

| Beginning Bates | | Ending Bates |
|---|---|---|
| NIKE0000016 | - | NIKE0000017 |
| NIKE0000281 | - | NIKE0000287 |
| NIKE0001145 | - | NIKE0001194 |
| NIKE0006776 | - | NIKE0006781 |
| NIKE0006785 | - | NIKE0006793 |
| NIKE0029087 | - | NIKE0029087 |
| NIKE0038783 | - | NIKE0038788 |
| NIKE0038792 | - | NIKE0038798 |
| NIKE0038817 | - | NIKE0038821 |
| NIKE0038955 | - | NIKE0038959 |
| NIKE0039436 | - | NIKE0039436 |
| NIKE0039854 | - | NIKE0040006 |
| NIKE0041218 | - | NIKE0041226 |
| NIKE0041233 | - | NIKE0041233 |
| NIKE0041262 | - | NIKE0041265 |
| NIKE0041300 | - | NIKE0041302 |
| NIKE0041350 | - | NIKE0041357 |
| NIKE0042395 | - | NIKE0042397 |
| NIKE0081471 | - | NIKE0081471 |
| STX0014863 | - | STX0014921 |
| STX0016703 | - | STX0016869 |
| STX0017326 | - | STX0017371 |
| STX0018010 | - | STX0018014 |
| STX0018453 | - | STX0018499 |
| STX0018799 | - | STX0018840 |
| STX0020185 | - | STX0020188 |
| STX0020225 | - | STX0020268 |
| STX0020523 | - | STX0020534 |
| STX0020994 | - | STX0021141 |
| STX0021182 | - | STX0021188 |
| STX0021364 | - | STX0021364 |
| STX0021481 | - | STX0021498 |
| STX0021868 | - | STX0021951 |
| STX0022678 | - | STX0022691 |
| STX0023881 | - | STX0023887 |
| STX0026651 | - | STX0026760 |
| STX0038743 | - | STX0038751 |
| STX0039423 | - | STX0039473 |
| STX0039585 | - | STX0039592 |
| STX0040174 | - | STX0040191 |
| STX0040474 | - | STX0040478 |
| STX0040935 | - | STX0040937 |
| STX0041076 | - | STX0041077 |
| STX0042659 | - | STX0042663 |
| STX0055272 | - | STX0055276 |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**Documents Considered**                                    Attachment 3.U.U

| Beginning Bates | | Ending Bates |
| --- | --- | --- |
| STX0056718 | - | STX0056718 |
| STX0058180 | - | STX0058200 |
| STX0061163 | - | STX0061172 |
| STX0085640 | - | STX0085641 |
| STX0085644 | - | STX0085646 |
| STX0090109 | - | STX0090240 |
| STX0090493 | - | STX0090677 |
| STX0091556 | - | STX0091567 |
| STX0091819 | - | STX0091911 |
| STX0092496 | - | STX0092544 |
| STX0096562 | - | STX0096613 |
| STX0098851 | - | STX0098876 |
| STX0125881 | - | STX0125932 |
| STX0130531 | - | STX0130572 |
| STX0169544 | - | STX0169546 |
| STX0191602 | - | STX0191604 |
| STX0202142 | - | STX0202143 |
| STX0232285 | - | STX0232286 |
| STX0352655 | - | STX0352674 |
| STX0484545 | - | STX0484545 |
| STX0583757 | - | STX0583897 |
| STX0589430 | - | STX0589458 |
| STX0592628 | - | STX0592636 |
| STX0594173 | - | STX0594465 |
| STX0594887 | - | STX0595073 |
| STX0680795 | - | STX0680837 |
| STX0699905 | - | STX0699907 |
| STX0752605 | - | STX0752642 |
| STX0774239 | - | STX0774239 |
| STX0774265 | - | STX0774281 |
| STX0774283 | - | STX0774336 |
| STX0774394 | - | STX0774395 |
| STX0806027 | - | STX0806052 |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

Documents Considered                                                                                    Attachment 3.U.U

## Legal Filings

| | Date |
|---|---|
| • StockX LLC's Answer to Complaint | 3/31/2022 |
| • Nike Inc. v. StockX LLC, No. 1:22-cv-00983-VEC, Civil Case Management Plan and Scheduling Order Dkt. 25 | 4/11/2022 |
| • Plaintiff Nike, Inc.'s First Set of Request for Production of Documents and Things to Defendant StockX LLC | 4/19/2022 |
| • Plaintiff Nike, Inc.'s First Set of Requests for Admission to Defendant StockX LLC | 4/29/2022 |
| • Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories | 5/18/2022 |
| • Defendant's Objections and Responses to Plaintiff's First Set of Requests for Production | 5/19/2022 |
| • Nike Inc. v. StockX LLC, No. 1:22-cv-00983-VEC, First Amended Complaint | 5/25/2022 |
| • Defendant StockX LLC's Responses and Objections to Plaintiff Nike, Inc.'s First Set of Requests for Admission | 5/31/2022 |
| • Answer to First Amended Complaint Dkt. 41, and Exhibits | 6/6/2022 |
| • Plaintiff Nike, Inc.'s Second Set of Interrogatories to Defendant StockX LLC | 6/16/2022 |
| • Plaintiff Nike, Inc.'s Second Set of Requests for Production of Documents and Things to Defendant StockX LLC | 6/16/2022 |
| • Defendant's Objections and Responses to Plaintiff's Second Set of Interrogatories | 7/18/2022 |
| • Defendant's Objections and Responses to Plaintiff's Second Set of Requests for Production | 7/18/2022 |
| • Plaintiff Nike, Inc.'s Third Set of Requests for Production of Documents and Things to Defendant StockX LLC | 7/25/2022 |
| • Defendant's Third Set of Requests for Production | 8/19/2022 |
| • Nike's Letter Re: Nike, Inc. v. StockX LLC, Case No. 1:22-cv-00983-VEC (S.D.N.Y.), ECF 089 | 12/19/2022 |
| • Defendant's First Supplemental Objections and Responses to Plaintiff's Third Set of Interrogatories | 3/21/2023 |
| • Plaintiff Nike Inc.'s Supplemental Responses and Objections to Defendant StockX LLC's Third Set of Interrogatories | 4/17/2023 |
| • Nike Inc. v. StockX LLC, No. 1:22-cv-00983-VEC, Order, Dkt 171 | 4/26/2023 |

## Expert Reports

| | Date |
|---|---|
| • Expert Report of Kari Kammel, and Exhibits | 5/5/2023 |
| • Expert Report of Robert L. Vigil, PhD, and Exhibits | 5/5/2023 |
| • Expert Report of Dejongh "Dee" Wells, and Appendix | 5/5/2023 |
| • Expert Report of Catherine Tucker, and Appendix | 5/5/2023 |

## Depositions

| | Date |
|---|---|
| • Deposition of Russell Amidon (Senior Director of VIP Relations, StockX) and Exhibits | 11/30/2022 |
| • Deposition of Jacob Fenton (Vice President of Customer Experience and Insights, StockX) and Exhibits | 12/2/2022 |
| • Deposition of Ron Faris (Vice President and General Manager of Nike Virtual Studios, Nike) and Exhibits | 12/7/2022 |
| • Deposition of Heather Paulson (Vice President of Connected Marketplace, Nike) and Exhibits | 1/6/2023 |
| • Deposition of Barbara Delli Carpini (Vice President for Global Brand Protection and Digital IP Enforcement, Nike) and Exhibits | 1/10/2023 |
| • Deposition of Laura Rizza (Former Nike Brand Protection Coordinator) and Exhibits | 2/1/2023 |
| • Deposition of Joe Pallett (Director of Authentication and Innovation, Nike) and Exhibits | 2/8/2023 |
| • Deposition of Roy Ikhyun Kim (Third Party Consumer and Sneaker Collector) and Exhibits | 2/8/2023 |
| • Deposition of Brock Huber (Vice President of Corporate and Strategic Development, StockX) and Exhibits | 2/22/2023 |

## Case Law

| | Date |
|---|---|
| • *Maier Brewing Co. v. Fleischmann Distilling Corp.* , (9th Cir. 1968) | 2/21/1968 |
| • *W.E. Bassett Co. v. Revlon, Inc.* , (2d Cir. 1970) | 11/10/1970 |
| • *George Basch Co. v. Blue Coral, Inc.* , (2d Cir. 1992) | 6/30/1992 |
| • *Hamil America Inc. v. GFI* , (1999) | 9/29/1999 |
| • *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp* ., (S.D.N.Y. 2009) | 4/27/2009 |
| • *All-Star Marketing Group, LLC v. Media Brands Co., Ltd.* , (2011) | 1/3/2011 |
| • *Merck Eprova AG v. Gnosis S.p.A* ., (S.D.N.Y. 2012) | 9/30/2012 |
| • *Lexmark Int'l, Inc. v. Static Control Components, Inc.* , (2014) | 3/25/2014 |
| • *Merck Eprova AG v. Gnosis S.p.A* ., (2d Cir. 2014) | 7/29/2014 |
| • *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.* , (E.D.N.Y. 2016) | 3/31/2016 |
| • *Dependable Sales & Serv., Inc. v. TrueCar, Inc.* , (S.D.N.Y. 2019) | 3/27/2019 |
| • *Diageo North America Inc. v. WJ Deutsch and Sons Ltd* , (S.D.N.Y. Dec. 3, 2019) | 12/3/2019 |
| • *E. Mishan & Sons, Inc. v. Novel Brands LLC* , (S.D.N.Y. Feb. 13, 2020) | 2/13/2020 |
| • *Kelly Toys Holdings LLC v. alialialiLL Store* , (S.D.N.Y. Nov. 12, 2021) | 11/12/2021 |
| • *Lexington Furniture Industries, Inc. v. Lexington Company,* (S.D.N.Y Oct. 24, 2022) | 12/22/2022 |
| • *Nike, Inc. v. StockX, LLC,* (S.D.N.Y. Jan. 9, 2023) | 1/9/2023 |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

| Documents Considered | Attachment 3.U.U |
|---|---|

| **Financials** | **Date** |
|---|---|
| • Nike, Inc., Form 10-K for the fiscal year ended May 31, 2022 | 5/31/2022 |

| **Legal Code** | **Date** |
|---|---|
| • 15 U.S.C. § 1114 | |
| • 15 U.S.C. § 1117 (a) | |
| • 15 U.S.C. § 1117 (c) | |
| • 15 U.S.C. § 1125 | |
| • 15 USC Sec. 1116(a) | |

| **Trademarks** | **Date** |
|---|---|
| • United States Patent and Trademark Office Registration No. 977,190: Swoosh Design. | 1/22/1974 |
| • United States Patent and Trademark Office Registration No. 978,952: NIKE. | 2/19/1974 |
| • United States Patent and Trademark Office Registration No. 1,214,930: NIKE. | 11/2/1982 |
| • United States Patent and Trademark Office Registration No. 1,323,343: Swoosh Design. | 3/5/1985 |
| • United States Patent and Trademark Office Registration No. 1,325,938: NIKE. & Swoosh Design | 3/19/1985 |
| • United States Patent and Trademark Office Registration No. 1,370,283: AIR JORDAN | 11/12/1985 |
| • United States Patent and Trademark Office Registration No. 1,558,100: JUMPMAN Design. | 9/26/1989 |
| • United States Patent and Trademark Office Registration No. 3,627,820: JUMPMAN | 5/26/2009 |
| • United States Patent and Trademark Office Registration No. 3,725,535: AIR JORDAN & Wings Design | 12/15/2009 |

| **Analyst Reports** | **Date** |
|---|---|
| • "Taking Stock of StockX: Deep Dive Into The Sneaker Resale Market Leader", Wells Fargo | 1/27/2020 |
| • "Sneaker as an Alternate Asset Class, Part III", Cowen | 5/24/2022 |

| **Other** | **Date** |
|---|---|
| • StockX Production Letter | 5/23/2023 |

| **Websites** | **Date** |
|---|---|
| • https://interbrand.com/newsroom/interbrand-launches-best-global-brands-2022/ | |
| • https://qz.com/2005457/for-stockx-selling-jordans-is-just-the-beginning | |
| • https://stockx.com/about/authentication/ | |
| • https://stockx.com/about/how-it-works/ | |
| • https://stockx.com/about/stockx-cyber-weekend-2021/ | |
| • https://stockx.com/about/stockx-launches-vault-nfts/ | |
| • https://stockx.com/about/sx-market-insights/big-facts-current-culture-index-2023/ | |
| • https://stockx.com/about/sx-market-insights/current-culture-index-22/ | |
| • https://stockx.com/about/verification/ | |
| • https://stockx.com/help/articles/Are-shoes-sold-on-StockX-considered-deadstock | |
| • https://stockx.com/help/articles/How-do-I-sell-on-StockX | |
| • https://stockx.com/help/articles/What-kinds-of-sneakers-are-sold-on-StockX. | |
| • https://stockx.com/help/articles/where-is-StockX-located | |
| • https://stockx.com/nike/release-date | |
| • https://stockx.com/nike-air-flight-huarache-og-white-varsity-purple | |
| • https://stockx.com/nike-air-max-1-the-bay | |
| • https://stockx.com/nike-dunk-low-lx-blue-suede-womens | |
| • https://stockx.com/nike-zoom-vomero-5-varsity-maize-laser-orange | |
| • https://stockx.com/retro-jordans/release-date | |
| • https://www.bloomberg.com/profile/company/1786Z:SW | |
| • https://www.complex.com/sneakers/stockx-fake-sneakers-nike-lawsuit-38-pairs | |
| • https://www.crunchbase.com/organization/stockx | |
| • https://www.economist.com/films/2022/12/08/what-is-driving-the-proliferation-of-counterfeit-sneakers | |
| • https://www.forbes.com/sites/korihale/2020/12/15/sneakerheads-are-helping-stockx-pursue-a-25-billion-valuation/?sh=46eff5272255 | |
| • https://www.nytimes.com/wirecutter/blog/myths-about-counterfeit-products-debunked/ | |
| • https://www.statista.com/chart/24313/stockx-gross-merchandise-volume/ | |
| • https://www.washingtonpost.com/business/2022/09/30/sneaker-authentication-ebay-stockx-nike/ | |
| • https://www.wsj.com/articles/stockx-hub-for-sneakerheads-is-latest-1-billion-unicorn-11561571959 | |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY