# Exhibit 04

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
Case No.  No. 1:22-cv-00983-VEC
------------------------------------x
NIKE, INC.,

                Plaintiff,

    -against-

STOCKX LLC,

                Defendant.
------------------------------------x

            August 24, 2023
            10:07 a.m.

    Video-recorded Deposition of
RICHARD LaMAGNA, an Expert Witness, taken
by Plaintiff, located at DLA Piper, 1251
Avenue of the Americas, New York, New
York, taken before Dawn Matera, a
Certified Shorthand Reporter and Notary
Public for the State of New York.

## Page 2

```
 1
 2   A P P E A R A N C E S:
 3
        DLA PIPER
 4      Attorneys for Plaintiff
          1251 Avenue of the Americas
 5        New York, New York 10020
          (212)335-4500
 6
        By:  MICHAEL HYNES, ESQ.
 7           michael.hynes@dlapiper.com
             GABRIELLE VELKES, ESQ.
 8           gabrielle.velkes@dlapiper.com
 9
10      DEBEVOISE & PLIMPTON LLP
        Attorneys for Defendant
11        66 Hudson Boulevard
          New York, New York 10001
12        (212)909-6000
13      By:  MEGAN K. BANNIGAN, ESQ.
             mbannigan@debevoise.com
14           ANITA KAPYUR, Law Clerk
             akapyur@debevoise.com
15
16
17   ALSO PRESENT:
18      LAURA LEWIS, ESQ., In-house Counsel StockX
19      KIM VAN VOORIS, ESQ., In-House Counsel
20      MATTHEW CHIN-QUEE, Legal Videographer
21              ~oOo~
22
23                                10:05:50
24                                10:05:50
25
```

## Page 3

```
 1
 2       THE VIDEOGRAPHER:  Good morning.     10:06:51
 3   We are going on the record at 10:07       10:06:51
 4   a.m. on August 24th, 2023.  This is       10:06:54
 5   media unit one of the videotaped          10:07:00
 6   deposition of Rich LaMagna in the         10:07:02
 7   matter Nike, Inc. v. StockX LLC in the    10:07:07
 8   District Court, Southern District of      10:07:13
 9   New York, case number 22-CV-0983.  The    10:07:14
10   deposition is being held at 1251          10:07:22
11   Avenue of the Americas, New York, New     10:07:25
12   York.                                     10:07:27
13       My name is Matthew Chin-Quee          10:07:28
14   representing Veritext and I am the        10:07:30
15   videographer.  The court reporter is      10:07:33
16   Dawn Matera from the firm Veritext.       10:07:34
17       Will all counsel please               10:07:38
18   introduce yourself.                       10:07:41
19       MR. HYNES:  Michael Hynes from        10:07:44
20   DLA Piper for the plaintiff.              10:07:45
21       MS. VELKES:  Gabrielle Velkes         10:07:47
22   from DLA Piper for the plaintiff.         10:07:50
23       MS. VAN VOORHIS:  Kim                 10:07:52
24   Van Voorhis from Nike, Inc.               10:07:53
25       MS. BANNIGAN:  Good morning,          10:07:55
```

## Page 4

```
 1
 2       Megan Bannigan from Debevoise &       10:07:57
 3   Plimpton on behalf of StockX.  And        10:07:59
 4   with me is my colleague from Debevoise    10:08:02
 5   Anita Kapyur and in-house counsel,        10:08:05
 6   general counsel of StockX Laura Lewis.    10:08:09
 7       THE VIDEOGRAPHER:  Thank you.         10:08:14
 8   Will the court reporter swear in the      10:08:15
 9   witness, please.                          10:08:16
10   R I C H A R D  L a M A G N A, the
11   Witness herein, having first been duly
12   sworn by the Notary Public, was examined
13   and testified as follows:
14   EXAMINATION BY MR. HYNES:                 10:08:27
15   Q.   Good morning, Mr. LaMagna.           10:08:27
16   A.   Good morning Mr. Hynes.              10:08:29
17   Q.   Do you understand that you're        10:08:30
18   here to have your deposition taken?       10:08:31
19   A.   I do.                                10:08:35
20   Q.   And do you know in what case         10:08:36
21   your deposition is being taken?           10:08:37
22   A.   Yes, I do.                           10:08:39
23   Q.   Which one?                           10:08:39
24   A.   Nike versus StockX.                  10:08:40
25   Q.   Do you know what that case is?       10:08:42
```

## Page 5

```
 1
 2   A.   Yes.                                 10:08:44
 3   Q.   Can you tell me?                     10:08:44
 4   A.   It concerns allegations of           10:08:45
 5   counterfeit, false advertising and unfair 10:08:48
 6   business practices.                       10:08:53
 7   Q.   Do you know what StockX is?          10:08:54
 8   A.   Yes, I do.                           10:08:55
 9   Q.   Can you tell me what you think       10:08:57
10   it is?                                    10:08:58
11   A.   It's an online secondary market      10:08:58
12   platform.                                 10:09:01
13   Q.   I think I know what you mean by      10:09:02
14   online, but could you tell me what you    10:09:05
15   mean by secondary market platform?        10:09:07
16   A.   Secondary market is a market         10:09:09
17   similar to Amazon or eBay where people    10:09:12
18   buy and sell products as opposed to a     10:09:17
19   direct vendor, as opposed to a vendor     10:09:24
20   such as Target or Walmart or something    10:09:27
21   like that.                                10:09:30
22   Q.   Okay.  Would you agree that          10:09:31
23   counterfeit Nike products were sold on    10:09:37
24   the StockX platform?                      10:09:39
25   A.   No, I would not agree with           10:09:40
```

2 (Pages 2 - 5)

Page 114

```
 2   A.  Well, I think it depends on         13:49:53
 3   where you want to apply it and how you  13:49:57
 4   interpret some of these things.         13:50:03
 5   Q.  Okay.  Did you rely on it and       13:50:04
 6   cite it in your own report?             13:50:06
 7   A.  I did, in reference to              13:50:08
 8   Professor Kammel's assertions that --   13:50:10
 9   actually, she cites this document as    13:50:16
10   essentially rationale or the basis for  13:50:20
11   her opinions.                           13:50:23
12   Q.  Okay.  So do you believe that       13:50:24
13   this is a reputable source for the      13:50:27
14   guidelines for the selection and        13:50:30
15   performance evaluation of authentication 13:50:32
16   solutions for material goods in this    13:50:35
17   case?                                   13:50:37
18   A.  Generally speaking, the ISO is      13:50:37
19   a reputable source for guidelines in    13:50:41
20   various sectors or industries.          13:50:47
21   Q.  Did you, in your work for           13:50:52
22   StockX, apply ISO 22383 to StockX's     13:50:53
23   programs?                               13:50:57
24   A.  I didn't find that necessary to     13:51:00
25   do.  This is -- it's only a set of      13:51:02
```

Page 115

```
 2   guidelines.  It's not an authoritative    13:51:05
 3   source.                                   13:51:08
 4   Q.  Okay.                                 13:51:08
 5   A.  You know, looking at the              13:51:10
 6   effectiveness of authentication           13:51:13
 7   solutions, I've looked at what Professor  13:51:15
 8   Kammel's cited and I found that she       13:51:20
 9   actually misinterpreted some of these,    13:51:22
10   some of these prescriptions or            13:51:28
11   guidelines.                               13:51:30
12   Q.  Okay.  Did you -- sorry.  Did         13:51:30
13   you consult any authoritative sources in  13:51:47
14   connection with your valuation of         13:51:51
15   StockX's authentication process?          13:51:54
16   A.  Let me say one thing about this       13:52:03
17   ISO.  This ISO is written primarily, not  13:52:05
18   exclusively, but primarily for brand      13:52:09
19   holders.  So a lot of these things in     13:52:11
20   here would not necessarily apply to an    13:52:18
21   entity that is not a brand holder.        13:52:23
22   Q.  Okay.  Did you consult any            13:52:25
23   authoritative sources in connection with  13:52:27
24   your evaluation of StockX's               13:52:30
25   authentication process?                   13:52:32
```

Page 116

```
 2   A.  I consulted my more than 20          13:52:33
 3   years of experience.                     13:52:38
 4   Q.  Okay.                                13:52:38
 5   A.  In various, various reputable        13:52:40
 6   companies.                               13:52:43
 7   Q.  So you consider yourself to be       13:52:43
 8   an authoritative source?                 13:52:47
 9   A.  I do.                                13:52:48
10   Q.  Did you consider -- consult any      13:52:48
11   other authoritative sources other than   13:52:51
12   yourself in evaluating StockX's          13:52:53
13   authentication process?                  13:52:56
14   A.  I consulted the materials            13:52:57
15   produced by StockX and I consulted what  13:53:04
16   their employees, their leadership, I     13:53:10
17   should say, had to say about their       13:53:12
18   process.                                 13:53:15
19   Q.  But those aren't authoritative       13:53:16
20   sources, are they?                       13:53:19
21   A.  Well, they are authoritative in      13:53:20
22   that they know exactly what they do to   13:53:24
23   for their authentication or verification 13:53:28
24   process.                                 13:53:30
25   Q.  So StockX is an authoritative        13:53:31
```

Page 117

```
 2   source; is that your testimony?          13:53:38
 3   A.  Well, if you want to know about      13:53:39
 4   what StockX does for their authentication 13:53:43
 5   or verification program, I think they are 13:53:49
 6   the ones who know best what they do and  13:53:50
 7   what they don't do.  And so I found it to 13:53:53
 8   be, from that perspective, an            13:53:57
 9   authoritative source.                    13:54:02
10   Q.  Okay.  Any other authoritative       13:54:03
11   sources other than yourself and StockX   13:54:05
12   that you considered in your evaluation of 13:54:07
13   the StockX authentication process?       13:54:08
14   A.  Well, in my report I do make         13:54:10
15   reference to various sources of          13:54:14
16   information for different aspects of the 13:54:16
17   report.  If you want to go through those, 13:54:18
18   through my footnotes, we can do that.    13:54:24
19       But I do cite different              13:54:27
20   articles.  Different, for example,       13:54:33
21   Gartner, Gartner is a well-respected     13:54:36
22   consulting firm, what they talk about in 13:54:39
23   terms of authentication.  There is an    13:54:44
24   example of another source that would be  13:54:47
25   authoritative.                           13:54:48
```

Page 290

```
 1
 2   Q.  When you wrote this report, why        18:52:27
 3   didn't you just write, put paragraph 90    18:52:29
 4   right under paragraph 89?                  18:52:33
 5   A.  Because it's an appendix --            18:52:37
 6   it's submitted as an appendix, as a        18:52:38
 7   separate.  Appendicis are usually at the   18:52:40
 8   end.                                       18:52:47
 9   Q.  Why did you make paragraph 90          18:52:47
10   an appendix instead of putting it in the   18:52:48
11   body of the reports as 90 comes right      18:52:51
12   after 89?                                  18:52:54
13   A.  Because these are all, these           18:52:55
14   are research items.                        18:52:56
15       MR. HYNES:  Okay.  No further          18:53:02
16   questions.  Do you have anything?          18:53:03
17       MS. BANNIGAN:  No further              18:53:04
18   questions.                                 18:53:05
19       MR. HYNES:  Okay.  Then we are         18:53:06
20   off the record.                            18:53:08
21       THE VIDEOGRAPHER:  This marks          18:53:08
22   the end of the deposition.  We are         18:53:09
23   going off the record at 6:53 p.m.          18:53:11
24       (Time noted:  6:53 p.m.)
25
```

Page 291

```
 2        ACKNOWLEDGMENT OF DEPONENT
 4   I have read the foregoing
 5   transcript of my deposition and except
 6   for any corrections or changes noted on
 7   the errata sheet, I hereby subscribe to
 8   the transcript as an accurate record of
 9   the statements made by me.
10   _____
            RICHARD LaMAGNA
12   SUBSCRIBED AND SWORN before
13   and to me this ____ day of _____,
14   2023.
15        _____
16                NOTARY PUBLIC
18   My Commission Expires:
```

Page 292

```
 2                CERTIFICATION
 4        I, DAWN MATERA, a Notary Public
 5   for and within the State of New York, do
 6   hereby certify:
 7        That the witness whose testimony
 8   as herein set forth, was duly sworn by
 9   me; and that the within transcript is a
10   true record of the testimony given by
11   said witness.
12        I further certify that I am not
13   related to any of the parties to this
14   action by blood or marriage, and that I
15   am in no way interested in the outcome of
16   this matter.
17        IN WITNESS WHEREOF, I have
18   hereunto set my hand this 29th day of
19   August, 2023.
20
21
22        DAWN MATERA
```

Page 293

```
 2              I N D E X
 3   Witness                      Page
 4   RICHARD LaMAGNA                4
 5   Examination By:
 6   Mr. Hynes                      4
 7   Ms. Bannigan                 267
 8   Mr. Hynes                    275

11           E X H I B I T S
12   LaMagna                      Page
13   Exhibit 1 Expert report of Richard   28
             LaMagna

     Exhibit 2 Speech Transcript -        80
15       Richard C. LaMagna Oral
         Testimony Regarding
16       Anti-Counterfeiting
         Amendments of 2003

     Exhibit 3 Speech Transcript:         80
18       Richard C. LaMagna
         Testimony Before the House
19       Subcommittee on Courts,
         the Internet and
20       Intellectual Property, the
         Global Threat of Software
21       Counterfeiting
22   Exhibit 4 ISO Standard 22383    105
23   Exhibit 5 November 17th, 2020   118
         article by Taylor Lee
```

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 4:25 | Do you know what that case is? | Do you know what that case is **about**? | Transcription Error |
| 7:11-12 | My impression from the information that **I** read and learned | My impression from the information that **I've** read and learned | Transcription Error |
| 9:13 | Is that – | Is that – **I swear I'm** | Transcription Error |
| 11:21-22 | to make money off of **that** | to make money off of **those** | Transcription Error |
| 17:13-14 | **You** would say roughly, roughly three months ago. | **I** would say roughly, roughly three months ago. | Transcription Error |
| 21:10 | Roughly, yeah. | Roughly, **I think,** yeah. | Transcription Error |
| 22:24 | When did that call take place | **How long** – when did that call take place | Transcription Error |
| 26:07-08 | I don't know if I was ever **normally** instructed | I don't know if I was ever **formally** instructed | Transcription Error |
| 28:18-19 | We are going to mark this as LaMagna 1. | We are going to mark this as **Exhibit** LaMagna 1. | Transcription Error |
| 30:04-05 | And you issued an invoice that **tells** you how many hours | And you issued an invoice that **says** you how many hours | Transcription Error |

1

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 33:19-20 | So we'll get into the specifics a little bit. | So we'll get into the specifics **in** a little bit. | Transcription Error |
| 40:21-22 | I might **of** advised them on other anti-fraud measures. | I might **have** advised them on other anti-fraud measures. | Clarification |
| 42:13-14 | Is it your recommendation that the platform **provides** | Is it your recommendation that the platform **provide** | Clarification |
| 43:05-08 | if the platform had made a referral to law enforcement, **how** enforcement | if the platform had made a referral to law enforcement, **law** enforcement | Transcription Error |
| 49:18-19 | their online counterfeiting program | their online **anti-**counterfeiting program | Transcription Error |
| 55:13-15 | It's when a brand holder or an IP holder wants find out | It's when a brand holder or an IP holder wants **to** find out | Transcription Error |
| 61:15-16 | Well, for one I had a background, a **long** background | Well, for one I had a background, a **strong** background | Transcription Error |
| 61:24-62:02 | ISACA, which is Information Systems**,** Audit, Control Association. | ISACA, which is **the** Information Systems Audit **and** Control Association. | Clarification |

2

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 63:19-20 | I would not have **been as** an auditing function. | I would not have **had** an auditing function. | Transcription Error / Clarification |
| 69:12-13 | I did not see -- | I did not see **evidence where** - | Transcription Error |
| 77:05-06 | I know they hire so-called **sneaker-heads**. | I know they hire so-called **sneakerheads**. | Typographical Error |
| 79:10-11 | The information they provided **to** me | **It was** the information they provided**, for** me, | Transcription Error |
| 84:18-19 | Is there **anyway** that a user of Office 97 | Is there **any way** that a user of Office 97 | Typographical Error |
| 87:25-88:02 | the top **of** your consulting firm, right? | the top **is** your consulting firm, right? | Transcription Error |
| 107:09 | Ms. Laura **Ritza**. | Ms. Laura **Rizza**. | Typographical Error |
| 110:12 | I got there 9:30. | I got there **at** 9:30. | Transcription Error |
| 111:03 | Ms. **Sabba**. | Ms. **Saba**. | Typographical Error |
| 112:24-113:02 | I believe my assessment of their program was valid and effective assessment. | I believe my assessment of their program was **a** valid and effective assessment. | Transcription Error |

3

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 115:12-14 | Did you consult any authoritative sources in connection with your **valuation** | Did you consult any authoritative sources in connection with your **evaluation** | Transcription Error / Clarification |
| 117:23-24 | **There is** an example | **They're** an example | Transcription Error |
| 119:25 | In fact it somewhat **echos** | In fact it somewhat **echoes** | Typographical Error |
| 120:03-04 | So it's your testimony that this Gartner article **echos** | So it's your testimony that this Gartner article **echoes** | Typographical Error |
| 123:21-22 | they **measured** that against what's in the database | they **measure** that against what's in the database | Clarification |
| 130:22-23 | **Is** there any other authoritative sources | **Are** there any other authoritative sources | Clarification |
| 139:02-03 | did you examine **a** StockX program | did you examine **StockX's** program | Transcription Error |
| 141:03-04 | before you put the report together on **January** 2nd, 2023 | before you put the report together on **June** 2nd, 2023 | Clarification |
| 143:12-13 | then find it hard to imagine | then **I** find it hard to imagine | Transcription Error / Clarification |

4

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 161:24 | their credit? | their credit **cards**? | Transcription Error |
| 164:5-6 | it's a very large online seller **of** a third-party platform | it's a very large online seller, a third-party platform | Transcription Error |
| 164:9 | **they** have had **difficult** doing that. | **they've** had **difficulty with** doing that. | Transcription Error |
| 167:15 | **undo** emphasis | **undue** emphasis | Typographical Error |
| 170:11-13 | Do you think StockX could ever have honestly claimed that 100 percent of **their** products that **are** sold | Do you think StockX could ever have honestly claimed that 100 percent of **the** products that **it** sold | Transcription Error |
| 172:15 | sellers selling **counterfeit** | sellers selling **counterfeits** | Transcription Error |
| 183:14 | their **motto** is either it comes | their **model** is either it comes | Transcription Error |
| 184:9-11 | I don't know that they **returned** the counterfeits or the inauthentic. | I don't know that they **return** the counterfeits or the inauthentic **items**. | Transcription Error/ Clarification |
| 184:18-19 | proliferation of **counterfeit goods**." | proliferation of **counterfeits**." | Transcription Error |

5

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 184:23-24 | proliferation of **counterfeit goods**? | proliferation of **counterfeits**? | Transcription Error |
| 185:5-6 | fails to provide **a consumers'** marketplace. | fails to provide **consumers a** marketplace. | Transcription Error |
| 185:11 | it's going to encourage **counterfeit** | it's going to encourage **counterfeits** | Clarification |
| 188:19 | **advocating** responsibility | **abdicating** responsibility | Transcription Error |
| 194:19 | divulging anything, | divulging anything **secret**, | Transcription Error |
| 194:25 | what they did **was** very standard and typical | what they did **is** very standard and typical | Transcription Error |
| 195:2-3 | the anticounterfeiting field. **And** is not a trade secret. | the anticounterfeiting field **and** is not a trade secret. | Transcription Error |
| 195:23-24 | And number 33 is "National Prescription Opioid" | And number 33 is "**In Re:** National Prescription Opioid" | Transcription Error |
| 196:7 | I don't know the **exact** term | I don't know the **correct** term | Transcription Error |
| 196:12-13 | I was retained -- and I am still doing it. | I was retained – **it varied by case**; I am still doing it. | Transcription Error |

6

| Deposition Date: 8/24/2023 <br> Deponent: Richard LaMagna – Errata Sheet <br> Case Name: *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN) | | | |
|---|---|---|---|
| **Page(s): Line(s)** | **Now Reads** | **Should Read** | **Reason** |
| 196:15-16 | four companies, **it's** depending on the case | four companies, depending on the case | Transcription Error |
| 197:24-25 | He could have protected his brand **and** himself | He could have protected his brand himself | Transcription Error |
| 199:13 | I would have to go back | I would **also** have to go back | Transcription Error |
| 201:13-15 | part of the research **of** Analysis Group was to go online | part of the research **that** Analysis Group **did** was to go online | Transcription Error/ Clarification |
| 204:5 | **Alp Vision** | **AlpVision** | Typographical Error |
| 204:7 | **Alp Vision** | **AlpVision** | Typographical Error |
| 204:9 | **Alp Vision** | **AlpVision** | Typographical Error |
| 204:19 | **Alp Vision** | **AlpVision** | Typographical Error |
| 205:11 | **Alp Vision** | **AlpVision** | Typographical Error |
| 205:18 | **Alp Vision** | **AlpVision** | Typographical Error |
| 205:21 | **Alp Vision** | **AlpVision** | Typographical Error |

7

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 207:11-12 | let's ask Laura to **go to** the room. | let's ask Laura to **leave** the room. | Transcription Error |
| 209:17-18 | **Alp Vision** | **AlpVision** | Typographical Error |
| 209:20-21 | **Alp Vision** | **AlpVision** | Typographical Error |
| 210:7 | **include** hyped limited drops | **includes** hyped limited drops | Transcription Error |
| 211:6-7 | What do you mean by artificial demand? | What do you mean by artificial demand? **Is it fake demand?** | Transcription Error |
| 213:2-3 | again, **but** I talked about | again, **what** I talked about | Transcription Error |
| 217:5 | StockX's **counterfeiting** program | StockX's **anticounterfeiting** program | Transcription Error |
| 219:6-9 | those were the **only** policies at that time, when in fact some of them I think existed before that. | those were the policies **only** at that time, when in fact some of them I think existed before that. | Clarification |
| 221:10-12 | Yeah, I think some of these I had looked at the article. I think that probably I saw it before June 2nd. | Yeah, I think some of these I had looked at the article -- I think that probably I saw it before June 2nd. | Transcription Error |

**Deposition Date:** 8/24/2023
**Deponent:** Richard LaMagna – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 224:4-5 | I am not, you know, quite sure **for** the purpose of the question. | I am not, you know, quite sure the purpose of the question. | Transcription Error |
| 225:25-226:1 | I mean **largely** across the board in general. | I mean **broadly,** across the board, in general. | Transcription Error |
| 227:8-9 | same way as StockX or **when** the other platforms does. | same way as StockX or **one of** the other platforms does. | Transcription Error |
| 229:2-3 | That's right. Operating procedures. | That's right. **Their** operating procedures. | Transcription Error |
| 243:17-19 | If they didn't. If they were cavalier about it, they wouldn't fire people. | If they didn't, **if** they were cavalier about it, they wouldn't fire people. | Transcription Error |
| 252:14-15 | I recall correctly from the deposition | **If** I recall correctly from the deposition | Transcription Error |
| 256:13 | **Sneakerstrup** | **Sneakerstrut** | Transcription Error |
| 257:4 | 10,000 plus | $10,000+ | Transcription Error |
| 268:3 | one of **the** Professor Kammel's reports | one of Professor Kammel's reports | Clarification |

9

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| | **Deposition Date: 8/24/2023** **Deponent: Richard LaMagna – Errata Sheet** **Case Name:** *Nike, Inc. v. StockX LLC,* No. 22 CV 983 (VC) (SN) | | |
| 268:9 | I **heard** that StockX refunded his money | I **learned** that StockX refunded his money | Transcription Error |
| 286:2 | **elicit** goods | **illicit** goods | Typographical Error |
| 290:7 | **Appendicis** | **Appendices** | Typographical Error |

I, Richard LaMagna, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on August 24, 2023; that I have made such corrections as appear noted herein; and that my testimony as contained herein, as corrected, is true and correct.

DATED this __26__ day of September, 2023.

*Richard C. LaMagna*

Richard LaMagna

10