# EXHIBIT B

**Nike, Inc.**

**v.**

**StockX LLC**

**Case No. 1:22-cv-000983-VEC**

**Second Expert Rebuttal Report of John L. Hansen**

**TM Financial Forensics, LLC**
**July 5, 2023**

John L. Hansen

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**I.    INTRODUCTION**.................................................................................................... **2**

A.  Information Considered ............................................................................................ 3

**II.   SUMMARY OF THE VIGIL REBUTTAL REPORT**........................................... **4**

**III.  REBUTTAL OPINIONS TO THE VIGIL REBUTTAL REPORT** ............................ **6**

A.  Responses to Dr. Vigil's Rebuttal Opinions Regarding Disgorgement of StockX Profits.. 6

1.  Additional/Updated StockX Financial Data Produced with the Vigil Rebuttal Report....... 6

2.  Dr. Vigil's Quantification of StockX Contribution Margin Profits.................................... 7

3.  Dr. Vigil's Fixed Cost Deduction is Not a Proper Analysis of Deductible Costs for Disgorgement ...................................................................................................................... 9

4.  Dr. Vigil's Opinions on Apportionment ......................................................................... 12

B.  Conclusion ................................................................................................................. 15

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

## I.    <u>INTRODUCTION</u>

1.    I have made previous expert disclosures in this matter.  I submitted the Expert Report of John L. Hansen dated May 5, 2023 ("Opening Report").  After receiving updated financial disclosures from StockX, I submitted the First Amended Expert Report of John L. Hansen dated May 30, 2023 ("Amended Opening Report"), which incorporated StockX's updated financial disclosures and superseded the Opening Report.  After receiving the opening Expert Report of Robert L. Vigil, Ph.D. submitted on May 5, 2023 (the "Vigil Report"), I submitted the Expert Rebuttal Report of John L. Hansen dated June 2, 2023 ("Rebuttal Report") responding to certain of the opinions contained in the Vigil Report.  I have been asked by Nike to respond to certain of the opinions contained in the Expert Rebuttal Report of Robert L. Vigil, Ph.D. submitted on June 2, 2023 (the "Vigil Rebuttal Report"), which were unavailable for me to consider when I submitted my Opening Report and Amended Opening Report.  Specifically, I noted in the Amended Opening Report that in addition to its cost of revenue, StockX has the burden to prove any additional costs and/or further apportionment that should be deducted from StockX's revenues on trades of the Nike/Jordan branded goods at issue.[1]  I limit my opinions in this Second Rebuttal Report to respond directly to only the specific opinions by Dr. Vigil that StockX has the initial burden to prove (i.e., deductible costs and apportionment) but did not do so until it disclosed the Vigil Rebuttal Report.[2]  I also supplement my opinion on gross profits based on the updated financial data produced with the Vigil Rebuttal Report.  Where I do not specifically address an opinion or contention of Dr. Vigil does not mean that I agree with Dr. Vigil's opinions.

2.    I have considered my opinions, analysis, facts, and data relied on in my Amended Opening Report and Rebuttal Report, and this Second Rebuttal Report should be used in conjunction with my Amended Opening Report and Rebuttal Report and their

---

[1] Amended Opening Report ¶¶ 71, 82.
[2] 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.")

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

accompanying Attachments.  Where I have defined terms in the Amended Opening Report and Rebuttal Report, I adopt the same definitions in this Second Rebuttal Report.

3.  My curriculum vitae, including publications during the last ten years, is included as **Attachment 1** to my Amended Opening Report.  A current listing of cases in which I have testified as an expert witness at trial, arbitration, and/or deposition in the last four years is included as **Attachment 2.U** to my Amended Opening Report.  My hourly billing rate on this matter is $650.  TMF's compensation is not dependent on the outcome of this matter.  TMF's work on this matter was performed by me or under my supervision.

## A.    Information Considered

4.  **Attachment 3.U.U.U** to this Second Rebuttal Report contains a list of various documents, data, and other information considered in forming my opinions in this matter.  I have also considered the applicable legal and accounting principles supporting a disgorgement award.  **Attachment 3.U.U.U** to this Second Rebuttal Report updates **Attachment 3.U.U** to add additional documents and information received and considered in forming my opinions in this Second Rebuttal Report.  Select pages of the documents and information listed in **Attachment 3.U.U.U** may be used as exhibits to summarize or support my opinions.  Additionally, I may prepare graphical or illustrative exhibits to use at trial based on the documents and information relied upon and my analysis of those documents and information.

5.  The opinions in this Second Rebuttal Report are based on currently available information.  If representatives of Nike, StockX, third parties, and/or experts retained on behalf of the StockX present additional information, then my opinions and conclusions may be supplemented, amended, or revised.

6.  I expect to offer testimony at trial regarding the opinions described within this Second Rebuttal Report.  I may also be asked to testify in response to any rebuttal testimony offered by StockX, including the methodology for calculating damages used by StockX's damages expert.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

7. TMF received and executed a copy of the protective order in this matter. Some of the documents considered have been designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY," or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY" pursuant to the protective order. Accordingly, I understand that portions of this Rebuttal Report and Attachments may be designated as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY."

## II.    SUMMARY OF THE VIGIL REBUTTAL REPORT

8. Dr. Vigil states that he has been asked to provide his expert opinion on the reports submitted by John L. Hansen on behalf of Nike.[3] Dr. Vigil organizes his rebuttal opinions into three categories: (1) harm to Nike from StockX's false advertising and sales of counterfeit sneakers on the StockX platform; (2) the amount of StockX's profits subject to disgorgement; and (3) potential statutory damages.

9. In his analysis of StockX profits that should be disgorged, Dr. Vigil claims that my analysis of StockX's gross profits does not account for "the variable portion of operating expenses included in the calculation of StockX's contribution margins" or "other operating expenses that StockX would not have incurred absent the Nike and Jordan at-issue sales."[4] To calculate the amount of operating expenses included in the calculation of contribution margins that should be deducted, Dr. Vigil performs a regression analysis and concludes that after deducting these expenses from gross margin, StockX earned profits of approximately ███████ for the period Q1 2020 through Q3 2022 for the at-issue sales.[5] Dr. Vigil performs additional calculations deducting StockX's "fixed" operating expenses whereby he concludes StockX incurred losses on the at-issue sales.[6]

10. Dr. Vigil then asserts that "evidence suggests that very few, if any, of StockX's trades are attributable to the alleged false claims."[7] To quantify the profits that "may potentially be

---

[3] Vigil Rebuttal Report: ¶1.
[4] Vigil Rebuttal Report: ¶5.
[5] Vigil Rebuttal Report: ¶46 and Exhibit 4A.
[6] Vigil Rebuttal Report: ¶54 and Exhibit 3.
[7] Vigil Rebuttal Report: ¶7.

attributable to the alleged false claims" Dr. Vigil applies the results of a survey performed by another expert retained on behalf of StockX, Sarah Butler.[8]  Ms. Butler's study, which is apparently offered as a rebuttal to my opinions, was designed to determine the extent to which StockX's false and/or misleading statements about its authentication process influence consumers' decisions to use StockX's platform to purchase sneakers.[9] Applying the results of Ms. Butler's survey which purported to show that the between 0.8% to 3.5% of survey respondents who had already purchased goods from StockX within the last year deemed the false statements to be material to their decision to purchase sneakers from StockX's platform, Dr. Vigil calculates StockX profits subject to disgorgement ranging from ██████████████████ (based on gross profits) and █████ ███████████████ (after deducting variable contribution margin costs).[10]

11.    **Table 1** below summarizes the results of Dr. Vigil's various quantifications of StockX's profit on the at-issue sales.



12.    My rebuttals to certain of Dr. Vigil's opinions are discussed below.

---

[8] Vigil Rebuttal Report: ¶7.
[9] I am not offering a rebuttal opinion to Ms. Butler's survey, but I understand that another expert retained on behalf of Nike is addressing the flaws in her survey and reliability of her resulting opinions.
[10] Vigil Rebuttal Report: ¶8.
[11] Vigil Rebuttal Report: Exhibits 3 and 4A.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

### III.    REBUTTAL OPINIONS TO THE VIGIL REBUTTAL REPORT

#### A.    Responses to Dr. Vigil's Rebuttal Opinions Regarding Disgorgement of StockX Profits

13.    Section II.B Dr. Vigil's Rebuttal Report includes Dr. Vigil's rebuttal opinions to the quantification of StockX profits earned from facilitating the resale of Nike and Jordan branded sneakers where at least one side of the trade included a U.S. individual presented in my Amended Opening Report.  As summarized in **Table 1** above, Dr. Vigil presents a number of quantification scenarios deducting additional StockX's operating expenses, as well as applying an alleged apportionment percentage provided by a different StockX expert, Sarah Butler.

14.    As stated in my Amended Opening Report, "[i]f StockX provides additional information about its costs, or asserts that additional costs are properly deductible, I reserve the right respond to such information and assertions."[12]  I respond to Dr. Vigil's opinions on these topics in the following sections of this Second Rebuttal Report.

#### 1.    Additional/Updated StockX Financial Data Produced with the Vigil Rebuttal Report

15.    In my Amended Opening Report, I calculated that StockX generated ▮▮▮▮▮▮▮ in gross profit over the Relevant Period from facilitating resale trades of Nike and Jordan branded sneakers where at least one side of the trade included a U.S. individual**.**[13]  My calculations were based on StockX financial data and information available at the time I submitted my Amended Opening Report.  Concurrent with the Vigil Rebuttal Report, StockX produced documents bearing bates numbers STX0806053 and STX0806054. STX0806053 contains StockX's Q1 2019 to Q4 2022 quarterly non-GAAP Contribution Margin and non-GAAP P&L.

16.    On **Attachments 9** to **12,** I have updated my calculation of StockX gross profits earned facilitating the resale of Nike and Jordan branded sneakers where at least one side of the

---

[12] Amended Opening Report: ¶66; Rebuttal Report: ¶25.
[13] See, for example, Amended Opening Report: ¶18, **Attachment 5.U.**

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

trade included a U.S. individual based on StockX's newly produced financial information contained in STX0806053.

17.    As summarized in **Table 2** below, after deducting the cost of revenue that are reasonably implicated in facilitating the resale of Nike and Jordan branded sneakers where at least one side of the trade included a U.S. individual, StockX earned gross profits of approximately ███████████ on sales of these products between Q1 2020 and Q3 2022.



18.    Based on analysis of StockX's newly produced financial information, Dr. Vigil and I agree that StockX's gross profits on the resale of Nike and Jordan branded sneakers where at least one side of the trade included a U.S. individual total ███████████ between Q1 2020 and Q3 2022.

## 2.    Dr. Vigil's Quantification of StockX Contribution Margin Profits

19.    As addressed in my Amended Opening Report, I recognize that additional indirect costs beyond StockX cost of revenue might be deductible, but only where StockX meets its burden to establish a nexus between the indirect costs and the infringing sales.[15]  As previously addressed, in the normal course of operating its business, StockX calculates levels of profitability identified as "Contribution Margin – 1" (or "CM1") and "Contribution Margin – 2" (or "CM2").[16]  Based on the data and information available at the time I submitted my Amended Opening Report, I identified that the likely costs on

---

[14] **Attachment 9**.  I note that this is consistent with Dr. Vigil's gross profit quantification.
[15] Amended Opening Report: ¶71.
[16] Amended Opening Report: ¶¶74-78.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

StockX's total consolidated quarterly profit and loss statements[17] to deduct to calculate Contribution Margin – 1 included: (1) Cost of Revenues; (2) Authentication; (3) VAT Tax; (4) Chargebacks & Refunds; (5) Customs & Duties; (6) Fixed Customer Service; (7) Tax; and (8) Variable Customer Service.[18]  I further stated, based on my understanding from Mr. Huber, that the difference between Contribution Margin – 1 and Contribution Margin – 2 is that "Contribution Margin – 2 includes the burden of the 'Variable Marketing Expenses' associated with the transactions for that period" and therefor variable marketing expenses are also deducted to calculate Contribution Margin – 2.[19]

20.     As noted above, concurrent with the Vigil Rebuttal Report, StockX produced the document bearing bates number STX0806053, which contains StockX's Q1 2019 to Q4 2022 quarterly non-GAAP Contribution Margin.  This updated spreadsheet includes data for the following specific expense categories deducted by StockX to calculate its total company Contribution Margin – 1: (1) Cost of Revenue; (2) Operations; (3) Customs & Duties; (4) VAT Tax; (5) Chargebacks & Refunds; and (6) Customer Support.  The analysis then deducts "Total Marketing" costs to calculate Contribution Margin – 2.  I accept the updated StockX financial document bearing bates number STX0806053 for purposes of calculating StockX contribution margin level profits, as this data is consistent with StockX's internal board meeting presentations.[20]

21.     Dr. Vigil analyzed StockX's costs included in the calculation of CM1 and CM2 and concluded that "the majority of the operating costs included in the calculation of CM1 and CM2 are also costs that have been incurred in order to facilitate the sale of the at-

---

[17] StockX Operating Entity 2020 Quarterly P&L's: STX0774394; StockX Operating Entity 2021-2022 Quarterly P&L's: STX0806052.

[18] Amended Opening Report: ¶75; See, for example, StockX September 2021 Board Meeting: STX0583757-897 (at 818); StockX November 2021 Board Meeting: STX0594173-465 (at 205); StockX February 2022 Board Meeting: STX0090109-240 (at 153); Deposition of Brock Huber (StockX VP of Corporate and Strategic Development), February 22, 2023: pp. 89:22-90:3, 93:21-94:9.

[19] Amended Opening Report: ¶77; Deposition of Brock Huber (StockX VP of Corporate and Strategic Development), February 22, 2023: p. 97:10-15.

[20] See, for example, StockX September 2021 Board Meeting: STX0583757-897 (at 818); StockX November 2021 Board Meeting: STX0594173-465 at (205); StockX February 2022 Board Meeting: STX0090109-240 (at 153).  It remains unclear how to precisely derive StockX's CM1 and CM2 using the StockX total consolidated quarterly profit and loss statements available as of the date I submitted my Amended Opening Report.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

issue products and, as a result, should also have been subtracted when calculating the at-issue profits."[21]  Dr. Vigil estimated the per-trade variable operating expenses included in the calculation of CM1 and CM2 based on a regression analysis.[22]  Based on his analysis, Dr. Vigil calculated that StockX earned profits of ███████ after deducting cost of revenue and the variable portion of CM1 operating expenses, and earned profits of ███████ after deducting cost of revenue and the variable portion of CM2 operating expenses from the at-issue sales.[23]

22.  For purposes of this Second Rebuttal Report, I have considered Dr. Vigil's analysis regarding the deductibility of a portion of CM1 and CM2 operating expenses identified in his analysis for which StockX has the burden to prove, and accept that these indirect costs determined by Dr. Vigil support further deductions from StockX's gross profits resulting in profits of ███████.

### 3.    Dr. Vigil's Fixed Cost Deduction is Not a Proper Analysis of Deductible Costs for Disgorgement

23.  I then considered Dr. Vigil's analysis for deducting fixed overhead expenses that are not directly attributable to the trades StockX facilitated while using false and/or misleading statements.  I do not agree with Dr. Vigil that these costs are appropriately deductible from the revenues that StockX earned on the trades at issue.  Dr. Vigil has not shown that the fixed overhead expenses StockX incurs operating its overall business are directly attributable to the trades made while using the false and/or misleading statements.

24.  As previously described, under 15 U.S.C. § 1117(a), StockX is responsible for proving "all elements of cost or deduction claimed" from accused revenue.[24]  To determine StockX's profits, deductible costs must be subtracted from StockX's revenue from the sale of accused products.  In trademark infringement and false advertising matters, I understand that defendants "must show a 'sufficient nexus between each expense claimed

---

[21] Vigil Rebuttal Report: ¶39.
[22] Vigil Rebuttal Report: ¶46.
[23] Vigil Rebuttal Report: ¶46 and Exhibit 4A.
[24] 15 U.S.C. § 1117(a).

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

and the sales of the unlawful goods' before it may deduct any indirect expenses from its profits."[25]  I further understand the Second Circuit has held that generally "'[o]verhead' which does not assist in the production of the infringement should not be credited to the infringer; that which does, should be; it is a question of fact in all cases."[26]  I further understand that indirect costs, such as fixed overhead, should not be deducted unless the defendant can establish that the *entirety* of the overhead expense is attributable to the unlawful sales.[27]  I understand the court "must first 'determine what overhead expense categories ... are actually implicated by the production of the infringing product', a process that requires a determination whether there is 'a sufficient nexus ... between a category of overhead and the production or sale of the infringing product.'"[28]  The second step is to determine "a fair, accurate, and practical method of allocating the implicated overhead to the infringement."[29]

25.  Dr. Vigil claims that "some of the operating costs that StockX normally considers fixed for shorter time horizons and/or smaller volume changes would not have been incurred by StockX" without the revenue from the at-issue product sales.[30]  Dr. Vigil ultimately

---

[25] *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276 (S.D.N.Y. 2009).

[26] *Hamil America Inc. v. GFI*, 193 F.3d 92 (1999).

[27] *Lexington Furniture Industries, Inc. v. Lexington Company*, AB, 2022 WL 13848274, at *7 (S.D.N.Y Oct. 24, 2022).

[28] *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276 (S.D.N.Y. 2009); *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999).  I understand this Court has further instructed that the "Defendant has the burden of proving by a preponderance of the evidence any costs or expenses to be deducted from its gross revenue. You may not deduct the costs of goods sold and other direct costs associated with those goods because defendant can point to no evidence in the record which would differentiate the costs of assertedly infringing goods from those that are not asserted to be infringing. Also, defendant must demonstrate a sufficient connection between each claimed overhead expense and the sale of infringing products in order to deduct the expense from its gross revenues for infringing sales. An item of overhead may be deducted if, but only if you find that the entirety of the overhead expense is attributable to the infringing goods. If defendant fails to establish any expense by a preponderance of the evidence, you should not deduct that expense from the gross revenues." In this instance "overhead" was defined as "the ongoing costs to operate a business other than the cost of goods sold and other direct costs associated with those goods. Overhead includes items such as rent, utilities and support staff salaries. If defendant has proven that an overhead expense applies exclusively to the infringing goods, then you may deduct it from gross revenues attributable to the infringing goods. If defendant has not so proven, then you may not deduct it from gross revenues attributable to the infringing goods." *Lexington Furniture Industries, Inc. v. Lexington Company*, AB, 2022 WL 13848274, at *7 (S.D.N.Y Oct. 24, 2022).

[29] *Hamil America Inc. v. GFI*, 193 F.3d 92 (2d Cir. 1999); *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F.Supp.2d 276 (S.D.N.Y. 2009).

[30] Vigil Rebuttal Report: ¶47.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

asserts that "it is reasonable to conclude that StockX's 'fixed' operating expenses would have been considerably smaller than those StockX actually incurred if it were not able to make any of the Nike and Jordan sneaker trades" related to the false advertising.[31]   In determining to deduct additional, "fixed" operating expenses to calculate StockX's profits, Dr. Vigil failed to analyze or identify any specific operating expense category or show a sufficient nexus between each expense category and sales of the at-issue products. Dr. Vigil failed to analyze the nature, composition and amount of the expenses included in fixed operating expenses he deducts for any of the years included in his analysis.  Dr. Vigil also fails to show how each expense, on a line-by-line basis, is directly associated with the sales StockX made using the false and/or misleading statements.  Therefore, Dr. Vigil has not met his burden to make these deductions to StockX's profits and I do not agree with these deductions.

26.    Even if Dr. Vigil had shown why specific additional overhead expense categories should be deducted, his methodology for determining such deductions is improper.  Instead of analyzing the particular expense categories included in StockX's fixed operating expenses for each year and demonstrating the nexus to at-issue sales for each expense, Dr. Vigil concluded that "the level of these operating costs required to support the volume of Nike and Jordan sneaker trades that involved at least one U.S. individual in 2021 are approximately the same as the level of the costs observed in 2019 for the *entire* StockX platform."[32]   Instead of analyzing the fixed operating expenses for 2020 through 2022, Dr. Vigil simply deducted the amount of fixed operating expenses incurred by StockX in 2019 from the at-issue sales in 2021.  Dr. Vigil did not analyze the costs actually incurred by StockX in 2021 to determine the specific line items that should be deducted from the relevant revenues.  Instead, Dr. Vigil grouped all fixed operating expenses into one category, which I understand is contrary to the relevant framework to make such deductions in the Second Circuit.  Dr. Vigil did not analyze the composition or amount

---

[31] Vigil Rebuttal Report: ¶52.
[32] Vigil Rebuttal Report: ¶53.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

of fixed operating costs by category in 2019, or compare those costs to the costs incurred in 2021.  Furthermore, Dr. Vigil did not analyze the costs actually incurred by StockX in 2020 or 2022.  To calculate deductible fixed operating costs for 2020 and 2022, Dr. Vigil adjusted his assumed 2021 deductible fixed operating costs (which were based on StockX's 2019 costs and not the costs actually incurred in 2021) instead of analyzing the costs actually incurred by StockX in 2020 and 2022.

27. Overall, Dr. Vigil fails to identify why the entirely of specific fixed operating cost line items should be deducted and apply a reliable methodology to determine such deductions. Dr. Vigil did not analyze the costs actually incurred during the damages period and fails to establish the necessary nexus to deduct the additional costs.  As identified in my Amended Opening Report, StockX incurs costs for operating expense departments that evidence indicates would not be properly deductible, including Finance Expenses, Legal Expenses, Communications Expenses, Supply Acquisition Expenses, and Facilities, as examples.[33]  Dr. Vigil's approach fails to even identify the categories of costs deducted in his analysis and therefore does not even attempt to explain why deducting each of these cost categories that StockX's Rule 30(b)(6) witness conceded were not entirely related to (or related to at all) the sales made using the false and/or misleading statements.

### 4.    Dr. Vigil's Opinions on Apportionment

28. Finally, I considered Dr. Vigil's analysis for further apportioning StockX's profits.  I do not agree with Dr. Vigil's apportionment approach and do not believe he has met his burden to justify deducting additional StockX's profits.

29. In addition to the deduction of costs addressed above, Dr. Vigil claims that my analysis "overstates the importance of StockX's advertisements about its authentication process in driving demand for purchases on the StockX platform, and ignores a variety of other factors that contributed to the popularity of the platform."[34]  Dr. Vigil asserts that a number of considerations factor into consumer purchase decisions, such as "speed of

---

[33] Amended Opening Report: ¶79.
[34] Vigil Rebuttal Report: ¶55.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

delivery, availability of scarce or unique products, price transparency, value for the price, and customer experience."[35] Dr. Vigil also asserts that no separate value was apportioned to StockX's authentication process apart from the false statements, such as verifying that the product is the correct size and color, appears to be new, includes expected accessories, and has no apparent manufacturing defects.[36]

30.    However, as addressed in my Amended Opening Report, I understand that "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."[37]    Dr. Vigil did not provide an independent quantification of the deduction he claims is appropriate related to any of the alleged considerations he identified.    As such, Dr. Vigil has not demonstrated the amount, if any, of additional deductions from StockX's profits subject to disgorgement and has thus failed to meet his burden to justify any apportionment of StockX's profits.

31.    Instead, the only apportionment calculation Dr. Vigil performs is based on Ms. Butler's survey.    Dr. Vigil claims that the results of Ms. Butler's survey "suggest that, at most, 0.8 percent to 3.5 percent…attributed their likely use of the website to the alleged false claims."[38]    I understand that another expert retained on behalf of Nike is addressing the flaws in Ms. Butler's survey and reliability of her resulting opinions.    To the extent the survey performed by Ms. Butler is flawed and unreliable, the application of the results of the survey to StockX's profits would similarly be flawed and unreliable.

32.    Additionally, Dr. Vigil's apportionment analysis is flawed because the results of Ms. Butler's survey appear to be inconsistent with other StockX evidence produced in this matter, including evidence relied upon by Dr. Vigil.    For example, as addressed in my Amended Opening Report, authentication (and therefore the StockX false and/or

---

[35] Vigil Rebuttal Report: ¶57.
[36] Vigil Rebuttal Report: ¶60.  Dr. Vigil also asserts that "the implication of repeat trades by buyers who received a counterfeit product" is not accounted for, and that there is "no evidence that StockX buyers believed that its verification process would eliminate the possibility of receiving counterfeit products."  Vigil Rebuttal Report: Sections II.B.3.c and II.B.3.d (¶¶63-66).
[37] Amended Opening Report: ¶45; 15 U.S.C. § 1117(a).
[38] Vigil Rebuttal Report: ¶70.

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

misleading statements regarding authentication) "is at the core of the experience" and StockX uses its claimed guarantee of product authenticity to gain a competitive advantage in the marketplace.[39]  Additionally, as addressed in my Rebuttal Report, the results of a survey included in StockX's March 2022 US Segmentation Report indicates that 61% of respondents selected "knowing the good is certified as authentic" as "most important []" when choosing an online reselling platform to <u>buy</u> goods."[40]  66% of respondents selected "is a website or brand I can trust" and 65% selected "has trustworthy buyers/sellers."[41] StockX's CEO, Scott Cutler, believes that StockX's authentication process builds trust. Specifically, Mr. Cutler stated "the authentication process stands in the middle of every transaction for us.  It results in an end buyer's high degree of trust in us as a brand to authenticate the products that are sold on our market."[42]

33.     Dr. Vigil ignores these relevant facts and accepts and applies Ms. Butler's survey that at most only 0.8% to 3.5% of StockX's sales may be attributed to StockX's false and/or misleading authentication claims.  Dr. Vigil accepts and applies Ms. Butler's survey results even though he also relies upon contemporaneous StockX surveys prepared in the ordinary course of operating its business that contradict Ms. Butler's survey results and indicate 48% of StockX customers consider authenticity "[v]ery important";  51% of StockX customers believe authenticity is "[v]ery [i]mportant" and "therefore constitutes

---

[39] Amended Opening Report: ¶36; Fenton Ex. 11: STX0020185-188 (at 185-186) ("Authentication is at the core of the experience and StockX set the industry standard. … StockX invented an entirely new job category of authenticator; they are armed with a robust database of proprietary information to effectively assess the legitimacy of each product.").

[40] Rebuttal Report: ¶30; StockX x Decode_M US Segmentation Report, March 2022: STX0018799-840 (at 827). *See also*, Deposition of Jacob Fenton (StockX VP of Customer Experience and Insights), December 2, 2022: pp. 58:4-60:17; Fenton Ex. 6, StockX Decode_M Segment Results Presentation: STX0018453-499 (at 465-466) (The study commissioned by StockX shows that in the U.S., 61% of survey respondents said that "Knowing the good is certified as authentic" is "most important to you when choosing an online reselling platform to buy goods" and 65% of survey respondents said that having "trustworthy buyers/sellers" is "most important to you when choosing an online platform to sell goods."); StockX US Brand Tracker, November 2020: STX0096562-613 (at 578-582) (demonstrating product quality and authenticity are high purchase drivers).

[41] StockX x Decode_M US Segmentation Report, March 2022: STX0018799-840 (at 827).

[42] Marc Bain, *For StockX, selling sneakers is just the beginning*, QUARTZ (May 8, 2021), https://qz.com/2005457/for-stockx-selling-jordans-is-just-the-beginning; *StockX Launches Vault NFTs*, STOCKX (Jan. 18, 2022), https://stockx.com/about/stockx-launches-vault-nfts/ ("our marketplace is centered on authenticity, liquidity, and market visibility with pricing based solely on supply and demand.")

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

a top purchase driver"; and 61% of existing and prospective customers agree that "[k]nowing the good is certified as authentic" is most important "when choosing an online reselling platform to <u>buy</u> goods."[43]

### B.    Conclusion

34.    As addressed above, for purposes of this Second Rebuttal Report, I accept Dr. Vigil's analysis regarding the deductibility of the portion of CM1 and CM2 operating expenses identified in his analysis.  As summarized in **Table 3** below, StockX's resulting profits over the Relevant Period from facilitating resale trades of Nike and Jordan branded shoes where at least one side of the trade included a U.S. individual total ████████



---

[43] Vigil Rebuttal Report: ¶58, footnote 141, citing StockX US Brand Perception Study, November 2019: STX0021868-951 (at 894, 897); StockX US Brand Tracker, November 2020: STX0092496-544 (at 515); StockX Global segmentation Study, April 2022: STX0091819-911 (at 825, 877).
[44] **Attachment 9.**

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**Documents Considered**                    **Attachment 3.U.U.U**

| Beginning Bates | | Ending Bates |
| --- | --- | --- |
| NIKE0000016 | - | NIKE0000017 |
| NIKE0000281 | - | NIKE0000287 |
| NIKE0001145 | - | NIKE0001194 |
| NIKE0006776 | - | NIKE0006781 |
| NIKE0006785 | - | NIKE0006793 |
| NIKE0029087 | - | NIKE0029087 |
| NIKE0038783 | - | NIKE0038788 |
| NIKE0038792 | - | NIKE0038798 |
| NIKE0038817 | - | NIKE0038821 |
| NIKE0038955 | - | NIKE0038959 |
| NIKE0039436 | - | NIKE0039436 |
| NIKE0039854 | - | NIKE0040006 |
| NIKE0041218 | - | NIKE0041226 |
| NIKE0041233 | - | NIKE0041233 |
| NIKE0041262 | - | NIKE0041265 |
| NIKE0041300 | - | NIKE0041302 |
| NIKE0041350 | - | NIKE0041357 |
| NIKE0042395 | - | NIKE0042397 |
| NIKE0081471 | - | NIKE0081471 |
| STX0014863 | - | STX0014921 |
| STX0016703 | - | STX0016869 |
| STX0017326 | - | STX0017371 |
| STX0018010 | - | STX0018014 |
| STX0018453 | - | STX0018499 |
| STX0018799 | - | STX0018840 |
| STX0020185 | - | STX0020188 |
| STX0020225 | - | STX0020268 |
| STX0020523 | - | STX0020534 |
| STX0020994 | - | STX0021141 |
| STX0021182 | - | STX0021188 |
| STX0021364 | - | STX0021364 |
| STX0021481 | - | STX0021498 |
| STX0021868 | - | STX0021951 |
| STX0022678 | - | STX0022691 |
| STX0023881 | - | STX0023887 |
| STX0026651 | - | STX0026760 |
| STX0038743 | - | STX0038751 |
| STX0039423 | - | STX0039473 |
| STX0039585 | - | STX0039592 |
| STX0040174 | - | STX0040191 |
| STX0040474 | - | STX0040478 |
| STX0040935 | - | STX0040937 |
| STX0041076 | - | STX0041077 |
| STX0042659 | - | STX0042663 |
| STX0055272 | - | STX0055276 |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**Documents Considered**                                        **Attachment 3.U.U.U**

| Beginning Bates | | Ending Bates |
| --- | --- | --- |
| STX0056718 | - | STX0056718 |
| STX0058180 | - | STX0058200 |
| STX0061163 | - | STX0061172 |
| STX0085640 | - | STX0085641 |
| STX0085644 | - | STX0085646 |
| STX0090109 | - | STX0090240 |
| STX0090493 | - | STX0090677 |
| STX0091556 | - | STX0091567 |
| STX0091819 | - | STX0091911 |
| STX0092496 | - | STX0092544 |
| STX0096562 | - | STX0096613 |
| STX0098851 | - | STX0098876 |
| STX0125881 | - | STX0125932 |
| STX0130531 | - | STX0130572 |
| STX0169544 | - | STX0169546 |
| STX0191602 | - | STX0191604 |
| STX0202142 | - | STX0202143 |
| STX0232285 | - | STX0232286 |
| STX0352655 | - | STX0352674 |
| STX0484545 | - | STX0484545 |
| STX0583757 | - | STX0583897 |
| STX0589430 | - | STX0589458 |
| STX0592628 | - | STX0592636 |
| STX0594173 | - | STX0594465 |
| STX0594887 | - | STX0595073 |
| STX0680795 | - | STX0680837 |
| STX0699905 | - | STX0699907 |
| STX0752605 | - | STX0752642 |
| STX0774239 | - | STX0774239 |
| STX0774265 | - | STX0774281 |
| STX0774283 | - | STX0774336 |
| STX0774394 | - | STX0774395 |
| STX0806027 | - | STX0806054 |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

Documents Considered                                                     Attachment 3.U.U.U

**Legal Filings** | **Date**
---|---
- StockX LLC's Answer to Complaint | 3/31/2022
- Nike Inc. v. StockX LLC, No. 1:22-cv-00983-VEC, Civil Case Management Plan and Scheduling Order Dkt. 25 | 4/11/2022
- Plaintiff Nike, Inc.'s First Set of Request for Production of Documents and Things to Defendant StockX LLC | 4/19/2022
- Plaintiff Nike, Inc.'s First Set of Requests for Admission to Defendant StockX LLC | 4/29/2022
- Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories | 5/18/2022
- Defendant's Objections and Responses to Plaintiff's First Set of Requests for Production | 5/19/2022
- Nike Inc. v. StockX LLC, No. 1:22-cv-00983-VEC, First Amended Complaint | 5/25/2022
- Defendant StockX LLC's Responses and Objections to Plaintiff Nike, Inc.'s First Set of Requests for Admission | 5/31/2022
- Answer to First Amended Complaint Dkt. 41, and Exhibits | 6/6/2022
- Plaintiff Nike, Inc.'s Second Set of Interrogatories to Defendant StockX LLC | 6/16/2022
- Plaintiff Nike, Inc.'s Second Set of Requests for Production of Documents and Things to Defendant StockX LLC | 6/16/2022
- Defendant's Objections and Responses to Plaintiff's Second Set of Interrogatories | 7/18/2022
- Defendant's Objections and Responses to Plaintiff's Second Set of Requests for Production | 7/18/2022
- Plaintiff Nike, Inc.'s Third Set of Requests for Production of Documents and Things to Defendant StockX LLC | 7/25/2022
- Defendant's Third Set of Requests for Production | 8/19/2022
- Nike's Letter Re: Nike, Inc. v. StockX LLC, Case No. 1:22-cv-00983-VEC (S.D.N.Y.), ECF 089 | 12/19/2022
- Defendant's First Supplemental Objections and Responses to Plaintiff's Third Set of Interrogatories | 3/21/2023
- Plaintiff Nike Inc.'s Supplemental Responses and Objections to Defendant StockX LLC's Third Set of Interrogatories | 4/17/2023
- Nike Inc. v. StockX LLC, No. 1:22-cv-00983-VEC, Order, Dkt 171 | 4/26/2023

**Expert Reports** | **Date**
---|---
- Expert Report of Kari Kammel, and Exhibits | 5/5/2023
- Expert Report of Robert L. Vigil, PhD, and Exhibits | 5/5/2023
- Expert Report of Dejongh "Dee" Wells, and Appendix | 5/5/2023
- Expert Report of Catherine Tucker, and Appendix | 5/5/2023
- Expert Rebuttal Report of Sarah Butler, and Exhibits | 6/2/2023
- Rebuttal Expert Report of Robert L. Vigil, PhD, and Exhibits | 6/2/2023

**Depositions** | **Date**
---|---
- Deposition of Russell Amidon (Senior Director of VIP Relations, StockX) and Exhibits | 11/30/2022
- Deposition of Jacob Fenton (Vice President of Customer Experience and Insights, StockX) and Exhibits | 12/2/2022
- Deposition of Ron Faris (Vice President and General Manager of Nike Virtual Studios, Nike) and Exhibits | 12/7/2022
- Deposition of Heather Paulson (Vice President of Connected Marketplace, Nike) and Exhibits | 1/6/2023
- Deposition of Barbara Delli Carpini (Vice President for Global Brand Protection and Digital IP Enforcement, Nike) and Exhibits | 1/10/2023
- Deposition of Laura Rizza (Former Nike Brand Protection Coordinator) and Exhibits | 2/1/2023
- Deposition of Joe Pallett (Director of Authentication and Innovation, Nike) and Exhibits | 2/8/2023
- Deposition of Roy Ikhyun Kim (Third Party Consumer and Sneaker Collector) and Exhibits | 2/8/2023
- Deposition of Brock Huber (Vice President of Corporate and Strategic Development, StockX) and Exhibits | 2/22/2023

**Case Law** | **Date**
---|---
- *Maier Brewing Co. v. Fleischmann Distilling Corp.* , (9th Cir. 1968) | 2/21/1968
- *W.E. Bassett Co. v. Revlon, Inc.* , (2d Cir. 1970) | 11/10/1970
- *George Basch Co. v. Blue Coral, Inc.* , (2d Cir. 1992) | 6/30/1992
- *Hamil America Inc. v. GFI* , (1999) | 9/29/1999
- *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp* ., (S.D.N.Y. 2009) | 4/27/2009
- *All-Star Marketing Group, LLC v. Media Brands Co., Ltd.* , (2011) | 1/3/2011
- *Merck Eprova AG v. Gnosis S.p.A* ., (S.D.N.Y. 2012) | 9/30/2012
- *Lexmark Int'l, Inc. v. Static Control Components, Inc.* , (2014) | 3/25/2014
- *Merck Eprova AG v. Gnosis S.p.A* ., (2d Cir. 2014) | 7/29/2014
- *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.* , (E.D.N.Y. 2016) | 3/31/2016
- *Dependable Sales & Serv., Inc. v. TrueCar, Inc* ., (S.D.N.Y. 2019) | 3/27/2019
- *Diageo North America Inc. v. WJ Deutsch and Sons Ltd* , (S.D.N.Y. Dec. 3, 2019) | 12/3/2019
- *E. Mishan & Sons, Inc. v. Novel Brands LLC* , (S.D.N.Y. Feb. 13, 2020) | 2/13/2020
- *Kelly Toys Holdings LLC v. alialialiLL Store* , (S.D.N.Y. Nov. 12, 2021) | 11/12/2021
- *Lexington Furniture Industries, Inc. v. Lexington Company,*  (S.D.N.Y Oct. 24, 2022) | 12/22/2022
- *Nike, Inc. v. StockX, LLC,*  (S.D.N.Y. Jan. 9, 2023) | 1/9/2023

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**Documents Considered**                                                     **Attachment 3.U.U.U**

| **Financials** | **Date** |
| --- | --- |
| ● Nike, Inc., Form 10-K for the fiscal year ended May 31, 2022 | 5/31/2022 |

| **Legal Code** | **Date** |
| --- | --- |
| ● 15 U.S.C. § 1114 | |
| ● 15 U.S.C. § 1117 (a) | |
| ● 15 U.S.C. § 1117 (c) | |
| ● 15 U.S.C. § 1125 | |
| ● 15 USC Sec. 1116(a) | |

| **Trademarks** | **Date** |
| --- | --- |
| ● United States Patent and Trademark Office Registration No. 977,190: Swoosh Design. | 1/22/1974 |
| ● United States Patent and Trademark Office Registration No. 978,952: NIKE. | 2/19/1974 |
| ● United States Patent and Trademark Office Registration No. 1,214,930: NIKE. | 11/2/1982 |
| ● United States Patent and Trademark Office Registration No. 1,323,343: Swoosh Design. | 3/5/1985 |
| ● United States Patent and Trademark Office Registration No. 1,325,938: NIKE. & Swoosh Design | 3/19/1985 |
| ● United States Patent and Trademark Office Registration No. 1,370,283: AIR JORDAN | 11/12/1985 |
| ● United States Patent and Trademark Office Registration No. 1,558,100: JUMPMAN Design. | 9/26/1989 |
| ● United States Patent and Trademark Office Registration No. 3,627,820: JUMPMAN | 5/26/2009 |
| ● United States Patent and Trademark Office Registration No. 3,725,535: AIR JORDAN & Wings Design | 12/15/2009 |

| **Analyst Reports** | **Date** |
| --- | --- |
| ● "Taking Stock of StockX: Deep Dive Into The Sneaker Resale Market Leader", Wells Fargo | 1/27/2020 |
| ● "Sneaker as an Alternate Asset Class, Part III", Cowen | 5/24/2022 |

| **Other** | **Date** |
| --- | --- |
| ● StockX Production Letter | 5/23/2023 |

| **Websites** | **Date** |
| --- | --- |
| ● https://interbrand.com/newsroom/interbrand-launches-best-global-brands-2022/ | |
| ● https://qz.com/2005457/for-stockx-selling-jordans-is-just-the-beginning | |
| ● https://stockx.com/about/authentication/ | |
| ● https://stockx.com/about/how-it-works/ | |
| ● https://stockx.com/about/stockx-cyber-weekend-2021/ | |
| ● https://stockx.com/about/stockx-launches-vault-nfts/ | |
| ● https://stockx.com/about/sx-market-insights/big-facts-current-culture-index-2023/ | |
| ● https://stockx.com/about/sx-market-insights/current-culture-index-22/ | |
| ● https://stockx.com/about/verification/ | |
| ● https://stockx.com/help/articles/Are-shoes-sold-on-StockX-considered-deadstock | |
| ● https://stockx.com/help/articles/How-do-I-sell-on-StockX | |
| ● https://stockx.com/help/articles/What-kinds-of-sneakers-are-sold-on-StockX. | |
| ● https://stockx.com/help/articles/where-is-StockX-located | |
| ● https://stockx.com/nike/release-date | |
| ● https://stockx.com/nike-air-flight-huarache-og-white-varsity-purple | |
| ● https://stockx.com/nike-air-max-1-the-bay | |
| ● https://stockx.com/nike-dunk-low-lx-blue-suede-womens | |
| ● https://stockx.com/nike-zoom-vomero-5-varsity-maize-laser-orange | |
| ● https://stockx.com/retro-jordans/release-date | |
| ● https://www.bloomberg.com/profile/company/1786Z:SW | |
| ● https://www.complex.com/sneakers/stockx-fake-sneakers-nike-lawsuit-38-pairs | |
| ● https://www.crunchbase.com/organization/stockx | |
| ● https://www.economist.com/films/2022/12/08/what-is-driving-the-proliferation-of-counterfeit-sneakers | |
| ● https://www.forbes.com/sites/korihale/2020/12/15/sneakerheads-are-helping-stockx-pursue-a-25-billion-valuation/?sh=46eff5272255 | |
| ● https://www.nytimes.com/wirecutter/blog/myths-about-counterfeit-products-debunked/ | |
| ● https://www.statista.com/chart/24313/stockx-gross-merchandise-volume/ | |
| ● https://www.washingtonpost.com/business/2022/09/30/sneaker-authentication-ebay-stockx-nike/ | |
| ● https://www.wsj.com/articles/stockx-hub-for-sneakerheads-is-latest-1-billion-unicorn-11561571959 | |

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

**Attachment 9**



Page 1 of 1

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

Page 1 of 1

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY

HIGHLY CONFIDENTIAL—
OUTSIDE COUNSEL'S EYES ONLY

HIGHLY CONFIDENTIAL –
OUTSIDE COUNSEL'S EYES ONLY