# EXHIBIT 38

```
                                                             Page 1

 1            UNITED STATES DISTRICT COURT
 2        FOR THE SOUTHERN DISTRICT OF NEW YORK
 3
 4   NIKE, INC.,
 5
           Plaintiff,
 6
              vs.              Case No. 1:22-cv-00983
 7                                       VEC
     STOCKX LLC,
 8
           Defendant.
 9   _____
10
11
12
13
14
15         VIDEO DEPOSITION OF JOHN L. HANSEN
16              San Francisco, California
17             Thursday, August 31, 2023
18                     Volume 1
19
20
     STENOGRAPHICALLY REPORTED BY:
21   REBECCA L. ROMANO, RPR, CSR, CCR
     California CSR No. 12546
22   Nevada CCR No. 827
     Oregon CSR No. 20-0466
23   Washington CCR No. 3491
24   JOB NO. 6015329
25   PAGES 1 - 286
```

Page 2

```
 1            UNITED STATES DISTRICT COURT
 2         FOR THE SOUTHERN DISTRICT OF NEW YORK
 3
 4   NIKE, INC.,
 5
         Plaintiff,
 6
             vs.                    Case No. 1:22-cv-00983
 7                                  VEC
     STOCKX LLC,
 8
         Defendant.
 9   _____
10
11
12
13
14
15
16
17           DEPOSITION OF JOHN L. HANSEN, taken on
18   behalf of the Defendant, at Debevoise & Plimpton
19   LLP, 650 California Street, 31st Floor,
20   San Francisco, California, commencing at 9:05 a.m.,
21   Thursday, August 31, 2023 before REBECCA L. ROMANO,
22   a Certified Shorthand Reporter, Certified Court
23   Reporter, Registered Professional Reporter.
24
25
```

Page 55

1      Q.   I represent to you that this is a
2  document taken from the Wayback Machine, which is
3  an Internet archive that captures and records
4  digital images of websites over time, and I further
5  represent to you that this was captured by the
6  Internet Archive on December 25th, 2019, and I
7  direct your attention to the header and the footer
8  on the first page which make reference to the
9  Wayback Machine and certain dates and websites.
10          Have you ever looked at -- and I'm not
11  asking specifically about this document.
12          Have you ever looked at StockX's Terms
13  and Conditions of Use?
14     A.   I don't specifically recall reviewing
15  their Terms and Conditions of Use.
16     Q.   So did you offer the opinion in
17  paragraph 31 of your first amended report without
18  ever looking at StockX's actual -- of their
19  policies?
20          MR. MILLER:  Objection.
21          THE DEPONENT:  I don't believe I refer
22  back to the StockX Terms and Conditions of Use.  I
23  looked at public statements on the website where
24  consumers would interact with StockX for purposes
25  of conducting commerce.

```
                                                     Page 56
 1         Q.   (By Mr. Riehl)  In paragraph 31 of your
 2    first amended report, you offer an opinion about
 3    StockX's publicized return policy, right?
 4         A.   I do.
 5         Q.   You did not look at StockX's Terms and
 6    Conditions of Use as part of your effort to
 7    determine what StockX's publicized return policy
 8    was; is that right?
 9              MR. MILLER:  Objection.
10              THE DEPONENT:  There were other
11    statements about what their policy was and other
12    documents and information that indicated how that
13    policy was articulated on their website.  So that's
14    what I'm referring to and relying on.
15         Q.   (By Mr. Riehl)  And what statements are
16    those?
17         A.   I read one to you earlier from one of
18    these exhibits, which was they don't accept
19    returns, exchanges, or cancellations.
20         Q.   And it's your understanding that that
21    document was a publicly stated position in that
22    document?
23              MR. MILLER:  Objection.
24              THE DEPONENT:  That's consistent with my
25    understanding of the public-facing information
```

Page 57

1  available on the StockX platform for purchases.
2       Q.   (By Mr. Riehl)  And what other publicly
3  facing information on the website did you look at
4  in your analysis of what StockX's publicized return
5  policy was?
6       A.   Nothing specific comes to mind.  It's
7  also the testimony and documents and correspondence
8  that we've reviewed that talks about the lack of a
9  return policy, consistent with expectations for an
10 e-commerce site.
11      Q.   You're aware that e-commerce sites
12 typically do have publicly available terms and
13 conditions posted on their websites, right?
14           MR. MILLER:  Objection.
15           THE DEPONENT:  That wouldn't be unusual.
16      Q.   (By Mr. Riehl)  And to determine a
17 company's publicized return policy, one would
18 ordinarily want to determine whether or not the
19 company had such terms and conditions posted,
20 right?
21           MR. MILLER:  Objection.
22           THE DEPONENT:  I'm not sure I understand
23 your question.
24      Q.   (By Mr. Riehl)  If you want to know --
25 sorry, strike that.

Page 58

1            Do you, personally, buy things online?
2       A.   On occasion.
3       Q.   If you want to know the return policy of
4  a company you are considering buying from, you
5  would look on their website to see if they have a
6  posted policy, right?
7            MR. MILLER:  Objection.
8            THE DEPONENT:  Generally, there's
9  information that's available publicly, yeah, a page
10 for returns or exchanges that would set forth
11 policy.  It's not always available, but sometimes
12 it's available, and it may vary based on the
13 particular transaction.
14      Q.   (By Mr. Riehl)  And in your personal
15 life, if you were interested in knowing whether a
16 company you were thinking of buying from had a
17 return policy, you would look to see if they had
18 one posted, right?
19           MR. MILLER:  Objection.
20           THE DEPONENT:  If I was interested in
21 finding out a specific piece of information, I
22 would look for that information.
23      Q.   (By Mr. Riehl)  So, in this case, when
24 you made statements about StockX's publicized
25 return policy, why didn't you go looking for

Page 59

1  StockX's publicized Terms and Conditions of Use?
2         MR. MILLER:  Objection.
3         THE DEPONENT:  I didn't review the Terms
4  and Conditions of Use.  I looked at other
5  information available in the record referencing and
6  discussing the return policy that was publicly
7  stated, as well as other information and testimony
8  about that.
9      Q.   (By Mr. Riehl)  And why didn't you look
10 to see if they had publicly posted Terms and
11 Conditions of Use?
12        MR. MILLER:  Objection.
13        THE DEPONENT:  Well, again, there were
14 references to the information that was publicly
15 available.  And that was consistent with and
16 sufficient as a basis for my opinions.
17     Q.   (By Mr. Riehl)  Wouldn't it also be
18 relevant to your opinions if they posted something
19 about that policy in their Terms and Conditions of
20 Use?
21        MR. MILLER:  Objection.
22        THE DEPONENT:  It would be another
23 potential source.  I don't know that a consumer
24 would generally go back to click through
25 authorization for terms and conditions to return

Page 60

1  something, like a return policy.  Generally that's
2  summarized on a website.
3       Q.   (By Mr. Riehl)  And can you identify any
4  StockX Web page in which StockX -- strike that.
5  I'll ask you another question.
6            Please look at Deposition Exhibit 6.
7            Do you have any reason to think this
8  document does not show StockX's publicly available
9  Terms and Conditions of Use as of December 25th,
10 2019?
11           MR. MILLER:  Objection.
12           THE DEPONENT:  I don't have any basis to
13 disagree with that.
14      Q.   (By Mr. Riehl)  Please turn to section 6
15 on the second page.
16           It's a little tricky to see paragraph
17 divisions because there aren't spaces in between,
18 but do you see the text that looks like -- kind of
19 at the start of the second paragraph that begins:
20 "If a buyer receives an item"?
21      A.   I do see that.
22      Q.   So starting there, do you see that this
23 document says, "If a buyer receives an item that it
24 believes to be counterfeit, the buyer must notify
25 StockX in writing 3 days after receiving the item,

Page 61

1   and we will commence an investigation into the
2   item.  The buyer shall cooperate with us in the
3   investigation and final disposition of the item,
4   including providing photographs and other evidence
5   of the item, providing the item to law enforcement,
6   destroying the item, or delivering the item back to
7   us, at our direction.  If we elect to have the
8   buyer destroy the item, the buyer shall provide
9   reasonable proof of destruction to us.  We will
10  refund all fees and costs paid by the buyer for the
11  item (including shipping and handling).  In no
12  event may a buyer resell any item (on StockX or
13  elsewhere) that is reasonably believed to be
14  counterfeit."
15          Do you see that?
16      A.  I do.
17      Q.  And you had not read that language or
18  language like it before today, right?
19          MR. MILLER:  Objection.
20          THE DEPONENT:  I recall seeing a
21  reference to the "3 days" in a later publicized
22  version of the website that was subsequent --
23  subsequently changed to, I think, ten days.
24      Q.  (By Mr. Riehl)  And the rest of the
25  language we just read is not language that you saw