# EXHIBIT 116

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC., <br>               Plaintiff, <br><br> v. <br><br> STOCKX LLC, <br>               Defendant. | Civil Action No.: 22-CV-983 (VEC) |

**PLAINTIFF NIKE INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT STOCKX LLC'S THIRD SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Nike, Inc. ("Nike") sets forth its supplemental objections and responses (the "Responses") to Defendant StockX LLC ("StockX") Third Set of Interrogatories (the "Interrogatories") as follows:

**PRELIMINARY STATEMENT**

These Responses represent Nike's good faith and reasonable effort to respond to the Requests based on information and documents available at this time. Nike's investigation of this matter is ongoing, and Nike reserves the right to amend, supplement, correct, or clarify the Responses in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

**OBJECTIONS TO CERTAIN DEFINITIONS AND INSTRUCTIONS**

1. Nike objects to StockX's Definition No. 12 defining the term "Third-Party Websites" to mean "any other website, online marketplace or online platform where Nike goods are bought, sold or traded." Nike objects to this Definition on the basis that the phrase "any other website" is vague and ambiguous, such that Nike cannot ascertain with reasonable certainty what StockX is defining. Specifically, StockX's definition does not indicate "other than" which websites it is seeking information regarding. Nike further objects to this definition on the basis

that the phrases "Nike goods" and "traded" are vague and ambiguous, such that Nike cannot ascertain with reasonable certainty what StockX is defining. Specifically, StockX's definition does not make clear whether it is intended to capture the sale of Nike NFTs. Subject to the foregoing, in responding to these Interrogatories, Nike understands the phrase "Third-Party Websites" to refer to websites that are not operated or controlled by Nike or StockX and "Nike goods" and "traded" to be limited to purchase and sale of Nike physical goods.

2.      Nike objects to StockX's Definition No. 13 defining the term "Vault NFTs" to mean "non-fungible tokens tied to physical products and held in StockX's temperature-controlled, high-security vault and referenced in the Complaint." Nike objects to this Definition on the basis that the phrase "non-fungible tokens tied to physical products" is vague and ambiguous, such that Nike cannot ascertain with reasonable certainty what StockX is defining. Specifically, StockX's Definition does indicate what it means to "tie" non-fungible tokens to physical products. Nike further objects to this Definition on the basis that Nike does not currently know whether the "Vault NFTs" are in fact "non-fungible tokens tied to physical products and held in StockX's temperature-controlled, high-security vault," because the facts underlying this disputed issue are within StockX's possession, custody, or control. Subject to the foregoing, in responding to these Interrogatories, Nike understands the term Vault NFTs to refer to the non-fungible tokens ("NFTs") advertised, marketed, promoted, offered for sale, sold, and/or traded on the StockX platform and referenced in the First Amended Complaint.

3.      Nike objects to StockX's Instruction No. 12 to the extent that it seeks to impose a burden in excess of what is required under Rule 26(b)(5) of the Federal Rules of Civil Procedure. Any privilege log produced by Nike in this Action will comply with the Federal Rules of Civil

Procedure and the terms of a stipulated ESI protocol, which was entered in this Action on June 29, 2022 (Dkt. 47).

4.     Nike further objects to Instruction No. 12 to the extent it seeks to require Nike to identify or log privileged materials being withheld that were created after the commencement of this Action on February 3, 2022. Nike will only identify or log privileged materials being withheld that were created before February 3, 2022.

5.     To the extent that any Interrogatories seek the disclosure of confidential, proprietary, trade secret, and/or competitively sensitive information, documents, ESI, or other materials, Nike will provide such non-privileged materials in accordance with the Stipulated Protective Order entered by the Court in this action on July 14, 2022. (Dkt. No. 52).

## OBJECTIONS AND RESPONSES TO THE INTERROGATORIES

**INTERROGATORY NO. 18:**

Describe in detail what You believe to be the infringing product in this case.

**INTERROGATORY RESPONSE NO. 18:**

Nike objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Interrogatory. Subject to the foregoing, Nike responds as follows:

As it relates to Nike's First, Second, Third, Fourth, and Fifth Causes of Action, the "infringing products" at issue in this Action are the eight "Vault NFTs" that StockX designed, minted, offered for sale, and sold on January 18, 2022 (Nike SB Dunk Low Ben & Jerry's Chunky Dunky; Nike Dunk Low Retro White Black; Air Jordan 4 Retro White Oreo; Nike KAWS Sacai Nike Blazer Low Blue; Nike Air VaporMax 2019 Cactus Plant Flea Market; Air Jordan 3 Retro A

3

Ma Maniére; and Nike Dunk Low Off-White Lot 50), and on January 26, 2022 (Air Jordan 1 Retro High OG Patent Bred), plus any additional NFTs that StockX will design, mint, and offer for sale (such as the 2,000 minted NFTs for the Air Jordan 11 Retro Cool Grey), that use Nike trademarks without Nike's authorization or approval.

In addition, as it relates to Nike's Sixth Cause of Action, the "infringing products" at issue in this Action are shoes that are "authenticated" and sold on the StockX platform and bearing counterfeits of at least the following Nike federally registered trademarks: Reg. No. 1,370,283 (AIR JORDAN word mark); Reg. No. 3,725,535 (Air Jordan & Wings Design mark); Reg. No. 3,627,820 (JUMPMAN word mark); Reg. No. 1,558,100 (JumpMan Design mark); Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); and Reg. No. 1,325,938 (NIKE & Swoosh Design mark). Nike reserves the right to supplement, change, and/or amend this response as discovery in this Action proceeds.

**INTERROGATORY NO. 19:**

Describe in detail each and every indicium of counterfeiting You use to determine whether the types of shoes that the Alleged Counterfeits purport to be are Genuine.

**INTERROGATORY RESPONSE NO. 19:**

Nike objects to this Interrogatory as unduly burdensome because it requests that Nike "[d]escribe in detail each and every indicium of counterfeiting" used to determine whether a given good is counterfeit. Nike will respond with its contentions about the Alleged Counterfeits at issue in this case, consistent with this district's LR 33.3(c), but it is not required to provide an exhaustive list of facts supporting those contentions. Nike further objects on the basis that this Request is vague as to the relevant time frame and that it is unduly burdensome because it is not time limited. Nike further objects to this Interrogatory on the ground that it is duplicative of Interrogatory No.

4

11. Nike further objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Interrogatory.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**

Subject to the foregoing, Nike responds that ███████████████

5

**INTERROGATORY NO. 20:**

Describe in detail Your process for determining that the Alleged Counterfeits are not Genuine.

**INTERROGATORY RESPONSE NO. 20:**

Nike objects on the basis that this Request is vague as to the relevant time frame and that it is unduly burdensome because it is not time limited. Nike further objects to this Interrogatory on the ground that it is duplicative of Interrogatory Nos. 11 and 19. Nike further objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Interrogatory.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**

Subject to the foregoing, Nike responds by incorporating its response to Interrogatory No. 19 as if fully set forth herein.

From December 2021 through January 2022, Nike's investigators shopped the StockX marketplace. Multiple pairs of Nike shoes were purchased on StockX's platform, which were received by Nike directly from its investigators and reviewed by Nike's Brand Protection team. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ at least four pairs purchased on StockX during that time frame are actually counterfeit. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Nike's Brand Protection team traveled to a warehouse ▓▓▓▓▓▓▓▓ on or around May 27, 2022 and July 22, 2022 to conduct in-person inspections of certain Nike and Jordan-branded shoes in the possession of the court-appointed receiver for Zadeh Kicks LLC ("Zadeh Kicks"), including products sold to Zadeh Kicks by StockX. ▓▓▓▓▓▓▓▓

6

███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████████████████████
███████████████

On September 8, 2022, Nike also received a ████████████████████
███████████████████████████████
████████████ Nike is in the process of reviewing the production and will supplement this response upon completion of that review.

On July 5, 2022, an individual named Roy Kim published on his "sneakerstrut" Instagram account a post regarding his belief that a large number of Jordan-branded shoes that he had recently purchased and received from StockX were counterfeit. On July 22, 2022, Joe Pallet, Nike's Director, Authentication and Innovation, traveled to Mr. Kim's ████████████ residence to conduct an in-person inspection of the pairs of Mr. Kim's Jordan-branded shoes purchased on StockX that he suspected were fake. ████████████████████████
████████████████████████ confirmed that 38 of the pairs that were in Mr. Kim's possession sold to him by StockX were counterfeit. Nike never took possession of the shoes and understands that Mr. Kim has since returned those pairs to StockX for a refund in light of the fact that they were counterfeit.

Nike reserves the right to supplement, change, and/or amended this response as discovery in this Action proceeds.

**INTERROGATORY NO. 21:**

Identify all evidence supporting Your Sixth Cause of Action for Counterfeiting (15 U.S.C. § 1114) in the Amended Complaint.

**INTERROGATORY RESPONSE NO. 21:**

Nike objects to this Interrogatory as unduly burdensome because it requests that Nike identify "all evidence" supporting one of its claims. Nike will respond with its contentions, consistent with this district's LR 33.3(c), but it is not required to "identify all evidence" supporting those contentions. Nike further objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Interrogatory.

Subject to the foregoing, Nike responds that is the owner of the following federally registered trademarks: Reg. No. 1,370,283 (AIR JORDAN word mark); Reg. No. 3,725,535 (Air Jordan & Wings Design mark); Reg. No. 3,627,820 (JUMPMAN word mark); Reg. No. 1,558,100 (JumpMan Design mark); Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); and Reg. No. 1,325,938 (NIKE & Swoosh Design mark).

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**

Nike further responds by incorporating its response to Interrogatory No. 20 as if fully set forth herein. Nike's confirmation that StockX is dealing in counterfeit "Nike" goods is consistent with numerous publicly available consumer complaints that Nike shoes guaranteed as "100% Verified Authentic" by StockX turned out to be counterfeit, including complaints directed to StockX on its social media channels. This is also consistent with StockX's own documents, which

show that StockX knowingly sold and is continuing to knowingly sell hundreds of "fakes," *i.e.*, counterfeit "Nike" goods that StockX "authenticated" before shipping them to consumers.

Nike further responds that StockX's sale of counterfeit Nike goods on its platform and have caused and are causing Nike injury as a result of, *inter* ███████████████████████████

███████████████████████████████████████████

Nike reserves the right to supplement, change, and/or amended this response as discovery in this Action proceeds.

**INTERROGATORY NO. 22:**

Identify each and every statement by StockX that forms the basis for Your Seventh Cause of Action for False Advertising (15 U.S.C. § 1125(a)(1)(B)) in the Amended Complaint.

**INTERROGATORY RESPONSE NO. 22:**

Subject to the foregoing, Nike responds that at least the following statements by StockX form the basis for Nike's Seventh Cause of Action:

- "100% Verified Authentic";
- "Verified Authentic";
- "Every item sold goes through our proprietary multi-step verification process with our team of expert authenticators";
- StockX's authentication process uses "100+ data points";
- StockX "authenticators are better equipped than anyone to ensure a product's authenticity";
- "StockX's "multi-step verification process";
- StockX's "proprietary" authentication process;
- "Guaranteed Authenticity" as related to products sold on the StockX platform;
- StockX's authentication process uses "Advanced Technology";

9

- StockX's authentication process uses "Quality Assurance";

- "StockX has a 99.96% authentication accuracy rate.";

- "Authenticators maintain a 99.96% accuracy rate";

- "Always Authentic, Never Fake.";

- "Always Verified Authentic";

- "Guaranteed Authenticity. Every item. Every time. Shop on StockX with complete confidence knowing every purchase is 100% Verified Authentic.";

- "A final check in our authentication practice, our QA experts ensure nothing slips through the cracks.";

- "We Authenticate Every Item. Every Time.";

- "Shop on StockX with complete confidence knowing every purchase is Verified Authentic.";

- "100% Authentic";

- "Buy & Sell Authentic Sneakers";

- "Buy authentic. Be authentic."; and

- "On StockX, every sneaker you want is always available and authentic."

Nike reserves the right to supplement, change, and/or amended this response as discovery in this Action proceeds.

10

| | |
|---|---|
| Date: April 17, 2023 | By:  /s/ Tamar Y. Duvdevani |

**DLA PIPER LLP (US)**

Tamar Y. Duvdevani
Marc E. Miller
Andrew J. Peck
Jared Greenfield
1251 Avenue of The Americas, 27th Fl.
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Michael Fluhr
555 Mission Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 836-2500
Facsimile: (415) 836-2501

Melissa Reinckens
401 B Street, Suite 1700
San Diego, CA 92101
melissa.reinckens@us.dlapiper.com

Jane W. Wise
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4149
Facsimile: (202) 863-7849

*Attorneys for Plaintiff Nike, Inc.*

## VERIFICATION

I have read Plaintiff Nike, Inc.'s ("Nike") Supplemental Responses to Defendant StockX LLC's Third Set of Interrogatories and certify under penalty of perjury that the factual representations in Nike's supplemental responses are, subject to inadvertent and undiscovered errors, true and correct to the best of my knowledge based upon the information made available to me and/or derived from company personnel with knowledge of the requested areas.

Executed on: 4/17/2023

Joe Pallet
Director, Authentication & Innovation
Nike, Inc.

## CERTIFICATE OF SERVICE

      I hereby certify that on April 17, 2023 I served a copy of Nike, Inc.'s Supplemental Responses and Objections to StockX LLC's Third Set of Interrogatories on all counsel of record for Defendant StockX LLC via email:

Megan K. Bannigan - mkbannigan@debevoise.com
David H. Bernstein - dhbernstein@debevoise.com
Chris S. Ford - csford@debevoise.com
Jyotin Hamid - jhamid@debevoise.com
Justin Ferrone - jcferrone@debevoise.com
Kathryn C. Saba - ksaba@debevoise.com
David Mayberry - DMayberry@kilpatricktownsend.com
Rob Potter - RPotter@kilpatricktownsend.com
Jeffrey Morganroth - jmorganroth@morganrothlaw.com

                                     BY: */s/ Marc E. Miller*