# EXHIBIT 123

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE INC.,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>STOCKX LLC,<br><br>　　　　　　　　　　Defendant. | Civil Action No.: 1:22-cv-00983-VEC |

**PLAINTIFF NIKE, INC.'S OBJECTIONS AND RESPONSES TO STOCKX LLC'S RULE 30(b)(6) DEPOSITION NOTICE**

Plaintiff Nike Inc., ("Nike"), by and through its attorneys DLA Piper LLP (US), responds and objects to Defendant StockX, LLC's ("StockX") Deposition Notice to Nike pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Deposition Notice") as set out below. Pursuant to Federal Rule of Civil Procedure 30(b)(6), Nike will meet and confer with StockX at a mutually agreed upon time concerning the matters for examination.

**OBJECTIONS TO CERTAIN DEFINITIONS**

Nike objects to the following definitions from the Deposition Notice in each and every instance in which they appear in the Deposition Notice:

**Definition No. 7:** Nike objects to the definition of the term "Backdooring" set out in the Deposition Notice on the basis that unauthorized sales of genuine Nike goods are not at issue in this case and therefore "Backdooring" is not relevant.

**Definition No. 9:** Nike objects to the definition of the term "Digital Sneakers" on the basis that "virtual sneakers" that are "not tied to a non-fungible token" is overly broad and unduly burdensome, designed to seek information that is not relevant to any claims or defenses, and thus not proportionate to the needs of this case. Specifically, Nike's First, Second, Third, and Fourth Causes of Action concern StockX's unauthorized use of Nike's asserted trademarks in connection

with StockX's Vault NFTs. While Nike has used its asserted trademarks in connection with virtual goods, including digital shoes, the information sought by these deposition topics concerning "Digital Sneakers" is not relevant to any claims or defenses at issue in this Action. The definition of "Digital Sneakers" is therefore overbroad because it includes digital or virtual sneakers that are *not* tied to a non-fungible token. Accordingly, in responding to any topics incorporating this term, Nike will interpret this term to mean virtual sneakers that are tied to a non-fungible token, *i.e.*, "Digital Sneaker NFTs."

## RELEVANT TIME PERIOD

StockX's Deposition Topics are not limited in time or scope. Accordingly, unless otherwise stated in a specific response below, Nike will construe the time period covered by StockX's Deposition Topics to be January 1, 2020 (approximately twenty-four months prior to StockX's conduct as alleged in the First Amended Complaint) to the present.

## OBJECTIONS AND RESPONSES TO SPECIFIC TOPICS

**TOPIC NO. 1:**

Nike's organizational structure.

**RESPONSE TO TOPIC NO. 1:**

Nike will designate Melanie Harris to testify regarding Nike's organizational structure as it relates to Nike's NFT offerings and will designate Barbara Delli Carpini to testify to Nike's organizational structure for Nike's brand protection and anti-counterfeiting efforts. To the extent this Topic seeks information or testimony concerning the entirety of Nike's organization structure, Nike objects to this Topic on the basis that it is overly broad, unduly burdensome, vague, and seeking information not relevant to this litigation nor proportional to the needs of the case and Nike will not prepare a witness to testify except as explicitly set out above.

**TOPIC NO. 2:**

Nike's past, present, or future plans to sell, use, or advertise NFTs or Digital Sneakers bearing the Asserted Marks (including through RTFKT).

**RESPONSE TO TOPIC NO. 2:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 3:**

The channels of trade through which Nike sold, sells, or plans to sell NFTs or Digital Sneakers bearing the Asserted Marks.

**RESPONSE TO TOPIC NO. 3:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 4:**

The channels of trade through which Nike sold, sells, or plans to sell NFTs or Digital Sneakers bearing the Asserted Marks.

**RESPONSE TO TOPIC NO. 4:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 5:**

The design and quality of Nike's NFTs and Digital Sneakers bearing the Asserted Marks, including any complaints Nike may have received from consumers regarding Nike NFTs and Digital Sneakers bearing the Asserted Marks.

**RESPONSE TO TOPIC NO. 5:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 6:**

The target and actual consumers for Nike's NFTs and Digital Sneakers bearing the Asserted Marks.

**RESPONSE TO TOPIC No. 6:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 7:**

The target and actual consumers for the Nike products underlying the Vault NFTs.

**RESPONSE TO TOPIC NO. 7:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 8:**

All instances of actual or possible confusion or mistake as to origin, sponsorship or affiliation stemming from StockX's sale of Vault NFTs.

**RESPONSE TO TOPIC NO. 8:**

Nike will designate Melanie Harris to testify on this Topic, but objects to this Topic as premature to the extent it calls for the production of expert testimony. Nike will produce any applicable expert reports along with any materials relied upon by the expert(s) in accordance with the Federal Rule of Civil Procedure 26(a)(2) and the scheduling order in this case

**TOPIC NO. 9:**

All consumer comments Nike is aware of that indicate consumers understand that Vault NFTs do not originate from, and are not sponsored by or affiliated with, Nike.

**RESPONSE TO TOPIC NO. 9:**

Nike will designate Melanie Harris to testify on this Topic.

**TOPIC NO. 10:**

Nike's plans to enter the custodial or "vaulted" market for physical sneakers, including but not limited to vaulted physical sneakers associated with NFTs.

**RESPONSE TO TOPIC NO. 10:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 11:**

How, if at all, Nike has participated and/or currently participates in the secondary market for physical sneakers.

4

**RESPONSE TO TOPIC NO. 11:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 12:**

Any analyses Nike has performed, received, or reviewed of the impact of the secondary market for sneakers on Nike's current business, including but not limited to (i) analyses on secondary-market pricing and sales performance of Allegedly Counterfeited Products and (ii) whether Nike has benefited from the sale of the Allegedly Counterfeited Products in the secondary market.

**RESPONSE TO TOPIC NO. 12:**

Nike objects to this Topic on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Topic. Nike will designate Ron Faris to testify on this Topic to the extent that it seeks non-privileged information.

**TOPIC NO. 13:**

Nike's plans to enter the secondary market for physical sneakers.

**RESPONSE TO TOPIC NO. 13:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 14:**

Nike's actual or potential competitors for (a) the sale of NFTs or Digital Sneakers bearing the Asserted Marks, (b) the sale of the Nike products underlying Vault NFTs, and (c) the resale of Nike products underlying Vault NFTs.

**RESPONSE TO TOPIC NO. 14:**

Nike will designate Ron Faris to testify on this Topic.

**TOPIC NO. 15:**

Nike's projected and actual revenues from the sales of NFTs and Digital Sneakers bearing the Asserted Marks, and any analysis explaining differences between the projected and actual revenues.

**RESPONSE TO TOPIC NO. 15:**

Nike objects to this this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's revenues from the sale of NFTs is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 16:**

Nike's projected and actual revenues from the sales of Allegedly Counterfeited Products, and any analysis explaining differences between the projected and actual revenues.

**RESPONSE TO TOPIC NO. 16:**

Nike objects to this Topic as incomprehensible because Nike does not sell "Allegedly Counterfeited Products." To the extent that StockX intends this Topic to seek information related to Nike's revenues for sales of genuine Nike goods, Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's revenues from sales of genuine Nike goods are not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 17:**

Nike's brand and market research concerning NFTs and Digital Sneakers bearing the Asserted Marks.

6

**RESPONSE TO TOPIC NO. 17:**

Nike will designate Mike Child to testify on this Topic.

**TOPIC NO. 18:**

Any trademark infringement claims or demands Nike has made to third parties regarding the use of the Asserted Marks in connection with NFTs or Digital Sneakers, and the resolution of those claims or demands.

**RESPONSE TO TOPIC NO. 18:**

Nike objects to this Topic on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Topic. Nike will designate Melanie Harris to testify on this Topic to the extent that it seeks non-privileged information.

**TOPIC NO. 19:**

The strength of the Asserted Marks, including the basis for Nike's assertion that each and every one of the Asserted Marks is "famous" within the meaning of the Lanham Act.

**RESPONSE TO TOPIC NO. 19:**

Nike will designate Melanie Harris to testify to the strength of the Asserted Marks referencing the Nike brand and Kelsey Thompson to testify to the strength of the Asserted Marks referencing the Jordan brand. Nike objects to this Topic as premature to the extent it calls for the production of expert testimony. Nike will produce any applicable expert reports along with any materials relied upon by the expert(s) in accordance with the Federal Rule of Civil Procedure 26(a)(2) and the scheduling order in this case. Nike will not prepare a witness to testify except as explicitly set out above.

**TOPIC NO. 20:**

Nike's quality control standards governing the production of the Allegedly Counterfeited Products, including any product specifications for each of the Allegedly Counterfeited Products and Nike's tolerance for deviation from those specifications by its factories.

**RESPONSE TO TOPIC NO. 20:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's quality control standards and product specifications, are not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 21:**

Nike's process for identifying sneakers that do not meet Nike's manufacturing standards, including any known allowances for variance, deficiencies, or gaps in that process, and any changes to that process over time

**RESPONSE TO TOPIC NO. 21:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's process for identifying sneakers that do not meet Nike's manufacturing standards, is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 22:**

Nike's process for identifying Counterfeit sneakers, including any known weaknesses, deficiencies, or gaps in that process, and any changes to that process over time.

8

**RESPONSE TO TOPIC NO. 22:**

Nike will designate Barbara Delli Carpini to testify on this Topic.

**TOPIC NO. 23:**

All resources Nike consults to determine whether a product is a genuine Nike product, including but not limited to Nike's use of ████████████████████████████████████
████████████████████████████████

**RESPONSE TO TOPIC NO. 23:**

Nike will designate Joe Pallett to testify on this Topic as it relates to Nike's use of ██
████████████████████████████████████ Nike will designate Barbara Delli Carpini to testify as to the remainder of the Topic.

**TOPIC NO. 24:**

Nike's historical release or distribution of authentic Nike products to select individuals prior to the release of those products to the general public, including any policies or restrictions applicable to those distributions.

**RESPONSE TO TOPIC NO. 24:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, whether or not Nike's releases and/or distributes authentic Nike goods to select individuals prior to the release of such goods to the general public, is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 25:**

Nike's knowledge of, and responses to, the unauthorized sale or resale of authentic Nike products bearing the Asserted Marks.

**RESPONSE TO TOPIC NO. 25:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's knowledge of "unauthorized sale or resale of authentic Nike products," is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on these Topics.

**TOPIC NO. 26:**

Nike's knowledge of, and responses to, the unauthorized or "third shift" production of products in Nike factories and/or by third party contractors of Nike

**RESPONSE TO TOPIC NO. 26:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's knowledge of "'third shift' production," to the extent that any such activity exists, is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on these Topics.

**TOPIC NO. 27:**

Nike's knowledge of, and responses to, Backdooring of products bearing the Asserted Marks.

**RESPONSE TO TOPIC NO. 27:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's knowledge of "'Backdooring," to the extent that any such activity exists, is not relevant to

StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on these Topics.

**TOPIC NO. 28:**

Nike's knowledge of, and responses to, the sale of allegedly Counterfeit products bearing the Asserted Marks, including in secondary marketplaces, as well as claims or demands Nike has made regarding said allegedly Counterfeit products and the resolution of those claims or defenses.

**RESPONSE TO TOPIC NO. 28:**

Nike objects to this Topic on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Topic. To the extent this Topic seeks information or testimony concerning specific investigations into the sale of counterfeit "Nike" goods on secondary marketplaces other than StockX, as well as the outcomes of those investigations, Nike objects to this Topic on the basis that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity, is overly broad, unduly burdensome, vague, and seeks information not relevant to this litigation nor proportional to the needs of the case and Nike will not prepare a witness to testify except as explicitly set out below. Nike will designate Barbara Delli Carpini to testify regarding non-privileged information concerning Nike's general knowledge and responses to the sale of allegedly counterfeit "Nike" products bearing the Asserted Marks.

**TOPIC NO. 29:**

Nike's investigations (including those conducted by third parties acting at Nike's direction) into Counterfeit products sold via Nike's retail stores, authorized resellers, or via Nike.com (collectively, "Primary Channels"), including but not limited to any test purchases made via these Primary Channels.

11

**RESPONSE TO TOPIC NO. 29:**

Nike objects to this Topic on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Topic. Nike further objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's investigations into counterfeit products sold via authorized Nike channels, to extent any such activity exists, are not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 30:**

Nike's efforts to monitor secondary marketplaces for Counterfeit products bearing the Asserted Marks.

**RESPONSE TO TOPIC NO. 30:**

Nike objects to this Topic on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Topic. To the extent this Topic seeks information or testimony concerning specific investigations into the sale of counterfeit "Nike" goods on secondary marketplaces other than StockX, as well as the outcomes of those investigations, Nike objects to this Topic on the basis that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s)

or immunity, is overly broad, unduly burdensome, vague, and seeks information not relevant to this litigation nor proportional to the needs of the case and Nike will not prepare a witness to testify except as explicitly set out below. Nike will designate Barbara Delli Carpini to testify regarding non-privileged information concerning Nike's efforts to monitor secondary marketplaces for counterfeit "Nike" products bearing the Asserted Marks.

**TOPIC NO. 31:**

Nike's investigations (including those conducted by third parties acting at Nike's direction) into Counterfeit products sold by secondary marketplaces, including but not limited to StockX and any test purchases or test sales made through the StockX marketplace.

**RESPONSE TO TOPIC NO. 31:**

Nike objects to this Topic on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Topic. To the extent this Topic seeks information or testimony concerning specific investigations into the sale of counterfeit "Nike" goods on secondary marketplaces other than StockX, as well as the outcomes of those investigations, Nike objects to this Topic on the basis that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity, is overly broad, unduly burdensome, vague, and seeks information not relevant to this litigation nor proportional to the needs of the case and Nike will not prepare a witness to testify except as explicitly set out below. Nike will designate Joe Pallett to testify regarding non-privileged information concerning Nike's investigations into counterfeit "Nike" products bearing the Asserted Marks sold by StockX and any test purchases or test sales made through the StockX marketplace.

13

**TOPIC NO. 32:**

Nike's process for obtaining and/or identifying each and every allegedly Counterfeit product that forms the basis for Nike's Sixth Cause of Action in the First Amended Complaint, including the process by which Nike concluded that those products are Counterfeit (and each and every indicium of counterfeiting used to identify the product as Counterfeit), and the chain of custody for each such Alleged Counterfeit Product.

**RESPONSE TO TOPIC NO. 32:**

Nike will designate Joe Pallett to testify on this Topic.

**TOPIC NO. 33:**

Nike's awareness of the processes used to authenticate physical sneakers by other third-party platforms, including but not limited to GOAT, eBay, Fightclub, Stadium Goods, Poshmark, SNKRDUNK, Kream, Wethenew, Novelship, Farfetch, Alibaba, TMall, Amazon, Walmart, Vinted, Vestaire Collective, TradeBlock, Soldout (Musinsa), and Facebook Marketplace.

**RESPONSE TO NO. 33:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's awareness of authentication processes of other third-party platforms, to extent such awareness exists, is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 34:**

Nike's communications with and concerning allegedly Counterfeit products sold on the StockX marketplace, including but not limited to communications with or related to Roy Kim, Michael Malekzadeh, Zadeh Kicks LLC (or its principles or employees), or StockX

**RESPONSE TO TOPIC NO. 34:**

Nike will designate Joe Pallett to testify on this Topic.

**TOPIC NO. 35:**

Nike's past, current, or potential collaborations with StockX.

**RESPONSE TO TOPIC NO. 35:**

Nike will designate Heather Paulson to testify regarding Nike's past, current, or potential collaborations with StockX concerning authentication and/or anti-counterfeiting. ████████████████████████████████████████████████████████████████████████████████████████████████████ Nike objects to this Topic on the basis that it is overly broad, unduly burdensome, vague, and seeking information not relevant to this litigation nor proportional to the needs of the case and Nike will not prepare a witness to testify except as explicitly set out above.

**TOPIC NO. 36:**

Nike's first awareness of each of the Advertising Statements.

**RESPONSE TO TOPIC NO. 36:**

Nike objects to this Topic as overly broad, unduly burdensome and as seeking information or testimony not relevant to this litigation nor proportional to the needs of the case. Specifically, Nike's first awareness of each of the Advertising Statements, is not relevant to StockX's sale of infringing Nike-branded Vault NFTs, StockX's false and/or misleading advertising claims, or StockX's sale of counterfeit "Nike" goods. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 37:**

Nike's basis for alleging that each of the Advertising Statements is false.

**RESPONSE TO TOPIC NO. 37:**

Nike objects to this Topic as premature to the extent it calls for the production of expert testimony. Nike will produce any applicable expert reports along with any materials relied upon

by the expert(s) in accordance with the Federal Rule of Civil Procedure 26(a)(2) and the scheduling order in this case. Nike also objects on the basis that whether StockX's advertising claims are false and/or misleading is the subject of facts from StockX, and not form Nike testimony. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 38:**

Nike's basis for alleging that each of the Advertising Statements would be material to a consumer.

**RESPONSE TO TOPIC NO. 38:**

Nike objects to this Topic as premature to the extent it calls for the production of expert testimony. Nike will produce any applicable expert reports along with any materials relied upon by the expert(s) in accordance with the Federal Rule of Civil Procedure 26(a)(2) and the scheduling order in this case. Nike also objects on the basis that whether StockX's advertising claims are false and/or misleading is the subject of facts from StockX, and not form Nike testimony. Accordingly, Nike will not designate a witness to testify on this Topic.

**TOPIC NO. 39:**

Nike's responses to each of StockX's Interrogatories to Nike, including the identity of each person who provided information relevant to such responses and the information provided by such persons.

**RESPONSE TO TOPIC NO. 39:**

Nike will designate Melanie Harris to testify regarding Nike's responses to StockX's First Set of Interrogatories and Barbara Delli Caprini to testify regarding Nike's responses to StockX's Second and Third Sets of Interrogatories.

**TOPIC NO. 40:**

All harm to Nike stemming from Nike's causes of action in this case.

**RESPONSE TO TOPIC NO. 40:**

Nike will designate Melanie Harris to testify to the harm to Nike stemming from Nike's First, Second, Third, Fourth and Fifth causes of action. Nike will designate Barbara Delli Carpini to testify to the harm to Nike stemming from Nike's Sixth and Seventh causes of action.

**TOPIC NO. 41:**

All instances of harm to, or tarnishment of, Nike's or the Asserted Marks' reputation with actual or potential consumers of Nike products.

**RESPONSE TO TOPIC NO. 41:**

Nike will designate Melanie Harris to testify on this Topic, but objects to this Topic as premature to the extent it calls for the production of expert testimony. Nike will produce any applicable expert reports along with any materials relied upon by the expert(s) in accordance with the Federal Rule of Civil Procedure 26(a)(2) and the scheduling order in this case.

**TOPIC NO. 42:**

All damages to which Nike claims to be entitled based on its causes of action in this case.

**RESPONSE TO TOPIC NO. 42:**

Nike will designate Melanie Harris to testify on this Topic, but objects to this Topic as premature to the extent it calls for the production of expert testimony. Nike will produce any applicable expert reports along with any materials relied upon by the expert(s) in accordance with the Federal Rule of Civil Procedure 26(a)(2) and the scheduling order in this case.

**TOPIC NO. 43:**

Nike's efforts to mitigate any damages stemming from the causes of action in this case

**RESPONSE TO TOPIC NO. 43:**

Nike will designate Melanie Harris to testify on this Topic.

| | |
|---|---|
| Date:  November 29, 2022 | By: */s/ Tamar Y. Duvdevani* |

**DLA PIPER LLP (US)**
Tamar Y. Duvdevani
Marc E. Miller
Andrew J. Peck
Jared Greenfield
1251 Avenue of The Americas, 27th Fl.
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Michael Fluhr
555 Mission Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 836-2500
Facsimile: (415) 836-2501

Melissa Reinckens
401 B Street, Suite 1700
San Diego, CA 92101
melissa.reinckens@us.dlapiper.com

Jane W. Wise
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4149
Facsimile: (202) 863-7849

*Attorneys for Plaintiff Nike, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 29, 2022, I served a copy of Nike, Inc.'s Responses and Objections to StockX LLC's 30(b)(6) Deposition Notice to Nike on all counsel of record for Defendant StockX LLC via email:

Megan K. Bannigan- mkbannigan@debevoise.com
David H. Bernstein - dhbernstein@debevoise.com
Chris S. Ford - csford@debevoise.com
Jyotin Hamid - jhamid@debevoise.com
Justin Ferrone - jcferrone@debevoise.com
Kathryn C. Saba – ksaba@debevoise.com
David Mayberry - DMayberry@kilpatricktownsend.com
Rob Potter - RPotter@kilpatricktownsend.com
Jeffrey Morganroth - jmorganroth@morganrothlaw.com

                                                  BY: */s/ Marc E. Miller*