UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NIKE, INC.,

                    Plaintiff,

          v.                                              No. 22 CV 983 (VEC) (SN)

STOCKX LLC,

                    Defendant.                            **ORAL ARGUMENT
                                                          REQUESTED**


**DEFENDANT STOCKX LLC'S MEMORANDUM OF LAW IN FURTHER SUPPORT
OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ................................................................................................................................2

    I.    StockX's Authentication Process Claims Are True. ...........................................................2

        A.    The Authentication Process Claims Are Not False by Necessary Implication. ...........3

        B.    The Authentication Process Claims Are Not Expressly False. ...................................3

    II.    Nike Failed to Establish the Challenged Claims Were Material. ........................................6

    III.  Nike Failed to Establish the Challenged Claims Caused Injury to Nike. ............................8

CONCLUSION .............................................................................................................................11

**TABLE OF AUTHORITIES**

**Cases**

*Apotex, Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016) ................................................................................. 6

*Chanel, Inc. v. The RealReal, Inc.*,
   449 F. Supp. 3d 422 (S.D.N.Y. 2020) ................................................................. 9

*Chanel, Inc. v. WGACA, LLC*,
   2022 WL 902931 (S.D.N.Y. Mar. 28, 2022) ..................................................... 10

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
   843 F.3d 48 (2d Cir. 2016) ................................................................................. 6

*Coca-Cola Co. v. Tropicana Prods., Inc.*,
   690 F.2d 312 (2d Cir. 1982) ............................................................................... 9

*Fischer v. Forrest*,
   2017 WL 2992663 (S.D.N.Y. Jul. 14, 2017) ...................................................... 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014)............................................................................................ 8

*Merck Eprova AG v. Brookstone Pharms., LLC*,
   920 F. Supp. 2d 404 (S.D.N.Y. 2013) ................................................................ 9

*Ohio State Troopers Assoc., Inc. v. Point Blank Enters., Inc.*,
   2020 WL 1666763 (S.D. Fla. Apr. 3, 2020) ....................................................... 8

*Playtex Prods., LLC v. Munchkin, Inc.*,
   2016 WL 1276450 (S.D.N.Y. Mar. 29, 2016) .................................................... 2

*Reed Const. Data, Inc. v. McGraw-Hill Cos., Inc.*,
   49 F. Supp. 3d 385 (S.D.N.Y. 2014) ............................................................... 6, 7

*SourceOne Dental, Inc. v. Patterson Cos., Inc.*,
   328 F. Supp. 3d 53 (E.D.N.Y. 2018) .................................................................. 7

*Souza v. Exotic Island Enters., Inc.*,
   68 F.4th 99 (2d Cir. 2023) .................................................................................. 9

*Sublime Prods., Inc. v. Gerber Prods., Inc.*,
   579 F. Supp. 248 (S.D.N.Y. 1984) ..................................................................... 9

*Tiffany (NJ) Inc. v. eBay, Inc.*,
   2010 WL 3733894 (S.D.N.Y. Sept. 13, 2010)..................................................... 2

ii

Defendant StockX LLC ("StockX") respectfully submits this memorandum of law in further support of its motion for partial summary judgment against Plaintiff Nike, Inc. ("Nike").

## PRELIMINARY STATEMENT

StockX has established multiple reasons to dismiss Nike's false advertising claim in whole or in part.  Nike's opposition includes key admissions that further show its claim must fail.

***Nike's argument that StockX's Authentication Process Claims are subject to multiple meanings means the claims cannot be literally false.***  StockX's descriptions of its inspection process were true by their plain meaning.  Nike responds with alternative meanings.  In doing so, Nike necessarily argues that StockX's claims are susceptible to multiple interpretations and do not unambiguously convey a single, false message (a requirement for literal falsity).  Because Nike does not argue (and cannot prove) implied falsity, its claim must fail as to these statements.

***Nike misstates Second Circuit law and admits it has no direct evidence that the challenged advertising likely influenced consumer purchasing decisions.***  Under the Lanham Act, false advertising claims are actionable only if they are material.  The Second Circuit has repeatedly held—including in the cases Nike cites—that claims are material only if they are likely to influence consumers' purchasing decisions.  Nike ignores this precedent and argues that literally false advertising about an inherent product quality is presumptively material as a matter of law.  Neither the Lanham Act's text nor any Second Circuit holding provides such a presumption.  While Nike points to evidence of how consumers value the concept of authenticity, it has no direct evidence that the claims it challenges likely influenced consumers' decisions to use StockX.  Nike glosses over the impact of the actual advertising, which addresses the entirety of StockX's process (including examination for issues other than whether a product is genuine).  Even so, StockX has rebutted Nike's claim with direct evidence: a consumer survey showing that the challenged claims had ***no effect*** on consumers' intent to use StockX's platform.

1

*Nike admits the challenged advertising was not comparative, foreclosing any presumption of harm.* Nike has no evidence it was harmed by the challenged claims.[1]  Nike (again) tries to argue that it does not need to produce any evidence because it is entitled to a presumption of injury.  But as Nike concedes, "[t]his case does not involve comparative advertising," ECF 270 at 25, n.20, nor does it involve a two-party market that would make comparison presumptive.  Not one case Nike cites supports a presumption of injury here.

Accordingly, StockX's motion should be granted and the claims streamlined for trial.

## ARGUMENT

### I.    StockX's Authentication Process Claims Are True.

Nike cannot establish that the Authentication Process Claims, *see* ECF 255 at 7, are false.[2]  Nike does not argue they are impliedly false.  Instead, Nike argues only that these claims are literally false, either (1) by necessary implication, or (2) expressly.  This argument ignores the core requirement for literal falsity (acknowledged in the cases Nike cites): the claims must have only a *single, false interpretation*.  "[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 WL 1276450, at *4–5 (S.D.N.Y. Mar. 29, 2016) (claims not false by necessary implication where "susceptible to multiple interpretations," or "implications"); *Tiffany (NJ) Inc. v. eBay, Inc.*, 2010 WL 3733894, at *3 (S.D.N.Y. Sept. 13, 2010) (rejecting literal falsity; claims that are false by necessary implication must be "unambiguous").

Nike does not argue that the Authentication Process Claims are not susceptible to StockX's proffered meanings.  Rather, Nike argues there is a *second* meaning to each claim,

---

[1]    Nike's contention that StockX's motion for partial summary judgment did not cover all advertising claims at issue is wrong.  *See* ECF 270 at 3, n.1.  On materiality and causation, StockX challenged all claims.
[2]    Nike's assertion that StockX argues that only a subset of its claims is truthful is inaccurate.  *See* ECF 270 at 1– 2.  StockX will prove that all of its advertising claims were truthful at trial if necessary.

which Nike asserts is false.  That the claims are subject to multiple meanings forecloses Nike's

literal falsity theory and—given Nike's failure to establish implied falsity—is sufficient for the

Court to dismiss these claims.  As set forth below, Nike's falsity theories also fail on their terms.

A.    **The Authentication Process Claims Are Not False by Necessary Implication.**

Nike's argument that the Authentication Process Claims are false by necessary

implication requires Nike to prove that "the advertisement[s'] words or images, considered in

context, necessarily and unambiguously imply a false message."  *Fischer v. Forrest*, 2017 WL

2992663, at *25 (S.D.N.Y. Jul. 14, 2017).  Seeking to manufacture a material dispute of fact

where none exists, Nike attempts to collapse the Authentication Process Claims into the rest of

the claims at issue.  To do this, Nike argues that even claims about StockX's process convey to

consumers a single, unambiguous message:  that each item sold on StockX is authentic.  This

argument would require the Court to reject the plain English meaning of StockX's claims.

Nike's argument is also inconsistent with the context in which the Authentication Process

Claims appear.[3]  These claims were on a webpage devoted to transparently describing StockX's

process.  *See* ECF 261-57 at 786 (identifying aspects of the process under "Condition,"

"Construction," "Packaging," and "Accessories" headers).  StockX's internal documents affirm

this goal, illustrating StockX sought to explain ████████████████████████████████████

████████████████████████████████████    *See* ECF 273-113 at 186 (emphasis added).

B.    **The Authentication Process Claims Are Not Expressly False.**

Nike's arguments that the Authentication Process Claims are expressly false similarly are

both unavailing and disregard the context within which the claims appear.

---

[3]    Any dispute of fact surrounding whether the Authentication Process Claims are subject to the additional
interpretation Nike advances is immaterial.  There is no question of fact that these claims are subject to their
plain English meanings and convey information about StockX's process.  Should the Court accept Nike's
alternative theory that the Authentication Process Claims convey authenticity, the claims are susceptible to
more than one meaning and incapable of being literally false as a matter of law.

***99.96% Accuracy.*** As Nike acknowledges, StockX publicly disclosed how its "99.96% Accuracy" rate was calculated. The rate appeared alongside, or linked to, explanations of the calculation. *See* 56.1 ¶¶ 572, 574–75.[4] Nike's speculation regarding unknown counterfeits ignores that StockX clearly explains its calculation is based solely on returns data. Further, putting aside gaps in Nike's assertions,[5] Nike's identification of a handful of consumers who Nike alleges should have been refunded—amongst tens of millions of yearly transactions on StockX—does not change that Stock's 99.96% accuracy rate is true. *Id.* ¶¶ 533–35.

***Quality Assurance.*** StockX did not claim that *every* product undergoes quality assurance, and Nike has provided no evidence that consumers interpreted StockX's claim to have that meaning. *Id.* ¶¶ 585–86. Instead, StockX accurately claimed to have a quality assurance process. *See Id.* ¶¶ 566–71. Nike has no response other than to misconstrue ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 705.

***100+ Data Points.***[6] StockX's Authentication Standard Operating Procedure ("SOP"), on its face, ▮▮▮▮▮▮▮▮▮▮ *See Id.* ¶ 545. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶¶ 709–11. With no evidence of how consumers understood the claim, Nike responds by conflating "steps" with "data points."

---

[4] Citations to "56.1" refer to the Parties' Consolidated 56.1 filed pursuant to the Court's October 31, 2024 Order (Dkt. No. 293).

[5] Nike's examples of purported StockX customer complaints, *see* ECF 270 at 15, are neither confirmed StockX customers, nor confirmed purchasers of Nike products who asked for a refund and were refused. *See* ECF 273-119, 120 (listing anonymous reviews). Many anonymous reviewers were happy with their StockX experience and ***able to return their products for a refund***. *See, e.g.*, ECF 273-119 at 108 ("They have refunded me and given me a gift certificate for compensation. They . . . went above and beyond to rectify the problem."); *id.* at 100 ("At least they gave me a refund"); *id.* at 116 ("Was very happy with my order. Thanks Stock[X].").

[6] Nike's discovery responses identified "100+ data points" standing alone as allegedly false advertising. 56.1 ¶ 687. Accordingly, StockX did not move as to the falsity of the broader statement: "[w]ith checklists of 100+ data points, StockX authenticators are better equipped than anyone to ensure a product's authenticity."

4

ECF 270 at 17; 56.1 ¶¶ 581–82.  Nike also takes internal documents out of context,

misconstruing ███████████████████████████████████████████  *see* ECF

257-110, 261-75, ████████████████████████████████████████████████

████████████████████████  *see* ECF 273-122 █████████████████████

███████████████████████████.[7]

*Advanced Technology.*  Nike contends "advanced technology" means StockX uses

"machine learning" to review products but has no evidence consumers interpreted the claim in

that manner.  56.1 ¶¶ 583–84.  To the extent Nike disputes whether StockX uses machine

learning technology,[8] the clear record evidence shows that StockX uses machine learning to

███████████████████████████████████████████████████████████

██████████████████████████  *Id.* ¶¶ 554–59, 713.

*Proprietary.*  StockX keeps the details of its proprietary process (████████████

█████████████████████████████████) confidential.  *See*

ECF 257-87 at 775 ████████████████████████████████████████

████████████████████████████  Nike has conceded that StockX's

process is proprietary.  56.1 ¶¶ 43–44.  To the extent Nike argues that "proprietary" means

"protected by a patent," that is not the plain English meaning of the term,[9] and Nike has

submitted no evidence to suggest that is how consumers understood it.  *Id.* ¶¶ 579–80.  Nike's

other argument, that StockX's process was disclosed and therefore not proprietary, relies on

StockX customer service sharing benign elements of StockX's process—but withholding key

---

[7]  ████████████████████████████████████████████████████████
     ████████████████████████████████████████████████████████
     ██████████████████████████  Reply DX 7, STX0192490; ECF 257-110 at 856; ECF 261-75 at 797.
[8]  Nike did not identify this full phrase in its discovery responses as contested.  56.1 ¶ 687.
[9]  Merriam-Webster, *Proprietary* ("something that is used, produced, or marketed under exclusive legal right of
     the inventor or maker").  Even if Nike were correct, StockX successfully patented elements of its process.  *See*
     Reply DX 5 (patent for "machine learning techniques for object authentication"); Reply DX 6, STX0160709.

details.  *See, e.g.*, ECF 273-124 at 647 ("Items are reviewed under different lighting which

includes but is not limited to black UV lighting."); ECF 273-60 ("we smell the shoe," and "we

check that the size is right").  This does not establish literal falsity.

## II.    Nike Failed to Establish the Challenged Claims Were Material.

Nike seeks to elide its own failure to produce evidence of materiality by advocating for

something akin to strict liability under the Lanham Act for any claim relating to authenticity:

automatic falsity, materiality, and harm by presumption, without any actual evidence.

Nike's theory is inconsistent with Second Circuit law.  The Second Circuit "has defined

materiality as 'likely to influence purchasing decisions,' a definition in harmony with other

Circuits' use of the term."  *Apotex, Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 63 (2d Cir.

2016).  Nike responds by selectively quoting from the Second Circuit's decision in *Church &*

*Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, but that opinion stated: "[*Apotex*]

recently settled the materiality standard in this Circuit, explaining that the standard is whether the

deception is 'likely to influence purchasing decisions.'"  843 F.3d 48, 70 n.11 (2d Cir. 2016).[10]

Nike then seeks to dismiss as an "outlier" the lengthy and well-reasoned *Reed* decision,

which considered and rejected the precise argument Nike advances in its brief: that claims about

inherent qualities of products are automatically material.[11]  *Reed Const. Data, Inc. v. McGraw-*

*Hill Cos., Inc.*, 49 F. Supp. 3d 385, 418 (S.D.N.Y. 2014) ("[A]lthough at least part of McGraw

Hill's campaign focused on the quality of the databases qua databases, the Court must also ask

whether these campaigns materially influenced consumers' purchasing decisions.").  The

plaintiff in *Reed* lost at summary judgment due to the same failure of evidence as Nike here.

---

[10]    As Nike's cited cases show, *Apotex* set forth as governing law the very definition of materiality Nike ignores.
[11]    Nike does not cite cases in this Circuit to show *Reed* is an "outlier," instead citing older or out-of-Circuit decisions StockX previously distinguished.  Nike fails to explain why *Reed*'s reasoning, which is consistent with the Second Circuit's holding in *Apotex*, is substantively mistaken.

Yet, while the *Reed* plaintiff could point to testimony from one consumer who relied on the advertising when making purchasing decisions, Nike cannot. *Id.*

Nike repeatedly returns to the argument that advertising claims about authenticity are presumed material if false. As an initial matter, this theory is viable only for instances where the challenged claims appeared alongside shoes Nike alleges are in fact counterfeit, meaning Nike already has reduced the scope of its false advertising claim to, at most, the 77 instances of allegedly counterfeit shoes. Even for those products, a buyer—Roy Kim—did not find the challenged claims to be material. Mr. Kim testified about a variety of reasons he chose to use StockX, none of which included StockX's advertising or authenticity claims. 56.1 ¶¶ 448–56. Nike never asked Mr. Kim whether the challenged claims were the reason he used StockX, nor could they be, as Mr. Kim continued to use StockX extensively even after learning counterfeits could be sold on the platform. *Id.* ¶ 457. Nike also takes out of context surveys ***that did not show consumers StockX's advertising (much less the challenged claims)*** to argue "authenticity" is material to some consumers. Such a showing is insufficient: to state a claim, Nike is required to show that the challenged claims were material. Nike cannot make that showing by relying on evidence that did not involve, show, or evaluate StockX's advertising. *See SourceOne Dental, Inc. v. Patterson Cos., Inc.*, 328 F. Supp. 3d 53, 64 (E.D.N.Y. 2018) (evidence did not show that the specific advertising claims would be likely to influence purchasing decisions). This is particularly true because StockX advertised its multifaceted process as a whole, including its assessment of products for issues beyond whether they are genuine (e.g., whether products are the right size or color and in deadstock condition). 56.1 ¶¶ 524–30.

Further, Nike has no affirmative evidence to contradict Ms. Butler's survey of the challenged claims—the *only* record evidence showing how consumers reacted to any of StockX's *advertising*. *Id.* ¶¶ 593–621. Nike is left to argue that Ms. Butler's survey is improper rebuttal evidence because it was submitted in response to assumptions made by Nike's damages expert. But what Nike's damages expert was assuming (incorrectly) was Nike's ability to state a valid false advertising claim that would entitle Nike to hundreds of millions of dollars in alleged damages. If Nike has no affirmative evidence of materiality for StockX to rebut, then Ms. Butler's survey need not be considered; Nike's claim can simply be dismissed for failure to state a claim. Otherwise, Ms. Butler's testimony is appropriate rebuttal to the evidence Nike claims satisfies its burden of proof on this necessary element.[12] *See Id.* ¶ 777.

## III. Nike Failed to Establish the Challenged Claims Caused Injury to Nike.

Contrary to Nike's assertion that "economic and reputational harm" is "obvious" because some counterfeits were sold on StockX, ECF 270 at 24, Nike still has not adduced *any* evidence that it *actually suffered* lost sales or reputational harm that would not have occurred *but for* the challenged claims. That is fatal to Nike's claims.

Nike's assertion that its burden is only to show "actual or likely injury," *id.* at 25, is incorrect. The Supreme Court clarified in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, that a Lanham Act false advertising plaintiff must prove the asserted false advertising caused

---

[12]    In *Ohio State Troopers Assoc., Inc. v. Point Blank Enters., Inc.*, which Nike cites, the court admitted most of Ms. Butler's testimony rebutting assumptions underlying a damages expert's calculations. 2020 WL 1666763, at *9–11 (S.D. Fla. Apr. 3, 2020). The court narrowly excluded one aspect of Ms. Butler's testimony—testimony regarding individualized, as opposed to class-wide, materiality for a 2019 class of plaintiffs, in the context of related 2018 and 2019 cases involving multiples classes and class certification issues on which the damages expert did not offer opinions. *Id.* at *10–11. Here, Mr. Hansen specifically opined that "[a]ssuming that StockX's advertising claims about its authentication were false, and StockX authenticated and facilitated the sale of counterfeit Nike/Jordan-branded sneakers, [his] analysis indicates that StockX has benefitted by earning ill-gotten profits derived from falsely and/or misleadingly claiming that every 'Nike' or 'Jordan' good sold on its platform was '100% Authentic.'" *See* ECF 257-50 ¶ 55. Ms. Butler properly provided direct rebuttal of the assumptions underlying that opinion by conducting a survey showing that the "100% Authentic" claim did not drive consumers to purchase on StockX and, accordingly, did not result in ill-gotten earnings.

*actual* injury.  572 U.S. 118 (2014).  *Souza v. Exotic Island Enters., Inc.* did quote the pre-

*Lexmark* standard that *Church & Dwight* repeated (*see* ECF 270 at 25–26), but *Souza*—

interpreting *Lexmark* as a matter of first impression in the Second Circuit—nevertheless went on

to hold that "a plaintiff must present some affirmative indication of actual injury or causation."

68 F.4th 99, 119 (2d Cir. 2023); *see* ECF 268 at 26–27.

Nike's unsupported allegations of harm do not meet that burden under Second Circuit

law.  On lost sales, Nike asserts that "[e]*very* StockX pre-release sale or below retail bestseller

diverts sales from Nike to StockX."  ECF 270 at 29 (emphasis added).  But Nike does not point

to any evidence of *actually* diverted sales from Nike.  Nike relies solely on Dr. Stec's testimony

that such sales occurred and the "obvious economic principle that all things being equal,

consumers will choose to pay less for the same product."  *Id*. at 28–29.[13]  But the fact that

consumers like to save money does not show—and Nike has not introduced any evidence

establishing—either that (*i*) any of the pre-release or below-retail sales (or any other sales) on

StockX would not have occurred but for the challenged claims; or (*ii*) that Nike—rather than a

competing resale platform—would have otherwise made those sales.[14]

With respect to reputational harm, Nike's assertion that "consumers believe that Nike

simply makes shoddy footwear" because of the challenged claims, ECF 270 at 30, similarly has

no evidentiary support.  Nike has not identified a single instance of a StockX customer thinking a

---

[13]    Nike also cites several inapposite cases.  *See* ECF 270 at 27–28 (citing *Chanel, Inc. v. The RealReal, Inc.*, 449 F. Supp. 3d 422, 445 n.24 (S.D.N.Y. 2020) (accepting allegations of diverted sales as true on a motion to dismiss); *Sublime Prods., Inc. v. Gerber Prods., Inc.*, 579 F. Supp. 248, 250 (S.D.N.Y. 1984) (finding, pre-*Lexmark*, only a "substantial likelihood" of harm under preliminary injunction standard); *Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 429 (S.D.N.Y. 2013) (plaintiff presented actual evidence its sales "declined for the first time, and markedly"); *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316–17 (2d Cir. 1982) (pre-*Lexmark* case finding likelihood of injury under preliminary injunction standard)).

[14]    Nike's attempts to imply that StockX may not have faced significant resale market competition with respect to sales of Nikes, ECF 270 at 7–8, ignore both that StockX was just one of many resale marketplaces where consumers could purchase unused Nikes, *see* 56.1 ¶¶ 477–87; ECF 255 at 4, and that Nike bears the burden of proof with respect to injury causation.  *See also* 56.1 ¶¶ 765–74.

9

"shoddy" counterfeit Nike was genuine and lowering their opinion of Nike as a result—much

less proven that would not have occurred but for the challenged claims.  ECF 268 at 28–29.[15]

None of the purported "facts concerning actual reputational harm" Nike put forward in response,

ECF 270 at 29–30, fill that gap.  They do not provide any examples of customers who received

counterfeit Nikes they thought were genuine or who otherwise thought less of Nike because of

StockX's advertising.[16]  In any event, there is no evidence that any of these "facts" would have

been different if StockX had not made the challenged claims.

Nike's continued assertion of a presumption of injury because the parties are purportedly

"obvious competitors," ECF 270 at 24–28, remains legally unfounded.  Nike is not entitled to a

presumption of injury—regardless of whether Nike and StockX compete—because Second

Circuit law permits the presumption only in cases involving comparative advertising or two-

player markets, neither of which is true of this case.  ECF 255 at 21–23; ECF 268 at 29–30; *see*

*also Souza*, 68 F.4th at 119 (emphasis added) (citation omitted) (actual injury must be proven

unless "injury may be presumed from a direct competitor's false ***comparative advertising***

claim").  Nike's admission that "this case does not involve comparative advertising," ECF 270 at

25 n.20, is accordingly fatal to its claim.  The other precedents Nike cites discuss competition, *id.*

at 24–25, but none hold that comparative advertising is not required, and none apply a

presumption in the absence of comparative advertising.

---

[15]  Nike's assertion that "consumers reach out to StockX about the shoddy (***and likely fake***) Nike products they receive," ECF 270 at 24 (emphasis added), implicitly acknowledges there is no evidence the "shoddy" Nikes in question were in fact counterfeit, as opposed to one of the defective shoes Nike admitted it releases into the market.  56.1 ¶¶ 295–305.  Even if there were such evidence, though, the Court should not follow the misguided finding in *Chanel, Inc. v. WGACA, LLC*, 2022 WL 902931, at *19 (S.D.N.Y. Mar. 28, 2022) that harms potentially caused by sales of counterfeits can meet the requirement that ***false advertising*** caused actual harm when there is no evidence the counterfeit sales would not have occurred but for the advertising.

[16]  The customer that Nike claims was told counterfeit Nikes were authentic had contacted StockX specifically because he believed the shoes were counterfeit.  56.1 ¶¶ 194–96.

**CONCLUSION**

StockX's motion should be granted and Count VII (false advertising) dismissed.

Dated:       September 19, 2024
             New York, New York

                            By: /s/ *Megan K. Bannigan*
                            DEBEVOISE & PLIMPTON LLP
                            Megan K. Bannigan (mkbannigan@debevoise.com)
                            David H. Bernstein (dhbernstein@debevoise.com)
                            Jyotin Hamid (jhamid@debevoise.com)
                            Christopher S. Ford (csford@debevoise.com)
                            Kathryn C. Saba (ksaba@debevoise.com)
                            66 Hudson Boulevard
                            New York, New York 10001
                            (212) 909-6000

                            KILPATRICK TOWNSEND & STOCKTON LLP
                            Robert N. Potter (rpotter@kilpatricktownsend.com)
                            Briggs Wright (briggs.wright@kilpatricktownsend.com)
                            1114 Avenue of the Americas
                            New York, New York 10036
                            (212) 775-8700

                            MORGANROTH & MORGANROTH PLLC
                            Jeffrey B. Morganroth (jmorganroth@morganrothlaw.com)
                            344 N. Old Woodward Ave., #200
                            Birmingham, MI 48075
                            (248) 864-4000

                            *Attorneys for Defendant StockX LLC*

11