# EXHIBIT 1

Page 1

1       UNITED STATES DISTRICT COURT
2     FOR THE SOUTHERN DISTRICT OF NEW YORK
3
4    NIKE, INC.,
5           Plaintiff,
6      v.                    No. 1:22-CV-00983-VEC
7    STOCKX LLC,
8           Defendant.
9
10         VIDEOTAPED DEPOSITION OF RON FARIS
11         Taken in behalf of the Defendant
12                 December 7, 2022
13
14            *** HIGHLY CONFIDENTIAL ***

1    BE IT REMEMBERED THAT pursuant to Federal
2    Rules of Civil Procedure, the deposition of RON
3    FARIS was taken before Julie A. Walter, CSR No.
4    90-0173 on December 7, 2022, commencing at the hour
5    of 9:16 a.m., the proceedings being reported in the
6    law offices of Stoel Rives, 760 SW Ninth Avenue,
7    Suite 3000, Portland, Oregon.
8                              *   *   *
9                           APPEARANCES
10   DLA PIPER
11      Ms. Tamar Duvdevani
12      Mr. Marc Miller
13      1251 Avenue of the Americas
14      New York, New York 10020
15      Counsel for the Plaintiff
16
17   DEBEVOISE & PLIMPTON LLP
18      Ms. Megan Bannigan
19      Ms. Kate Saba
20        919 Third Avenue
21        New York, New York 10022
22      Mr. Christopher Ford
23        650 California Street
24        San Francisco, California 94108
25

Page 14

```
 1            target and actual customers for Nike's NFTs and
 2            Digital Sneakers bearing the Asserted Marks."  Is
 3            that correct?
 4       A.   Correct.
 5       Q.   Are you prepared to testify on that topic today?
 6       A.   Yes, I am.
 7       Q.   Did you do anything other than speak to counsel
 8            yesterday to prepare to testify on behalf of Nike
 9            on that topic?
10       A.   No, I did not.
11       Q.   Okay.  The next one, I believe, is Topic 10.
12            "Nike's plans to enter the custodial or 'vaulted'
13            market for physical sneakers, including but not
14            limited to vaulted physical sneakers associated
15            with NFTs."  Am I right that you've -- you are
16            prepared -- you are here to testify on behalf of
17            Nike on that topic today?
18       A.   Correct.
19       Q.   Did you do anything other than meet with counsel
20            yesterday to prepare for that topic?
21       A.   No.
22       Q.   Topic 11, "How, if at all, Nike has participated
23            and/or currently participates in the secondary
24            market for physical sneakers."  Are you prepared to
25            talk about that topic and testify on behalf of Nike
```

Page 15

1  today?
2  A. Yes.
3  Q. And did you do anything other than meet with
4     counsel to prepare to testify on behalf of Nike for
5     that topic?
6  A. No, I did not.
7  Q. And to clarify, meet with counsel yesterday, as
8     we've been saying.
9  A. Yes.
10 Q. Okay.  Topic 12, "Any" analysis -- "analyses Nike
11    has performed, received, or reviewed of the impact
12    of the secondary market for sneakers on Nike's
13    current business, including but not limited to (i)
14    analyses on secondary-market pricing and sales
15    performance of Allegedly Counterfeited Products and
16    (ii) whether Nike has benefitted from the sale of
17    the Allegedly Counterfeited Products in the
18    secondary market."  Are you prepared to testify on
19    behalf of Nike as to that topic today?
20 A. Yes, I am.
21 Q. And did you do anything other than meet with
22    counsel yesterday to prepare to testify on behalf
23    of Nike on that topic?
24 A. No, I did not.
25 Q. 13, "Nike's plans to enter the secondary market for

```
                                                      Page 200
1     Q.   Got it.  Did you have any involvement other than
2          being somebody who was interviewed to give
3          information?
4     A.   I -- we gave -- as the team at Valiant Labs, I
5          think it was Brittany in conjunction with the folks
6          at Valiant Labs.  I'm pretty sure.  We gave one of
7          our product managers from our team on a stretch
8          assignment to go and work with that team to figure
9          out what would be opportunities that we would look
10         at to explore opportunities.
11    Q.   [REDACTED]

14              MS. DUVDEVANI:  Objection.
15    Q.   BY MS. BANNIGAN:  [REDACTED]

22    Q.   [REDACTED]

24    A.   [REDACTED]
```

**Page 201**

```
1   Q.   And when I say "plans," are we talking concrete
2        plans or are there potential plans to build it in
3        the future?
4   A.   [REDACTED]
5        [REDACTED]
6   Q.   [REDACTED]
```

**Page 267**

1     probably more significant.
2  Q.  BY MS. BANNIGAN: And when you say your competitor
3     in the primary market, ████████████████████
4  A.  ████████████████████████████ ████████
5     ████████████
6  Q.  ████████████████████████████████████
7     ████
8     ████████████████████████████████████████
9     ████████████
10    ████████████████
11    ████████████████████████████████████████
12    ████████████
13    ████████ ████████████████████████████████
14    ████████████████████████████
15 Q.  ████████████████████████████████
16    ████████████████████████████████
17    ████████████████████████
18 Q.  Has it ever?
19 A.  To my knowledge, no.
20         (Exhibit 21 marked)
21      MS. BANNIGAN: Exhibit 21 was just handed to
22    the witness. It's a document, an email with the
23    Bates stamp NIKE0029559. At the top, it's an email
24    chain to Daniel Heaf from Ron Faris on
25    October 25th, 2021.