# EXHIBIT 2

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 1

1              IN THE UNITED STATES DISTRICT COURT
2             FOR THE SOUTHERN DISTRICT OF NEW YORK
3
4      NIKE, INC.,                            )
              Plaintiff,                      )
5                                             )
                                              )
6        vs.                                  ) Case No.:
                                              ) 1:22-cv-00983-VEC
7      STOCKX LLC,                            )
              Defendant.                      )
8      _____)
9
10
11
12
13       HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
14            VIDEO-RECORDED 30(b)(6) DEPOSITION OF
15                       HEATHER PAULSON
16                      Portland, Oregon
17           Friday, January 6, 2023; 9:11 a.m.
18
19
20
21
22     REPORTED BY:
23     Victoria A. Guerrero, CSR, RPR, CRR
24     Job No. 5593361
25     Pages 1 through 291

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 2

```
1          IN THE UNITED STATES DISTRICT COURT
2         FOR THE SOUTHERN DISTRICT OF NEW YORK
3
4    NIKE, INC.,                      )
         Plaintiff,                   )
5                                     )
                                      )
6        vs.                          ) Case No.:
                                      ) 1:22-cv-00983-VEC
7    STOCKX LLC,                      )
         Defendant.                   )
8    _____)
9
10
11
12
13
14
15
16       BE IT REMEMBERED that, pursuant to Federal
17   Rules of Civil Procedure, the 30(b)(6) deposition of
18   HEATHER PAULSON taken on behalf of the Defendant was
19   taken before Victoria A. Guerrero, Certified
20   Shorthand Reporter, Registered Diplomate Reporter,
21   Registered Merit Reporter, and Certified Realtime
22   Reporter, on Friday, January 6, 2023, commencing at
23   the hour of 9:11 a.m., at Stoel Rives LLP, 760 SW
24   Ninth Avenue, Suite 3000, in the City of Portland,
25   County of Multnomah, State of Oregon.
```

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 77

1  BY MR. FORD:
2      Q    And do you know when Valiant Labs was
3  created?
4      A    No.
5      Q    When, during your time at Nike, did you
6  first work with Valiant Labs?
7           MR. MILLER:  Objection to form.
8           THE WITNESS:  That's a good question.
9   Long time ago.
10 BY MR. FORD:
11     Q    So they've been around for a long time?
12     A    They've been around for a long time.
13     Q    [REDACTED]

Page 78

1   A   ███

███

███

███

███

███

███

███

███

███

███

12   A   Isaiah was the entrepreneur in residence
13  who led the project.
14   Q   And that's Isaiah Steinfeld?
15   A   Yes.
16   Q   Do you know when the ███ project began?
17   A   Yes.  In 2017.
18   Q   And when you describe ███

███ what does that mean?

20   A   ███

███

███

███

24   Q   ███

███

Case 1:22-cv-00983-VEC   Document 304-27   Filed 09/05/24   Page 6 of 19
HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 80

1    Q    Do you know why he left the company?
2    A    I don't.
3    Q    When was the last time you spoke to
4    Mr. Steinfeld, if you recall?
5    A    I don't recall.  He sent me a good-bye
6    email, but I don't recall.
7    Q    Do you know where he went after leaving
8    Nike?
9    A    To a start-up.
10   Q    Do you know the name?
11   A    No.
12   Q    And haven't spoken to him since the
13   good-bye email?
14   A    No.
15   Q    So why was it important -- sorry.
16   Withdrawn.  Let me start that again.
17   ████████████████████████████████
████████████████████████████████████████
████████████████████
████████  ████████████████
████████  ████████████████████████
████████████████████████████████████
████████████████████████████  █
████████████████████████████████████████
████████████████████████

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 82

9    for the ▮
10              MR. MILLER:  Objection to form.
11              THE WITNESS: ▮

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 83

```
 1   ███████████████████████████████████████
     █████████
         █████████    █████████████████
         █████████    ████████████████████
     █████████████
       █  ████████████████████
       █  ████
       █  █████████████████████████
       █  ████
10   Q  ████████████████████████████████
     ████████████
         █████████    █████████████████
         █████████    ████████████████████████
     ████████████████████████
     █████████████
       █  █████████████████████████
         █████████    █████████████
18       THE WITNESS:  ██████████████████████
     ████████████████████████████████████
     █████████████████████████████████████████
     ██████████████████████████████████████████ █
     █████████████████████████████████████████████
     ██████████████████████████████████████
     ████████████
25   ///
```

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 84

1  BY MR. FORD:
2      Q   [redacted]
         [redacted]
         [redacted]
         [redacted]
6          MR. MILLER:  Objection to form.
7          THE WITNESS:  [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
16  BY MR. FORD:
17      Q   I see.  [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
           [redacted]
23  BY MR. FORD:
24      Q   [redacted]
           [redacted]

Page 85

1  ▮
2  ▮
3  ▮
4  ▮
5  ▮
6  ▮
7  ▮
8  ▮
9  ▮
10 ▮
11 ▮
12 ▮
13    A    That was the vision.
14    Q    Did the vision succeed?
15         MR. MILLER:  Objection to form.
16         THE WITNESS:  The program has been shut
17    down.
18  BY MR. FORD:
19    Q    When was the program shut down?
20    A    ▮
21 ▮
22 ▮
23 ▮
24 ▮
25         MR. MILLER:  Objection to form.



1   one's allowed to sell it before that launch date.
2       Q

1    well as the SNKRS app?

2        A    Yes.  And mobile web, yes.

3        Q    What was the difference between the Nike --

4    general Nike commerce app, as you put it, and the

5    SNKRS app?

6            MR. MILLER:  Objection to form.

7            THE WITNESS:  There are a lot of

8        differences.  The experience is different, the

9        products sold there are different, the

10       consumers themselves are different.

11   BY MR. FORD:

12       Q    In what way are the consumers different?

13       A    I should actually say the occasion that is

14   served is different.  This SNKRS app is more around

15   -- more maybe culturally leading, cultural pushing

16   styles that are oftentimes more allocated and it's

17   serving more that style of sport.

18           And our Nike app is more, we sell

19   sportswear there, too, but it's more serving the

20   performance occasion, people who want to run, people

21   who want to play soccer.  And it's more grounded

22   there.

23   BY MR. FORD:

24       Q    When you say that the SNKRS app has styles

25   that are oftentimes more allocated, what do you mean

1    by "allocated"?
2         A    [REDACTED]

10   BY MR. FORD:
11        Q    [REDACTED]

13             MR. MILLER:  Objection to form.
14             THE WITNESS:  I don't know that at any
15        level of detail.  It's not in the scope of my
16        role.
17   BY MR. FORD:
18        Q    That's fine.  Why was the deck that we're
19   looking at here as Exhibit 7 put together?
20        A    [REDACTED]

23        Q    So this deck was put together in and around
24   April of 2019; is that right?
25        A    Looks like it.

Page 221

1    BY MR. FORD:
2        Q    I see.  So less chicken and egg and more
3    sort of iterative development of the business model
4    alongside deeper learnings about consumer
5    preferences?
6        A    Yes.
7        Q    The third bullet there says, it's -- not a
8    bullet, but the third line says, ███████████████

█████████████████████████████

████████████████████████████████

████████████████

██████████████████████

█████████████████████████████████

████████████████████████████████

█ ██████ ███

█ ███████████████████████████

████████████████████████████████

████████████████████

19            MR. MILLER:  Objection.  And I will
20        caution the witness to answer that question
21        without revealing any information that would
22        have been given to you by counsel.  So if you
23        can answer the question without revealing any
24        attorney-client communications, you can, but
25        I'm giving you that caution.

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 222

1 THE WITNESS: Okay. We felt that there
2 were key risks to -- that we learned from
3 consumers. And -- just generally. And I think
4 the two key ones, from my recollection, one is
5 not from a legal perspective, but from a
6 consumer perspective -- let me start with this
7 one.

8 █████████████████████████████████
█████████████████████████████████████
█████████████████████████████
███████████████    ███████████████
███████████████    ███████████████
█████████████████████████████████████
█████████████████████████████████████
████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
                ██████████████████████
██████████████████████        ██████
█████████████████████████████████████
█████████████████████████████████████
█████████████████████████████████████
████████████████████████████████
██████████████████████████
█████████████████████████████████████

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 223

1    ████████████████████████
2    BY MR. FORD:
3        Q    Mr. Miller asked you not to disclose any
4    advice of counsel and I'm not asking you do that.  I
5    do want to ask a yes-or-a-no question which is, is
6    there additional content that you're aware of
7    responsive to my question that you are not providing
8    based on Mr. Miller's guidance, just yes or no?
9        A    Content, no.
10       Q    So if you flip with me to slide 32.  Do you
11   have an understanding of what this illustrative
12   transaction experience is setting out?
13       A    Yes.
14       Q    And what is this setting out?  Let me just
15   make sure I'm in the right section.  ████████████

██████████████████████████████████████ █
████████████████
█  ██████████████  ██  ████████████
████████████████████  ██████  ████  ████
██████████████████████████████
█  ██████████████████████████████████
█  ██████████████████████████████████████
██████████████████████████████
█  ████████████████████████████████████
████████████████████████████████████████████



```
 1     [redacted]
 2     [redacted]
 3     [redacted]
 4     [redacted]
 5     [redacted]
 6     [redacted]
 7     [redacted]
 8     [redacted]
 9     [redacted]
10     [redacted]
11     [redacted]
12     [redacted]
13     [redacted]
14     [redacted]
15     [redacted]
16     [redacted]
17     Q    Did Nike ever implement that idea?
18     A    No.
19     Q    Why not?
20     A    Ultimately, we decided not to fund any of
21     these ideas.
22     Q    [redacted]
23     [redacted]
24     [redacted]
25          MR. MILLER: Objection to form.
```

1          THE WITNESS:  I think there were lots of
2     reasons.  ███████████████████████████████████
      ████████████████████████████████
      ██████████████████████████████████████
      ████████████████████████████████████████
      ██████████████████████████████████████████
      ██████████████████████████████████████████
      █████████████████████████████████████████
      ██████████████████████
10    BY MR. FORD:
11        Q  ███████████████████████████████████████
      ████████████████████████████████████████
      ██████████████████████████████████████████
      ██████████████████████████████████████████
      ████████████████████████████
16          MR. MILLER:  Objection to form.
17          THE WITNESS:  Yeah, I think it was kind of
18    a conversation, as always, we're always
19    exploring things like this, right?  So we're
20    exploring it.  Oh, it's interesting, it makes
21    sense, it's growing in the marketplace, okay.
22    Now, in a world of limited resources, limited
23    funding, limited tech, is now the time to move
24    forward?  Do we need more foundational pieces
25    in place before we move forward?  And, you

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 263

1  Q    So there would have been a final version of
2  this deck where these comments would have been
3  resolved and removed?
4          MR. MILLER:  Objection to form.
5          THE WITNESS:  Yes.  There should have been
6     a final version of this deck.  Although, at
7     some point, as I said, we decided to move away
8     from this.  But I don't -- I don't remember
9     when that was.
10 BY MR. FORD:
11     Q    ████████████████████████████████
████████████████████████████████
    █  ██
    █  ████████████████████████████████
████████████████████████████████████
    ██
    █  ██████████████████████
    █  ████████████████████████████
████████████████████
        ████████████████████████
████████████████████████████████
██████████████████
23          MR. MILLER:  Objection to form.
24          THE WITNESS:  Pre-COVID.  So sometime
25     between May and, you know, September,