# Exhibit 41

*Redacted Public Version*

Page 1

```
 1

 2     UNITED STATES DISTRICT COURT

       FOR THE SOUTHERN DISTRICT OF NEW YORK

 3     Case No. 1:22-cv-00983-VEC

       ----------------------------------------x

 4     NIKE, INC.,

 5                          Plaintiff,

 6          - against -

 7     STOCKX LLC,

 8                          Defendant.

 9     ----------------------------------------x

10                     February 8, 2023

                       9:48 a.m.

11

12

13         VIDEOTAPED DEPOSITION of JOE PALLETT,

14     located at Debevoise & Plimpton LLC, 66

15     Hudson Boulevard, New York, New York 10001,

16     before Anthony Giarro, a Registered

17     Professional Reporter, a Certified Realtime

18     Reporter and a Notary Public of the State

19     of New York.

20

21

22

23

24

25
```

Page 2

1
2  A P P E A R A N C E S :
3
4
5  DLA PIPER LLP
       Attorneys for Plaintiff
6   1251 Avenue of the Americas
     New York, New York 10020
7   212.335.4964
8  BY:  TAMAR DUVDEVANI, ESQ.
         MARC MILLER, ESQ.
9      tamar.duvdevani@dlapiper.com
        marc.miller@dlapiper.com
10
11
     DEBEVOISE & PLIMPTON LLP
12   Attorneys for Defendant
      919 Third Avenue
13   New York, New York  10022
14  BY:  MEGAN K. BANNIGAN, ESQ.
         MAI-LEE PICARD, ESQ.
15      mkbannigan@debevoise.com
         mpicard@debevoise.com
16
17
     DEBEVOISE & PLIMPTON LLP
18   Attorneys for Defendant
      650 California Street
19   San Francisco, California 94108
20  BY:  CHRISTOPHER FORD, ESQ.
         csford@debevoise.com
21
22  ALSO PRESENT:
23      ANTON EVANGELISTA, Videographer
         KIMBERLY VAN VOORHIS, ESQ., Nike
24
25

Page 3

1
2         S T I P U L A T I O N S
3
4       IT IS HEREBY STIPULATED AND AGREED,
5  by and among counsel for the respective
6  parties hereto, that the filing, sealing
7  and certification of the within deposition
8  shall be and the same are hereby waived;
9       IT IS FURTHER STIPULATED AND AGREED
10  that all objections, except as to form of
11  the question, shall be reserved to the time
12  of the trial;
13      IT IS FURTHER STIPULATED AND AGREED
14  that the within deposition may be signed
15  before any Notary Public with the same
16  force and effect as if signed and sworn to
17  before the Court.
18         *     *     *
19
20
21
22
23
24
25

Page 4

1
2          THE VIDEOGRAPHER:  Good
3  morning.  We are going on the record
4  at 9:48 a.m. on February 8th, 2023.
5  Please note that the microphones are
6  sensitive and may pick up whispering
7  and private conversations.  Please
8  mute your phones at this time.  Audio
9  and video recording will continue to
10  take place unless all parties agree
11  to go off the record.
12          This is Media Unit 1 of the
13  video-recorded deposition of Joe
14  Pallett, taken by counsel for
15  plaintiff, in the matter of Nike
16  Incorporated versus StockX LLC, filed
17  in the United States District Court
18  for the Southern District of New
19  York, Case No. 1:22-cv-00983-VEC.
20  The location of the deposition is
21  Debevoise & Plimpton, 66 Hudson
22  Boulevard in New York City.
23          My name is Anton Evangelista
24  representing Veritext.  And I am the
25  videographer.  The court reporter is

Page 5

1
2  Anthony Giarro from the firm
3  Veritext.
4          I'm not authorized to
5  administer an oath, I'm not related
6  to any party in this action, nor am I
7  financially interested in the
8  outcome.
9          If there are any objections
10  to the proceeding, please state them
11  at the time of your appearance.
12          Counsel and all present will
13  now state their appearances and
14  affiliations for the record,
15  beginning with the noticing attorney.
16          MS. BANNIGAN:  Thank you.
17  Good morning.  I'm Megan Bannigan of
18  Debevoise & Plimpton on behalf of
19  StockX.  And with me are my
20  colleagues from Debevoise & Plimpton,
21  Mai-Lee Picard and Christopher Ford.
22          MS. DUVDEVANI:  Good
23  morning.  Tamar Duvdevani, DLA Piper,
24  on behalf of Nike, Inc.  With me is
25  my colleague, Marc Miller, also with

2 (Pages 2 - 5)

Page 6

```
1              JOE PALLETT
2     DLA Piper, and Kim Van Voorhis of
3     Nike Air.
4           And just to correct the
5     videographer's colloquy, it was
6     defendant that noticed the deposition
7     today, not plaintiff.
8           THE VIDEOGRAPHER:  And will
9     the court reporter please swear in
10    the witness.  And counsel may
11    proceed.
12  J O E   P A L L E T T, after having first
13  been duly sworn by a Notary Public of the
14  State of New York, was examined and
15  testified as follows:
16  EXAMINATION BY
17  MS. BANNIGAN:
18    Q     Good morning.  There appears
19  to be some buzzing.  But hopefully, that
20  is short-lived.
21
24    Q     So I'm sure you've gone over
25  this already.  But just a few ground
```

Page 7

```
1              JOE PALLETT
2     rules we like to start with at the
3     beginning, your testimony is under oath
4     today.  Because there is a court reporter
5     taking down everything that both of us
6     are saying and it may be used for trial
7     purposes or for other reasons in the case
8     going forward, let's just do a few things
9     to make sure everything is clear.
10    A     Sure.
11    Q     First, I will try not to
12  interrupt you.  If you could let me
13  finish my questions, that would be great.
14  If you don't understand anything, please
15  let me know, and I'll try to clarify so
16  we could make sure the record is very
17  clear.
18          If you want to take a break
19  at any time, I ask that you just finish
20  the question, or we might have one or two
21  more questions to finish the topic that
22  we're talking about.  But feel free to
23  let me know whenever you want to take a
24  break, and I'm happy to accommodate.
25    A     Great.
```

Page 8

```
1              JOE PALLETT
2     Q     And other than that, it's
3  pretty basic.
4           So the other thing I'll say
5  is please just make sure to give a spoken
6  answer instead of nodding or saying
7  mm-hmm so the court reporter can do his
8  job.
9     A     Got it.
10    Q     Any questions before we
11  begin?
12    A     No.
13    Q     Okay.  Great.
14
```

Page 9

```
1              JOE PALLETT
2
```



Page 38

1              JOE PALLETT
2     A    Two years.
3     Q    Until about 2015?
4     A    Yeah.
5     Q    And then what did you do
6  from there?
7     A    Following a series of
8  stretch assignments, I joined the brand
9  protection team.
10    Q    What do you mean by a series
11 of stretch assignments?
12    A    Stretch assignments are
13 something that exist at Nike that allow
14 employees to spend a certain amount of
15 their workweek working outside of their
16 primary job to explore other options
17 within the company.
18    Q    So did you do stretch
19 assignments within brand protection?
20    A    Yes.
21    Q    And that led to being hired
22 full-time by brand protection?
23    A    Yes.
24    Q    Do you recall when you
25 started working full-time for brand

Page 39

1              JOE PALLETT
2  protection?
3     A    2015.
4     Q    What was your position when
5  you first started in brand protection?
6     A    Initially operations and
7  reporting manager.
8

17    Q    How long did you hold that
18 role for?
19    A    I think about two years.
20

25    Q    So what were your primary

Page 40

1              JOE PALLETT
2  responsibilities?
3

Page 41

1              JOE PALLETT
2     Q    And so did you become a
3



Page 42

JOE PALLETT

1
2    Q    With the responsibilities
3  you just described?
4    A    Yes.
5    Q    How long were you in that
6  role for?
7    A    I think about three years.
8    Q    So we're up to like 2019
9  now?  Does that sound about right?
10   A    2018, yeah.
11   Q    So how did your job change
12 in 2018?
13   A    When I became the brand
14 protection manager?
15   Q    I don't know.  I'm lost.
16 I'm lost on the timeline now.
17   A    I am a little bit too.  So
18 I'll have to go back and confirm the
19 years exactly.
20   Q    That's fine.
21   A    But when I became the brand
22 protection manager, I was in that role
23 for two to three years.
24   Q    Okay.
25       And then what?

Page 43

JOE PALLETT

1
2    A    I was promoted to become the
3  director of connected product brand
4  protection.
5    Q    Is that your position today?
6    A    My title has changed to
7  director of authentication and
8  innovation.
9  
12   Q    So let's start with your
13 original title:  Director of connected
14 product brand protection?
15   A    Yes.
16   Q    What was your role?
17

Page 44

JOE PALLETT

1
2
3    Q    You said your title changed.
4       What is your title today?
5    A    Director of authentication
6  and innovation.
7    Q    And how has your role
8  changed?
9

Page 45

JOE PALLETT

1
2
8    Q    And when did you start this
9  most recent position or have this title
10 change?  It's like a memory test here.  I
11 know.
12   A    Yeah.  I think my title has
13 changed -- I think it was 2021 when it
14 changed.
15   Q    And then do you recall when
16 you became the director of connected
17 product?
18   A    Yes.
19   Q    When was that?
20   A    That was like 2019; 2018 or
21 2019, yeah.
22



Page 90

1                JOE PALLETT
2

6       Q       When you say you can't
7   recall the specifics, that's what's
8   throwing me off a little bit.
9

Page 92

1                JOE PALLETT
2       Q

11      A       Sure.
12              MS. DUVDEVANI:  Objection.
13      Go ahe

Page 91

1                JOE PALLETT
2

Page 93

1                JOE PALLETT
2



Page 274

JOE PALLETT

Page 275

JOE PALLETT

Page 276

JOE PALLETT

4    Q    So when Mary Ange went to
5    inspect the shoes, what did she do to
6    ins

12    Q    Did she do anything else?
13    A    I don't know for sure.  But
14    I don't believe so.
15    Q    And what did she find?
16    A    She found that three of the
17    pairs of shoes that were suspicious of
18    being counterfeit were, in fact,
19    counterfeit.
20    Q    And so what did brand
21    protection do next with respect to those
22    counterfeit -- alleged counterfeit shoes?
23        MS. DUVDEVANI:  Objection.
24    A    Mary Ange took the product,
25    put them in a shipping box and sent them

Page 277

JOE PALLETT

2    to me.
3    Q    What did you do with them
4    once you received them?
5        MS. DUVDEVANI:  Objection.
6    A    I inspected them myself and
7    then stored them in the brand protection
8    evidence locker.
9    Q    How did you inspect them?
10

13    Q    Did you do anything else?
14    A    No.
15

70 (Pages 274 - 277)



Page 278

1          JOE PALLETT
2          MS. DUVDEVANI:  If you're
3    about to state -- I'm going to direct
4    you not to make any statements about
5    what you discussed with counsel for
6    Nike.
7          THE WITNESS:  Okay.
8

15         MS. DUVDEVANI:  I'm going to
16   object and instruct the witness not
17   to answer on the basis of
18   attorney-client privilege.
19

Page 279

1          JOE PALLETT
2

7    Q    And what did you learn at
8    that meeting?
9          MS. DUVDEVANI:  Again, just
10   fact.
11

Page 280

1          JOE PALLETT
2

Page 281

1          JOE PALLETT
2

13         Then what did you do with
14   the shoes?
15   A    Locked them in the evidence
16   locker.
17   Q    Have you looked at them
18   since?
19   A    They were removed from the
20   evidence locker, so that we could take
21   photographs of them.
22   Q    Anything else?
23   A    No.
24         MS. BANNIGAN:  We're going
25   to mark as Exhibit 13, a document

71 (Pages 278 - 281)



Page 282

1          JOE PALLETT
2    with the Bates Stamp NIKE0039039
3    through 39043.
4          (The above-referred-to
5    document was marked as Exhibit 13 for
6    identification, as of this date.)
7    Q     Have you seen this before?
8  It might be in a bigger version.
9    A    Yes.
10

Page 283

1          JOE PALLETT
2

Page 284

1          JOE PALLETT
2

Page 285

1          JOE PALLETT
2

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400



Page 298

1          JOE PALLETT
2

Page 300

1          JOE PALLETT
2

Page 299

1          JOE PALLETT

14     Q        Do you recall anything else
15   you did with the shoe?
16     A        Put it in the storage
17   locker.
18     Q        It's in

-- is it four total or five
23   total?
24     A        Four.
25     Q

Page 301

1          JOE PALLETT
2

17          MS. BANNIGAN:

That should have been
20   produced a long time ago.
21          MS. DUVDEVANI:  Make your
22   request.  We will respond.
23          MS. BANNIGAN:  We've made
24   our request multiple times for
25   relevant information.

76 (Pages 298 - 301)



Page 302

```
1              JOE PALLETT
2        MS. DUVDEVANI:  I have a
3   feeling that one is coming.  So you
4   go ahead and do that.  And we'll
5   respond to it.
6    Q      Are you familiar with
7   Michael Malekzadeh?
8    A      I'm familiar.
9    Q      What's your familiarity with
10  him?
11   A      Primarily from reading news
12  reports about the investigation in the
13  Zadeh Kicks.
14   Q      And you first learned of him
15  from a news report?
16   A      Yes.
17
```

Veritext Legal Solutions

212-267-6868          www.veritext.com          516-608-2400



Page 306

1          JOE PALLETT
2

7          MS. DUVDEVANI:  Objection.
8      A    I'm sorry.  Could you try
9  that one again?
10     Q    Sure.
11          So other than this
12  investigation that we're talking about --
13  withdrawn that.
14

21     Q    I believe that you're
22  familiar with Roy Kim?
23     A    Yes.
24     Q    Who is Roy Kim?
25     A    Roy Kim is a shoe collector

Page 307

1          JOE PALLETT
2  and trader from San Diego.
3

6      Q    You said that Mr. Kim is a
7  shoe collector and trader from San Diego.
8          What do you mean by that?
9      A    He collects shoes.
10     Q    Do you know anything else
11  about his background with respect to
12  collecting shoes?
13     A    No.
14     Q    Did you ask him anything
15  about his shoe collection?
16     A    No.
17     Q    Did you ever meet Mr. Kim?
18     A    Briefly, yes.
19     Q    And what were the
20  circumstances in which you met Mr. Kim?
21     A    He invited us to his house
22  to inspect a product that he was
23  suspicious was counterfeit.
24     Q    Did you go to his house?
25     A    Yes.

Page 308

1          JOE PALLETT
2

Page 309

1          JOE PALLETT
2



Page 310

1    JOE PALLETT

Page 312

1    JOE PALLETT

6    Q      Did you have any
7    conversations with Mr. Kim while you were
8    there?
9    A      No.  He offered me something
10   to drink.  That was about it.
11   Q      Did he -- was he -- so you
12   did this outside on his back porch?
13   A      Yeah.  I got a bad sunburn.
14   Q      Was he outside while you
15   were doing it?
16   A      No.
17   Q      Did he come out at all while
18   you were doing it?
19   A      He came out to see how
20   things were going.
21   Q      Did he ask whether you were
22   finding counterfeits?
23   A      He didn't ask me.
24   Q      Did you give him any
25   information about your results?

Page 311

1    JOE PALLETT

Page 313

1    JOE PALLETT
2    A      At the end, I confirmed that
3    four of the pairs that he was suspicious
4    were authentic.
5    Q      Did you give him that
6    information?
7    A      Yes.
8    Q      Did you tell him which
9    pairs?
10   A      Yes.
11   Q      Did you tell him anything
12   else?
13   A      Not that I can recall.
14

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

Page 314

```
 1              JOE PALLETT
 2
    ████████████████████████
    ████████████████████████
    ████████████████████████
 7    Q     Did anyone go with you to
 8  Roy Kim's house?
 9    A     Yes.
10    Q     Who?
11    A     An attorney named Melissa.
12    Q     Melissa who?
13    A     I don't remember her last
14  name.
15    Q     She was an attorney from
16  Nike?
17    A     No.
18         MS. DUVDEVANI:  Melissa
19  Reinckens.
20         MS. BANNIGAN:  From DLA?
21         MS. DUVDEVANI:  Correct.
22    Q     And what did Melissa do
23  while you were there?
24    A     She sat by the shoes and let
25  me do my work.
```

Page 315

```
 1              JOE PALLETT
 2    Q     Did she inspect the shoes at
 3  all?
 4    A     No.
 5    Q     Were any of the shoes in
 6  Mr. Kim's possession missing a StockX tag
 7  or a receipt?
 8    A     Yes.
 9    Q     And were you able to
10  conclude -- in that scenario, how was
11  Nike able to conclude that the shoes were
12  sold by StockX?
13    A     I don't know.
14         MS. DUVDEVANI:  Objection.
15    Q     Is Nike able to conclude
16  that those shoes were sold by StockX?
17         MS. DUVDEVANI:  Objection.
18    A     I don't know.
19         MS. BANNIGAN:  We're going
20  to mark this as Exhibit 15.
21         (The above-referred-to
22  document was marked as Exhibit 15 for
23  identification, as of this date.)
24         MS. DUVDEVANI:  Any idea
25  approximately how much longer we're
```

Page 316

```
 1              JOE PALLETT
 2  going today?
 3         MS. BANNIGAN:  I think we
 4  have less than an hour left.  So less
 5  than an hour.
 6         MS. DUVDEVANI:  Okay.
 7    Q     This is a chart with the
 8  beginning Bates Stamp NIKE0029087.  Given
 9  the size we printed it, you can't see the
10  Bates Stamp on the document.  But that
11  was the Bates Stamp it was produced with
12  by Nike.
13         You recognize this chart?
14    A     Yes.
15    Q     Did you make it?
16    A     Yes.
17    Q     When did you make it?
18    A     After visiting Roy Kim.
19    Q     Why did you make this chart?
20    A     To document the findings
21  that I made after inspecting Roy Kim's
22  shoes.
23    Q     And does this chart
24  accurately reflect your findings?
25    A     Yes.
```

Page 317

```
 1              JOE PALLETT
 2    Q     And did you take all of
 3  these photos that are on the chart?
 4    A     I did.
 5    Q     Did anybody insist you --
 6  assist you in any way in collecting the
 7  information from this chart?
 8    A     No.
 9    Q     Or creating the chart?
10    A     No.
11    Q     Are you familiar with the
12  term backdoor sales?
13    A     Yes.
14    Q     What does the term mean?
15    A     Backdoor sales refer to gray
16  market trade where authorized Nike
17  accounts, instead of selling product
18  through the authorized channels, that we
19  want them to remove product from their
20  inventory and sell it elsewhere.
21    Q     Is Nike concerned with
22  factories that make Nike shoes, turning
23  around and making and selling
24  unauthorized versions of Nike shoes?
25         MS. DUVDEVANI:  Objection.
```

80 (Pages 314 - 317)

C E R T I F I C A T I O N

I, ANTHONY GIARRO, a Shorthand Reporter and a Notary Public, do hereby certify that the foregoing witness, JOE PALLETT, was duly sworn on the date indicated, and that the foregoing, to the best of my ability, is a true and accurate transcription of my stenographic notes.

I further certify that I am not employed by nor related to any party to this action.

____________________
ANTHONY GIARRO

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC
1-800-727-6396
330 Old Country Road 7 Times Square
Mineola, New York 11501 New York, New York 10036
NAME OF CASE: Nike versus StockX
DATE OF DEPOSITION: February 8, 2023
NAME OF DEPONENT: Joe Pallett

| PAGE | LINE (S) | CHANGE | REASON |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

____________________
JOE PALLETT

SUBSCRIBED AND SWORN TO BEFORE ME
THIS ____ DAY OF ___________, 20__.

____________________ ____________________
(NOTARY PUBLIC) MY COMMISSION EXPIRES: