# Exhibit 48

*Redacted Public Version*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
---oOo---

NIKE, INC., )
)
Plaintiff, )
)
vs. ) No. 1:22-cv-00983-VEC
)
STOCKX LLC, )
)
Defendant. )
______________________________)

H I G H L Y C O N F I DE N T I A L
OUTSIDE ATTORNEYS' EYES ONLY
VIDEOTAPED DEPOSITION OF JOHN LOPEZ
SAN FRANCISCO, CALIFORNIA
THURSDAY, FEBRUARY 23, 2023

STENOGRAPHICALLY REPORTED BY:
ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
CSR LICENSE NO. 9830
JOB NO. 5688745

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
---oOo---

NIKE, INC., )
)
Plaintiff, )
)
vs. ) No. 1:22-cv-00983-VEC
)
STOCKX LLC, )
)
Defendant. )
_________________________)

Videotaped Deposition of John Lopez, taken on behalf of the Plaintiff, Pursuant to Notice, on Thursday, February 23, 2023, beginning at 9:27 a.m., and ending at 6:55 p.m., before me, ANDREA M. IGNACIO, CSR, RPR, CCRR, CRR, CLR ~ License No. 9830.

A P P E A R A N C E S:

FOR THE PLAINTIFF:
DLA PIPER
By: MARC E. MILLER, Esq.
GABRIELLE VELKES
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
212.335.4500
marc.miller@us.dlapiper.com

FOR THE DEFENDANTS:
By: CHRISTOPHER S. FORD, Esq.
MAI-LEE PICARD, Esq.
650 California Street
San Francisco, California 94108
415.738.5705
csford@debevoise.com

ALSO PRESENT: Peter Yaroschuk, Videographer
Kevin Adams, StockX LLC
---oOo---

I N D E X

WITNESS: John Lopez

| EXAMINATION | PAGE |
|---|---|
| BY MR. MILLER | 9 |
| BY MR. FORD | 296 |

E X H I B I T S

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 1 | Plaintiff Nike, Inc.'s Amended Notice of Deposition of John Lopez | 48 |
| Exhibit 2 | Defendant's Objections and Responses to Plaintiff's Second Set of Interrogatories | 48 |
| Exhibit 3 | Seasonal Authenticator at StockX | 59 |
| Exhibit 4 | Authenticator at StockX West Caldwell, NJ | 60 |
| Exhibit 5 | Team Leader, Authentication and Quality Assurance at StockX | 60 |
| Exhibit 6 | Page Vault, Bates NIKE0006785 - '89 | 90 |
| Exhibit 7 | Job Descriptions Sneaker Authenticator I, II, III, Bates STX0114754 - '57 | 115 |

E X H I B I T S

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 8 | Sneaker Authentication Standard Operating Procedure, Bates STX0752605 - '42 | 132 |
| Exhibit 9 | Planet Nike Deck, Bates STX02033509 - '673 | 179 |
| Exhibit 10 | Nike Dunk Low Retro White Black (2021), Bates STX0069511 - '24 | 197 |
| Exhibit 11 | Jordan 1 High OG SP Fragment design x Travis Scott, Bates STX0058653 - '69 | 204 |
| Exhibit 12 | Nike SB Dunk Low What The Paul - Fake Comparison, Bates STX0058670 - '93 | 204 |
| Exhibit 13 | 12-18-20 Email Re: Auth App Updates/Grateful Dead SB Breakdown Bates STX0106086 - '87 | 209 |
| Exhibit 14 | 10-18-21 Email Re: Weekly Sneaker Product Update - 10/18 Bates STX0106315 - '16 | 216 |
| Exhibit 15 | 2-1-22 - 3-1-22 Short Message Report, Bates STX0076158 - '71 | 224 |
| Exhibit 16 | Authentication Project Metrics/Data, Bates STX0018010 - '14 | 240 |

E X H I B I T S

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 17 | 3-22-21 - 3-28-21 Outline of Conversations, Bates STX0545514 - '30 | 250 |
| Exhibit 18 | Authentication Failure Comms Policy, Bates STX0169271 - '72 | 265 |
| Exhibit 19 | 1-4-22 Email, Subject: Fake - return, ref for John to look into seller and checker, Bates ZK_NIKE_010019 - '29 | 271 |
| Exhibit 20 | 1-5-22 Email Re: Fake - return, ref for John to look into seller and checker, Bates ZK_NIKE_010032 | 271 |
| Exhibit 21 | 3-31-22 Email Re: Lots warning signs, Bates ZK_NIKE_010404 - '24 | 277 |
| Exhibit 22 | 3-31-22 Email Re: Lots warning signs, Bates ZK_NIKE_010428 - '29 | 277 |
| Exhibit 23 | 12-18-20 Email Re: ? Bates ZK_NIKE_ 007765 - '75 | 277 |
| Exhibit 24 | 12-22-20 Email Re: ? Bates ZK_NIKE_ 007780 - '81 | 277 |
| Exhibit 25 | 8-2-22 Email Re: Instagram post Bates STX0772942 - '45 | 285 |

---oOo---

DEPOSITION PROCEEDINGS

THURSDAY, FEBRUARY 23, 2023

---oOo---

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:27 a.m. on February 23rd, 0 2023.

Please note that microphones are sensitive and may pick up whispering, private conversations, and cellular interference.

Please turn off all cell phones or place them away from the microphones, as they can interfere with the deposition audio.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media 1 of the video-recorded deposition of John Lopez. Taken by counsel for Plaintiff.

In the matter of Nike Incorporated versus StockX LLC. Filed in the United States District Court for the Southern District of New York. Case number is 122-CV-00983 VEC.

This deposition is being held at 555 Mission

Street, Suite 2400, San Francisco, California 94105.

My name is Peter Yaroschuk from the firm Veritext. I am the videographer.

The court reporter is Andrea Ignacio from the firm Veritext.

I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel and all present, please now state your appearances and affiliations for the record.

If there are any objections to proceeding, please state them at the time of your appearance, beginning with the noticing attorney.

MR. MILLER: Good morning. This is Marc Miller from DLA Piper, on behalf of Plaintiff Nike Inc.

And I'm joined by Gabby Velkes, also of DLA Piper.

MR. FORD: Christopher Ford, Debevoise & Plimpton, on behalf of defendant StockX.

With me are my colleague Mai-Lee Picard, and Kevin Adams with in-house counsel at StockX.

THE VIDEOGRAPHER: Thank you.

Will the court reporter please swear in the witness.

JOHN LOPEZ,
having been first duly sworn
by the Certified Court Reporter,
testified as follows:

EXAMINATION

BY MR. MILLER:

Q Good morning, Mr. Lopez.

A Good morning.

Q My name is Marc Miller. I represent the plaintiff Nike in this case. Thank you for coming in.

So I just want to go over a couple of ground rules that your counsel may have advised you of.

First, let me ask you: Have you ever had your deposition taken before?

A No, I have not.

Q Okay. So our purpose here is for me to ask you some questions. You need to answer those questions to the best of your ability by telling the truth, the whole truth, and nothing but the truth, as you just took an oath to do.

A Sure.

Q If you don't hear a question that I've asked, please let me know, and I'll be happy to repeat it.

If don't understand my question for some



Page 110

Page 112

Q What do you mean by "defect"?
A Defect is a broad term. But essentially, it's a manufacturing issue that is caught at the authentication process.
Q And can you be more specific by what you mean with "manufacturing issue"?
A I don't know how else to put it.
Would you like some examples?
Q Sure.
A An example would be a glue stain -- a noticeable glue stain on a sneaker. Poor aging or poor storage. So if one of our sellers leaves a shoe out in -- in -- in the sun or it gets yellow, that is something we deem as a defect or a non-passable defect, and so on and so forth.
Q Is that a manufacturing issue?
A In that example that I gave, no, that would not be.

Page 111

Page 113

Q Okay. So other than a glue stain, what other manufacturing issue examples can you please provide?
A Another example would be a stitching defect, either a loose stitching or a missing stitching. Other examples could be heavy creasing, either on a toebox or a heel, without the shoe being worn.
Q Any others?
A Nothing I can think of right now.

Page 114

different way.

MR. MILLER: May I have this one?

MS. VELKES: Uh-huh.

MR. MILLER: Hold it for both, and we'll get a different print of it.

MS. VELKES: Okay.

MR. MILLER: All right.

Why don't we stop here. We'll take a lunch break. It seems we have to reprint a couple of documents that got the bottom cut off, for some reason.

MR. FORD: AQA process.

MR. MILLER: Yeah.

THE VIDEOGRAPHER: I'm going to switch media.

This marks the end of Media No. 3 in the deposition of John Lopez.

The time is 12:31 p.m. We are off the record.

(Lunch break taken at 12:31 p.m.)

Page 115

A F T E R N O O N S E S S I O N

1:24 P.M.

---oOo---

THE VIDEOGRAPHER: This marks the beginning of Media No. 4 in the deposition of John Lopez.

The time is 1:24 p.m. We are on the record.

(Document marked Exhibit 7 for identification.)

MR. MILLER: Okay.

Q Mr. Lopez, you've been handed a document by the court reporter, marked as Exhibit 7. It's bearing Bates Nos. STX0114754 through '114757.

Do you see that?

A I do, yes.

Q Do you recognize this document?

A This particular document, no, I do not.

Q You've never seen this before?

A Not to my knowledge, no.

Q Do you know at Stock- -- who at StockX would have prepared this document?

A That I do not know.

Q All right.

If you look at the top of the first page, you

Page 116

see where it says:

Page 117



Page 130

Q So StockX receives products in authentication centers for Nike shoes before they are released through Nike.com website or the sneakers app?

MR. FORD: Objection to the form of the question.

THE WITNESS: StockX does receive pairs -- pairs before they are released by Nike.com, yes.

MR. MILLER: Q. How does that happen?

MR. FORD: Objection --

MR. MILLER: Q. Where do they come from?

MR. FORD: Objection to form.

THE WITNESS: I cannot say where they are coming from, but they are coming from our sellers on the platform.

MR. MILLER: Q. Do you know how sellers on StockX's platform obtain pairs of Nike shoes before they are released by Nike through the Nike.com website or the sneakers app?

Page 131

A I do not.

Q Do you know if that happens for every Nike shoe that's going to be released into the market?

MR. FORD: Objection to the form.

THE WITNESS: Can you rephrase that, please.

MR. MILLER: Q. Do you know how often sellers on StockX's platform will send pairs of Nike shoes before the release date on the Nike.com platform or sneakers app?

MR. FORD: Objection to form.

THE WITNESS: I don't know. I don't have an answer for the amount.

MR. MILLER: Q. Would you say it happens regularly?

A Define what you mean by "regularly."

Q If we're talking about ten releases of Nike shoes, ten different pairs, of those ten, how often will StockX receive product in its authentication centers before the Nike.com or sneakers app release date?

MR. FORD: Objection to the form.

THE WITNESS: Yeah, I would not be able to put an exact number on that.

MR. MILLER: Q. Would you be able to estimate?

Page 132

A No --

MR. FORD: Same --

THE WITNESS: -- I would not.

MR. FORD: Same objection.

THE WITNESS: Yeah.

MR. MILLER: Q. You don't know one way or the other?

A I -- I would not be able to speculate on that.

(Document marked Exhibit 8 for identification.)

MR. MILLER: All right.

Q Mr. Lopez, you've been handed a document by the court reporter marked as Exhibit 8. It is bearing Bates Nos. STX0752605 through '752642.

Do you see that?

A I do, yes.

Q Do you recognize this document?

A I do, yes.

Q What is this?

Page 133



Page 134

[redacted]

Page 135

[redacted]

Page 136

[redacted]

Page 137

[redacted]

35 (Pages 134 - 137)

Veritext Legal Solutions

212-267-6868 www.veritext.com 516-608-2400

Page 174

Q I see.

MR. MILLER: Okay. Why don't we take a break.

THE VIDEOGRAPHER: This marks the end of Media No. 4 in the deposition of John Lopez.

The time is 2:54 p.m. We are off the record.

(Recess taken.)

THE VIDEOGRAPHER: This marks the beginning of Media No. 5 in the deposition of John Lopez.

The time is 3:10 p.m. We are on the record.

Page 176

Page 175

Page 177

Page 178

[redacted]

Page 179

[redacted]

Page 180

[redacted]

Q Sorry. Were you just showing a page to your counsel?

A Yes, I was.

Q Which page?

A The GR versus Nike skateboarding.

Q Why were you showing that one to your counsel?

A I pre- -- I previously asked the difference. Sorry.

MR. FORD: I'm not -- going to direct you not to discuss previous conversations that you've had with counsel.

THE WITNESS: Sorry.

MR. MILLER: Q. And just so I'm clear, you're showing him that particular page because it's related to something you discussed?

That's just a yes-or-no question.

A Yes.

Page 181

[redacted]

CERTIFICATE OF STENOGRAPHIC REPORTER

I, ANDREA M. IGNACIO, hereby certify that the witness in the foregoing deposition was by me sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript [x] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

Dated: 2-27-23

____________________________________

ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830

E R R A T A S H E E T

PAGE_____ LINE_____ CHANGE_______________________

_________________________________________________

REASON___________________________________________

PAGE_____ LINE_____ CHANGE_______________________

_________________________________________________

REASON___________________________________________

PAGE_____ LINE_____ CHANGE_______________________

_________________________________________________

REASON___________________________________________

PAGE_____ LINE_____ CHANGE_______________________

_________________________________________________

REASON___________________________________________

PAGE_____ LINE_____ CHANGE_______________________

_________________________________________________

REASON___________________________________________

PAGE_____ LINE_____ CHANGE_______________________

_________________________________________________

REASON___________________________________________

_________________________ ________________

John Lopez Date