# Exhibit 49

*Redacted Public Version*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

---oOo---

NIKE, INC., )
)
Plaintiff, )
)
vs. ) No. 1:22-cv-00983-VEC
)
STOCKX LLC, )
)
Defendant. )
______________________________)

H I G H L Y C O N F I D E N T I A L

OUTSIDE ATTORNEYS' EYES ONLY

STOCKX 30(b)(6) VIDEOTAPED DEPOSITION OF BROCK HUBER

SAN FRANCISCO, CALIFORNIA

WEDNESDAY, FEBRUARY 22, 2023

STENOGRAPHICALLY REPORTED BY:
ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
CSR LICENSE NO. 9830
JOB NO. 5688666

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
---oOo---

NIKE, INC., )
)
Plaintiff, )
)
vs. ) No. 1:22-cv-00983-VEC
)
STOCKX LLC, )
)
Defendant. )
_________________________)

StockX 30(b)(6) Videotaped Deposition of Brock Huber, taken on behalf of the Plaintiff, Pursuant to Notice, on Wednesday, February 22, 2023, beginning at 8:40 a.m., and ending at 4:43 p.m., before me, ANDREA M. IGNACIO, CSR, RPR, CCRR, CRR, CLR ~ License No. 9830.

A P P E A R A N C E S:

FOR THE PLAINTIFF:
DLA PIPER
By: TAMAR Y. DUVDEVANI, Esq.
MARC E. MILLER, Esq.
GABRIELLE VELKES
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
212.335.4500
tamar.duvdevani@dlapiper.com

FOR THE DEFENDANTS:
DEBEVOISE & PLMPTON, LLP
By: MEGAN K. BANNIGAN, Esq.
JUSTIN FERRONE, Esq.
66 Hudson Boulevard
New York, New York 10001
212.909.6000
mkbannigan@debevoise.com

ALSO PRESENT: Peter Yaroschuk, Videographer
Kevin Adams, StockX LLC

---oOo---

I N D E X

WITNESS: Brock Huber, StockX 30 (b)(6)

| EXAMINATION | PAGE |
|---|---|
| By Ms. Duvdevani | 9 |
| By Ms. Bannigan | 247 |

E X H I B I T S

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 1 | 3-19-22 Email Re: General Selling Bates STX0204960 | 27 |
| Exhibit 2 | Plaintiff Nike, Inc.'s Notice of Rule 30(b)(6) Deposition to StockX LLC | 32 |
| Exhibit 3 | PL by Entity with CC Breakout, Bates STX0774394 | 36 |
| Exhibit 4 | September 2021 Board Meeting, Bates STX0583757 - '97 | 91 |
| Exhibit 5 | StockX Revenue from Jordan Brand Bates STX0774395 | 103 |
| Exhibit 6 | Revenue & Operating Losses from Jordan Brand, Nike and Nike Vault NFTs, Bates STX0774285 | 125 |
| Exhibit 7 | NFTs Collect What's Next, Bates NIKE0000055 - '58 | 159 |

E X H I B I T S

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 8 | Marketing Asset & GTM Approvals Bates STX0097812 - '37 | 172 |
| Exhibit 9 | 1-18-22 Email Re: Introducing Vault NFTs, Bates STX0025343 - '44 | 184 |
| Exhibit 10 | Page Vault, Bates NIKE0005663 | 190 |
| Exhibit 11 | Page Vault, Bates NIKE0005676 - '77 | 190 |
| Exhibit 12 | NFT Integrated Marketing and Creative Brief, Bates STX0020696 - '67 | 194 |
| Exhibit 13 | StockX Trading Wave 2, Bates STX0016533 - '69 | 202 |
| Exhibit 14 | Outline of Conversations, Bates STX0140205 - '29 | 206 |
| Exhibit 15 | 1-14-22 Email Re: Brand Direct Bates STX0042065 - '69 | 208 |
| Exhibit 16 | StockX Drop Mechanics, Bates STX0022621 - '32 | 210 |
| Exhibit 17 | What's Now: StockX Vault NFTs | 215 |
| Exhibit 18 | First Quarter 2022 Shareholder Letter, Bates STX01916168 - '36 | 221 |

///

EXHIBITS

| EXHIBIT | | PAGE |
|---|---|---|
| Exhibit 19 | Fourth Quarter & Full Year 2021 Shareholder Letter, Bates STX0190727 - '46 | 221 |
| Exhibit 20 | 9-13-21 Email Re: Forbes: Born in The Metaverse: Will RTFKT's New Avatar Project Be The Next Big Thing in NFTs and Fashion? Bates STX0043022 | 225 |
| Exhibit 21 | 4-27-21 Email Re: Intro/StockX Bates STX0039964 - '73 | 228 |
| Exhibit 22 | Digital StockX, Bates STX0031324 - '49 | 230 |
| Exhibit 23 | Digital StockX, Bates STX0022141 - '88 | 241 |
| Exhibit 24 | Northstars Draft | 243 |

---oOo---

DEPOSITION PROCEEDINGS
WEDNESDAY, FEBRUARY 22, 2023
---oOo---

THE VIDEOGRAPHER: Good morning. We are going on the record at 8:40 a.m. on February the 22nd, 2023.

Please note that microphones are sensitive and may pick up whispering, private conversations, and cellular interference.

Please turn off all cell phones or place them away from the microphones, as they can interfere with the deposition.

Audio -- audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media Unit 1 of the video-recorded deposition of Brock Huber. Taken by counsel for Plaintiff.

In the matter of Nike Incorporated versus StockX LLC. Filed in the United States District Court for the Southern District of New York.

The deposition is being held at 555 Mission Street, Suite 2400, San Francisco, California 94105.

My name is Peter Yaroschuk from the firm Veritext. I am the videographer.

The court reporter is Andrea Ignacio, from the firm Veritext.

I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel, all present in the room, please now state your appearances and affiliations for the record.

If there are any objections to proceeding, please state them at the time of your appearance, beginning with the noticing attorney.

MS. DUVDEVANI: Tamar Duvdevani, DLA Piper, for plaintiff, Nike.

I am joined by my colleagues, also of DLA Piper, Gabby Velkes and Mark Miller. Good morning.

MS. BANNIGAN: Good morning. Megan Bannigan from Debevoise & Plimpton, on behalf of StockX.

I'm here with my colleague from Debevoise Justin Ferrone, as well as Kevin Adams, in-house counsel for StockX.

THE VIDEOGRAPHER: Thank you.

Will the court reporter please swear in the witness.

BROCK HUBER,
having been first duly sworn
by the Certified Court Reporter,
testified as follows:

EXAMINATION

BY MS. DUVDEVANI:

Q Okay. Good morning, Mr. Huber. As you heard, my name is Tamar Duvdevani. I am counsel for Nike in this matter.

Have you ever been deposed before?

A No.

Q Okay. Do you understand that your testimony today is being given under oath?

A I do.

Q And do you understand that in addition to whatever ethical or moral obligations you feel about providing testimony under oath, that lying under oath can involve serious legal consequences?

A Yes.

Q Do you understand that if you know an answer to my question, yet you say "I don't know," that is lying under oath?

A Yes.

Q Do you understand that if you know and recall

Page 22

again, the standard that we created that is our standard for -- for an item being eligible to be transacted on our platform, we -- our authenticator, who is, you know, hands-on in their pod with that item in their hands, will trouble the item.

[redacted]

Page 23

[redacted]

MS. DUVDEVANI: Q. Do you explain why it failed the inspection?

A We give some level of detail, but it is not always entirely specific.

Q What do you mean by "some level of detail"?

A We may say, as an example, "Variation in materials."

Q Do you give any more details than that?

A Generally speaking, no. No -- nothing too specific.

Q Why not?

A The main takeaway when that happens is that the item is not eligible to transact on our platform. And the seller is notified that it's not eligible and is given the opportunity to, in some cases, pay. In other cases, we waive the fee to have that item shipped back to them where it's clear it's not welcomed to be transacted on our platform.

[redacted]

Page 24

[redacted]

So we have heard anecdotes of folks purchasing something, as an example, directly from an Adidas store and coming to StockX to sell it and it failing our authentication and verification process.

So it is not our job, our position, our role to -- when a consumer provides an item that potentially may be inauthentic and is a low-volume seller and what we would just call a typical consumer, to confiscate that property, because we're not legally designating it as a counterfeit item.

We are saying, This is not welcomed to be transacted in our platform. If you'd like to pay a fee, you may have your item back.

MS. DUVDEVANI: Q. How come StockX doesn't give -- well, strike that.

Is it your testimony that StockX doesn't provide more details about why they determine that a potential product is inauthentic to the seller?

Page 25

MS. BANNIGAN: I'm just going to caution you not to get into any privileged information. So just facts.

THE WITNESS: Sure.

I don't think that my list of reasons was exhaustive. I do not have, off the top of my head, every code that we could potentially provide via e-mail to a customer about why an item failed authentication.

But it is, to the best of my knowledge, that we do not send an e-mail that would tell a customer that their product was fake.

MS. DUVDEVANI: Q. Why not?

A Again, it's a part of our process. The point of the process is to deem items, according to our standard, eligible to be traded on our platform.

And if an item has characteristics that might make our authentication team suspicious, we will not allow it to trade.

In that process, we may block items that the brand, such as Nike, would call authentic. We may also block items that Nike as a brand may call inauthentic.

Q How do you know what items Nike would call authentic or inauthentic?






Page 66

[redacted]

Page 67

[redacted]

Page 68

[redacted]

Page 69

[redacted]

18 (Pages 66 - 69)

Veritext Legal Solutions
212-267-6868 www.veritext.com 516-608-2400

Page 242

Page 243

(Document marked Exhibit 24 for identification.)

MS. DUVDEVANI: The court reporter has just

Page 244

handed you a document that's been designated as Exhibit 24, containing the Bates ranges STX '20185 through '20188.

Q Do you recognize this document?

A I do not.

But I think, as I've said a few times today, our proprietary authentication and verification process is at the heart of what we do. There is no item, save for items that come directly from a brand or creator partner, that does not pass through our authentication and verification process.

And as I talked about earlier, there was not

Page 245

anyone doing this prior to our success in removing some of the friction points around purchasing the -- the items in the categories in which we transact.

And because we've started doing it, and because we took a stand against unverified product, many other competitors have joined our industry in the secondary market and attempted to replicate our authentication and verification process and have their own authentication and verification processes.

Q Is authentication important to your consumers?

A It is very important to the experience that every item that transacts on our platform go through our authentication and verification process to correct for the potential areas of disappointment for a buyer: wrong size, wrong color, wrong product, missing accessories, damaged, manufacturing defect, other variances. And we correct for those before the buyer takes receipt of the product.

And that is one of the main -- one of the key reasons why you would transact on StockX as opposed to in person at your local mall parking lot or on another platform that does not have the same commitment to authentication and verification.

62 (Pages 242 - 245)

Page 246

MS. DUVDEVANI: Okay. Let's take a break. I might be done.
MS. BANNIGAN: Okay.

Page 247

MS. DUVDEVANI: Give me five minutes.
THE VIDEOGRAPHER: We are off the record at 4:34 p.m.
(Recess taken.)
THE VIDEOGRAPHER: We are back on the record at 4:41 p.m.
MS. DUVDEVANI: Okay. Subject to any redirect, I have no further questions.
MS. BANNIGAN: I have just a few questions.
MS. DUVDEVANI: Okay.

EXAMINATION

BY MS. BANNIGAN:
Q Mr. Huber, before the break, and at a -- at a -- on a few different times today, Ms. Duvdevani asked you questions about why StockX does not share information with third parties regarding whether something has passed StockX's verification process, whether a product has passed or failed StockX's verification process.
What are the reasons that StockX does not share this information with third parties?
A The first would be that none of the brands have shown interest in receiving this information.
The second would be that we have chosen not

Page 248

to share it in discussions -- those decisions were discussed with our legal counsel.
And the third would be, our authentication process is our own proprietary process, and we do not serve as the legal designation of what is or is not counterfeit.
Q Before the break -- well, strike that.
Have any third-party brands ever reached out to StockX and offered to provide StockX information to help StockX fight counterfeits?
A To my knowledge, no brand has offered us information like that.
MS. BANNIGAN: I have no further questions.
MS. DUVDEVANI: Neither do I.
THE VIDEOGRAPHER: And that would conclude?
This concludes today's deposition of Brock Huber. The number of media used was six.
The time is 4:43 p.m. We are off the record.
STENOGRAPHIC REPORTER: Do you need a copy?
MS. BANNIGAN: Yes. We have a standing order by now.
(WHEREUPON, the deposition ended at 4:43 p.m.)
---oOo---

Page 249

DECLARATION UNDER PENALTY OF PERJURY

I, Brock Huber, do hereby certify under penalty of perjury that I have read the foregoing transcript of my remote deposition, taken on February 22, 2023, that I have made such corrections as appear noted herein in ink; initialed by me; that my testimony contained herein, as corrected, is true and correct.

DATED this ____ day of _____________, 2023, at ____________________________.

___________________________________
SIGNATURE OF WITNESS

Page 250

E R R A T A S H E E T

PAGE_____ LINE_____ CHANGE________________________

______________________________________________

REASON_______________________________________

PAGE_____ LINE_____ CHANGE________________________

______________________________________________

REASON_______________________________________

PAGE_____ LINE_____ CHANGE________________________

______________________________________________

REASON_______________________________________

PAGE_____ LINE_____ CHANGE________________________

______________________________________________

REASON_______________________________________

PAGE_____ LINE_____ CHANGE________________________

______________________________________________

REASON_______________________________________

PAGE_____ LINE_____ CHANGE________________________

______________________________________________

REASON_______________________________________

__________________________ ________________

Brock Huber Date

Page 251

Brock Huber
c/o Megan Bannigan, Esq.
mkbannigan@debevoise.com

February 27, 2023

RE: Nike Inc., vs StockX LLC

2/22/2023 (#5688666)

The above-referenced transcript is available for review.

Within the applicable timeframe, the witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason, on the attached Errata Sheet.

The witness should sign the Acknowledgment of Deponent and Errata and return to the deposing attorney. Copies should be sent to all counsel, and to Veritext at cs-ny@veritext.com

Return completed errata within 30 days from receipt of testimony.

If the witness fails to do so within the time allotted, the transcript may be used as if signed.

Yours,

Veritext Legal Solutions

Page 252

CERTIFICATE OF STENOGRAPHIC REPORTER

I, ANDREA M. IGNACIO, hereby certify that the witness in the foregoing deposition was by me sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript [x] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

Dated: February 27, 2023

_______________________________________

ANDREA M. IGNACIO, RPR, CRR, CCRR, CLR, CSR No. 9830