# Exhibit 53

*Redacted Public Version*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NIKE INC., | |
| Plaintiff, | No. 1:22-cv-00983-VEC-SN |
| v. | |
| STOCKX LLC, | |
| Defendant. | |

---

## DEFENDANT'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S THIRD SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"), and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), Defendant StockX LLC ("StockX"), by and through its undersigned counsel, hereby objects and responds (these "Responses and Objections") to Plaintiff Nike, Inc.'s ("Nike") Third Set of Interrogatories to Defendant StockX LLC, served by electronic mail on August 26, 2022 (each individually an "Interrogatory," collectively the "Third Set of Interrogatories").

## INTRODUCTORY STATEMENT

These Responses and Objections are based on information currently available to StockX and its agents, representatives, or attorneys, unless privileged.

Nothing in StockX's Responses and Objections herein shall be construed as a waiver of StockX's rights to (*i*) object to the competency, relevance, materiality, or admissibility of any answers or documents that may be produced in response to the Third Set of Interrogatories;

1

(*ii*) object on any and all grounds, at any time, to the use of any information provided in these Responses and Objections for any purpose, in whole or in part, in any subsequent stage or proceeding in this or any other action; (*iii*) object on any and all grounds, at any time, during any discovery proceeding relating to the subject matter of any answers that may be produced in response to the Third Set of Interrogatories; or (*iv*) assert the attorney-client privilege, the work product doctrine or any other privilege or right. StockX reserves the right to supplement or modify these Responses and Objections in the event additional or different information becomes available to it, through discovery or otherwise.

## OBJECTIONS TO THE DEFINITIONS AND INSTRUCTIONS

1.     StockX objects to the definitions of "Identify," "Identification," and "Identity" (Definitions 6-9) to the extent they exceed the requirements and definitions set forth in the FRCP and Local Rules.

2.     StockX objects to the definition of "Advertising Claims" as vague, ambiguous, overly broad and unduly burdensome to the extent it purports to encompass unstated and unspecified claims "without limitation" to those referenced in the First Amended Complaint. StockX accordingly will interpret the term "Advertising Claims" to refer to those claims specifically identified in Nike's First Amended Complaint at Paragraphs 50-53, 110 and 172.

3.     StockX objects to the definition of "Nike Product" as vague and ambiguous to the extent it purports to encompass physical, tangible, goods designed, produced, manufactured, distributed, marketed, sold and/or offered for sale by Nike under some other brand name or trademark. StockX will interpret "Nike Product" to mean products bearing the Nike trademarks identified in paragraph 31 of Nike's First Amended Complaint.

4.      StockX objects to the definition of "Nike Trademark" as vague, ambiguous, overbroad and unduly burdensome to the extent it purports to include all "unregistered trademarks and service Marks" Nike may claim to own without identification or specificity beyond the marks listed in the First Amended Complaint.  StockX accordingly will interpret the term "Nike Trademark" to refer to those trademarks referenced in Nike's First Amended Complaint at Paragraph 31.

5.      StockX objects to the definition of the phrase "individuals affiliated with StockX" as vague, overbroad, and unduly burdensome to the extent it purports to require StockX to identify any and all Persons employed by or affiliated with third-parties, or independent contractors retained by StockX.

6.      StockX objects to the specified relevant time period as overbroad, unduly burdensome and disproportional to the needs of the case, given that Nike's allegations regarding the alleged counterfeiting are related only to the time period between December 2021 and January 2022, and its First Amended Complaint identifies no facts prior to those dates relevant to its false advertising claims.  Subject to and without waiving the foregoing objections, StockX agrees to respond as to the same "Relevant Time Period" of July 1, 2020 through May 25, 2022 for these Interrogatories as StockX agreed to apply in connection with Nike's First Set of Discovery Requests.

7.      StockX objects to Instruction Nos. 3, 4, 6, 8, 9, 10 on the ground that each imposes burdens or obligations on StockX beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the Southern District of New

York, or binding case law.  StockX will comply with its obligations under the Federal and Local

Rules when responding to these Interrogatories.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 14:**

> Identify and describe in detail all evidence supporting Your Second Affirmative
> Defense for "Fair Use" in the Answer to Nike's First Amended Complaint.

**RESPONSE NO. 14:**

StockX incorporates its Objections to Definitions and Instructions as if fully stated

herein.  StockX further objects to Interrogatory No. 14 on the grounds that interrogatories

seeking "all evidence" a party may wish to offer concerning a given issue at trial are considered

improperly overbroad and unduly burdensome in this District.  StockX further objects to

Interrogatory No. 14 on the grounds that it is overbroad and unduly burdensome in that it

requests StockX review and "describe in detail" documents which speak for themselves, and

which Plaintiff is equally capable of reviewing and understanding. StockX further objects to

Interrogatory No. 14 on the grounds that it is a premature contention interrogatory that need not

be responded to prior to the close of fact discovery, pursuant to Local Rule 33.3(c) and

applicable case law.  Subject to, and without waiving, the foregoing objections, StockX will

provide its response to this interrogatory, if any is required, at the close of fact discovery,

pursuant to Local Rule 33.3(c).

**FIRST SUPPLEMENTAL RESPONSE NO. 14:**

Subject to, and without waiving the previously stated objections, which are incorporated

by reference, StockX responds as follows:

StockX's use of Nike's trademarks on its Vault NFTs is protected by the nominative and descriptive fair use doctrines. All Nike Products sold by StockX via Vault NFTs were previously owned products that were lawfully purchased by StockX and were then lawfully resold by StockX to third parties, who received a digital token representing their ownership of a physical pair of shoes held by StockX in its vault.

StockX Vault NFTs were the culmination of a years-long process to make trading on the StockX platform more efficient and cost effective for consumers by vaulting products to avoid shipping costs and delays. Vault NFTs associated with Nike Products represent and track proof of ownership of a corresponding physical Nike sneaker that StockX stores on the owner's behalf in StockX's Vault. Vault NFTs provide their owner with a claim ticket that, if redeemed with StockX, results in the owner's Vault NFT being removed by StockX from circulation and the physical goods that are linked to that Vault NFT being sent by StockX to the Vault NFT owner. In lieu of redeeming a Vault NFT for the linked physical good, a Vault NFT owner may also sell their rights to the physical good by selling their Vault NFT through StockX's marketplace. As StockX informed its consumers, the Vault NFT itself has no intrinsic value separate and apart from the associated physical good for which the Vault NFT serves as a claim ticket. The digital token cannot be separated from, or traded separately from, the associated physical good, and cannot be traded or used outside of StockX's marketplace.

## CONFIDENTIAL

In connection with StockX's lawful resale of the physical Nike shoes that back each Vault NFT associated with Nike Products, StockX used (1) text containing the accurate name of the Nike Product being lawfully resold by StockX, and (2) imagery, including photographs taken

by StockX employees, that accurately depict the Nike Product being lawfully resold by StockX.

██████████████████████████████████████████████████████████

██████████████████████████████████████ StockX's use of Nike

Trademarks in that text and imagery was necessary to describe to the consumer what physical

Nike Product they were buying rights to, represented by their Vault NFT.  In particular, in

connection with apparel products like Nike sneakers, a visual and not merely written description

is essential for consumers to understand the precise appearance of the product they are

purchasing, which cannot adequately be conveyed through text.  By prominently featuring the

StockX name and logo in connection with the Vault NFT, as well as through other disclosures on

the Vault NFT Product Detail Page, StockX did not convey or represent any sponsorship or

endorsement of Vault NFTs by any third party, including Nike, but instead accurately

represented to consumers that StockX was lawfully reselling a StockX-issued NFT claim ticket

to a product that was held by StockX in its vault.  Nor did StockX convey to consumers that they

were purchasing any right to any image associated with a Vault NFT, and StockX is not aware of

any customer who believed that they had purchased rights to an image through their purchase of

a Vault NFT.

## END OF CONFIDENTIAL DESIGNATION

StockX's use of Nike's trademarks in connection with the Vault NFTs also constitutes

descriptive fair use.  StockX uses images and names of Nike products solely to describe what the

Vault NFTs are: a claim ticket to a specific pair of physical Nike sneakers, which are depicted

for the consumer through the use of the product's name and image (on one of the images

associated with the Vault NFT), which contain third-party trademarks to the extent necessary to

accurately describe the physical product that the consumer is purchasing via a Vault NFT. The

purpose and function of a Vault NFT cannot be accurately explained without that context;

removing these references would render Vault NFTs nonsensical to consumers.

In addition to the above, facts supporting StockX's fair use defense may be ascertained

from documents beginning with following Bates nos. NIKE0005694; NIKE0004356;

STX0031204; NIKE0039854; NIKE0001145; NIKE0000253; NIKE0000395; NIKE0000130;

NIKE0005630; NIKE0000035; NIKE0000878;NIKE0003341; NIKE0003342; NIKE0003207;

NIKE0003197; NIKE0003243; NIKE0000952; NIKE0000942; STX0104547; STX0055701;

STX0046030; STX0144554; STX0061875; NIKE0029037; NIKE0026922; NIKE0038459;

NIKE0027537; and NIKE0026302. Facts supporting these contentions may also be ascertained

from the deposition testimony of Mike Child, Jacob Fenton, Brock Huber, Yasir Malik, and

Shervin Moghaddam.

## INTERROGATORY NO. 15:

> Identify and describe in detail all evidence supporting Your Third affirmative
> Defense for "First Sale Doctrine" in the Answer to Nike's First Amended
> Complaint, including but not limited to evidence that the Nike goods stored in
> Your Vault are genuine Nike goods that were sold by Nike in the first instance.

## RESPONSE NO. 15:

StockX incorporates its Objections to Definitions and Instructions as if fully stated

herein. StockX further objects to Interrogatory No. 15 on the grounds that interrogatories

seeking "all evidence" a party may wish to offer concerning a given issue at trial are considered

improperly overbroad and unduly burdensome in this District. StockX further objects to

Interrogatory No. 15 on the grounds that it is overbroad and unduly burdensome in that it

requests StockX review and "describe in detail" documents which speak for themselves, and which Plaintiff is equally capable of reviewing and understanding. StockX further objects to Interrogatory No. 15 on the grounds that it is a premature contention interrogatory that is improperly served prior to the close of fact discovery, pursuant to Local Rule 33.3(c) and related case law. Subject to, and without waiving, the foregoing objections, StockX will provide its response to this interrogatory, if any is required, at the close of fact discovery, pursuant to Local Rule 33.3(c).

## FIRST SUPPLEMENTAL RESPONSE NO. 15:

Subject to, and without waiving the previously stated objections, which are incorporated by reference, StockX responds as follows:

StockX's use of Nike's trademarks in connection with its Vault NFTs is protected by the first sale doctrine. StockX is a secondary marketplace. All Nike Products sold via StockX Vault NFTs were first sold by Nike to third parties, and were lawfully purchased by and owned by StockX from third parties before they were again lawfully resold by StockX to third parties. Each Vault NFT is tied to a physical product in StockX's Vault that has been verified through StockX's proprietary verification process.

As StockX informed its consumers, the Vault NFT itself has no intrinsic value separate and apart from the associated physical good for which the Vault NFT serves as a claim ticket. The digital token cannot be separated from, or traded separately from, the associated physical good, and cannot be traded or used outside of StockX's marketplace. Accordingly, the only asset of value that customers purchased were physical shoes. Nike has no legal right to restrict StockX's advertisement or sale of shoes that StockX bought and planned to and did re-sell,

particularly where, as here, the images and text describing the product being re-sold were created by StockX.

The first sale doctrine also applies where a trademarked good becomes a constituent part of a new product sold under a distinct trademark.  Accordingly, and in the alternative, to the extent the Vault NFT were to be considered a new or different product, StockX's use of the Nike trademark in connection with the Vault NFTs would be protected.  StockX's use of Nike's trademarks as part of its Vault NFTs was at all times accurate and merely descriptive of the physical Nike product owned by the holder of a Vault NFT associated with that Nike product.

In addition to the above, facts supporting StockX's first sale doctrine defense may be ascertained from documents beginning with following Bates nos. STX0123069; STX0131615; STX0050501; STX0046354; STX0055701; STX0086730; STX0041801; NIKE0026302; NIKE0027537; NIKE0000130; NIKE0005630; NIKE0000035; NIKE0000878; NIKE0003341; NIKE0003342; NIKE0003207; NIKE0003197; NIKE0003243; NIKE0000952; and NIKE0000942.  Facts supporting these contentions may also be ascertained from: https://stockx.com/about/how-it-works/.  Facts supporting these contentions may also be ascertained from the deposition testimony of Mike Child, Brock Huber, Yasir Malik, and Shervin Moghaddam.

## INTERROGATORY NO. 16:

Identify and describe in detail all evidence supporting Your Seventh Affirmative Defense for "Estoppel" in the Answer to Nike's First Amended Complaint.

## RESPONSE NO. 16:

StockX incorporates its Objections to Definitions and Instructions as if fully stated herein.  StockX further objects to Interrogatory No. 16 on the grounds that interrogatories seeking "all evidence" a party may wish to offer concerning a given issue at trial are considered improperly overbroad and unduly burdensome in this District.  StockX further objects to Interrogatory No. 16 on the grounds that it is overbroad and unduly burdensome in that it requests StockX review and "describe in detail" documents which speak for themselves, and which Plaintiff is equally capable of reviewing and understanding. StockX further objects to Interrogatory No. 16 on the grounds that it is a premature contention interrogatory that is improperly served prior to the close of fact discovery, pursuant to Local Rule 33.3(c) and related case law.  Subject to, and without waiving, the foregoing objections, StockX will provide its response to this interrogatory, if any is required, at the close of fact discovery, pursuant to Local Rule 33.3(c).

**FIRST SUPPLEMENTAL RESPONSE NO. 16:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, StockX responds as follows:  Nike is barred from pursuing its counterfeiting and false advertising claims based on the equitable doctrine of estoppel.

## CONFIDENTIAL

Since at least 2019, Nike has been aware of StockX's authentication and verification practices, and it concealed its views of StockX's authentication and verification process(es), including associated advertising and public descriptions of that process, and misrepresented to StockX and third-parties, in sum and substance and with awareness of StockX's authentication and verification practices, that it viewed StockX as a "good actor" in connection with combatting

10

counterfeit goods, and that Nike and StockX were aligned in their efforts to ensure customers receive authentic products.

Prior to filing this lawsuit, Nike has collaborated with StockX on authentication and verification efforts, sent representatives to tour two of StockX's authentication centers, and worked with StockX to combat counterfeiting. ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ thereby leading StockX to believe that Nike approved of and had no issue with StockX's authentication practices.  At no time did Nike express concerns regarding StockX's efforts to prevent counterfeiting while ████████████

████████████████████████████████████████████████████

████████████████████████ StockX continued to use and improve upon its authentication and verification process based on the explicit and implied assurances provided by Nike that Nike

approved of StockX's practices; StockX has invested millions of dollars and expanded into new geographic regions subsequent to its work with Nike.

Further, prior to this lawsuit, StockX had worked with Nike to quickly remediate issues as to allegedly counterfeit goods users attempted to sell through the StockX platform. Additionally, Nike praised StockX as a "good actor" in connection with efforts to remove a counterfeit listing, described StockX and Nike Brand Protection as "aligned on ensuring [] consumers only receive authentic product," and sought StockX's assistance in identifying counterfeit sellers. Nike intended or expected StockX to rely upon these misrepresentations. StockX has detrimentally relied on Nike's praise and approval of StockX's authentication and anti-counterfeiting efforts, including in connection with its decision to purchase, verify and sell Vault NFTs associated with Nike Products and to advertise itself as a marketplace that can authenticate or verify Nike products, without prior complaint from Nike.

In addition to the above, facts supporting StockX's estoppel defense may be ascertained from documents beginning with following Bates nos. NIKE0039759; STX0773086; NIKE0030430; STX0773022; NIKE0029089; NIKE0030428; STX0773047; NIKE0035751; NIKE0035903; NIKE0037191; NIKE0037917; NIKE0038174; NIKE0038184; NIKE0037157; NIKE0038001; NIKE0036138; NIKE0036142; STX0752605; STX0773984; STX0023851; STX0190157; STX0069511; STX0069507; and STX0190131. Facts supporting these contentions may also be ascertained from the deposition testimony of Barbara Delli Carpini, Brock Huber, Joe Pallett, and Heather Paulson.

**INTERROGATORY NO. 17:**

Identify and describe in detail all evidence supporting Your Eighth Affirmative Defense for "Acquiescence" in the Answer to Nike's First Amended Complaint.

**RESPONSE NO. 17:**

StockX incorporates its Objections to Definitions and Instructions as if fully stated herein. StockX further objects to Interrogatory No. 17 on the grounds that interrogatories seeking "all evidence" a party may wish to offer concerning a given issue at trial are considered improperly overbroad and unduly burdensome in this District. StockX further objects to Interrogatory No. 17 on the grounds that it is overbroad and unduly burdensome in that it requests StockX review and "describe in detail" documents which speak for themselves, and which Plaintiff is equally capable of reviewing and understanding. StockX further objects to Interrogatory No. 17 on the grounds that it is a premature contention interrogatory that is improperly served prior to the close of fact discovery, pursuant to Local Rule 33.3(c) and related case law. Subject to, and without waiving, the foregoing objections, StockX will provide its response to this interrogatory, if any is required, at the close of fact discovery, pursuant to Local Rule 33.3(c).

**FIRST SUPPLEMENTAL RESPONSE NO. 17:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, StockX responds as follows:

**CONFIDENTIAL**

Nike is barred from pursuing its counterfeiting and false advertising claims based on the equitable doctrine of acquiescence. Since at least 2019, Nike has been aware of StockX's

13

authentication and verification practices, and it concealed its views of StockX's authentication

process and apparently misrepresented to StockX and third-parties that it viewed StockX as a

"good actor" in connection with combatting counterfeit goods and that Nike and StockX were

aligned in their efforts to ensure customers receive authentic products.

 Nike has collaborated with StockX on authentication efforts, has sent representatives to

two of StockX's authentication centers, and has worked with StockX in the past to combat

counterfeiting.  Prior to this lawsuit, Nike praised StockX as a "good actor" in connection with

efforts to remove a counterfeit listing, described StockX and Nike Brand Protection as "aligned

on ensuring [] consumers only receive authentic product," and sought StockX's assistance in

identifying counterfeit sellers.  Nike's perceived support of StockX's business, including its

authentication and anti-counterfeit efforts, and related delay in asserting any counterfeiting or

false advertising claims, has caused StockX undue prejudice.

 In addition to the above, facts supporting StockX's acquiescence defense may be

ascertained from documents beginning with following Bates nos. NIKE0039759; STX0773086;

NIKE0030430; STX0773022; STX0773047; NIKE0035751; NIKE0035903; NIKE0037191;

NIKE0037917; NIKE0029089; NIKE0030428; NIKE0038174; NIKE0038184; NIKE0037157;

NIKE0038001; NIKE0036138; NIKE0036142; STX0752605; STX0773984; STX0023851;

STX0190157; STX0069511; STX0069507; and STX0190131.  Facts supporting these

contentions may also be ascertained from the deposition testimony of Heather Paulson.

**INTERROGATORY NO. 18:**

 Describe in detail each and every step of StockX's proprietary, multi-step
 authentication process to ensure that the products offered for sale are what they

14

claim to be, and are not counterfeit, defective, or used," as alleged in Paragraph 11 of the Answer to Nike's First Amended Complaint.

**RESPONSE NO. 18:**

StockX incorporates its Objections to Definitions and Instructions as if fully stated herein.  StockX further objects to Interrogatory No. 18 on the grounds that it is overbroad and unduly burdensome, and seeks information irrelevant to any party's claims or defenses, to the extent it seeks information about StockX's authentication process for products other than the Nike products at issue in this litigation.  StockX further objects to Interrogatory No. 18 on the grounds that it is overly broad and unduly burdensome in that it requests StockX describe "each and every step" of its authentication process, when that information may be derived or ascertained from documents produced in this action and the burden of deriving or ascertaining the answer is substantially the same for Plaintiff as for StockX.  StockX further objects to Interrogatory No. 18 on the grounds that the information sought therein may be more practically obtained through deposition testimony than via interrogatory, pursuant to Local Civil Rule 33.3(b)(1).

Subject to and without waiving the foregoing Objections, pursuant to FRCP 33(d), StockX responds that information sufficient to respond to Interrogatory No. 18 can be found at the documents produced beginning with the following bates nos.: STX0069525, STX0058596, STX0023851, STX0069511, STX0190116, STX0190121, STX0190131, STX0190137, STX0190143, STX0190157, STX0190164, STX0190179, STX0190184, STX0190187, STX0190195, STX0190202, STX0190210, STX0190217, STX0190224, STX0190231, STX0190260, STX0190271, STX0190284, STX0190295, STX0190301, STX0190310,

STX0190333, STX0190339, STX0190344, STX0190353, STX0190359, STX0190366,

STX0190374, STX0190382, STX0190387, STX0190398, STX0190437, STX0190442,

STX0190461, STX0190474, STX0190481. STX0190498, STX0190505, STX0190515,

STX0190524, STX0190536, STX0190545, STX0190551, STX0190558, STX0190571.

STX0190633, STX0190659, STX0190672, STX0190682.  StockX reserves its right to

supplement its response to Interrogatory No. 18 based on further discovery in this Action.

**FIRST SUPPLEMENTAL RESPONSE NO. 18:**

Subject to, and without waiving the previously stated objections, which are incorporated

by reference, StockX responds as follows:

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**

Every product that has been sold via StockX's platform has gone through StockX's

proprietary verification process.  The verification process reflects StockX's own standards for

what it considers to be a product that can be transacted on the StockX platform: the product

purchased by the buyer, without any basis for StockX to believe the shoe is worn, defective, or

not genuine.

██████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

**END OF HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY DESIGNATION**

Further, pursuant to FRCP 33(d), StockX responds that information sufficient to respond to Interrogatory No. 18 can be found at the documents produced beginning with the following Bates nos.: STX0069525, STX0058596, STX0023851, STX0069511, STX0190116, STX0190121, STX0190131, STX0190137, STX0190143, STX0190157, STX0190164, STX0190179, STX0190184, STX0190187, STX0190195, STX0190202, STX0190210, STX0190217, STX0190224, STX0190231, STX0190260, STX0190271, STX0190284, STX0190295, STX0190301, STX0190310, STX0190333, STX0190339, STX0190344, STX0190353, STX0190359, STX0190366, STX0190374, STX0190382, STX0190387, STX0190398, STX0190437, STX0190442, STX0190461, STX0190474, STX0190481. STX0190498, STX0190505, STX0190515, STX0190524, STX0190536, STX0190545, STX0190551, STX0190558, STX0190571. STX0190633, STX0190659, STX0190672,

STX0190682,  STX0752605, STX0773100, STX0773101, STX0773102, STX0773103,

STX0773113, STX0773118, STX0773129, STX0773164, STX0773165, STX0773168,

STX0773169, STX0773170, STX0773171, STX0773172, STX0773834, STX0773971,

STX0773972, STX0773984, STX0774010, STX0774011, STX0774012, STX0774014,

STX0774015, STX0774017, STX0774018, STX0774233, STX0774234, STX0774236, and

STX0774237.

## INTERROGATORY NO. 19:

> Identify all evidence that substantiates each of the following Advertising Claims:
> (1) "Guaranteed Authenticity. Every item. Every time. Shop on StockX with
> complete confidence knowing every purchase is 100% Verified Authentic;" (2)
> "StockX has a 99.96% authentication accuracy rate;" (3) "A final check in our
> authentication practice, our QA experts ensure nothing slips through the cracks;"
> and (4) "Always Authentic, Never Fake."

## RESPONSE NO. 19:

StockX incorporates its Objections to Definitions and Instructions as if fully stated

herein.  StockX further objects to Interrogatory No. 19 on the grounds that it is a premature

contention interrogatory that is improperly served prior to the close of fact discovery pursuant to

Local Rule 33.3(c) and related case law.  StockX further objects to Interrogatory No. 19 on the

grounds that interrogatories seeking "all evidence" a party may wish to offer concerning a given

issue at trial are considered improperly overbroad and unduly burdensome in this District.

StockX further objects to Interrogatory No. 19 on the ground that it is a compound interrogatory

containing four discrete subparts (asking StockX to identify all evidence that substantiates each

of four discrete and individually numbered advertising claims), each of which count against

Plaintiff's allotment of interrogatories pursuant to FRCP 33.  StockX further objects to

Interrogatory No. 19 on the grounds that its four discrete subparts constitute the 25th through 28th interrogatories served on StockX in this litigation, in violation of FRCP 33(a)(1), which states that "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  Pursuant to the foregoing objections, StockX declines to respond to subparts (2)–(4) of this interrogatory because they exceed the number permitted to Nike under applicable law.  As to subpart (1), subject to, and without waiving, the foregoing objections, StockX will provide its response to this interrogatory, if any is required, at the close of fact discovery, pursuant to Local Rule 33.3(c).

**FIRST SUPPLEMENTAL RESPONSE NO. 19:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, StockX responds as follows:

With regard to the advertising claim "Guaranteed Authenticity.  Every item.  Every time.  Shop on StockX with complete confidence knowing every purchase is 100% Verified Authentic," this advertising claim is substantiated because all of the products a customer purchases on StockX goes through StockX's rigorous authentication and verification process and, if there is a mistake made by StockX in that process, StockX will remedy that mistake by either providing an equivalent product or issuing full refund.  In addition to the above, facts substantiating this claim may be ascertained from documents beginning with following Bates no. NIKE0000281; STX0774239; NIKE0001145; and NIKE0064418  and from the deposition testimony of Jacob Fenton and Brock Huber.

With regard to the advertising claim "StockX has a 99.96% authentication accuracy rate," the statistic for this claim is calculated based on Customer Service data and statistics regarding

19

customer returns of products which, upon a second review, were determined not to pass StockX's verification process.  On average and over time, such accepted returns represented 0.04% of completed transactions.  In addition to the above, facts substantiating this statement may be ascertained from documents beginning with following Bates nos.  NIKE0038955; NIKE0006776; and STX0018010 and from the deposition testimony of Jacob Fenton and Brock Huber.

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**

**END OF HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY DESIGNATION**

In addition to the above, facts substantiating this statement may be ascertained from documents beginning with following Bates nos. NIKE0000281; STX0232285; STX0752605; STX0774265; STX0191602 and from the deposition testimony of Jacob Fenton, Brock Huber, and John Lopez.

With respect to the advertising claim "Always Authentic, Never Fake," this advertising claim means that all products a buyer purchases on StockX go through StockX's rigorous authentication and verification process and, in the event that there is a mistake and the buyer does not receive the product they expected, StockX will remedy that mistake by accepting a return of the product and issuing a full refund, including but not limited to if the product in question does not meet StockX's standards for authenticity. Accordingly, StockX guarantees to buyers on its platform that they will always receive a product StockX believes to be the authentic product the buyer intended to purchase. In addition to the above, facts substantiating this statement may be ascertained from documents beginning with following Bates nos. NIKE0039854; STX0774239; NIKE0001145; and NIKE0064418.

**INTERROGATORY NO. 20:**

State the date, by at least month and year, that You first used each Advertising Claim in connection with the sale of goods on the StockX platform and, where relevant, state the date when You ceased using each Advertising Claim.

**RESPONSE NO. 20:**

StockX incorporates its Objections to Definitions and Instructions as if fully stated herein. StockX further objects to Interrogatory No. 20 as vague and ambiguous insofar as it does not define with particularity "each Advertising Claim." StockX will accordingly interpret "each Advertising Claim" in Interrogatory No. 20 to incorporate the four specific Advertising Claims identified in Interrogatory No. 19. StockX further objects to Interrogatory No. 20 on the ground that it is a compound interrogatory containing eight discrete subparts – requiring StockX to identify *first*, the date it began using each of four discrete and individually numbered Advertising Claims and *second*, the date it ceased using each of those same four discrete and individually numbered Advertising Claims – each of which count against Plaintiff's allotment of interrogatories pursuant to FRCP 33. StockX further objects to Interrogatory No. 20 on the grounds that its eight discrete subparts constitute the 29th through 36th interrogatories served on StockX in this litigation, in violation of FRCP 33(a)(1), which states that "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Pursuant to the foregoing objections, StockX declines to respond to this interrogatory because it exceeds the number permitted to Nike under applicable law.

**FIRST SUPPLEMENTAL RESPONSE NO. 20:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, StockX responds as follows:

1. "100% Verified Authentic"

    a. First Used: Since at least 2018

    b. Last Used: August 2022

2. "Verified Authentic"

    a. First Used: Since StockX's inception

    b. Last Used: Approximately September 2022

3. "Every item sold goes through our proprietary multi-step verification process with our team of expert authenticators"

    a. First Used: February 2021

    b. Last Used: Still in use.

4. StockX's authentication process uses "100+ data points"

    a. First Used: February 2021

    b. Last Used: Approximately September 2022

5. StockX "authenticators are better equipped than anyone to ensure a product's authenticity"

    a. First Used: February 2021

    b. Last Used: Approximately August 2022

6. StockX's "multi-step verification process"

    a. First Used: February 2021

    b. Last Used: Still in use.

7. StockX's "proprietary" authentication process

    a. First Used: February 2021

    b. Last Used: Still in use.

8. "Guaranteed Authenticity" as related to products sold on the StockX platform

    a. First Used: Approximately late 2020 through early 2021

    b. Last Used: Approximately August 2022

9. StockX's authentication process uses "Advanced Technology"

   a. First Used:  February 2021

   b. Last Used:  Still in use.

10. StockX's authentication process uses "Quality Assurance"

   a. First Used:  February 2021

   b. Last Used:  Still in use.

11. "StockX has a 99.96% authentication accuracy rate."

   a. First Used:  June 2022

   b. Last Used:  Approximately August 2022

12. "Always Authentic, Never Fake"

   a. First Used:  July 2, 2018

   b. Last Used: By August 30, 2022 at the latest

13. "Guaranteed Authenticity. Every item. Every time. Shop on StockX with complete
    confidence knowing every purchase is 100% Verified Authentic."

   a. First Used:  February 2021

   b. Last Used:  August 2022

14. "A final check in our authentication practice, our QA experts ensure nothing slips
    through the cracks."

   a. First Used:  February 2021

   b. Last Used:  Approximately August or September 2022

15. "We Authenticate Every Item. Every Time."

   a. First Used:  July 2022

   b. Last Used: September 2022

16. "Shop on StockX with complete confidence knowing every purchase is Verified Authentic."

    a.  First Used:  February 2021

    b.  Last Used:  Approximately September 2022

## INTERROGATORY NO. 21:

State, on an annual basis for the years 2020 through 2022 (and any additional calendar years during which this Action is pending): (1) the number of goods that You authenticated, sold to consumers, and subsequently determined to be counterfeit; and (2) of the goods identified in response to (1), the number of "Nike" or "Jordan" branded goods.

## RESPONSE NO. 21:

StockX incorporates its Objections to Definitions and Instructions as if fully stated herein.  StockX further objects to Interrogatory No. 21 on the grounds that it is vague and ambiguous for failing to define what constitutes "Nike" or "Jordan" branded goods.  StockX further objects to Interrogatory No. 21 on the ground that it is a compound interrogatory containing two discrete and individually numbered subparts (*first*, the number of goods sold to consumers in each of 2020, 2021 and 2022 that it confirmed were counterfeit; and *second*, the number of Nike or Jordan branded goods in each such year), each of which count against Plaintiff's allotment of interrogatories pursuant to FRCP 33.  StockX further objects to Interrogatory No. 21 on the grounds that its two discrete subparts constitute the 37th and 38th interrogatories served on StockX in this litigation, in violation of FRCP 33(a)(1), which states that "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  Pursuant to the foregoing

objections, StockX declines to respond to this interrogatory because it exceeds the number

permitted to Nike under applicable law.

**FIRST SUPPLEMENTAL RESPONSE NO. 21:**

Subject to, and without waiving the previously stated objections, which are incorporated

by reference, StockX responds as follows: pursuant to FRCP 33(d), StockX responds that

information sufficient to respond to Interrogatory No. 21 can be found in the document produced

at Bates no. STX0774284.

**INTERROGATORY NO. 22:**

Describe in detail each and every step of the authentication process that You
undertook to make the subsequent determination that a good that You previously
authenticated and sold to a consumer was counterfeit (as contemplated by
Interrogatory No. 21) and describe how the subsequent authentication process
differed from the original authentication process for these goods.

**RESPONSE NO. 22:**

StockX incorporates its Objections to Definitions and Instructions as if fully stated

herein. StockX further objects to Interrogatory No. 22 on the ground that it is a compound

interrogatory containing two discrete subparts – *first*, a description of "each and every step of the

authentication process that You undertook to make the subsequent determination that a good that

You previously authenticated and sold to a consumer was counterfeit" and *second*, a description

of "how the subsequent authentication process differed from the original authentication process

for these goods" – each of which count against Plaintiff's allotment of interrogatories pursuant to

FRCP 33. StockX further objects to Interrogatory No. 22 on the grounds that its two discrete

subparts constitute the 39th and 40th interrogatories served on StockX in this litigation, in

violation of FRCP 33(a)(1), which states that "unless otherwise stipulated or ordered by the

court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  Pursuant to the foregoing objections, StockX declines to respond to this interrogatory because it exceeds the number permitted to Nike under applicable law.

**FIRST SUPPLEMENTAL RESPONSE NO. 22:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, StockX responds as follows:

**HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY**

██████████████████████████████████████████

████████████████████████████

**END OF HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY DESGINATION**

        In addition to the above, facts supporting these contentions may be ascertained from

documents beginning with following Bates nos. STX0774265; and STX0752605 and from the

deposition testimony of John Lopez.  Further facts regarding the matters addressed in this

Interrogatory can also be ascertained in StockX's response to Interrogatory 18.

Dated: March 21, 2023
        New York, New York

                                DEBEVOISE & PLIMPTON LLP

                                By: */s/   Megan K. Bannigan*
                                Megan K. Bannigan (mkbannigan@debevoise.com)
                                David H. Bernstein (dhbernstein@debevoise.com)
                                Jyotin Hamid (jhamid@debevoise.com)
                                Christopher S. Ford (csford@debevoise.com)
                                Justin Ferrone (jcferrone@debevoise.com)
                                Kathryn C. Saba (ksaba@debevoise.com)
                                66 Hudson Boulevard
                                New York, New York 10001
                                (212) 909-6000

                                KILPATRICK TOWNSEND & STOCKTON LLP
                                Rob Potter (RPotter@kilpatricktownsend.com)
                                Briggs Wright (briggs.wright@kilpatricktownsend.com)
                                1114 Avenue of the Americas
                                New York, New York 10036
                                (212) 775-8733

                                MORGANROTH & MORGANROTH PLLC
                                Jeffrey B. Morganroth
                                (Jmorganroth@morganrothlaw.com)
                                167 East 61st Street, #23ª

28

New York, New York 10065
(248) 864-4000

*Attorneys for StockX LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIKE INC., | |
|            Plaintiff, | No. 1:22-cv-00983-VEC |
|    v. | |
| STOCKX LLC, | |
|            Defendant. | |

## DECLARATION OF SHERVIN MOGHADDAM

I, Shervin Moghaddam, hereby declare as follows:

1.      I am the Vice President, Trading for StockX LLC ("StockX").

2.      I have read the answers provided in response to Interrogatory numbers 14 and 15 in Defendant's Supplemental Objections and Responses to Plaintiff's Third Set of Interrogatories, and of my own knowledge and knowledge obtained through reasonable inquiry, confirm the facts within StockX's knowledge set forth therein to be true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3/21/2023

Shervin Moghaddam
Vice President, Trading
StockX LLC

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

NIKE INC.,

            Plaintiff,

    v.

STOCKX LLC,

            Defendant.

No. 1:22-cv-00983-VEC

## DECLARATION OF BROCK HUBER

I, Brock Huber, hereby declare as follows:

1.      I am the Head of Corporate Development and Strategy for StockX LLC ("StockX").

2.      I have read the answers (excluding any highly confidential information designated by Nike) provided in response to Interrogatory numbers 16, 17, 18, 21, and 22 in Defendant's Supplemental Objections and Responses to Plaintiff's Third Set of Interrogatories, and of my own knowledge and knowledge obtained through reasonable inquiry, confirm the facts within StockX's knowledge set forth therein to be true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 3/20/2023

Brock Huber
Head of Corporate Development and Strategy
StockX LLC

1008903410v1

DocuSign Envelope ID: 28D2574F-BB45-434E-86EE-EE2A1A8B3132

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIKE INC.,                          Plaintiff,<br><br>      v.<br>STOCKX LLC,<br><br>                                    Defendant. | No. 1:22-cv-00983-VEC |

**DECLARATION OF JACOB FENTON**

I, Jacob Fenton, hereby declare as follows:

1.      I am the Vice President of Customer Experience and Insights for StockX LLC ("StockX").

2.      I have read the answers provided in response to Interrogatory numbers 19 and 20 in Defendant's Supplemental Objections and Responses to Plaintiff's Third Set of Interrogatories, and of my own knowledge and knowledge obtained through reasonable inquiry, confirm the facts within StockX's knowledge set forth therein to be true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: __3/20/2023__

DocuSigned by:

*Jacob Fenton*

7261393565BC416...

Jacob Fenton
Vice President of Customer Experience and Insights
StockX LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2023 a true and correct copy of StockX's First Supplemental Responses and Objections to Nike's Third Set of Interrogatories was served on all counsel of record for Plaintiff Nike, Inc. via email, as agreed to by the parties as the preferred method of service:

tamar.duvdevani@us.dlapiper.com
andrew.peck@us.dlapiper.com
marc.miller@us.dlapiper.com
jared.greenfield@us.dlapiper.com
michael.fluhr@us.dlapiper.com
Melissa.Reinckens@dlapiper.com
jane.wise@us.dlapiper.com

BY: /s/ *Justin C. Ferrone*
Justin C. Ferrone

30