# Exhibit 90

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> v. <br><br> STOCKX LLC, <br><br> Defendant. | Civil Action No.: 22-CV-983 (VEC) |

**PLAINTIFF NIKE INC.'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT STOCKX LLC'S FOURTH SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Nike, Inc. ("Nike") sets forth its objections and responses (the "Responses") to Defendant StockX LLC ("StockX") Fourth Set of Interrogatories (the "Interrogatories") as follows:

**PRELIMINARY STATEMENT**

These Responses represent Nike's good faith and reasonable effort to respond to the Interrogatories based on information and documents available at this time. Nike's investigation of this matter is ongoing, and Nike reserves the right to amend, supplement, correct, or clarify the Responses in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

**OBJECTIONS TO CERTAIN DEFINITIONS AND INSTRUCTIONS**

1. Nike objects to StockX's Definition No. 12 defining the term "Third-Party Websites" to mean "any other website, online marketplace or online platform where Nike goods are bought, sold or traded." Nike objects to this Definition on the grounds that this defined term is not used in any of the Requests. As such, Nike will treat this defined term as a nullity and will reserve its rights to object to Definition No. 12 if StockX uses this defined term in a future Request.

2.       Nike objects to StockX's Definition No. 13 defining the term "Vault NFTs" to mean "non-fungible tokens tied to physical products and held in StockX's temperature-controlled, high-security vault and referenced in the Complaint." Nike objects to this Definition on the grounds that this defined term is not used in any of the Requests. As such, Nike will treat this defined term as a nullity and will reserve its rights to object to Definition No. 12 if StockX uses this defined term in a future Request.

3.       Nike objects to StockX's Definition No. 14 defining the term "Digital Sneakers" to mean "to mean "virtual sneakers, whether or not tied to a non-fungible token." Nike objects to this Definition on the basis that "virtual sneakers" that are "not tied to a non-fungible token" is overly broad and unduly burdensome, designed to seek information that is not relevant to any claims or defenses, and thus not proportionate to the needs of this case. Specifically, Nike's First, Second, Third, and Fourth Causes of Action concern StockX's unauthorized use of Nike's asserted trademarks in connection with StockX's Vault NFTs. While Nike has used its asserted trademarks in connection with virtual goods, including digital shoes, the information sought by these Requests concerning "Digital Sneakers" is not relevant to any claims or defenses at issue in this Action. The definition of "Digital Sneakers" is therefore overbroad because it includes digital or virtual sneakers that are *not* tied to a non-fungible token. Accordingly, in responding to these Requests, Nike will interpret this term to mean virtual sneakers that are tied to a non-fungible token, i.e., "Digital Sneaker NFTs."

4.       Nike objects to StockX's Instruction No. 12 to the extent that it seeks to impose a burden in excess of what is required under Rule 26(b)(5) of the Federal Rules of Civil Procedure. Any privilege log produced by Nike in this Action will comply with the Federal Rules of Civil

Procedure and the terms of a stipulated ESI protocol, which was entered in this Action on June 29, 2022 (Dkt. 47).

5. Nike further objects to Instruction No. 12 to the extent it seeks to require Nike to identify or log privileged materials being withheld that were created after the commencement of this Action on February 3, 2022. Nike will only identify or log privileged materials being withheld that were created before February 3, 2022.

6. To the extent that any Interrogatories seek the disclosure of confidential, proprietary, trade secret, and/or competitively sensitive information, documents, ESI, or other materials, Nike will provide such non-privileged materials in accordance with the Stipulated Protective Order entered by the Court in this action on July 14, 2022. (Dkt. No. 52).

**OBJECTIONS AND RESPONSES TO THE INTERROGATORIES**

**INTERROGATORY NO. 23:**

Identify each and every Alleged Counterfeit by its StockX order number and purchaser, that forms the basis for Nike's Sixth Cause of Action in the First Amended Complaint (ECF No. 39).

**INTERROGATORY RESPONSE NO. 23:**

Nike objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Interrogatory. Subject to the foregoing, and in accordance with Federal Rule of Civil Procedure 33(d), Plaintiff refers to the following documents: NIKE0039436, NIKE0029087, NIKE0025902, NIKE0025909, NIKE0040552, and NIKE0027689. The orders detailed in NIKE0025902, NIKE0025909, NIKE0040552, and NIKE0027689 were purchased by third-party investigators acting at the direction of Nike.

**Supplemental Response:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, Nike responds as follows: In accordance with Federal Rule of Civil Procedure 33(d), Plaintiff refers to the following documents detailing purchase details, to the extent known, for additional counterfeit pairs identified by Nike during discovery: NIKE0039637, NIKE0039613, NIKE0039724, NIKE0039715, NIKE0039641, NIKE0039693, NIKE0039565, NIKE0039588, NIKE0039664, NIKE0039697, NIKE0039556, NIKE0039620, NIKE0039597, NIKE0039671, NIKE0039750, NIKE0039661, NIKE0039667, NIKE0039615, NIKE0039719, NIKE0039737, NIKE0039743, NIKE0039752, NIKE0039678, NIKE0039577, NIKE0039746, NIKE0039612, NIKE0039740, NIKE0039728, NIKE0039554, NIKE0039607, NIKE0039513, NIKE0039469, NIKE0039437, NIKE0039461, NIKE0039496, NIKE0039457, NIKE0039530, NIKE0039192, NIKE0039282, NIKE0039226, NIKE0039312, NIKE0039390, NIKE0039313, NIKE0039332, NIKE0039148, NIKE0039129, NIKE0039382, NIKE0039141, NIKE0039127, NIKE0039217, NIKE0039236, NIKE0039195, NIKE0039365, NIKE0039291, NIKE0039340, NIKE0039122, NIKE0039201, NIKE0039240, NIKE0039314, NIKE0039248, NIKE0039319, NIKE0039356, NIKE0039252, NIKE0039253, NIKE0039413, NIKE0039268, NIKE0039297, NIKE0039302, NIKE0039174, NIKE0039422, NIKE0039288, NIKE0039288, NIKE0039389, NIKE0039179.

**INTERROGATORY NO. 24:**

Describe in detail why Nike believes StockX's uses of the Asserted Marks are dilutive, including a description of the products for which Nike claims the Asserted Marks are famous or well-known.

**INTERROGATORY RESPONSE NO. 24:**

Nike objects to this Interrogatory as unduly burdensome because it requests that Nike "[d]escribe in detail" the basis for Nike's dilution claim. Nike will respond with its contentions underlying its dilution claims, consistent with this district's LR 33.3(c), but it is not required to provide an exhaustive list of facts supporting those contentions. Nike further objects on the basis that this Request is vague as to the relevant timeframe and that it is unduly burdensome because it is not time limited. Nike objects to this Interrogatory on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney-work product doctrine, and/or other applicable privilege(s) or immunity. On the basis of this objection, Nike will withhold privileged information that may be responsive to this Interrogatory. Nike further objects to this Interrogatory on the basis that it is a premature contention interrogatory that need not be responded to prior to the close of fact discovery, pursuant to Local Rule 33.3(c) and applicable case law. Subject to the foregoing objections, Nike will provide its response to this interrogatory, if any is required, at the close of fact discovery pursuant to Local Rule 33.3(c).

**Supplemental Response:**

Subject to, and without waiving the previously stated objections, which are incorporated by reference, Nike responds as follows: Nike owns at least the following "famous" trademarks: the NIKE word mark, the Swoosh design Mark, and the NIKE & Swoosh design mark (together, "Nike's Famous Marks"). Given Nike's longstanding and extensive use of these marks in connection with a variety of goods and services, Nike's Famous Marks are registered in a variety of classes on the Principal Register of the United States Patent and Trademark Office. For example, Nike owns following trademark registrations for Nike's Famous Marks:

| Reg. No. | Title | Trademark Design | Reg. Date | Classes |
|---|---|---|---|---|
| 978,952 | NIKE | NIKE (word mark) | 2/19/1974 | 25- Clothing, footwear, headgear |
| 1,214,930 | NIKE | NIKE (word mark) | 11/2/1982 | 25- Footwear |
| 1,243,248 | NIKE | NIKE (word mark) | 6/21/1983 | 42- Retail footwear and apparel services |
| 6,124,779 | NIKE | NIKE (word mark) | 8/11/2020 | 35- Retail store services and on-line retail store services |
| 1,238,853 | NIKE & Swoosh Design |  | 5/17/1983 | 42- Retail footwear and apparel services |
| 1,325,938 | NIKE & Swoosh Design |  | 3/19/1985 | 25- Footwear |
| 977,190 | Swoosh Design |  | 1/22/1974 | 25- Footwear |
| 1,264,529 | Swoosh Design |  | 1/17/1984 | 42- Retail footwear and apparel services |
| 1,323,343 | Swoosh Design |  | 3/5/1985 | 25- Footwear |
| 5,794,674 | Swoosh Design |  | 7/2/2019 | 35- Retail store services and on-line retail store services |

Pursuant to 15 U.S.C. § 1065, the registrations of Nike's Famous Marks have been declared incontestable: Reg. No. 978,952 (NIKE word mark); Reg. No. 1,214,930 (NIKE word mark); Reg. No. 1,243,248 (NIKE word mark); Reg. No. 977,190 (Swoosh Design mark); Reg. No. 1,264,529

(Swoosh Design mark); Reg. No. 1,323,343 (Swoosh Design mark); Reg. No. 1,238,853 (Swoosh Design mark); and Reg. No. 1,325,938 (Swoosh Design mark).

As a result of continuous and decades-long promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights, built substantial goodwill in Nike's Famous Marks, and has never abandoned that goodwill. As a result, Nike's Famous Marks have become distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). StockX's unauthorized use of Nike's famous trademarks as signifiers of source for its Vault NFT products dilutes Nike's trademarks both by blurring and by tarnishment.

The fame of Nike's Famous Marks is evidenced by the following: (1) several of the registrations of Nike's Famous Marks have been declared incontestable; (2) Nike's Famous Marks have been used by Nike for decades in connection with the goods and services identified in the aforementioned incontestable federal registrations; (3) Nike has earned substantial revenues from the sales of products bearing Nike's Famous Marks for decades, for example Nike earned over $42.2 billion in revenues for the sales of Nike products in the fiscal year 2021 (*see* NIKE006913); and (5) Nike's Famous Marks and Nike products bearing these marks, including footwear, have been advertised and/or featured in myriad prominent publications for decades with wide distribution throughout the United States. Nike has produced documents to StockX supporting these facts and Nike's witnesses have testified in support of these facts. StockX's own witness and its website recognize the fame of Nike's Famous Marks. *See e.g.,* NIKE0000087; NIKE0000054; NIKE0000142; NIKE0000321; NIKE0000379; *see also* Depo. Tr. of Shervin Moghaddam (Dec. 6, 2022).

Further, federal courts have previously found Nike's Famous Marks to be "famous," under 15 U.S.C. § 1125(c). *See e.g., Legends Are Forever, Inc. v. Nike, Inc.,* 58 F. Supp. 3d 197, 203

(N.D.N.Y. 2014); *Nike, Inc. v. Nikepal Int'l, Inc.*, 2007 WL 2782030, at *5–6 (E.D. Cal. Sept. 18, 2007); *Nike, Inc. v. Top Brand Co.*, 2005 WL 1654859, at *9 (S.D.N.Y. July 13, 2005); *Nike, Inc. v. Variety Wholesalers, Inc.*, 274 F.Supp.2d 1352, 1372 (S.D. Ga. 2003).

StockX's unauthorized use of Nike's Famous Marks as source identifiers for its Vault NFT products began in January 2022 and continues to the present, long after Nike's Famous Marks achieved fame under 15 U.S.C. § 1125(c).

StockX's unauthorized use of Nike's Famous Marks as source identifiers for its Vault NFTs impairs and/or is likely to impair Nike's Famous Marks' distinctiveness, *i.e.,* dilution by blurring. The degree of similarity between the Famous Marks and StockX's Vault NFTs is complete identity, as StockX is using Nike's Famous Marks in connection with the marketing and sale of its Vault NFTs. Nike's Famous Marks are not descriptive trademarks but rather are inherently distinctive and several have achieved incontestable status. Nike's Famous Marks are exceedingly strong, conceptually and commercially. Nike's Famous Marks are household names that are widely recognized by the national consuming public as a designation of source for Nike's goods and services. Nike has exclusively used Nike's Famous Marks for decades and has vigorously enforced its rights in Nike's Famous Marks.

Moreover, StockX deliberately used Nike's Famous Marks to freeride off Nike's goodwill and try to capture a share of the then-piping-hot NFT market by selling digital collectibles, branded with Nike's Famous Marks, and bundled with additional StockX benefits and services. By using Nike's Famous Marks in connection with its Vault NFTs, StockX intended to, and did, create an association between the Vault NFTs and Nike's Famous Marks. Indeed, consumers connected Nike to StockX's Vault NFTs, even though Nike did not approve of or authorize StockX's Nike-branded Vault NFTs. *See e.g.*, NIKE0005775. With StockX's unauthorized Nike-branded Vault

NFTs on the market, and consumers associating those products with Nike, StockX's unauthorized use of Nike's Famous Marks thus makes it more difficult for consumers to recognize Nike's Famous Marks as unique identifiers of the source of authorized Nike goods and services in the market.

StockX's use of Nike's Famous Marks as source identifiers for its Vault NFTs also harms Nike's reputation through negative association with StockX's inferior, gimmicky, NFT product, *i.e.,* dilution by tarnishment. Nike's entry into the NFT marketplace has been done conscientiously and without haste, as Nike seeks to educate consumers and build a trusted community in this new market that has been rife with fraud and scams. StockX, on the other hand, rushed its Vault NFTs to market and its minimum viable product suffered from substantial technical and design flaws that are hallmarks of low quality products. *See e.g.,* STX0013876, STX0262114, STX0060381. StockX offered the Vault NFTs for sale under confusing and misleading terms and conditions. StockX promised consumers that owners of the Nike-branded Vault NFTs would receive benefits such as "exclusive access to StockX releases, promotions, events," yet StockX reneged on that promise shortly after this action was filed. StockX sold the Nike-branded Vault NFTs at grossly inflated prices that far exceeded the value of the corresponding physical Nike shoe that was supposedly stored in StockX's "Vault."

Indeed, the Vault NFTs' inflated prices and murky terms of purchase and ownership, led to public criticism of StockX and allegations that the Vault NFTs are a scam. StockX's prominent use of Nike's Famous Marks in connection with StockX's dubious Vault NFTs generated negative associations with Nike in a way that harms Nike's reputation and the immense goodwill that Nike has amassed in Nike's Famous Marks. *See generally* Depo Tr. of Melanie Harris (Jan. 19, 2023); Depo Tr. of Mike Child (Dec. 9, 2022). Consumers have even attributed StockX's unsavory

9

conduct to Nike, with one consumer expressing that the Vault NFTs are "just a stupid scam for Nike to make money." *See e.g.*, NIKE0005775. Exemplary documents evidencing rampant negative sentiment regarding StockX's launch of Vault NFTs include: NIKE0005596, NIKE0006124, NIKE0006015, NIKE0006090, NIKE0006108, NIKE0006162, NIKE0006164, NIKE0006118, NIKE0000028, NIKE0000080 and STX0012367.

While the above response sets forth the basis for Nike's dilution contentions, it is not an exhaustive list of facts supporting Nike's claim. Nike reserves the right to present additional evidence in support of its claims.

Date: March 21, 2023                    By: */s/ Tamar Y. Duvdevani*

**DLA PIPER LLP (US)**

Tamar Y. Duvdevani
Marc E. Miller
Andrew J. Peck
Jared Greenfield
1251 Avenue of The Americas, 27th Fl.
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

Michael Fluhr
555 Mission Street, Suite 2400
San Francisco, CA 94105
Telephone: (415) 836-2500
Facsimile: (415) 836-2501

Melissa Reinckens
401 B Street, Suite 1700
San Diego, CA 92101
melissa.reinckens@us.dlapiper.com

Jane W. Wise
500 Eighth Street, NW
Washington, D.C. 20004
Telephone: (202) 799-4149
Facsimile: (202) 863-7849

*Attorneys for Plaintiff Nike, Inc.*

## **VERIFICATION**

I have read Plaintiff Nike, Inc.'s ("Nike") Response to Defendant StockX LLC's Fourth Set of Interrogatories, Interrogatory No. 23 and certify under penalty of perjury that the factual representations in Nike's response is, subject to inadvertent and undiscovered errors, true and correct to the best of my knowledge based upon the information made available to me and/or derived from company personnel with knowledge of the requested areas.

Executed on: 3/2/23

Joe Pallett
Director, Brand Protection, Authentication, and Innovation
Nike, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 21, 2023 I served a copy of Nike, Inc.'s Supplemental Responses and Objections to StockX LLC's Fourth Set of Interrogatories on all counsel of record for Defendant StockX LLC via email:

Megan K. Bannigan - mkbannigan@debevoise.com
David H. Bernstein - dhbernstein@debevoise.com
Chris S. Ford - csford@debevoise.com
Jyotin Hamid - jhamid@debevoise.com
Justin Ferrone - jcferrone@debevoise.com
Kathryn C. Saba - ksaba@debevoise.com
David Mayberry - DMayberry@kilpatricktownsend.com
Rob Potter - RPotter@kilpatricktownsend.com
Jeffrey Morganroth - jmorganroth@morganrothlaw.com


                                    BY: */s/ Marc E. Miller*