# Exhibit 56

*Redacted Public Version*

```
                                                        Page 1

 1              UNITED STATES DISTRICT COURT

 2          FOR THE NORTHERN DISTRICT OF NEW YORK

 3                     ---oOo---

 4

 5   NIKE, INC.,                  )
                                  )
 6           Plaintiff,           )
                                  )
 7   vs.                          )   No. 1:22-cv-00983-VEC
                                  )
 8   STOCKX LLC,                  )
                                  )
 9           Defendant.           )
     _____)

10

11

12        H I G H L Y   C O N F I D E N T I A L

13            OUTSIDE ATTORNEYS' EYES ONLY

14         VIDEOTAPED DEPOSITION OF JOHN LOPEZ

15              SAN FRANCISCO, CALIFORNIA

16            THURSDAY, FEBRUARY 23, 2023

17

18

19

20

21   STENOGRAPHICALLY REPORTED BY:

22   ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~

23   CSR LICENSE NO. 9830

24   JOB NO. 5688745

25
```

Page 2

```
 1        UNITED STATES DISTRICT COURT
 2     FOR THE NORTHERN DISTRICT OF NEW YORK
 3            ---oOo---
 4
 5
   NIKE, INC.,          )
 6                      )
        Plaintiff,   )
 7                      )
   vs.                  ) No. 1:22-cv-00983-VEC
 8                      )
   STOCKX LLC,          )
 9                      )
        Defendant.   )
10 _____)
11
12
13
14     Videotaped Deposition of John Lopez, taken
15 on behalf of the Plaintiff, Pursuant to Notice, on
16 Thursday, February 23, 2023, beginning at
17 9:27 a.m., and ending at 6:55 p.m., before me,
18 ANDREA M. IGNACIO, CSR, RPR, CCRR, CRR, CLR ~
19 License No. 9830.
20
21
22
23
24
25
```

Page 3

```
 1 A P P E A R A N C E S:
 2
 3   FOR THE PLAINTIFF:
 4     DLA PIPER
 5     By:  MARC E. MILLER, Esq.
 6        GABRIELLE VELKES
 7     1251 Avenue of the Americas, 27th Floor
 8     New York, New York 10020
 9     212.335.4500
10     marc.miller@us.dlapiper.com
11
12   FOR THE DEFENDANTS:
13     By:  CHRISTOPHER S. FORD, Esq.
14        MAI-LEE PICARD, Esq.
15     650 California Street
16     San Francisco, California 94108
17     415.738.5705
18     csford@debevoise.com
19
20   ALSO PRESENT:  Peter Yaroschuk, Videographer
21        Kevin Adams, StockX LLC
22            ---oOo---
23
24
25
```

Page 4

```
 1            I N D E X
 2
 3 WITNESS:  John Lopez
 4
 5 EXAMINATION                    PAGE
 6 BY MR. MILLER                    9
 7 BY MR. FORD                    296
 8
 9        E X H I B I T S
10 EXHIBIT                        PAGE
11 Exhibit 1   Plaintiff Nike, Inc.'s Amended    48
12        Notice of Deposition of John Lopez
13 Exhibit 2   Defendant's Objections and    48
14        Responses to Plaintiff's Second
15        Set of Interrogatories
16 Exhibit 3   Seasonal Authenticator at StockX   59
17 Exhibit 4   Authenticator at StockX        60
18        West Caldwell, NJ
19 Exhibit 5   Team Leader, Authentication and   60
20        Quality Assurance at StockX
21 Exhibit 6   Page Vault, Bates NIKE0006785 -   90
22        '89
23 Exhibit 7   Job Descriptions Sneaker       115
24        Authenticator I, II, III, Bates
25        STX0114754 - '57
```

Page 5

```
 1        E X H I B I T S
 2 EXHIBIT                        PAGE
 3 Exhibit 8   Sneaker Authentication Standard   132
 4        Operating Procedure, Bates
 5        STX0752605 - '42
 6 Exhibit 9   Planet Nike Deck, Bates        179
 7        STX02033509 - '673
 8 Exhibit 10   Nike Dunk Low Retro White Black   197
 9        (2021), Bates STX0069511 - '24
10 Exhibit 11   Jordan 1 High OG SP Fragment    204
11        design x Travis Scott, Bates
12        STX0058653 - '69
13 Exhibit 12   Nike SB Dunk Low What The     204
14        Paul - Fake Comparison, Bates
15        STX0058670 - '93
16 Exhibit 13   12-18-20 Email Re: Auth App    209
17        Updates/Grateful Dead SB Breakdown
18        Bates STX0106086 - '87
19 Exhibit 14   10-18-21 Email Re: Weekly     216
20        Sneaker Product Update - 10/18
21        Bates STX0106315 - '16
22 Exhibit 15   2-1-22 - 3-1-22 Short Message   224
23        Report, Bates STX0076158 - '71
24 Exhibit 16   Authentication Project      240
25        Metrics/Data, Bates STX0018010 - '14
```

2 (Pages 2 - 5)

Page 6

1           E X H I B I T S
2   EXHIBIT                        PAGE
3   Exhibit 17   3-22-21 - 3-28-21 Outline of    250
4          Conversations, Bates STX0545514
5          - '30
6   Exhibit 18   Authentication Failure Comms    265
7          Policy, Bates STX0169271 - '72
8   Exhibit 19   1-4-22 Email, Subject: Fake -   271
9          return, ref for John to look
10         into seller and checker, Bates
11         ZK_NIKE_010019 - '29
12  Exhibit 20   1-5-22 Email Re: Fake - return,   271
13         ref for John to look into seller
14         and checker, Bates ZK_NIKE_010032
15  Exhibit 21   3-31-22 Email Re: Lots warning    277
16         signs, Bates ZK_NIKE_010404 - '24
17  Exhibit 22   3-31-22 Email Re: Lots warning    277
18         signs, Bates ZK_NIKE_010428 - '29
19  Exhibit 23   12-18-20 Email Re: ? Bates        277
20         ZK_NIKE_007765 - '75
21  Exhibit 24   12-22-20 Email Re: ? Bates        277
22         ZK_NIKE_007780 - '81
23  Exhibit 25   8-2-22 Email Re: Instagram post   285
24         Bates STX0772942 - '45
25              ---oOo---

Page 7

1              DEPOSITION PROCEEDINGS
2           THURSDAY, FEBRUARY 23, 2023
3                   ---oOo---
4
5
6         THE VIDEOGRAPHER:  Good morning.  We are
7   going on the record at 9:27 a.m. on February 23rd,     0
8   2023.
9         Please note that microphones are sensitive
10  and may pick up whispering, private conversations, and
11  cellular interference.
12        Please turn off all cell phones or place them
13  away from the microphones, as they can interfere with
14  the deposition audio.
15        Audio and video recording will continue to
16  take place unless all parties agree to go off the
17  record.
18        This is Media 1 of the video-recorded
19  deposition of John Lopez.  Taken by counsel for
20  Plaintiff.
21        In the matter of Nike Incorporated versus
22  StockX LLC.  Filed in the United States District Court
23  for the Southern District of New York.  Case number is
24  122-CV-00983 VEC.
25        This deposition is being held at 555 Mission

Page 8

1   Street, Suite 2400, San Francisco, California 94105.
2         My name is Peter Yaroschuk from the firm
3   Veritext.  I am the videographer.
4         The court reporter is Andrea Ignacio from the
5   firm Veritext.
6         I am not related to any party in this action,
7   nor am I financially interested in the outcome.
8         Counsel and all present, please now state
9   your appearances and affiliations for the record.
10        If there are any objections to proceeding,
11  please state them at the time of your appearance,
12  beginning with the noticing attorney.
13        MR. MILLER:  Good morning.  This is Marc
14  Miller from DLA Piper, on behalf of Plaintiff Nike
15  Inc.
16        And I'm joined by Gabby Velkes, also of
17  DLA Piper.
18        MR. FORD:  Christopher Ford, Debevoise &
19  Plimpton, on behalf of defendant StockX.
20        With me are my colleague Mai-Lee Picard, and
21  Kevin Adams with in-house counsel at StockX.
22        THE VIDEOGRAPHER:  Thank you.
23        Will the court reporter please swear in the
24  witness.
25

Page 9

1              JOHN LOPEZ,
2         having been first duly sworn
3         by the Certified Court Reporter,
4           testified as follows:
5
6              EXAMINATION
7   BY MR. MILLER:
8      Q  Good morning, Mr. Lopez.
9      A  Good morning.
10     Q  My name is Marc Miller.  I represent the
11  plaintiff Nike in this case.  Thank you for coming in.
12        So I just want to go over a couple of ground
13  rules that your counsel may have advised you of.
14        First, let me ask you:  Have you ever had
15  your deposition taken before?
16     A  No, I have not.
17     Q  Okay.  So our purpose here is for me to ask
18  you some questions.  You need to answer those
19  questions to the best of your ability by telling the
20  truth, the whole truth, and nothing but the truth, as
21  you just took an oath to do.
22     A  Sure.
23     Q  If you don't hear a question that I've asked,
24  please let me know, and I'll be happy to repeat it.
25        If don't understand my question for some

3 (Pages 6 - 9)



Page 26

1  in the authentication position at StockX?

11  Q  So why did you become an AQA between Level 2
12  and 3 authenticator?
13  A  So there was a need in our New Jersey
14  warehouse at the time for an authentication quality
15  assurance role.  And I did interview for that role,
16  and I was able to assume the position at that time.

Page 27

11  Q  Were you employed prior to joining StockX in
12  August of 2018?
13  A  I actually was -- I -- sorry.  Can you just
14  rephrase that question.
15  Q  Sure.  Prior to joining StockX in August of
16  2018, did you have a job before that?
17  A  I -- I had an LLC.  I ran my own business at
18  the time.
19  Q  What -- what sort of business were you
20  running at that time?
21  A  A sneaker buy/sell/trade shop,
22  brick-and-mortar store.
23  Q  What was the name of your brick-and-mortar
24  sneaker store?
25  A  The Sole Market LLC.  S-O-L-E.

Page 28

1  Q  And where was the store located?
2  A  That was located in Brick, New Jersey.
3  Q  Does that store still exist today?
4  A  No, it does not.
5  Q  Did you close it when you joined StockX?
6  A  Yes, I did.
7  Q  How long did you run that store for?
8  A  For about a year.
9  Q  Were you the sole proprietor?
10     Did you have any partners?
11  A  I was a sole proprietor, yes.
12  Q  Did you have any employees?
13  A  No, I did not.
14  Q  And before running Sole Market LLC, did you
15  have a job?
16  A  I did, yes.
17  Q  What was that?
18  A  I was a server at Bonefish Grill in
19  New Jersey.
20  Q  Can you tell me a little bit about your
21  education background.
22  A  Sure.  I graduated high school from
23  Jackson Liberty High School in New Jersey.  And after
24  that, I attended Temple University in Philadelphia.
25  Q  What year did you graduate from Temple?

Page 29

1  A  I actually did not graduate from Temple.
2  Still currently finishing my bachelor's degree.
3  Q  Okay.  What are you studying at Temple?
4  A  Communications.
5  Q  You're still taking courses today?
6  A  As of right now, no.
7  Q  How did you get into the business of running
8  a sneaker store?
9  A  Sure.  So sneakers has always been my
10  passion.  While I was serving tables at the Bonefish
11  Grill, I would buy and sell sneakers to locals in my
12  community.  And from there, slowly but surely built up
13  a clientele, and eventually was able to get the
14  opportunity to open the brick-and-mortar sneaker
15  store.
16  Q  Do you consider yourself a sneakerhead?
17  A  Yes.
18  Q  Do you have a favorite brand of sneaker?
19  A  I do.
20  Q  What is it?
21  A  Nike.
22  Q  A specific style of Nike?  Do you have a
23  favorite?
24  A  I would say Nike SB, yes.
25  Q  Have you ever been employed by Nike?

8 (Pages 26 - 29)

Page 38

1      MR. FORD:  Sorry?
2      THE WITNESS:  I don't really know the --
3      MR. FORD:  Hold on one second.  I'm sorry.
4      I'm just -- can you -- can you just repeat
5  the question, because I'm not sure I understood it or
6  heard it clearly.
7      MR. MILLER:  You can read it off the live
8  feed.
9      MR. FORD:  That's what I'm confused by is
10  what the transcript's got.
11     MR. MILLER:  Q.  What are the job
12  requirements for being an authenticator in StockX?
13     MR. FORD:  Okay.  Objection to form.
14     THE WITNESS:  I can't speak on the
15  requirements for the authenticators to be hired.
16     MR. MILLER:  Q.  Have you personally been
17  involved in hiring authenticators at StockX?
18     A  I have not, no.
19     Q  Do you know whether authenticators or
20  individuals applying -- let me strike that and start
21  over.
22     Do you know whether individuals applying to
23  be an authenticator at StockX are subjected to a
24  background check?
25     A  They are, yes.

Page 39

1      Q  Do you know what's included in that
2  background check?
3      A  No, I do not.
4      Q  Are individuals that are hired to be
5  authenticators at StockX interviewed?
6      A  They are, yes.
7      Q  How many interviews do they sit for?
8      A  I don't know the exact number, but I can tell
9  you my personal experience.  I had three interviews.
10     Q  Once an individual is hired at StockX as an
11  authenticator, is there an on-boarding process?
12     A  There is, yes.
13     Q  Can you describe the on-boarding process for
14  an authenticator at StockX, please.



Page 62



Page 63

11 Q If you'd flip to Exhibit 4, please. This one
12 is titled:
13     "Authenticator at StockX."
14     At the top, there is a heading that says:
15     "Job Application for Authenticator at
16 StockX."
17     I'll represent to you that we printed this
18 off of the Internet from the Wayback Machine from a
19 posting dated August 9th, 2022.
20     Do you see that at the top in the URL?
21     MR. FORD: Sorry. I see 2/22/23. Where are
22 you looking at?
23     MR. MILLER: In the Wayback Machine URL,
24 there is a date: 2022, 08/09.
25     THE WITNESS: 08/09.

Page 64

1     MR. FORD: And your representation is that
2 that is the date of this --
3     MR. MILLER: Of the Wayback Machine capture.
4     MR. FORD: -- Forbes -- of the
5 forbes.greenhouse.io posting?
6     MR. MILLER: Correct.
7     MR. FORD: Okay.
8     MR. MILLER: Q. Do you see that?
9 A Yes, I do see that.
10 Q Okay. Please just take a moment to review
11 this document, and let me know if you're familiar with
12 it.
13 A (Witness reading document.)
14     Okay.
15 Q Have you seen a job posting like this one
16 before?
17 A I have, yes.
18 Q Is this similar to the one that you applied
19 to back in 2018?
20 A Similar, yes.
21 Q When was the last time you saw a job posting
22 like this?
23 A Probably back in 2018.
24 Q In your time as a StockX employee, you
25 haven't seen any other job postings for

Page 65

1 authenticators?
2     A Not that I've thoroughly read through or
3 reviewed, no.
4     Q Okay. I want to ask you a couple of
5 questions about the bullets underneath the "About
6 You" heading.
7     Do you see that?
8     It's on the first page towards the bottom.
9     A Yes, I do.
10 Q So the first bullet says:
11     (As read):
12     "Minimum of 3 years of experience in retail,
13 customer service, operations, or a similar
14 environment."
15     Do you see that?
16 A I do, yes.
17 Q Do you know what that means?
18     Can you explain what type of experience
19 StockX is looking for in an authenticator with that
20 bullet?
21 A I cannot. I wasn't a part of the description
22 here, so I cannot really speak on -- on what exactly
23 was meant there.
24 Q Okay. Let's look at the second bullet then:
25     (As read):

17 (Pages 62 - 65)



Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400



Page 110

Page 112

8  Q  What do you mean by "defect"?
9  A  Defect is a broad term.  But essentially,
10 it's a manufacturing issue that is caught at the
11 authentication process.
12 Q  And can you be more specific by what you mean
13 with "manufacturing issue"?
14 A  I don't know how else to put it.
15    Would you like some examples?
16 Q  Sure.
17 A  An example would be a glue stain -- a
18 noticeable glue stain on a sneaker.  Poor aging or
19 poor storage.  So if one of our sellers leaves a shoe
20 out in -- in -- in the sun or it gets yellow, that is
21 something we deem as a defect or a non-passable
22 defect, and so on and so forth.
23 Q  Is that a manufacturing issue?
24 A  In that example that I gave, no, that would
25 not be.

Page 111

Page 113

1  Q  Okay.  So other than a glue stain, what other
2  manufacturing issue examples can you please provide?
3  A  Another example would be a stitching defect,
4  either a loose stitching or a missing stitching.
5  Other examples could be heavy creasing, either on a
6  toebox or a heel, without the shoe being worn.
7  Q  Any others?
8  A  Nothing I can think of right now.

Let me ask it a

29 (Pages 110 - 113)



Page 114

1  different way.

8    MR. MILLER:  May I have this one?

9    MS. VELKES:  Uh-huh.

10    MR. MILLER:  Hold it for both, and we'll get

11 a different print of it.

12    MS. VELKES:  Okay.

13    MR. MILLER:  All right.

14    Why don't we stop here.  We'll take a lunch

15 break.  It seems we have to reprint a couple of

16 documents that got the bottom cut off, for some

17 reason.

18    MR. FORD:  AQA process.

19    MR. MILLER:  Yeah.

20    THE VIDEOGRAPHER:  I'm going to switch media.

21    This marks the end of Media No. 3 in the

22 deposition of John Lopez.

23    The time is 12:31 p.m.  We are off the

24 record.

25    (Lunch break taken at 12:31 p.m.)

Page 115

1    A F T E R N O O N  S E S S I O N

2    1:24 P.M.

3    ---oOo---

4

5

6    THE VIDEOGRAPHER:  This marks the beginning

7 of Media No. 4 in the deposition of John Lopez.

8    The time is 1:24 p.m.  We are on the record.

9    (Document marked Exhibit 7

10    for identification.)

11    MR. MILLER:  Okay.

12    Q  Mr. Lopez, you've been handed a document by

13 the court reporter, marked as Exhibit 7.  It's bearing

14 Bates Nos. STX0114754 through '114757.

15    Do you see that?

16    A  I do, yes.

17    Q  Do you recognize this document?

18    A  This particular document, no, I do not.

19    Q  You've never seen this before?

20    A  Not to my knowledge, no.

21    Q  Do you know at Stock- -- who at StockX would

22 have prepared this document?

23    A  That I do not know.

24    Q  All right.

25    If you look at the top of the first page, you

Page 116

1  see where it says:

Page 117

1  says:

30 (Pages 114 - 117)



Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

Page 130



8    Q  So StockX receives products in authentication
9  centers for Nike shoes before they are released
10  through Nike.com website or the sneakers app?
11      MR. FORD:  Objection to the form of the
12  question.
13      THE WITNESS:  StockX does receive pairs --
14  pairs before they are released by Nike.com, yes.
15      MR. MILLER:  Q.  How does that happen?
16      MR. FORD:  Objection --
17      MR. MILLER:  Q.  Where do they come from?
18      MR. FORD:  Objection to form.
19      THE WITNESS:  I cannot say where they are
20  coming from, but they are coming from our sellers on
21  the platform.
22      MR. MILLER:  Q.  Do you know how sellers on
23  StockX's platform obtain pairs of Nike shoes before
24  they are released by Nike through the Nike.com website
25  or the sneakers app?

Page 131

1    A  I do not.
2    Q  Do you know if that happens for every Nike
3  shoe that's going to be released into the market?
4      MR. FORD:  Objection to the form.
5      THE WITNESS:  Can you rephrase that, please.
6      MR. MILLER:  Q.  Do you know how often
7  sellers on StockX's platform will send pairs of Nike
8  shoes before the release date on the Nike.com platform
9  or sneakers app?
10      MR. FORD:  Objection to form.
11      THE WITNESS:  I don't know.  I don't have an
12  answer for the amount.
13      MR. MILLER:  Q.  Would you say it happens
14  regularly?
15    A  Define what you mean by "regularly."
16    Q  If we're talking about ten releases of Nike
17  shoes, ten different pairs, of those ten, how often
18  will StockX receive product in its authentication
19  centers before the Nike.com or sneakers app release
20  date?
21      MR. FORD:  Objection to the form.
22      THE WITNESS:  Yeah, I would not be able to
23  put an exact number on that.
24      MR. MILLER:  Q.  Would you be able to
25  estimate?

Page 132

1    A  No --
2      MR. FORD:  Same --
3      THE WITNESS:  -- I would not.
4      MR. FORD:  Same objection.
5      THE WITNESS:  Yeah.
6      MR. MILLER:  Q.  You don't know one way or
7  the other?
8    A  I -- I would not be able to speculate on
9  that.
10      (Document marked Exhibit 8
11      for identification.)
12      MR. MILLER:  All right.
13    Q  Mr. Lopez, you've been handed a document by
14  the court reporter marked as Exhibit 8.  It is bearing
15  Bates Nos. STX0752605 through '752642.
16      Do you see that?
17    A  I do, yes.
18    Q  Do you recognize this document?
19    A  I do, yes.
20    Q  What is this?



Page 133

34 (Pages 130 - 133)



Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400



Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400



Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400





Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400



Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400



Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400



Veritext Legal Solutions
212-267-6868                    www.veritext.com                    516-608-2400



Page 262

Page 264

Page 263

Page 265

12       MR. MILLER:  You can put that document aside.

13       Let's just go off the record.  Take another

14  short break.

15       THE VIDEOGRAPHER:  This marks the end of

16  Media No. 6 in the deposition of John Lopez.

17       The time is 5:41 p.m.  We are off the record.

18       (Recess taken.)

19       THE VIDEOGRAPHER:  This marks the beginning

20  of Media No. 7 in the deposition of John Lopez.

21       The time is 5:53 p.m.  We are on the record.

22       (Document marked Exhibit 18

23        for identification.)

24       MR. MILLER:  All right.

25    Q  Mr. Lopez, you've been handed a document

DocuSign Envelope ID: D76033C8-FE77-45F4-8F77-1BC36ADFA851

**Deposition Date: 2/23/2023**
**Deponent: John Lopez – Errata Sheet**
**Case Name: *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC)**

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 12:4 | employee team member | employee **or** team member | Transcription Error |
| 33:9 | **a** numerous **of** things | numerous things | Clarification |
| 103:4 | to base **it or represent** | to base **around that** | Transcription Error |
| 103:11-12 | products that we **received** | products that we **receive** | Transcription Error |
| 104:18 | we do **pull** data | we do **hold** data | Transcription Error |
| 106:17 | a specific product has **gone** | a specific product has **gotten** | Transcription Error |
| 111:12 | any quality issue | any quality **issues** | Transcription Error |
| 122:4 | I can speak **in** authentication | I can speak **on** authentication | Transcription Error |
| 134:10 | I cannot **cite** | I cannot **say** | Transcription Error |
| 144:1 | **That** is used | **It** is used | Transcription Error |

DocuSign Envelope ID: D76033C8-FE77-45F4-8F77-1BC36ADFA851

**Deposition Date: 2/23/2023**
**Deponent: John Lopez – Errata Sheet**
**Case Name: _Nike, Inc. v. StockX LLC_, No. 22 CV 983 (VC)**

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 148:23-24 | appear an inauthentic or **suspect an** inauthentic product | appear **in** an inauthentic or **suspected** inauthentic product | Transcription Error |
| 157:24-25 | I would say it is part of the **storytelling** if something is suspected inauthentic. | I would say it is part of the **story telling** if something is suspected inauthentic. | Transcription Error |
| 163:15 | authentic products would **come from** | authentic products would **smell like** | Clarification |
| 168:4 | Objection. | Objection **to form** | Transcription Error |
| 171:18 | troubling **an issue** | troubling **a shoe** | Transcription Error |
| 180:17-18 | I'm **not --** going to direct you not to discuss | I'm going to direct you not to discuss | Clarification |
| 188:8-9 | shoes matching up. **Again, that's** the size and the style code is correct. | shoes matching up, **again,** **that** the size and the style code is correct. | Transcription Error |
| 210:18 | currently **on** practice | currently **in** practice | Transcription Error |
| 254:14 | **call** their SOP | **follow** their SOP | Transcription Error |

DocuSign Envelope ID: D76033C8-FE77-45F4-8F77-1BC36ADFA851

**Deposition Date: 2/23/2023**
**Deponent: John Lopez – Errata Sheet**
**Case Name: *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC)**

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 271:22 | No. **ZKNIKE010019**, and Exhibit 20 is **ZKNIKE010032**. | No. **ZK_NIKE_010019**, and Exhibit 20 is **ZK_NIKE_010032**. | Typographical Error |
| 275:12 | Just **this right here.** | Just**, say, this entire region.** | Transcription Error |
| 279:3 | Cool **Gray** Jordan 11 | Cool **Grey** Jordan 11 | Typographical Error |
| 280:11 | **on** towards the upper | towards the upper | Clarification |
| 280:21 | Cool **Gray** Jordan 11 | Cool **Grey** Jordan 11 | Typographical Error |

I, John Lopez, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on February 23, 2023; that I have made such corrections as appear noted herein; and that my testimony as contained herein, as corrected, is true and correct.

DATED this 24th day of March, 2023.

DocuSigned by:

*John Lopez Jr*

625C8D926A1F4E5...

John Lopez

3