# Exhibit 85
*Redacted Public Version*

HIGHLY CONFIDENTIAL

Page 1

```
         IN THE UNITED STATES DISTRICT COURT.

         FOR THE SOUTHERN DISTRICT OF NEW YORK


  NIKE, INC.,

                    Plaintiff,

            vs.                    Case No. 22-CV-983 (VEC)

  STOCKX, LLC,

                    Defendant.
  _____


              HIGHLY CONFIDENTIAL


         The Videotaped Deposition of JACOB FENTON,

         Taken at 28 West Adams Avenue, Suite 1500,

         Detroit, Michigan,

         Commencing at 8:48 a.m.,

         Friday, December 2, 2022,

         Before Stenographic Shorthand Reporter,

         Lori Ann Baldwin, CSR-5207, RPR, CRR.
```

HIGHLY CONFIDENTIAL

Page 2

1  APPEARANCES:
2
3  TAMAR Y. DUVDEVANI
4  GABRIELLE VELKES
5  DLA Piper LLP (US)
6  1251 Avenue of the Americas
7  New York, New York 10020-1104
8  212.335.4799
9  tamar.duvdevani@dlapiper.com
10 gabrielle.velkes@us.dlapiper.com
11     Appearing on behalf of Plaintiff.
12
13 CHRISTOPHER S. FORD
14 Debevoise & Plimpton LLP
15 650 California Street
16 San Francisco, California 94108
17 415.738.5705
18 csford@debevoise.com
19     Appearing on behalf of Defendant.
20
21
22
23
24
25 APPEARANCES (Continued)...

Page 3

1  APPEARANCES (Continued):
2
3  MEGAN K. BANNIGAN
4  CATHERINE WALSH
5  Debevoise & Plimpton LLP
6  919 Third Avenue
7  New York, New York 10022
8  212.909.6127
9  mkbannigan@debevoise.com
10 cwalsh@debevoise.com
11     Appearing on behalf of Defendant.
12
13 ALSO PRESENT:
14 Laura Lewis - In-house Counsel for StockX, LLC
15 Nicholas Houslander - Videographer
16
17
18
19
20
21
22
23
24
25

Page 4

1           TABLE OF CONTENTS
2  WITNESS                          PAGE
3  JACOB FENTON
4
5  EXAMINATION BY MS. DUVDEVANI:
6                 9
7  EXAMINATION BY MS. BANNIGAN:
8                175
9           EXHIBITS
10 EXHIBIT                          PAGE
11 (Exhibits attached to transcript.)
12
13 DEPOSITION EXHIBIT 1              22
14 Defendant's Objections and Responses to
15 Plaintiff's First Set of
16 Interrogatories
17 DEPOSITION EXHIBIT 2              25
18 Defendant's Objections and Responses to
19 Plaintiff's Second Set of
20 Interrogatories
21 DEPOSITION EXHIBIT 3              33
22 STX0018015-STX0018026
23 DEPOSITION EXHIBIT 4              38
24 STX0018406-STX0018414
25 DEPOSITION EXHIBIT 5              52

Page 5

1  STX0018415-STX0018451
2  DEPOSITION EXHIBIT 6              58
3  STX0018453-STX0018499
4  DEPOSITION EXHIBIT 7              60
5  STX0019269-STX19273
6  DEPOSITION EXHIBIT 8              64
7  STX0019778-STX0019779
8  DEPOSITION EXHIBIT 9              66
9  STX0019820-STX0019832
10 DEPOSITION EXHIBIT 10             71
11 STX0019985-STX0010006
12 DEPOSITION EXHIBIT 11             81
13 STX0020185-STX0020188
14 DEPOSITION EXHIBIT 12             84
15 STX0018010-STX0018014
16 DEPOSITION EXHIBIT 13             93
17 STX0019984
18 DEPOSITION EXHIBIT 14             94
19 STX0020225-STX0020268
20 DEPOSITION EXHIBIT 15            102
21 STX0021182-STX0021188
22 DEPOSITION EXHIBIT 16            107
23 STX0021481-STX0021498
24 DEPOSITION EXHIBIT 17            112
25 STX0041984-STX0041988

Page 6

| | |
|---|---|
| 1  DEPOSITION EXHIBIT 18 | 117 |
| 2  STX0043497-STX0043499 | |
| 3  DEPOSITION EXHIBIT 19 | 118 |
| 4  STX0053450-STX0053451 | |
| 5  DEPOSITION EXHIBIT 20 | 124 |
| 6  STX0061838-STX0061842 | |
| 7  DEPOSITION EXHIBIT 21 | 128 |
| 8  STX61927-STX61931 | |
| 9  DEPOSITION EXHIBIT 22 | 138 |
| 10 STX0092816 | |
| 11 DEPOSITION EXHIBIT 23 | 146 |
| 12 STX0096301-STX0096306 | |
| 13 DEPOSITION EXHIBIT 24 | 147 |
| 14 STX00928240-STX0092825 | |
| 15 DEPOSITION EXHIBIT 25 | 156 |
| 16 NIKE0038783-NIKE0038788 | |
| 17 DEPOSITION EXHIBIT 26 | 157 |
| 18 STX0097403 | |
| 19 DEPOSITION EXHIBIT 27 | 161 |
| 20 STX0097786-STX0097797 | |
| 21 DEPOSITION EXHIBIT 28 | 166 |
| 22 STX0099953-STX0099954 | |
| 23 DEPOSITION EXHIBIT 29 | 169 |
| 24 STX0169269-00169277 | |
| 25 | |

Page 7

1  Detroit, Michigan
2  Friday, December 2, 2022
3  8:48 a.m.
4
5        VIDEO TECHNICIAN:  Good morning.  We are
6  going on the record at 8:48 a.m. on Friday,
7  December 2nd, 2022.  Please note that microphones are
8  sensitive and may pick up whispering, private
9  conversations, and cellular interference.  Please turn
10 off all cell phones or place them away from the
11 microphones as they can interfere with the deposition
12 audio.  Audio and video recording will continue to
13 take place unless all parties agree to go off the
14 record.
15       This is the videotaped deposition of
16 Jacob Fenton taken by counsel for the plaintiff in the
17 matter of Nike, Incorporated versus StockX, LLC filed
18 in the United States District Court for the Southern
19 District of New York, case number 22-cv-00983-VEC.
20       This deposition is being held at
21 28 West Adams Avenue in Detroit, Michigan, 48226.  My
22 name is Nicholas Houslander from the firm Veritext
23 Legal Solutions and I'm the videographer.  The court
24 reporter today is Lori Baldwin, from the firm Veritext
25 Legal Solutions.

Page 8

1        I am not authorized to administer an oath.
2  I am not related to any party in this action, nor am I
3  financially interested in the outcome.
4        Counsel and all present in the room will
5  now state their appearances and affiliations for the
6  record.  If there are any objection to the proceeding,
7  please state them at the time of your appearance
8  beginning with the noticing attorney.
9        MS. DUVDEVANI:  Good morning.  Tamar
10 Duvdevani, DLA Piper, on behalf of Nike, Inc.
11       MS. VELKES:  Good morning.  Gabrielle
12 Velkes from DLA Piper, on behalf of Nike, Inc.
13       MS. BANNIGAN:  Good morning.  Megan
14 Bannigan from Debevoise & Plimpton on behalf of
15 StockX.
16       With me today are my colleagues from
17 Debevoise & Plimpton, Christopher Ford and Catherine
18 Walsh, as well as Laura Lewis, in-house counsel for
19 StockX.
20       THE WITNESS:  Jacob Fenton.
21       THE REPORTER:  Sir, can I ask you to raise
22 you right hand, please?
23       JACOB FENTON,
24 Was thereupon called as a witness herein, and after
25 having first been duly sworn to testify to the truth,

Page 9

1  the whole truth and nothing but the truth, was
2  examined and testified as follows:
3        THE REPORTER:  Thanks.
4        EXAMINATION
5  BY MS. DUVDEVANI:
6  Q.  Good morning, Mr. Fenton.
7  A.  Good morning.
8  Q.  Have you ever been deposed before?
9  A.  No, I have not.
10 Q.  I had a sense.  I -- I'm sure that Megan went over
11     some ground rules with you, so I'll be brief.  Most
12     important ground rule is to try not to talk over one
13     another so Lori doesn't kill us and so we can get a --
14     a clean transcript.
15       Even though we are keen to try to get out
16     of here as early as possible on this brisk Friday, the
17     day really is yours.  To the extent you need a break,
18     you just let me know, I will try to take a short break
19     every hour or so.  The only thing that I would ask of
20     you is not to ask for a break while a question is
21     pending, only after you answer a question.
22       Do you understand all that?
23 A.  Yes.
24 Q.  Okay.  Did you prepare for today's deposition?
25 A.  Yes.

```
                                               Page 82
 1     about, like, kind of, you know, tenets or aspirations,
 2     things that we, you know, want to remember as we think
 3     about our -- our corporate strategy.
 4  Q. Understood.  Looking at the bottom of that page, the
 5     last bullet point, "Authentication is at the core of
 6     the experience and StockX set the industry standard."
 7         Starting with "Authentication is at the
 8     core of the experience," what does that mean?
 9  A. It means that it's been a value proposition of ours
10     for -- since our inception, to -- to do the very best
11     we can to ensure that customers get exactly they want
12     on the secondary market.  And that's how we, you know,
13     grew our reputation in the community and it's very
14     important to us.  It's a key part of our -- our
15     offering and we take it very seriously.
16  Q. And when you -- when it's written here "StockX set the
17     industry standard," what does that mean?
18  A. It means that, I think, before us there wasn't a
19     concept of sneaker authenticators.  We set that
20     industry standard.  We've -- and that's what I believe
21     it means.
22  Q. And the bullet underneath that says, "Proven in-house
23     authentication process has an accuracy rate of 99.95
24     percent."
25         Do you see that?
```

```
                                               Page 83
 1  A. I do.
 2  Q. How is that 99.95 percent rate calculated?
 3  A. To the best of my knowledge, I believe it's calculated
 4     as a percentage of customers that reach out to StockX
 5     claiming that they have received something that is not
 6     in line with their -- with what they expected to get,
 7     and that we were essentially wrong, and we fixed it
 8     for them.
 9  Q. When you say that you "fixed it for them," what does
10     that mean?
11  A. If a customer is able to demonstrate that they've
12     received something that is not what they expected and
13     that they haven't worn it, you know, it has our tag on
14     it, we make it right for them.
15  Q. How do you make it right?
16  A. Either through a refund or by helping them procure
17     another pair.
18  Q. Does that include a customer complaining about
19     purchasing a counterfeit or fake product?
20  A. It does, yes.
21  Q. How would a customer know if they purchased a
22     counterfeit or fake product?
23         MS. BANNIGAN:  Objection to form.
24  A. Depends on the customer.  A lot of our customers are
25     very savvy and, you know, they might know a towel (ph)
```

```
                                               Page 84
 1     that other customers don't.
 2  BY MS. DUVDEVANI:
 3  Q. So is it fair to say that some customers wouldn't know
 4     the difference between a genuine product and a
 5     counterfeit product?
 6         MS. BANNIGAN:  Objection to form.
 7  A. I think that's fair.
 8  BY MS. DUVDEVANI:
 9  Q. Mr. Fenton, the court reporter has handed you a
10     document designated as Exhibit 12 titled
11     ████████████████████████████
12         Are you familiar with this document?
13  A. Just give me a moment.
14         MARKED FOR IDENTIFICATION:
15         DEPOSITION EXHIBIT 12
16         STX0018010-STX0018014
17         11:05 a.m.
18  A. I'm familiar with the content on this document, but I
19     don't remember the specific document.
20  BY MS. DUVDEVANI:
```



Veritext Legal Solutions
212-267-6868   www.veritext.com   516-608-2400

Page 102

1  want to make them happy, we, of course, reserve the
2  right to take it back, but we don't do that
3  programatically.
4  Q. You just testified, "This is not about, this is not
5  what I would classify as those other, you know,
6  errors, that we may have made."  What does that refer
7  to?
8  A. We, before the break, we talked about how there are
9  times when something gets past our verification
10 process, and we, if that happens, we void the sale and
11 do everything we can to make that right.
12         MARKED FOR IDENTIFICATION:
13         DEPOSITION EXHIBIT 15
14         STX0021182-STX0021188
15         11:44 a.m.
16 BY MS. DUVDEVANI:
17 Q. Mr. Fenton, the court reporter has just handed you a
18 document that's been designated as Exhibit 15, titled
19 Brand Page Copy & Design Review, dated October 2020.
20 Please take a look through and let me know when you
21 are done.
22 A. Okay.
23 Q. Do you recognize Exhibit 15?
24 A. I do.
25 Q. What is it?

Page 103

1  A. This looks like a summary of work we were doing to
2  update what we call our brand pages.
3  Q. And what are your brand pages?
4  A. These are pages, like, "how does our platform work,"
5  you know, about buying, about selling, authentication,
6  about the company, things of that nature.
7  Q. Let's go to STX21186.
8         By the way, is this a presentation that you
9  gave?
10 A. I can't say whether it was a presentation, per se, but
11 I do think I put together this doc.
12 Q. Okay.  All right.  So looking at 21186, what is this
13 slide talking about?
14 A. This is talking specifically about our Authentication
15 and Verification Page, the goals and the key ideas,
16 and to the right it looks like a mockup of what we
17 hoped to launch.

Page 104

[redacted]

Page 105

[redacted]

Page 110

[redacted]

Page 111

[redacted]

Page 112

[redacted]

16    MARKED FOR IDENTIFICATION:
17    DEPOSITION EXHIBIT 17
18    STX0041984-STX0041988
19    12:03 p.m.
20  BY MS. DUVDEVANI:
21  Q.  Mr. Fenton, the court reporter has just handed you a
22      document that's been designated Exhibit 16 --
23      THE REPORTER:  Seventeen.
24      MS. DUVDEVANI:  What?
25      THE REPORTER:  Seventeen.

Page 113

1       MS. DUVDEVANI:  Seventeen?
2   BY MS. DUVDEVANI:
3   Q.  It's an email dated January 11, 2022, from Cheyanne
4       Luna.  Who is Cheyanne Luna?
5   A.  She is -- was a graphic designer for us.
6   Q.  Are you familiar with this document?
7   A.  Give me a moment, please.
8   Q.  Sure.
9   A.  Yes.  I'm familiar with this.
10  Q.  When was the last time you saw this document?
11  A.  I think I saw parts of it yesterday, but I haven't
12      seen this email thread in its entirety in a very long
13      time.
14  Q.  What is the context of this document?
15  A.  We're looking at the design of the image that shows up
16      on the -- on the detail page.
17  Q.  On the detail page of what?
18  A.  Of the Vault NFTs.

[redacted]

```
                                                      Page 142
1           MS. BANNIGAN:  Objection to form.
2    A.  I respectfully disagree.
3    BY MS. DUVDEVANI:
4    Q.  Why do you disagree with that?
5    A.  If -- if there's no mention of dissatisfaction or a
6        problem and we've invested millions of dollars into
7        the people, processes, and technology to perform this
8        service, and we don't hear from customers, we would
9        have no reason to suspect that there was a problem.
10   Q.  Do you agree with me that there are some counterfeits
11       out there that are extremely genuine looking products?
12   A.  I do.
13   Q.  Okay.  So isn't it possible that a consumer that
14       purchases a shoe on StockX that's a very good
15       counterfeit wouldn't know to complain to StockX upon
16       receipt of that product?
17          MS. BANNIGAN:  Objection to form.
18   A.  I -- no, I mean, I think if -- if a customer got
19       something that they had concerns about, they would be
20       able to reach out to us and we would make it right.
21   BY MS. DUVDEVANI:
22   Q.  But would every customer know that they have concerns
23       with a counterfeit product if they don't know it's
24       counterfeit?
25          MS. BANNIGAN:  Objection to form.
```

```
                                                      Page 143
1    BY MS. DUVDEVANI:
2    Q.  Let me ask you a different question.  Does every
3        StockX consumer know whether or not they are getting a
4        genuine product or a really good counterfeit?
5           MS. BANNIGAN:  Objection to form.
6    A.  I can't speak to that.  I think counterfeits are very
7        good, so it's very possible that some people would not
8        know.
9    BY MS. DUVDEVANI:
```



Page 144

Page 145

25  BY MS. DUVDEVANI:

HIGHLY CONFIDENTIAL

Page 178

1  CERTIFICATE
2
3  STATE OF MICHIGAN
4  COUNTY OF OAKLAND
5       LORI ANN BALDWIN, a Notary Public in and
6  for the above county and state, do hereby certify that
7  this Videotaped deposition was taken before me at the
8  time and place hereinbefore set forth; that the
9  witness was by me first duly sworn to testify to the
10 truth; that this is a true, full and correct
11 transcript of my stenographic notes so taken to the
12 best of my skill and ability; and that I am not
13 related, nor of counsel to either party, nor
14 interested in the event of this cause.
15
16
17
18
19        *Lori Baldwin*
20        _____
21        Lori Ann Baldwin, CSR-5207, RPR, CRR
22        Notary Public
23        Oakland County, Michigan
24        My commission expires: December 21, 2025
25

Page 179

1
2        ERRATA SHEET
         VERITEXT/NEW YORK REPORTING, LLC
3
   CASE NAME: Nike, Inc. v. Stockx, LLC
4  DATE OF DEPOSITION: December 2, 2022
   WITNESS' NAME: Jacob Fenton
5
   PAGE/LINE(s)/   CHANGE       REASON
6   ___/___/_____/_____
    ___/___/_____/_____
7   ___/___/_____/_____
    ___/___/_____/_____
8   ___/___/_____/_____
    ___/___/_____/_____
9   ___/___/_____/_____
    ___/___/_____/_____
10  ___/___/_____/_____
    ___/___/_____/_____
11  ___/___/_____/_____
    ___/___/_____/_____
12  ___/___/_____/_____
    ___/___/_____/_____
13  ___/___/_____/_____
    ___/___/_____/_____
14  ___/___/_____/_____
    ___/___/_____/_____
15  ___/___/_____/_____
    ___/___/_____/_____
16  ___/___/_____/_____
    ___/___/_____/_____
17  ___/___/_____/_____
    ___/___/_____/_____
18  ___/___/_____/_____
19
20  _____
         JACOB FENTON
21
    Subscribed and Sworn To
22  Before Me This_____ Day
    of_____, 20   .
23
    _____
24    Notary Public
25  My Commission Expires_____

**Deposition Date**: 12/2/2022
**Deponent**: Jacob Fenton – Errata Sheet
**Case Name**: *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 30:3 | at a variety of different things, **not** one of which is | at a variety of different things, one of which is | Clarification |
| 31:15 | by the people who buy cryptocurrency and buy NFTs. | **between** the people who buy cryptocurrency and buy NFTs. | Transcription Error |
| 31:16 | And we saw NFT technologies as a possible way to lower | And we saw **the** NFT **technology** as a possible way to lower | Transcription Error |
| 32:6 | Vault's, you know, is a name, a marketing name for it, | Vault's, you know, **the** name, a marketing name for it, | Transcription Error |
| 37:11 | Collective although not directly. | Collective although not directly **the same.** | Transcription Error |
| 38:10 | stamp STX001815 (sic) and went through STX0018026. | stamp STX00**18015** and went through STX0018026. | Clarification |
| 44:8 | additions are? | **editions** are? | Transcription Error |
| 47:19 | author. Reading that paragraph holistically, the | author. **Q.** Reading that paragraph holistically, the | Transcription Error |

1

| **Deposition Date**: 12/2/2022 <br> **Deponent**: Jacob Fenton – Errata Sheet <br> **Case Name**: *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN) ||||
|---|---|---|---|
| **Page(s): Line(s)** | **Now Reads** | **Should Read** | **Reason** |
| 59:3-4 | Okay, yes. Please repeat your question. I know what this is referring to. Trust. | Okay, yes. Please repeat your question. **Do** I know what this is referring to**?** Trust. | Transcription Error |
| 64:25 | and Goat across a couple of different topics. | and **GOAT** across a couple of different topics. | Typographical Error |
| 83:25 | very savvy and, you know, they might know a towel (ph) | very savvy and, you know, they might know a **tell** | Transcription Error |
| 89:16 | Possibly Tim McCurdy. | **Probably** Tim McCurdy. | Transcription Error |
| 93:20 | what the 99.9 is, nor do I know what these sub bullets | what the 99.**99** is, nor do I know what these sub bullets | Transcription Error |
| 95:25 | A. So, first of all, this is a talk track for this stack | A. So, first of all, this is a talk track for this **deck** | Transcription Error |
| 96:2 | What this means is that Stock -- you know, | What this means is that **StockX** -- you know, | Clarification |
| 118:7 | things out as clear as humanly possible, but that | things out as **clearly** as humanly possible, **and** that | Transcription Error |

2

| **Deposition Date:** 12/2/2022<br>**Deponent:** Jacob Fenton – Errata Sheet<br>**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN) | | | |
|---|---|---|---|
| **Page(s): Line(s)** | **Now Reads** | **Should Read** | **Reason** |
| 123:15 | otherwise cause a ton of money to go to | otherwise **cost** a ton of money to go to | Transcription Error |
| 133:25 | I would want to be out way ahead of that. | I would want to, **normally**, be out way ahead of that. | Transcription Error |
| 155:4 | It's, I mean -- I think, it's the collection of | It's, I mean -- I think, **I don't know**, it's the collection of | Transcription Error |
| 160:6 | the right title, but he's helping in our Apps | the right title, but he's helping in our **Ops** | Transcription Error |
| 162:10 | accurate on 99.5 percent of orders, is one of our main | accurate on 99.**95** percent of orders, is one of our main | Transcription Error |
| 168:8 | White **saying** that indicates that it's a StockX NFT | White **on something** that indicates that it's a StockX NFT | Transcription Error |
| 170:11 | company for people who would want to, for some reason | company **that** would want to, for some reason | Transcription Error |

3

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| **Deposition Date:** 12/2/2022 <br> **Deponent:** Jacob Fenton – Errata Sheet <br> **Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN) | | | |
| 174:3-4 | by "they are not comfortable in the current state due to subjectivity." I think this is maybe referring to | by "they are not comfortable in the current state **calling items fake** due to subjectivity." I think this is maybe referring to | Transcription Error |
| Passim | StockX, LLC | StockX LLC | Typographical Error |

I, Jacob Fenton, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on December 2, 2022; that I have made such corrections as appear noted herein; and that my testimony as contained herein, as corrected, is true and correct.

DATED this 4th day of January, 2023.

DocuSigned by:

Jacob Fenton

7857D63565BC416...

4