# Exhibit 132

*Redacted Public Version*

HIGHLY CONFIDENTIAL

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

NIKE, INC.,

        Plaintiff,

vs.                    Case No. 22-CV-983 (VEC)

STOCKX, LLC,

        Defendant.

_____

\*\*\* HIGHLY CONFIDENTIAL \*\*\*

    The Videotaped Deposition of RUSSELL AMIDON,

    Taken at 28 West Adams Avenue, Suite 1500,

    Detroit, Michigan,

    Commencing at 10:06 a.m.,

    Wednesday, November 30, 2022,

    Before Stenographic Shorthand Reporter,

    Lori Ann Baldwin, CSR-5207, RPR, CRR.

HIGHLY CONFIDENTIAL

| Page 2 | Page 4 |
|---|---|
| 1  APPEARANCES: | 1          TABLE OF CONTENTS |
| 2 | 2 |
| 3  TAMAR Y. DUVDEVANI | 3  WITNESS                              PAGE |
| 4  GABRIELLE VELKES | 4  RUSSELL AMIDON |
| 5  DLA Piper LLP (US) | 5 |
| 6  1251 Avenue of the Americas | 6  EXAMINATION BY: |
| 7  New York, New York 10020-1104 | 7  TAMAR Y. DUVDEVANI                      7 |
| 8  212.335.4799 | 8 |
| 9  tamar.duvdevani@dlapiper.com | 9             EXHIBITS |
| 10 gabrielle.velkes@us.dlapiper.com | 10 |
| 11     Appearing on behalf of Plaintiff. | 11 EXHIBIT                               PAGE |
| 12 | 12 (Exhibits to be forwarded.) |
| 13 CHRISTOPHER S. FORD | 13 |
| 14 Debevoise & Plimpton LLP | 14 DEPOSITION EXHIBIT 1                   38 |
| 15 650 California Street | 15 STX0143893-STX0143925 |
| 16 San Francisco, California 94108 | 16 DEPOSITION EXHIBIT 2                   54 |
| 17 415.738.5705 | 17 STX0031295-STX0031299 |
| 18 csford@debevoise.com | 18 DEPOSITION EXHIBIT 3                   59 |
| 19     Appearing on behalf of Defendant. | 19 STX0054591-STX0054593 |
| 20 | 20 DEPOSITION EXHIBIT 4                   64 |
| 21 | 21 STX0069394-STX0069397 |
| 22 | 22 DEPOSITION EXHIBIT 5                   72 |
| 23 | 23 STX0096035-STX0096037 |
| 24 | 24 DEPOSITION EXHIBIT 6                   77 |
| 25 APPEARANCES (Continued)... | 25 STX0177837-STX0177838 |

| Page 3 | Page 5 |
|---|---|
| 1  APPEARANCES (Continued): | 1  DEPOSITION EXHIBIT 7                   79 |
| 2 | 2  STX0772981-STX0772985 |
| 3  MEGAN K. BANNIGAN | 3  DEPOSITION EXHIBIT 8                   87 |
| 4  CATHERINE WALSH | 4  STX00772942-STX0072945 |
| 5  Debevoise & Plimpton LLP | 5  DEPOSITION EXHIBIT 9                   91 |
| 6  919 Third Avenue | 6  ZK_NIKE_000812-ZK_NIKE_000813 |
| 7  New York, New York 10022 | 7  DEPOSITION EXHIBIT 10                  93 |
| 8  212.909.6127 | 8  ZK_NIKE_007784-ZZ_NIKE_007793 |
| 9  mkbannigan@debevoise.com | 9  DEPOSITION EXHIBIT 11                  96 |
| 10 cwalsh@debevoise.com | 10 ZK_NIKE_007957-ZK_NIKE_007958 |
| 11     Appearing on behalf of Defendant. | 11 DEPOSITION EXHIBIT 12                  98 |
| 12 | 12 ZK_NIKE_009294 |
| 13 ALSO PRESENT: | 13 DEPOSITION EXHIBIT 13                  100 |
| 14 Laura Lewis - In-house Counsel for StockX, LLC | 14 ZK_NIKE_009651-ZK_NIKE_009660 |
| 15 Shannon Egan - In-house Counsel for StockX, LLC | 15 DEPOSITION EXHIBIT 14                  102 |
| 16 Justin Dloski - Videographer | 16 ZK_NIKE_010032 |
| 17 | 17 DEPOSITION EXHIBIT 15                  102 |
| 18 | 18 ZK_NIKE_010428-ZK_NIKE_010428 |
| 19 | 19 DEPOSITION EXHIBIT 16                  103 |
| 20 | 20 ZK_NIKE_011512-ZK_NIKE_011515 |
| 21 | 21 DEPOSITION EXHIBIT 17                  106 |
| 22 | 22 STX0178024-STX0178025 |
| 23 | 23 |
| 24 | 24 |
| 25 | 25 |

2 (Pages 2 - 5)

Page 6

1  Detroit, Michigan
2  Wednesday, November 30, 2022
3  10:06 a.m.
4
5        VIDEO TECHNICIAN: We are on the record at
6  10:06 on November 30th, 2022. This is the video
7  recorded deposition of Russ Amidon in the matter of
8  Nike versus StockX filed in the Southern District of
9  New York, case 22-cv-00983.
10       We are located at 28 West Adams Avenue,
11 Detroit, Michigan. My name is Justin Dloski from
12 Veritext.
13       Counsel may now introduce themselves for
14 the record then the reporter will swear in the
15 witness.
16       MS. DUVDEVANI: Tamar Duvdevani, DLA Piper
17 on behalf of Nike, Inc.
18       MS. VELKES: Gabrielle Velkes, DLA Piper on
19 behalf of Nike, Inc.
20       MR. FORD: Christopher Ford, Debevoise &
21 Plimpton, on behalf of StockX. I'm going by my
22 colleagues, Megan Bannigan and Catherine Walsh, also
23 from Debevoise, as well as Stock house -- StockX's
24 in-house counsel, Laura Lewis and Shannon Egan.
25       RUSSELL AMIDON,

Page 7

1  Was thereupon called as a witness herein, and after
2  having first been duly sworn to testify to the truth,
3  the whole truth and nothing but the truth, was
4  examined and testified as follows:
5                EXAMINATION
6  BY MS. DUVDEVANI:
7  Q.  Okay. All right. Good morning, Mr. Amidon.
8  A.  Good morning.
9  Q.  As you've just heard, my name is Tamar Duvdevani. I'm
10     counsel for Nike, Inc.
11         Have you ever been deposed before?
12 A.  I have not.
13 Q.  When did you begin working at StockX?
14 A.  In March 2016.
15 Q.  And what was your title when you began working at
16     StockX in March 2016?
17 A.  I was our Director of Customer Experience.
18 Q.  Okay. What does that job entail?
19 A.  At that time, it was strictly our Customer Service
20     Teams. I would respond to any inbound inquiry. So I
21     was the only Customer Service team member at the time.
22 Q.  How many Customer Service team members are there
23     today?
24 A.  I'm not sure.
25 Q.  More than ten?

Page 8

1  A.  Oh, yeah. Yeah. A few hundred.
2  Q.  A few hundred. Okay. Since you've never been deposed
3     before, let me give you some ground rules, although
4     I'm sure that your counsel filled you in.
5         For the sake of the transcript and the
6     court reporter, let's try not to talk over each other.
7     I will try not to interrupt you. You try not to
8     interrupt me.
9         To the extent a question is pending, I
10    would not take a break until the answer is provided,
11    however, today is your day, so if you do need to take
12    a break, just say so and we can go ahead and take
13    however many breaks you want, even though we want to
14    get out of here relatively early today.
15        Did you meet with your counsel before
16    coming here to prepare for today's deposition?
17 A.  Yes.
18 Q.  How many times?
19 A.  Two times.
20 Q.  When was that?
21 A.  One yesterday and one last week.
22 Q.  Okay. Back to -- one other thing. You might hear
23    your lawyer say "objection" or "objection to form."
24    That doesn't mean that you don't answer the question.
25    The only time you should not answer the question is if

Page 9

1     your counsel tells you not to answer a question based
2     on privilege. Got it?
3  A.  Got it.
4  Q.  Okay. All right. So 2016, was that when -- did
5     you -- did you begin working at StockX when it was
6     founded?
7  A.  I did not.
8  Q.  Okay. How long had it been in existence at the time
9     you began working for the company?
10 A.  I believe we launched StockX a -- a month or two
11    before.
12 Q.  Okay. Is your title the same today as it was in 2016?
13 A.  It is not.
14 Q.  Okay. Can you take me through your employment history
15    at StockX?
16 A.  Sure. From 2016 to 2018, I led our Customer Service
17    team, so my title was Director of Customer Experience.
18        In 2018, transitioned to Senior Director of
19    VIP Relations, and -- from 2018 to 2020. And 2020 to
20    present, it is Senior Director of Account Management.
21 Q.  What were your duties and responsibilities in your
22    position as Senior Director of VIP Relations from 2018
23    to 2020?
24 A.  Sure. I had a few different roles, one of which was
25    starting to communicate with what we call power buyers

HIGHLY CONFIDENTIAL

Page 30

1  Q.  What type of request would you make of your data team
2      for that information?
3  A.  I would request, you know, what our, if I had to, or
4      what our, what brands are our sellers selling and what
5      inventory that they have currently listed.
6  Q.  And your data team would be able to provide that
7      information to you?
8  A.  Mm-hmm.
9  Q.  That's a yes?
10 A.  Yes.
11 Q.  Okay.  For the power sellers between fifty and a
12     thousand that we just talked about that have a high
13     volume of Nike and Jordan products, using the word
14     that you used before, do you have suspicions as to
15     where they got their products?
16         MR. FORD:  Objection to form.
17 A.  I think I'd like to clarify that number.
18 BY MS. DUVDEVANI:
19 Q.  Sure.
20 A.  I don't know, I just really don't know how many.  I
21     just know that a lot of sellers do sell Nike and
22     Jordan products.  I just don't know the number.
23         I'm sorry, what was your question?  Can you
24     repeat it?
25 Q.  You mentioned that you have suspicions as to where

Page 31

1      some of your power sellers get their products.  I was
2      asking about your suspicions regarding the power
3      sellers that have high volumes of Nike and Jordan
4      products.
5          MR. FORD:  Objection to form.
6  A.  And what's the question?
7  BY MS. DUVDEVANI:
8  Q.  The question is:  Do you have suspicions as to where
9      any of those power sellers obtained their products?
10         MR. FORD:  Objection to form.
11 A.  I really don't know.  I think "suspicion" may be the
12     wrong word because I, my team, personally, we have an
13     Authentication team that we are confident in, that
14     that is where we -- we don't ask where sellers get
15     their inventory, so we don't, it is not a talking
16     point or something that my team focuses on because we
17     know that every product will get checked anyway before
18     it gets sent to the buyer.
19 BY MS. DUVDEVANI:
20 Q.  Why don't you ask your power sellers where they get
21     their inventory?
22         MR. FORD:  Objection to form.
23 A.  It's similar to what I -- I just said, I think,
24     because we have an authentication service that looks
25     at every item before it gets to a buyer.  We really

Page 32

1      don't focus on it, that being, where their source is
2      because it doesn't matter to us where their source is
3      because we have that authentication process that we
4      are confident in.
5  BY MS. DUVDEVANI:
6  Q.  How much do you know about the authentication process?
7          MR. FORD:  Objection to form.
8  A.  Very little.  My job is really just to create the
9      customer experience for our sellers.
10 BY MS. DUVDEVANI:
11 Q.  Okay.  What is a -- strike that.
12         I understand that StockX has pre-release
13     for certain products, is that right?
14         MR. FORD:  Objection to the form.
15 A.  Can you potentially clarify?
16 BY MS. DUVDEVANI:
17 Q.  Sure.
18 A.  Yeah.
19 Q.  Well, do you know what I mean by "pre-release"?
20 A.  No.
21 Q.  Okay.  Does StockX offer for sale products that have
22     yet to be released by the brand?
23         MR. FORD:  Objection to form.
24 A.  From my understanding, our Catalogue team adds
25     products to the site.  I don't know when and why they

Page 33

1      add a product when a release is scheduled.
2  BY MS. DUVDEVANI:
3  Q.  Are you ever involved in trying to locate high heat or
4      pre-release products from power sellers?
5          MR. FORD:  Objection to the form.
6  A.  Can you repeat the question?
7  BY MS. DUVDEVANI:
8  Q.  Sure.  Are you ever involved in trying to locate or
9      source high heat or pre-release products that StockX
10     wants to sell to consumers?
11         MR. FORD:  Objection to the form.
12 A.  I do not locate pre-release or high heat items before
13     release day.
14 BY MS. DUVDEVANI:
15 Q.  What about after release day?
16         MR. FORD:  Same objection.
17 A.  When we think a big release is happening on our site,
18     we do like to communicate to our sellers that it's
19     coming up and it will be -- we would -- and would we
20     offer them any assistance in helping them with their
21     inventory that we want them to sell it on our site,
22     obviously, but I do not seek out particular inventory.
23 BY MS. DUVDEVANI:
24 Q.  When you say that you do like to communicate to your
25     sellers that it's coming up and you'd offer them any

Veritext Legal Solutions
212-267-6868                www.veritext.com                516-608-2400

Page 34

1  assistance in helping with their inventory, what does
2  that entail?
3  A.  Sure.  So, I think an example would be if we know a --
4     a sneaker release could result in a lot of orders, we
5     potentially might do a promotion which would give
6     sellers a lesser fee for that particular item so we
7     would let them know, if you are able to get this
8     product when it releases, we will be doing a promotion
9     on that product.  So that seller then becomes aware
10    that if I sell that item on StockX, I know that there
11    will be potentially a lot of buyers, and I can sell it
12    on your platform.
13         THE REPORTER:  Did you say on a platform or
14    on your platform?
15         THE WITNESS:  On your platform.
16         THE REPORTER:  Thank you.
17  BY MS. DUVDEVANI:
18  Q.  Do you ever have communications with power buyers
19    regarding high heat or pre-release product?
20         MR. FORD:  Objection to form.
21  A.  I do not.
22  BY MS. DUVDEVANI:
23  Q.  Does anybody on your team have those communications?
24         MR. FORD:  Objection to form.
25  A.  I think I mentioned previously, we -- we don't -- we

Page 35

1  may talk to a handful of buyers, but we don't actively
2  reach out to them and communicate with them.  It's
3  more we respond to them if they have any questions.
4  So to answer your question, I believe we don't today.
5  BY MS. DUVDEVANI:

[redacted]

Page 36

[redacted]

7  Q.  Have you ever met any of your power sellers in person?
8  A.  Yes.
9  Q.  How many of them?
10 A.  I can't really say a number.  Many.  Maybe a hundred,
11    approximately a hundred.
12 Q.  And under what conditions would you meet a power
13    seller in person?
14         MR. FORD:  Objection to form.
15 A.  The goal, from my experience, personally speaking, I
16    only -- only met with power sellers to build a
17    relationship, to show that we, you know, care about
18    them as a customer, and to solicit feedback on our
19    site because they use it more than we do because they
20    are always on it buying, selling, listing; any
21    features, requests they might want, so it's important
22    to me to -- to meet with them and gather the feedback.
23 BY MS. DUVDEVANI:
24 Q.  And you said that's about a hundred power sellers,
25    from what you remember?

Page 37

1  A.  Could be more --
2         MR. FORD:  Objection to form.
3  A.  Sorry -- could be more or less, but that would be my
4     best approximate guess.
5  BY MS. DUVDEVANI:

[redacted]

16 BY MS. DUVDEVANI:
17 Q.  Did you ever enter in -- strike that.
18        Did StockX ever enter into non-disclosure
19    agreements with power sellers?
20        MR. FORD:  Objection to form.

[redacted]

23        MS. DUVDEVANI:  We've been going for about
24    an hour.  Do you want to take a break?
25        THE WITNESS:  Sure.



| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| **Deposition Date:** 11/30/2022 **Deponent:** Russell Amidon – Errata Sheet **Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) (SN) | | | |
| 18:21-22 | Brian Faulk (ph) | Bryan Fok | Typographical Error |
| 18:22 | Dyki (ph) | Daiki Ebi | Typographical Error |
| 89:7 | boxes then -- rather than individual labels. | boxes **than** -- rather than individual labels. | Transcription Error |
| 105:5 | item's are passing | **items** are passing | Transcription Error |
| 106:5 | but I'm not sure that would happen. | but I'm not sure **when** that would happen. | Transcription Error/Clarification |
| Passim | StockX, LLC | StockX LLC | Typographical Error |

I, Russell Amidon, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on November 30, 2022; that I have made such corrections as appear noted herein; and that my testimony as contained herein, as corrected, is true and correct.

DATED this  4th  day of January, 2023.

*Russ Amidon*
961221EF9B2B4B9...
Russell Amidon

1