# Exhibit 154

*Redacted Public Version*

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2          FOR THE SOUTHERN DISTRICT OF NEW YORK
 3
 4    NIKE, INC.,                        )
          Plaintiff,                     )
 5                                       )
                                         )
 6     vs.                               ) Case No.:
                                         ) 1:22-cv-00983-VEC
 7    STOCKX LLC,                        )
          Defendant.                     )
 8    _____)
 9
10
11
12
13      HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
14            VIDEO-RECORDED 30(b)(6) DEPOSITION OF
15                       HEATHER PAULSON
16                      Portland, Oregon
17            Friday, January 6, 2023; 9:11 a.m.
18
19
20
21
22    REPORTED BY:
23    Victoria A. Guerrero, CSR, RPR, CRR
24    Job No. 5593361
25    Pages 1 through 291
```

Page 2

```
 1           IN THE UNITED STATES DISTRICT COURT
 2           FOR THE SOUTHERN DISTRICT OF NEW YORK
 3
 4   NIKE, INC.,           )
         Plaintiff,        )
 5                         )
                           )
 6   vs.              ) Case No.:
                      ) 1:22-cv-00983-VEC
 7   STOCKX LLC,           )
         Defendant.        )
 8   _____)
 9
10
11
12
13
14
15
16        BE IT REMEMBERED that, pursuant to Federal
17   Rules of Civil Procedure, the 30(b)(6) deposition of
18   HEATHER PAULSON taken on behalf of the Defendant was
19   taken before Victoria A. Guerrero, Certified
20   Shorthand Reporter, Registered Diplomate Reporter,
21   Registered Merit Reporter, and Certified Realtime
22   Reporter, on Friday, January 6, 2023, commencing at
23   the hour of 9:11 a.m., at Stoel Rives LLP, 760 SW
24   Ninth Avenue, Suite 3000, in the City of Portland,
25   County of Multnomah, State of Oregon.
```

Page 3

```
 1   A P P E A R A N C E S:
 2
 3   FOR THE PLAINTIFF:
 4   DLA PIPER LLP
     MARC MILLER
 5   1251 Avenue of the Americas
     New York, New York  10020
 6   P 212.335.4964  F 212.884.8464
     marc.miller@dlapiper.com
 7
 8
 9   FOR THE DEFENDANT:
10   DEBEVOISE & PLIMPTON LLP
     CHRISTOPHER S. FORD
11   919 Third Avenue
     New York, New York  10022
12   csford@debevoise.com
13
     DEBEVOISE & PLIMPTON LLP
14   KATE SABA
     650 California Street
15   San Francisco, California  94108
     ksaba@debevoise.com
16
17
18   ALSO PRESENT:
19   Kimberly Van Voorhis, Nike Assistant General Counsel
20   Mick Irwin, Videographer
21
22
23
24
25
```

Page 4

```
 1              INDEX TO EXAMINATION
 2       WITNESS:  HEATHER PAULSON
 3
 4   EXAMINATION:                     PAGE   LINE
     By Mr. Ford                       9      9
 5
 6              * * *
```

Page 5

```
 1              INDEX TO EXHIBITS
 2              HEATHER PAULSON
 3              Nike vs. StockX
 4              Friday, January 6, 2023
 5       Victoria A. Guerrero, CSR, RPR, RMR, CRR
 6
     MARKED         DESCRIPTION          PAGE  LINE
 7   Exhibit 1   Notice of Deposition of Nike,  14   17
                 Inc. (No Bates)
 8
     Exhibit 2   Plaintiff Nike, Inc.'s         15    1
 9               Objections and Responses to
                 StockX LLC's Rule 30(b)(6)
10               Deposition Notice (No Bates)
11   Exhibit 3      email chain with attachment re  113  10
                        ; NIKE0035610
13   Exhibit 4      Attachment to Exhibit 3, slide   113  13
                 deck titled       Feb 2019;
14               NIKE0035611 through 35650
15   Exhibit 5      Email chain re StockX;          182   3
                 NIKE0037904 and 37905
16
     Exhibit 6      Email with attachment re        202   6
17                                ; NIKE0036668
18
     Exhibit 7      Attachment to Exhibit 6, Slide  202   9
19               deck titled
                             April 2019;
                 NIKE0036670 through 36733
21
     Exhibit 8   Email chain with attachment re     230   1
22               Pre-read:
                              Brainstorm;
23               NIKE0037338
24
25      (EXHIBITS CONTINUE NEXT PAGE.)
```

2 (Pages 2 - 5)

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 74
1  MR. MILLER: Objection to form.
2  THE WITNESS: I think that was a little
3  bit ▮▮▮▮▮
...
9  BY MR. FORD:
10  Q  I see. ▮▮▮
13  MR. MILLER: Objection to form.
14  THE WITNESS: ▮▮▮
18  BY MR. FORD:
19  Q  Sure. ▮▮▮

Page 75
1  ▮▮▮
2  MR. MILLER: Objection to form.
3  THE WITNESS: ▮▮▮
6  BY MR. FORD:
7  Q  Got it. ▮▮▮
11  MR. MILLER: Objection to form.
12  THE WITNESS: ▮▮▮

Page 76
1  ▮▮▮
2  MR. MILLER: Objection to form.
3  THE WITNESS: I don't know. The data
4  scientists did that.
5  BY MR. FORD:
6  Q  That's totally fine. I just wanted to
7  understand.
8  ▮▮▮
13  Q  What is Valiant Labs?
14  MR. MILLER: Objection to form.
15  THE WITNESS: Valiant Labs is an
16  innovation accelerator within Nike who looks
17  for new business opportunities for us.
18  BY MR. FORD:
19  Q  And was Valiant Labs acquired by Nike or
20  was it just the name of a group that was created
21  within Nike?
22  MR. MILLER: Objection to form.
23  THE WITNESS: The name of a group that was
24  created within Nike.
25  ///

Page 77
1  BY MR. FORD:
2  Q  And do you know when Valiant Labs was
3  created?
4  A  No.
5  Q  When, during your time at Nike, did you
6  first work with Valiant Labs?
7  MR. MILLER: Objection to form.
8  THE WITNESS: That's a good question.
9  Long time ago.
10  BY MR. FORD:
11  Q  So they've been around for a long time?
12  A  They've been around for a long time.
13  Q  ▮▮▮

20 (Pages 74 - 77)

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Page 78

```
12    A    Isaiah was the entrepreneur in residence
13    who led the project.
14    Q    And that's Isaiah Steinfeld?
15    A    Yes.
16    Q    Do you know when the ▮▮ project began?
17    A    Yes.  In 2017.
18    Q    And when you describe ▮▮
      ▮▮▮▮▮▮▮▮▮▮ what does that mean?
```

Page 79

```
1          MR. MILLER:  Objection to form.
2          THE WITNESS:  ▮▮▮▮▮▮▮▮▮▮
           ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4     BY MR. FORD:
5     Q    That's fine.  ▮▮▮▮▮▮▮▮

22    Q    And is Mr. Steinfeld still a Nike employee?
23    A    No.
24    Q    When did he leave the company?
25    A    I don't know.
```

Page 80

```
1     Q    Do you know why he left the company?
2     A    I don't.
3     Q    When was the last time you spoke to
4     Mr. Steinfeld, if you recall?
5     A    I don't recall.  He sent me a good-bye
6     email, but I don't recall.
7     Q    Do you know where he went after leaving
8     Nike?
9     A    To a start-up.
10    Q    Do you know the name?
11    A    No.
12    Q    And haven't spoken to him since the
13    good-bye email?
14    A    No.
15    Q    So why was it important -- sorry.
16    Withdrawn.  Let me start that again.
```

Page 81

```
1     BY MR. FORD:
2     Q    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
```



21 (Pages 78 - 81)

Veritext Legal Solutions
212-267-6868    www.veritext.com    516-608-2400

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY



Page 82

1 █
██
██
██
██
██
██
██
██
10   MR. MILLER:  Objection to form.
11   THE WITNESS: █
██
██
██
██
██
██
██
██
██
██
██
██
██

Page 83

1 █
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
25   ///

Page 84

1   BY MR. FORD:
2   Q   █
██
██
██
██
6       MR. MILLER:  Objection to form.
7       THE WITNESS: █
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██
██

Page 85

1 █
██
██
██
██
██
██
██
██
██
██
██
13   A   That was the vision.
14   Q   Did the vision succeed?
15       MR. MILLER:  Objection to form.
16       THE WITNESS:  The program has been shut
17   down.
18   BY MR. FORD:
19   Q   When was the program shut down?
██
██
██
██
██
25       MR. MILLER:  Objection to form.

22 (Pages 82 - 85)

Page 86

1   THE WITNESS: As such, the ▮▮▮ team
2   moved on to something else. Different things.
3   BY MR. FORD:
4   Q   When you say they moved on to something
5   else, did they move on to the same project under a
6   different name or the team scattered to different
7   unrelated projects?
8       MR. MILLER: Objection to form.
9       THE WITNESS: It was not the same project
10  under a different name and the team ended up in
11  different places.
12  BY MR. FORD:
13  Q   Why did Nike shut down the ▮▮▮ program?
14      MR. MILLER: Objection to form.
15      THE WITNESS: Actually, I don't have the
16  details on that. I don't know why we moved
17  away -- I don't know why we moved away from the
18  ▮▮▮ program.
19  BY MR. FORD:
20  Q   Do you know who would know?
21  A   Isaiah.
22  Q   Did Isaiah make the decision to shut down
23  the ▮▮▮ program or was it a direction from someone
24  more senior in the company?
25      MR. MILLER: Objection to form.

Page 87

1       THE WITNESS: I don't know.
2   BY MR. FORD:
3   Q   Other than Isaiah, is there anyone who
4   might know why Nike moved away from the ▮▮▮
5   program?
6       MR. MILLER: Objection to form.
7       THE WITNESS: The Brand Protection team
8   might.
9   BY MR. FORD:
10  Q   And that's Mr. Pallets' team, Joe Pallets'
11  team?
12      MR. MILLER: Objection to form.
13      THE WITNESS: I don't know. Probably.
14  He's on that team.
15  BY MR. FORD:
16  ▮▮▮
17  ▮▮▮
18  ▮▮▮
19      MR. MILLER: Objection to form.
20      THE WITNESS: "Need approval." The
21  Valiant team, when they're doing things that
22  aren't consumer-facing with the brand, is
23  generally empowered to move forward. They test
24  a lot of things. And they shut down a lot of
25  things or shift or rebrand a lot of things.

Page 88

1   ▮▮▮
2   ▮▮▮
3   ▮▮▮
4   ▮▮▮.
5   BY MR. FORD:
6   Q   Just for the record, what's Hannah's last
7   name?
8   A   Jones.
9   Q   And did Hannah report to Isaiah?
10  A   No. She led all of Valiant across --
11  across the entrepreneurs and residents.
12  Q   I see. So was it vice versa, Isaiah
13  reported up to Hannah?
14      MR. MILLER: Objection to form.
15      THE WITNESS: Reported to someone up to
16  Hannah.
17  BY MR. FORD:
18  Q   Is Hannah still with Nike?
19  A   No.
20  Q   Do you know when she left the company?
21  A   No.
22  Q   So other than Hannah, are you aware of
23  ▮▮▮
24  ▮▮▮
25      MR. MILLER: Objection to form.

Page 89

1       MR. FORD: Sorry. Let me rephrase the
2   question.
3   BY MR. FORD:
4   Q   Do you know who within Nike gave approval
5   for Valiant Labs to ▮▮▮
6   ▮▮▮
7   A   No.
8   Q   Do you know who would know the answer to
9   that question?
10      MR. MILLER: Objection to form.
11      THE WITNESS: No.
12  BY MR. FORD:
13  Q   ▮▮▮
14  which we'll get to, what did Valiant Labs do to
15  develop the ▮▮▮ project?
16      MR. MILLER: Objection to form.
17      THE WITNESS: ▮▮▮
18  ▮▮▮
19  ▮▮▮
20  ▮▮▮
21  ▮▮▮
22  ▮▮▮
23  ▮▮▮
24  BY MR. FORD:
25  Q   So take those in turn, what is the

```
                                                    Page 262                                                    Page 264
 1   ██████████ We were not piloting that in any way.      1       October -- China started shutting down, right?
 2   So it seems like a generous heading.                  2       I mean, it was months later.
 3   ████████████████████████████████████                  3   BY MR. FORD:
     ████████████████████████████████████████              4       Q   Of 2019?
     ████████████████████████████████████████              5       A   Of 2019.  So sometime in that time frame it
     ██████████████████████████████                        6   was decided that this wasn't a priority anymore.
 7       A   I think that was the intent, was to do that  7       Q   And why did Nike -- why did Nike decide
 8   before we defunded that program.  ██████████████      8   that this wasn't a priority anymore?
     ████████████████████████████████████████████          9           MR. MILLER:  Objection to form.
     ████████████████████████████████████████             10           THE WITNESS:  I think it's just a
     ████████████████████████████████████                 11       combination of as you go through budgeting
     ████████████████████████████████████████             12       iterations and look at other opportunities, it
     ████████████████████████████████████                 13       fell off the list.
     ██████████████████                                   14   BY MR. FORD:
15       Q   Okay.  And then if you look on some of the   15       Q   Did Nike -- sorry.  Let me rephrase that.
16   subsequent slides, I see, you know, for example,     16           What is Nike's -- sorry.  Let me start
17   slide 18, slide 19, there's a couple blue boxes that 17   again.
18   seem to be instructions about editing; is that       18           Does Nike have an annual or periodic
19   right?                                               19   budgeting process?
20       A   Yes.  That's why it looks like it's the      20           MR. MILLER:  Objection to form.
21   current work in progress version that Daniel was     21           THE WITNESS:  Yes.  Both.
22   going to take to DJ's one-on-one.  He wouldn't have  22   BY MR. FORD:
23   brought that to an executive audience.  So it was    23       Q   What is the sort of periods during which
24   notes on how to improve the screen shots for the     24   Nike goes through budgeting?
25   deck.                                                25           MR. MILLER:  Objection to form.

                                                    Page 263                                                    Page 265
 1       Q   So there would have been a final version of  1           THE WITNESS:  It feels like constantly.
 2   this deck where these comments would have been        2       Our fiscal year is June through May.  ████████
 3   resolved and removed?                                 3   ████████████████████████████████████████████
 4           MR. MILLER:  Objection to form.               4   ████████████████████████████████████████████████
 5           THE WITNESS:  Yes.  There should have been    5   ████████████████████████████████████████████████
 6       a final version of this deck.  Although, at       6   ██████████████████████████████████████
 7       some point, as I said, we decided to move away    7   ████████████████████████████████████████████
 8       from this.  But I don't -- I don't remember       8   ████████████████████████████████████████████████
 9       when that was.                                    9   ████████████████████████████████████████████████
10   BY MR. FORD:                                         10   ████████████████████████████████████████████████████
11       Q   ████████████████████████████████████         11   ████████████████████████████████████████████████
12   ████████████████████████████████████████             12   ████████████████████████████████████████████████
13       A   No.                                          13   ████████████████████████████████████████████████
14   ████████████████████████████████████████             14   ████████████████████████████████
15   ████████████████████████████████████████████████     15   ██████████████████████
16   ██████████████████████                               16   ████████████████████████████████████
17   ██████████████████████████                           17   ██████████████
18   ████████████████████████████████████████             18   ████████████████████████████████████████████████
19   ██████████████████████████████████████               19   ████████████████████████████████████████████████
20   ████████████████████████████                         20   ██████████████████████████████████████?
21   ████████████████████████████████████████████████     21           MR. MILLER:  Objection to form.
22   ██████████████████████                               22           THE WITNESS:  Decision, to me, is
23           MR. MILLER:  Objection to form.              23       executive team says this is not strategically
24           THE WITNESS:  Pre-COVID.  So sometime        24       aligned.  That's a decision.  This isn't quite
25       between May and, you know, September,            25       like that.  This is an, oh, it's interesting,
```

                                                                67 (Pages 262 - 265)

Page 286

1  Q   And when -- during what time periods did
2  you make those purchases on Farfetch?
3  A   The past -- over the past three years, up
4  until I have something in my cart right now.
5  Q   Okay.  Why don't we take a break.  I might
6  be done, but I want to just have a chance to talk.
7  You can go buy those shoes on Farfetch if you want.
8      THE VIDEOGRAPHER:  Off the record.  It's
9  5:00.
10     (Off the record.)
11     THE VIDEOGRAPHER:  It's 5:13.  We are back
12 on the record.
13     MR. FORD:  Ms. Paulson, thank you for your
14 time today.  I don't have any further questions
15 for you at the moment.
16     I do want to note for the record that we
17 have a few concerns about 30(b)(6) preparation
18 and document production based on Ms. Paulson's
19 testimony today which we'll raise with counsel.
20     And so we're not going to conclude the
21 deposition until those concerns are resolved.
22 But with that, I have nothing further today.
23     MR. MILLER:  What are your concerns?  Can
24 you articulate them?
25     MR. FORD:  Sure.  So Ms. Paulson testified

Page 287

1  repeatedly that there were aspects of
2  presentations that she was unable to explain
3  that were plainly within the scope of the
4  30(b)(6) topic.
5      She spoke to individuals who would have
6  had knowledge as to the content of those
7  presentations and did not get that knowledge
8  and information from those individuals in
9  advance of her deposition.
10     MR. MILLER:  Well, I strongly disagree
11 with that.  I think Ms. Paulson was well
12 prepared, spoke with the individuals at the
13 company that had the relevant information.
14     And if it's your position she couldn't
15 answer a single question about a single bullet
16 on a single slide, I think that's totally
17 unreasonable and not at all deficient, but I
18 suppose we'll take it up when you want to raise
19 it.  We certainly consider this deposition to
20 be closed and we'll go from there.
21     MR. FORD:  Okay.  We're off the record.
22     THE VIDEOGRAPHER:  Off the record at
23 5:15 p.m.
24     (Proceedings ended at 5:15 p.m.)
25     (Signature reserved.)

Page 288

1           REPORTER'S CERTIFICATE
2      I, VICTORIA A. GUERRERO, Oregon Certified Shorthand
3  Reporter, Registered Diplomate Reporter, Registered Merit
4  Reporter, Certified Realtime Reporter, do hereby certify
5  that, pursuant to Federal Rules of Civil Procedure, HEATHER
6  PAULSON appeared before me at the time and place mentioned
7  in the caption herein; that the witness was, by me, first
8  duly sworn/affirmed under oath and examined upon oral
9  interrogatories propounded by counsel;
10     that said examination together with the testimony of
11 said witness was taken down by me in stenotype and
12 transcribed through computer-aided transcription; I further
13 certify that I am not a relative or employee of any attorney
14 of the parties, nor financially interested in the action;
15     and the foregoing transcript, pages 1 through 287,
16 review requested by the witness or a party, constitutes a
17 full, true, and correct record of such testimony adduced and
18 oral proceedings had and of the whole thereof.
19     WITNESS MY HAND AND DIGITAL SIGNATURE this Tuesday,
20 January 10, 2023.
21
22   _____
23 Victoria A. Guerrero, CSR, RDR, RMR, CRR
   Oregon CSR No. 14-0428  (exp. 6-30-2023)
24 Washington CCR No. 3293  (exp. 3-15-2023)
   California CSR No. 8370  (exp. 3-15-2023)
25 Hawaii CSR No. 490     (exp. 12-31-2023)

Page 289

1  MARC MILLER
2  marc.miller@dlapiper.com
3          January 11, 2023
4  RE:   Nike, Inc. v. Stockx LLC
5  1/6/2023, Heather Paulson (#5593361)
6      The above-referenced transcript is available for
7  review.
8      Within the applicable timeframe, the witness should
9  read the testimony to verify its accuracy. If there are
10 any changes, the witness should note those with the
11 reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13 Deponent and Errata and return to the deposing attorney.
14 Copies should be sent to all counsel, and to Veritext at
15 cs-ny@veritext.com.
16
17  Return completed errata within 30 days from
18 receipt of testimony.
19  If the witness fails to do so within the time
20 allotted, the transcript may be used as if signed.
21
22        Yours,
23        Veritext Legal Solutions
24
25