# Exhibit 161

*Redacted Public Version*

Page 1

1              UNITED STATES DISTRICT COURT
2           FOR THE NORTHERN DISTRICT OF NEW YORK
3                       ---oOo---
4
5   NIKE, INC.,                  )
                                 )
6           Plaintiff,           )
                                 )
7   vs.                          )  No. 1:22-cv-00983-VEC
                                 )
8   STOCKX LLC,                  )
                                 )
9           Defendant.           )
    _____)
10
11
12        H I G H L Y   C O N F I D E N T I A L
13             OUTSIDE ATTORNEYS' EYES ONLY
14         VIDEOTAPED DEPOSITION OF JOHN LOPEZ
15              SAN FRANCISCO, CALIFORNIA
16             THURSDAY, FEBRUARY 23, 2023
17
18
19
20
21  STENOGRAPHICALLY REPORTED BY:
22  ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR ~
23  CSR LICENSE NO. 9830
24  JOB NO. 5688745
25

Page 2

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF NEW YORK
 3                     ---oOo---
 4
 5
    NIKE, INC.,          )
 6                       )
          Plaintiff,     )
 7                       )
    vs.                  )  No. 1:22-cv-00983-VEC
 8                       )
    STOCKX LLC,          )
 9                       )
          Defendant.     )
10  _____)
11
12
13
14       Videotaped Deposition of John Lopez, taken
15  on behalf of the Plaintiff, Pursuant to Notice, on
16  Thursday, February 23, 2023, beginning at
17  9:27 a.m., and ending at 6:55 p.m., before me,
18  ANDREA M. IGNACIO, CSR, RPR, CCRR, CRR, CLR ~
19  License No. 9830.
20
21
22
23
24
25
```

Page 3

```
 1  APPEARANCES:
 2
 3    FOR THE PLAINTIFF:
 4      DLA PIPER
 5      By:  MARC E. MILLER, Esq.
 6           GABRIELLE VELKES
 7      1251 Avenue of the Americas, 27th Floor
 8      New York, New York 10020
 9      212.335.4500
10      marc.miller@us.dlapiper.com
11
12    FOR THE DEFENDANTS:
13      By:  CHRISTOPHER S. FORD, Esq.
14           MAI-LEE PICARD, Esq.
15      650 California Street
16      San Francisco, California 94108
17      415.738.5705
18      csford@debevoise.com
19
20    ALSO PRESENT:  Peter Yaroschuk, Videographer
21           Kevin Adams, StockX LLC
22                ---oOo---
23
24
25
```

Page 4

```
 1                    I N D E X
 2
 3  WITNESS:  John Lopez
 4
 5  EXAMINATION                              PAGE
 6  BY MR. MILLER                              9
 7  BY MR. FORD                              296
 8
 9              E X H I B I T S
10  EXHIBIT                                  PAGE
11  Exhibit 1   Plaintiff Nike, Inc.'s Amended   48
12              Notice of Deposition of John Lopez
13  Exhibit 2   Defendant's Objections and       48
14              Responses to Plaintiff's Second
15              Set of Interrogatories
16  Exhibit 3   Seasonal Authenticator at StockX 59
17  Exhibit 4   Authenticator at StockX          60
18              West Caldwell, NJ
19  Exhibit 5   Team Leader, Authentication and  60
20              Quality Assurance at StockX
21  Exhibit 6   Page Vault, Bates NIKE0006785 -  90
22              '89
23  Exhibit 7   Job Descriptions Sneaker        115
24              Authenticator I, II, III, Bates
25              STX0114754 - '57
```

Page 5

```
 1              E X H I B I T S
 2  EXHIBIT                                  PAGE
 3  Exhibit 8   Sneaker Authentication Standard 132
 4              Operating Procedure, Bates
 5              STX0752605 - '42
 6  Exhibit 9   Planet Nike Deck, Bates        179
 7              STX02033509 - '673
 8  Exhibit 10  Nike Dunk Low Retro White Black 197
 9              (2021), Bates STX0069511 - '24
10  Exhibit 11  Jordan 1 High OG SP Fragment   204
11              design x Travis Scott, Bates
12              STX0058653 - '69
13  Exhibit 12  Nike SB Dunk Low What The      204
14              Paul - Fake Comparison, Bates
15              STX0058670 - '93
16  Exhibit 13  12-18-20 Email Re: Auth App    209
17              Updates/Grateful Dead SB Breakdown
18              Bates STX0106086 - '87
19  Exhibit 14  10-18-21 Email Re: Weekly      216
20              Sneaker Product Update - 10/18
21              Bates STX0106315 - '16
22  Exhibit 15  2-1-22 - 3-1-22 Short Message  224
23              Report, Bates STX0076158 - '71
24  Exhibit 16  Authentication Project         240
25              Metrics/Data, Bates STX0018010 - '14
```

Page 6

| | EXHIBITS | |
|---|---|---|
| EXHIBIT | | PAGE |
| Exhibit 17 | 3-22-21 - 3-28-21 Outline of Conversations, Bates STX0545514 - '30 | 250 |
| Exhibit 18 | Authentication Failure Comms Policy, Bates STX0169271 - '72 | 265 |
| Exhibit 19 | 1-4-22 Email, Subject: Fake - return, ref for John to look into seller and checker, Bates ZK_NIKE_010019 - '29 | 271 |
| Exhibit 20 | 1-5-22 Email Re: Fake - return, ref for John to look into seller and checker, Bates ZK_NIKE_010032 | 271 |
| Exhibit 21 | 3-31-22 Email Re: Lots warning signs, Bates ZK_NIKE_010404 - '24 | 277 |
| Exhibit 22 | 3-31-22 Email Re: Lots warning signs, Bates ZK_NIKE_010428 - '29 | 277 |
| Exhibit 23 | 12-18-20 Email Re: ? Bates ZK_NIKE_ 007765 - '75 | 277 |
| Exhibit 24 | 12-22-20 Email Re: ? Bates ZK_NIKE_ 007780 - '81 | 277 |
| Exhibit 25 | 8-2-22 Email Re: Instagram post Bates STX0772942 - '45 | 285 |

---oOo---

Page 7

DEPOSITION PROCEEDINGS

THURSDAY, FEBRUARY 23, 2023

---oOo---

THE VIDEOGRAPHER: Good morning. We are going on the record at 9:27 a.m. on February 23rd, 2023.

Please note that microphones are sensitive and may pick up whispering, private conversations, and cellular interference.

Please turn off all cell phones or place them away from the microphones, as they can interfere with the deposition audio.

Audio and video recording will continue to take place unless all parties agree to go off the record.

This is Media 1 of the video-recorded deposition of John Lopez. Taken by counsel for Plaintiff.

In the matter of Nike Incorporated versus StockX LLC. Filed in the United States District Court for the Southern District of New York. Case number is 122-CV-00983 VEC.

This deposition is being held at 555 Mission

Page 8

Street, Suite 2400, San Francisco, California 94105.

My name is Peter Yaroschuk from the firm Veritext. I am the videographer.

The court reporter is Andrea Ignacio from the firm Veritext.

I am not related to any party in this action, nor am I financially interested in the outcome.

Counsel and all present, please now state your appearances and affiliations for the record.

If there are any objections to proceeding, please state them at the time of your appearance, beginning with the noticing attorney.

MR. MILLER: Good morning. This is Marc Miller from DLA Piper, on behalf of Plaintiff Nike Inc.

And I'm joined by Gabby Velkes, also of DLA Piper.

MR. FORD: Christopher Ford, Debevoise & Plimpton, on behalf of defendant StockX.

With me are my colleague Mai-Lee Picard, and Kevin Adams with in-house counsel at StockX.

THE VIDEOGRAPHER: Thank you.

Will the court reporter please swear in the witness.

Page 9

JOHN LOPEZ,
having been first duly sworn
by the Certified Court Reporter,
testified as follows:

EXAMINATION

BY MR. MILLER:

Q   Good morning, Mr. Lopez.

A   Good morning.

Q   My name is Marc Miller. I represent the plaintiff Nike in this case. Thank you for coming in.

So I just want to go over a couple of ground rules that your counsel may have advised you of.

First, let me ask you: Have you ever had your deposition taken before?

A   No, I have not.

Q   Okay. So our purpose here is for me to ask you some questions. You need to answer those questions to the best of your ability by telling the truth, the whole truth, and nothing but the truth, as you just took an oath to do.

A   Sure.

Q   If you don't hear a question that I've asked, please let me know, and I'll be happy to repeat it.

If don't understand my question for some

3 (Pages 6 - 9)



Page 230

Page 231

Page 232

Page 233

18    Q    If you'd look at Exhibit 15 in front of you,
19    and flip to page 6 -- sorry -- '76163.
20    A    Okay.
21    Q    At the top of the page is a message from
22    someone named Wendi Zhu.
23         Do you see that?
24    A    I do, yes.
25    Q    Do you know who Ms. Zhu is?

|  |  |
|---|---|
| Page 270<br>1  A  I would review the photographs for potential<br>2  returns.<br>3  Q  Who in the account management team set you up<br>4  with Mr. Malekzadeh to help him with these returns?<br>5  A  From my memory, it was Russ Amidon who<br>6  initiated the contact.<br>7  Q  Is Mr. Malekzadeh the only StockX buyer that<br>8  the account management team has ever set you up to<br>9  personally handle questions about returns?<br>10  A  Yes, it is.<br>11  Q  Did you find it odd that Mr. Amidon set you<br>12  up with Mr. Malekzadeh to communicate directly with<br>13  him about suspected fake products that he purchased<br>14  through the StockX platform?<br>15  A  At the time, no, I did not find it odd, just<br>16  because of the volume that Mr. Malekzadeh purchased<br>17  from us.<br>18  Q  Have you ever communicated with any other<br>19  StockX consumers directly about suspected fake<br>20  products purchased through the platform other than<br>21  Mr. Malekzadeh?<br>22      MR. FORD:  Objection to form.<br>23      THE WITNESS:  No, I have not.<br>24      MR. MILLER:  Let's mark that one first.<br>25  /// | Page 272<br>1  So do you recognize this document?<br>2  A  I do, yes.<br>3  Q  And what is this document?<br>4  A  This appears to be an e-mail between myself,<br>5  the account manager James, and Malekzadeh.<br>6  Q  James Schumacher is an account manager at<br>7  StockX?<br>8  A  He is, yes.<br>9  Q  Was he also working on Mr. Malekzadeh's<br>10  account?<br>11  A  He was, yes.<br>12  Q  Okay.  And so Mr. Malekzadeh is sending you<br>13  and Mr. Schumacher an e-mail on January 4th, 2022.<br>14  The subject is:<br>15      (As read):<br>16      "Fake - return, ref for John to look into<br>17  seller and checker."<br>18      What does that mean?<br>19  A  I don't know exactly what is meant there in<br>20  the subject.<br>21  Q  That's you, "John"; right?<br>22  A  That is, yes.<br>23  Q  Do you know what Mr. Malekzadeh was trying to<br>24  communicate by saying that?<br>25  A  I don't know exactly, no. |
| Page 271<br>1      (Document marked Exhibit 19<br>2       for identification.)<br>3      MR. MILLER:  All right.<br>4  Q  Mr. Lopez, you've been handed a document<br>5  that's been marked as Exhibit 19.<br>6      MR. FORD:  Are we marking all of this as<br>7  Exhibit 19?<br>8      MR. MILLER:  No.  I was going to mark the<br>9  next one as 20.<br>10      Did you hand that to them already?<br>11      MS. VELKES:  Uh-huh.<br>12      MR. MILLER:  Okay.  Well, then we might as<br>13  well just mark it.<br>14      MS. VELKES:  Oh, I'm sorry.<br>15      MR. MILLER:  So Angela, can you mark this one<br>16  as 20.<br>17      (Document marked Exhibit 20<br>18       for identification.)<br>19      MR. MILLER:  All right.  Sorry for the<br>20  confusion.<br>21  Q  So Exhibit 19 is bearing Bates<br>22  No. ZKNIKE010019, and Exhibit 20 is ZKNIKE010032.<br>23      Do you see that?<br>24  A  I do, yes.<br>25  Q  Okay.  Let's start with No. 19, please. | Page 273<br>1  Q  Did he want you to look into who the seller<br>2  of this particular order was?<br>3  A  Could be.  But again, I can't -- I can't<br>4  speculate on that.<br>5  Q  Okay.  And what does he mean by "checker"?<br>6      Is that another word for authenticator?<br>7  A  I don't know what he means by "checker."  I<br>8  initially thought that was a typo.<br>9  Q  Okay.  In the body of his e-mail, he says:<br>10      (As read):<br>11      "Bad fake.  Laces, shouldn't be.  Label all<br>12  weekend.  Shape wrong.  Stitching real bad color on<br>13  tongue tag wrong etc."<br>14      Do you know what any of that means?<br>15  A  From his perspective, it seems like he<br>16  received a suspected inauthentic pair.<br>17  Q  And he attaches some photographs to this<br>18  e-mail?<br>19  A  Yes.<br>20  Q  Okay.  And did you receive these photographs<br>21  and view them when Mr. Malekzadeh sent you this?<br>22  A  I did, yes.<br>23  Q  Okay.  And did you respond?<br>24  A  I did, yes.<br>25  Q  Okay.  And that's what we see in Exhibit 20; |

|  |  |
|---|---|
| Page 282 | Page 284 |

Page 282

1     MR. MILLER: Is that right?
2     The pages seem out of order.
3     MS. VELKES: Oh, they are. It's at the back.
4  This is the first page.
5     MR. MILLER: Okay. So the first page is
6  '7765; is that right?
7     And the last page is what?
8     MS. VELKES: '775.
9     MR. MILLER: Okay.
10    THE WITNESS: I don't have a 7 -- I'm sorry.
11 Yes, I do.
12    MR. MILLER: Yeah. Sorry.
13    THE WITNESS: Okay.
14    MR. MILLER: This document printed pretty
15 strangely. I don't know why. I apologize for that.
16    Q  But it looks like the e-mail to which these
17 photographs were attached appears at page '7765.
18    Do you see that?
19    A  Yes, I do.
20    Q  Okay. So do you recognize this document?
21    A  I do, yes.
22    Q  And what is this document?
23    A  This is an e-mail thread from Zadeh Kicks to
24 myself and Russ.
25    Q  And then there are photographs attached to

Page 283

1  this e-mail as well?
2     A  Yes.
3     Q  The subject is "?".
4     Do you know what that's supposed to mean?
5     A  No, I do not.
6     Q  And then in the body of the e-mail, there is
7  a series of numbers, 16906735-16806494.
8     Do you know what that is?
9     A  I'm assuming that is the order number.
10    Q  And did you review this e-mail when
11 Mr. Malekzadeh sent it to you?
12    A  I did review it, yes.
13    Q  And did you respond to it?
14    A  It looks like I did, yes.
15    Q  And is that response captured in Exhibit 24,
16 which is bearing Bates No. ZK_NIKE_007780 to '81?
17    A  Yes.
18    Q  Okay. So your initial response to
19 Mr. Malekzadeh was:
20    (As read):
21    "These look good. No red flags on these."
22    Right?
23    A  That's what it appears to be, yes.
24    Q  And he responds to you:
25    (As read):

Page 284

1     "What about the stitch line under the
2  insole?"
3     Do you know what he's referring to there?
4     A  Yes. So it appears to be a -- a misplaced
5  stitch on the insole there on the left shoe.
6     Q  Which page are you looking at?
7     Could you just identify it for the record by
8  the Bates number.
9     A  Sure. It is '007768.
10    And I can circle that as well.
11    (Witness complies.)
12    Q  And you respond to Mr. Malekzadeh pointing
13 that stitch out to you by saying:
14    (As read):
15    "Normal Nike defects. Mass produced shoe."
16    What did you mean by that?
17    A  What I mean by that is, this particular shoe
18 was released in high quantities. So there are
19 examples where, you know, the quality or the standards
20 will not be perfect on each one.
21    Q  How do you know that?
22    A  I know that from my personal experience with
23 this particular shoe as well as my experience with
24 StockX.
25    Q  And what is this particular shoe?

Page 285

1     A  This is a Mocha Air Jordan 1.
2     Q  And you believe that the stitch line under
3  the insole that Mr. Malekzadeh pointed out to you is a
4  manufacturing defect?
5     A  No, I wouldn't consider it that, no.
6     Q  So then what did you mean by:
7     "Normal Nike defects. Mass produced shoe."
8     A  What I meant by that, it's -- I would
9  consider it a passable defect.
10    Q  What's a passable defect?
11    A  That is something that is maybe slightly
12 different or slightly -- slightly different from other
13 shoes or other similar models, but it does pass our
14 StockX standard.
  [redacted]
24    (Document marked Exhibit 25
25    for identification.)

Page 298

1   THE WITNESS:  No, I do not.
2   MR. FORD:  Q.  Similarly, if you'd turn with
3  me to page 6 and 7.
4       Are you aware of what Mr. Odeh does or does
5  not know about the topics covered by Interrogatory
6  No. 13, which appears on page 6 of this document?
7       MR. MILLER:  Objection to form.
8       THE WITNESS:  No, I do not.
9       MR. FORD:  Q.  And Mr. Melville, I think you
10 said you didn't know who that was at all; is that
11 right?
12    A   Correct.  I do not.
13    Q   So I think is -- is it also right that you
14 don't know what Mr. Melville knows or does not know
15 about the subject matter of Interrogatory No. 13 that
16 appears on page 6 of this document?
17       MR. MILLER:  Objection to form.
18       THE WITNESS:  I do not.
19       MR. FORD:  Okay.
20  [redacted]
21  [redacted]
22  [redacted]
23  [redacted]
24  [redacted]
25

Page 299

1  [redacted]
2  [redacted]
3  [redacted]
4  [redacted]
5  [redacted]
6  [redacted]
7  [redacted]
8  [redacted]
9  [redacted]
10 [redacted]
11 [redacted]
12      MR. FORD:  I've got nothing further.
13      MR. MILLER:  I don't have any questions
14 following your redirect.
15      But I will repeat the reservation to recall
16 Mr. Lopez to answer questions about information that
17 is not at all covered by privilege related to his
18 re-authentication of Mr. Kim's fake shoes that he
19 purchased from StockX.
20      MR. FORD:  And we consider this deposition
21 closed since there were no questions for which
22 Mr. Lopez was unable to provide an answer.  But that
23 will be up to the court if you take it there.
24      MR. MILLER:  I -- I disagree, Chris.  You
25 obstructed him from answering several questions the

Page 300

1  last few minutes.  So we'll deal with that in front of
2  the court.  And if we have to call back Mr. Lopez,
3  then so be it.
4       MR. FORD:  I -- I don't think a privilege
5  instruction -- a proper privilege instruction is
6  obstruction, but that's fine.
7       MR. MILLER:  Great.  We'll let the court
8  decide that one.  Thanks.
9       THE VIDEOGRAPHER:  May we conclude?
10      MR. FORD:  Yes.
11      THE VIDEOGRAPHER:  This concludes today's
12 deposition of John Lopez.  The number of media used
13 was seven.
14      The time is 6:55 p.m.  We are off the record.
15      (WHEREUPON, the deposition ended at
16       6:55 p.m.)
17             ---oOo---

Page 301

1       DECLARATION UNDER PENALTY OF PERJURY
2
3       I, John Lopez, do hereby certify under
4  penalty of perjury that I have read the foregoing
5  transcript of my remote deposition, taken on
6  February 23, 2023, that I have made such
7  corrections as appear noted herein in ink;
8  initialed by me; that my testimony contained
9  herein, as corrected,  is true and correct.
10
11  DATED this ____ day of _____, 2023, at
12  _____.
13
14      _____
15          SIGNATURE OF WITNESS

76 (Pages 298 - 301)

DocuSign Envelope ID: D76033C8-FE77-45F4-8F77-1BC36ADFA851

**Deposition Date: 2/23/2023**
**Deponent: John Lopez – Errata Sheet**
**Case Name: *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC)**

| **Page(s): Line(s)** | **Now Reads** | **Should Read** | **Reason** |
|---|---|---|---|
| 12:4 | employee team member | employee **or** team member | Transcription Error |
| 33:9 | **a** numerous **of** things | numerous things | Clarification |
| 103:4 | to base **it or represent** | to base **around that** | Transcription Error |
| 103:11-12 | products that we **received** | products that we **receive** | Transcription Error |
| 104:18 | we do **pull** data | we do **hold** data | Transcription Error |
| 106:17 | a specific product has **gone** | a specific product has **gotten** | Transcription Error |
| 111:12 | any quality issue | any quality **issues** | Transcription Error |
| 122:4 | I can speak **in** authentication | I can speak **on** authentication | Transcription Error |
| 134:10 | I cannot **cite** | I cannot **say** | Transcription Error |
| 144:1 | **That** is used | **It** is used | Transcription Error |

DocuSign Envelope ID: D76033C8-FE77-45F4-8F77-1BC36ADFA851

**Deposition Date:** 2/23/2023
**Deponent:** John Lopez – Errata Sheet
**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC)

| Page(s): Line(s) | Now Reads | Should Read | Reason |
|---|---|---|---|
| 148:23-24 | appear an inauthentic or **suspect an** inauthentic product | appear **in** an inauthentic or **suspected** inauthentic product | Transcription Error |
| 157:24-25 | I would say it is part of the **storytelling** if something is suspected inauthentic. | I would say it is part of the **story telling** if something is suspected inauthentic. | Transcription Error |
| 163:15 | authentic products would **come from** | authentic products would **smell like** | Clarification |
| 168:4 | Objection. | Objection **to form** | Transcription Error |
| 171:18 | ███████ | ███████ | Transcription Error |
| 180:17-18 | I'm **not --** going to direct you not to discuss | I'm going to direct you not to discuss | Clarification |
| 188:8-9 | shoes matching up**. Again**, **that's** the size and the style code is correct. | shoes matching up**, again**, **that** the size and the style code is correct. | Transcription Error |
| 210:18 | currently **on** practice | currently **in** practice | Transcription Error |
| 254:14 | **call** their SOP | **follow** their SOP | Transcription Error |

DocuSign Envelope ID: D76033C8-FE77-45F4-8F77-1BC36ADFA851

| **Deposition Date:** 2/23/2023<br>**Deponent:** John Lopez – Errata Sheet<br>**Case Name:** *Nike, Inc. v. StockX LLC*, No. 22 CV 983 (VC) | | | |
|---|---|---|---|
| **Page(s): Line(s)** | **Now Reads** | **Should Read** | **Reason** |
| 271:22 | No. **ZKNIKE010019**, and Exhibit 20 is **ZKNIKE010032**. | No. **ZK_NIKE_010019**, and Exhibit 20 is **ZK_NIKE_010032**. | Typographical Error |
| 275:12 | Just **this right here.** | Just**, say, this entire region.** | Transcription Error |
| 279:3 | Cool **Gray** Jordan 11 | Cool **Grey** Jordan 11 | Typographical Error |
| 280:11 | **on** towards the upper | towards the upper | Clarification |
| 280:21 | Cool **Gray** Jordan 11 | Cool **Grey** Jordan 11 | Typographical Error |

    I, John Lopez, do hereby certify under penalty of perjury that I have read the foregoing transcript of my deposition taken on February 23, 2023; that I have made such corrections as appear noted herein; and that my testimony as contained herein, as corrected, is true and correct.

DATED this 24th day of March, 2023.

*DocuSigned by: John Lopez Jr*
625C8D926A1F4E5...

John Lopez