# Exhibit 184

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2          FOR THE SOUTHERN DISTRICT OF NEW YORK

 3                       ---oOo---

 4

 5   NIKE, INC.,

 6              Plaintiff,

 7      vs.             CASE NO. 1:22-CV-00983-VEC

 8   STOCKX LLC,

 9              Defendant.
    _____

10

11

12       VIDEOTAPED DEPOSITION OF SARAH BUTLER

13            San Francisco, California

14             Tuesday, August 15, 2023

15

16

17

18

19

20

21

22

23   Stenographically Reported by:  Ashley Soevyn,
     CSR No. 12019
24   Job No. 5968272

25   Pages 1 - 224
```

Page 2

1  UNITED STATES DISTRICT COURT
2  FOR THE SOUTHERN DISTRICT OF NEW YORK
3  ---oOo---
4
5  NIKE, INC.,
6      Plaintiff,
7  vs.           CASE NO. 1:22-CV-00983-VEC
8  STOCKX, LLC,
9      Defendant.
   _____
10
11
12
13
14
15      Videotaped Deposition of
16  SARAH BUTLER, taken on behalf of the Plaintiff Nike,
17  Inc., Pursuant to Notice, at the offices of DLA
18  Piper, 555 Mission Street, San Francisco, California
19  beginning at 8:56 a.m. and ending at 4:51 p.m. on
20  Tuesday, August 15, 2023, before me, ASHLEY SOEVYN,
21  Certified Shorthand Reporter No. 12019.
22
23
24
25

Page 3

1  APPEARANCES:
2
3  FOR THE PLAINTIFF NIKE INC.:
4      DLA PIPER
5      BY: MARC E. MILLER
6      BY: GABRIELLE VELKES
7      Attorneys at Law
8      1251 Avenue of the Americas, 27th Floor
9      New York, New York 10020
10     marc.miller@dlapiper.com
11     gabrielle.velkes@dlapiper.com
12     (212) 335-4500
13
14 FOR THE DEFENDANT STOCKX LLC:
15     DEBEVOISE & PLIMPTON, LLP
16     BY: CHRISTOPHER S. FORD
17     BY: MAI-LEE PICARD
18     Attorneys at Law
19     650 California Street
20     San Francisco, California 94108
21     csford@debevoise.com
22     mpicard@debevoise.com
23     (415) 738-5705
24 Also Present:
25 Cassie Leet, the Videographer

Page 4

1           INDEX TO EXAMINATION
2  WITNESS: SARAH BUTLER
3
4
5  EXAMINATION BY:              PAGE
6  MR. MILLER                    7
7  MR. FORD                     220
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 5

1           INDEX TO EXHIBITS
2              SARAH BUTLER
3              NIKE V. STOCKX
4         Tuesday, August 15, 2023
5        Ashley Soevyn, CSR No. 12019
6  EXHIBIT NO.      DESCRIPTION          PAGES
7  Exhibit 1   Expert Rebuttal Report of Sarah    18
              Butler
8
   Exhibit 2   Expert Report of John L. Hansen   81
9
   Exhibit 3   Plaintiff Nike Inc's              157
10             Supplemental Responses and
               Objections to Defendant StockX
11             LLC's Third Set of
               Interrogatories
12
   Exhibit 4   Document titled "Buy & Sell       185
13             Authentic Sneakers"
14 Exhibit 5   Document Bates No. NIKE281 -      191
               NIKE287
15
16
17
18
19
20
21
22
23
24
25

2 (Pages 2 - 5)

Page 6

1  DEPOSITION PROCEEDINGS
2  August 15, 2023
3  -- --0o0---
4
5  THE VIDEOGRAPHER: Going on the record at
6  8:56 a.m. on August 15th, 2023.
7  Please note that the microphones are
8  sensitive and may pick up whispering and private
9  conversations. Audio and video recording will
10 continue to take place unless all parties agree to
11 go off the record.
12 This is Media Unit 1 of the video-recorded
13 deposition of Sarah Butler. Taken by counsel for
14 plaintiff in matter of Nike Inc., versus StockX
15 Inc., filed in the United States District Court for
16 Southern District of New York, Case No.
17 1:22-CV-00983-VEC.
18 The location of this deposition is 555
19 Mission Street, Suite 2400, San Francisco,
20 California 94105.
21 My name is Cassia Leet, representing
22 Veritext Legal Solutions and I'm the videographer.
23 The court reporter is Ashley Soevyn from
24 the firm Veritext Legal Solutions.
25 I'm not related to any party in this

Page 7

1  action nor am I financially interested in the
2  outcome. Would counsel and all present please state
3  your appearances and affiliations for the record,
4  beginning with the noticing attorney?
5  MR. MILLER: Good morning. Marc Miller
6  from DLA Piper, on behalf of Plaintiff Nike Inc.,
7  and I'm joined by my colleague Gabrielle Velkes.
8  MR. FORD: Good morning. Chris Ford,
9  Debevoise & Plimpton, on behalf of StockX. I'm
10 joined by my colleague Mai-Lee Picard.
11 THE VIDEOGRAPHER: Thank you. Will the
12 court reporter please swear in the witness.
13 THE REPORTER: Ma'am, can I please have
14 you raise your right hand? Do you solemnly state
15 that the testimony you are about to give in this
16 deposition will be the truth, the whole truth and
17 nothing but the truth?
18
19 THE WITNESS: I do.
20 THE STENOGRAPHIC REPORTER: Great. Thank
21 you.
22 EXAMINATION
23 BY MR. MILLER:
24 Q   Good morning, Ms. Butler.
25 A   Good morning.

Page 8

1  Q   How are you today?
2  A   I'm doing well. Thank you.
3  Q   Good. Ms. Butler, are you represented
4  today?
5  A   I have counsel here, yes.
6  Q   Okay. And that's Counsel sitting next to
7  you?
8  A   That's correct.
9  Q   Okay. Did you do anything to prepare for
10 today's deposition?
11 A   Yes.
12 Q   What did you do to prepare for today's
13 deposition?
14 A   I met with counsel who is here today,
15 briefly yesterday. I reviewed my report. I
16 reviewed the exhibits to my report. I reviewed the
17 portion of Dr. Simonson's report that is responsive
18 to my report. And I reviewed the portions of
19 Mr. Hansen's report that I cite in my report.
20 Q   You said you met yesterday briefly with
21 counsel?
22 A   Yes.
23 Q   Is that with Mr. Ford?
24 A   Yes.
25 Q   Anyone else?

Page 9

1  A   Mai-Lee as well.
2  Q   And for how long did you meet yesterday?
3  A   Just maybe around three hours.
4  Q   Other than yesterday's three-hour
5  meeting, did you have any other meetings with
6  counsel to prepare for today's deposition?
7  A   No.
8  Q   Any phone calls?
9  A   No.
10 Q   You've been deposed before, correct?
11 A   Yes.
12 Q   About how many times have you been
13 deposed?
14 A   Probably over 100.
15 Q   Okay. And you've testify at trial
16 before, correct?
17 A   Yes.
18 Q   How many times?
19 A   At trial, probably, maybe 15 or so times.
20 Q   In the matters for which you've been
21 designated as an expert, has a court ever found you
22 not qualified to serve as an expert report?
23 A   No.
24 Q   For the matters in which you've been
25 designated as an expert has the court ever found

3 (Pages 6 - 9)

```
                                                          Page 102
 1         to what extent consumer purchasing
 2         decisions were affected by the
 3         allegedly false claims.  And, I
 4         understand from counsel, that no other
 5         Nike expert submitted such a study."
 6      Do you see that?
 7   A  Yes.
 8   Q  And based on your earlier testimony am I
 9  understanding you correctly that you did not conduct
10  a consumer perception survey to evaluate or assess
11  whether or to what extent purchasing decisions were
12  affected by the allegedly false claims in this case?
13   A  I'm sorry.  You're asking, I did not?
14   Q  Yes.
15   A  No.  In fact, I did do a study to
16  evaluate the extent to which consumer purchasing
17  decisions would be affected by the allegedly false
18  claims.
19   Q  Okay.  That seems to be different than
20  what you told me earlier this morning when I asked
21  you whether you conducted any consumer perception
22  studies as part of your work in this case.  You said
23  no, correct?
24   A  Sorry.  So by consumer perception studies
25  in that context.
```

```
                                                          Page 103
 1   Q  Uh-huh.
 2   A  I believe we were talking about
 3  perceptions as to perceptions of a particular
 4  statement, what is its meaning.
 5   Q  Okay.
 6   A  But certainly here, as I clarify or
 7  indicate, a consumer perception study essentially
 8  designed to assess whether or to what extent
 9  consumer purchasing decisions were affected by the
10  allegedly false claims.  That's, in fact, what I
11  studied.
12   Q  Okay.  So you did conduct a consumer
13  perception study as part of your engagement in this
14  case.  Yes?
15   A  I did not you conduct a perception study
16  to evaluate consumers' understanding of the
17  particular claims.  I certainly conducted a consumer
18  purchasing or perception study or impact study as to
19  the false claims.  I mean, that's what the study was
20  designed to do, is to evaluate the extent to which,
21  as I say in paragraph 15, whether or to what extent
22  consumer purchasing decisions were affected by the
23  allegedly false claims.
24   Q  Is your use of the phrase "consumer
25  perception study" in paragraph 15, is that -- is
```

```
                                                          Page 104
 1  that accurate?  Did you mean to say something else?
 2   A  It's certainly not inaccurate, because
 3  it's described as what is the perception or the
 4  behavior we're trying to measure.  And in this
 5  context, it's whether or to what extent consumer
 6  purchasing decisions were affected by allegedly
 7  being false claims.  And that's certainly what my
 8  study evaluates.
 9   Q  Okay.  Mr. Hansen didn't undertake a
10  similar study, right?
11   A  That's correct.
12   Q  And you're offering your survey that you
13  designed and implemented as rebuttal to Mr. Hansen,
14  correct?
15   A  I think as we discussed at length, yes,
16  my study is responsive to Mr. Hansen.
17   Q  Okay.  Is it fair to characterize the
18  survey that you designed and implemented in this
19  case as a purchase interest survey?
20   A  I'm not sure what you mean by that
21  characterization, but yes, certainly the survey asks
22  respondents how likely would they be to use the
23  website to purchase a pair of sneakers.  It's not
24  just how interested you are.  So it is how likely
25  would you use the site to make a purchase.
```

```
                                                          Page 105
 1   Q  Is there a different characterization
 2  other than purchase interest survey that you would
 3  use?
 4   A  I think it's a likelihood of purchase or
 5  purchase intention.
 6   Q  And I think earlier this morning when we
 7  were going through your CV, you identified several
 8  cases in which you had designed and implemented
 9  similar likelihood of purchasing or purchase
10  intention studies; is that fair?
11   A  I don't want to necessarily represent
12  that they are similar.  I mean, obviously they are
13  tailored to the particular products and the
14  particular survey design I used.  But yes, I listed
15  a number of cases in which I evaluated purchase
16  interest and purchase intention.
17   Q  And are you aware for what purpose a
18  likelihood of purchase or purchase intention survey
19  has in a false advertising place?
20   A  Aware.  Sorry?
21   Q  Sure.  Are you aware of what purpose a
22  likelihood purchase or purchase intention survey has
23  in a false advertising case?
24   A  So it's been my experience that a
25  purchase intention survey tends to address claims of
```

27 (Pages 102 - 105)

Page 222

1    I, SARAH BUTLER, do hereby declare under
2 penalty of perjury that I have read the foregoing
3 transcript; that I have made any corrections as
4 appear noted, in ink, initialed by me, or attached
5 hereto; that my testimony as contained herein, as
6 corrected, is true and correct.
7          EXECUTED this_____ day
8 of_____,
9 20____, at_____, _____.
          (City)           (State)
10
11
12
         _____
13 SARAH BUTLER
14
15
16
17
18
19
20
21
22
23
24
25

Page 223

1         I, the undersigned, a Certified Shorthand
2 Reporter of the State of California, do hereby
3 certify:
4         That the foregoing proceedings were taken
5 before me at the time and place herein set forth;
6 that any witnesses in the foregoing proceedings,
7 prior to testifying, were duly sworn; that a record
8 of the proceedings was made by me using machine
9 shorthand, which was thereafter transcribed under my
10 direction; further, that the foregoing is a true
11 record of the testimony given.
12         I further certify I am neither financially
13 interested in the action nor a relative or employee
14 of any attorney or party to this action.
15         IN WITNESS WHEREOF, I have this August 18,
16 2023 subscribed my name.
17
18
19 _[signature]_
20
   _____
21 ASHLEY SOEVYN
   CSR No. 12019
22
23
24
25

Page 224

1          * * *ERRATA SHEET* * *
2 NAME OF CASE:  NIKE V. STOCKX
3 DATE OF DEPOSITION:  8-15-23
4 NAME OF WITNESS:  SARAH BUTLER
5 Reason codes:
6    1. To clarify the record.
     2. To conform to the facts.
7    3. To correct transcription errors.
8 Page ____ Line ____ Reason____
  From _____ to_____
9
10 Page ____ Line ____ Reason____
   From _____ to_____
11
12 Page ____ Line ____ Reason____
   From _____ to_____
13
14 Page ____ Line ____ Reason____
   From _____ to_____
15
16 Page ____ Line ____ Reason____
   From _____ to_____
17
18 Page ____ Line ____ Reason____
   From _____ to_____
19
20 Page ____ Line ____ Reason____
   From _____ to_____
21
22
23         _____
           SARAH BUTLER
24
25