

**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

July 22, 2025
*Via ECF*

The Honorable Valerie Caproni
United States District Court
Southern District of New York
40 Foley Square, Room 240
New York, New York 10007

**Re:** *Nike, Inc. v. StockX LLC*, No. 22 CV 00983 (VEC) (SN) (S.D.N.Y.)

**Dear Judge Caproni:**

We represent Plaintiff Nike, Inc. in connection with the above-referenced matter. We respectfully submit this letter motion pursuant to L.R. 7.1(e) regarding the scope of trial currently scheduled to begin on October 14, 2025 (Dkt. No. 327) and specifically to raise with the Court bifurcation of Nike's NFT trademark infringement and dilution claims from the remaining false advertising and counterfeiting claims.

As discussed below, because Nike only seeks equitable relief in the form of an injunction on its NFT claims, there is no right to a jury trial. In addition, the witnesses for the NFT claims are largely distinct from the false advertising and counterfeiting portion of the case. This bifurcation of the NFT claims from the false advertising and counterfeiting claims would likely shorten the jury's service time by 3-4 days. StockX agrees that bifurcation is appropriate, although it believes that the bench trial should take place immediately following the jury's verdict. While Nike recognizes that the Court has discretion to manage its own docket, Nike does not view back-to-back trials as the most efficient course and believes that a later bench trial would not prejudice either party, particularly since StockX is out of the "Vault NFT business." Nike also believes that setting a later bench trial could encourage settlement of the bifurcated NFT claims following the jury trial on counterfeiting and false advertising.

**Brief Background**

This Lanham Act dispute initially arose from StockX's unauthorized use of Nike's trademarks in connection with StockX's entry into the NFT ("Non-Fungible Token") market. NFTs are commonly understood to be blockchain-based virtual goods or assets that can be sold to and traded by downstream consumers. Consumer awareness of NFTs reached critical mass in late 2021 and, although consumer demand and corresponding NFT values have declined since then, the technology continues to evolve. StockX has not launched any new alleged infringing "Vault NFT" products since Nike initiated this action in February 2022. Discovery also revealed that StockX effectively halted its Vault NFT program due, in part, to the general declining market conditions around NFTs, and, indeed, the team that designed and operated StockX's Vault NFT

program is no longer employed by the company. While Nike halted operations of its "RTFKT" NFT platform in January 2025, Nike Virtual Studios continues to operate the "DotSwoosh" web3 platform, releasing exclusive virtual-physical sneakers, collaborating in the gaming ecosystems, enabling community-driven creation with interactive rewards, and offering access to educational and creative events.

Following the Court's March 4, 2025 Order ruling on the parties' cross-motions for summary judgment (Dkt. No. 319), the claims and issues that remain to be tried are: (1) liability and injunctive relief on Nike's trademark infringement and dilution claims directed to StockX's alleged infringing Vault NFTs (Counts I through V); (2) liability for distribution of additional pairs of alleged counterfeit "Nike" shoes, willfulness, and damages on Nike's counterfeiting claim (Count VI); and (3) liability, willfulness, and damages on Nike's false advertising claims directed to StockX's advertising claims (Count VII).

The parties have been conferring and working cooperatively to prepare the pretrial materials set forth in Rule 8 of the Court's Individual Practices in Civil Cases. The parties have also been conferring and exploring potential resolution of Nike's NFT claims as per the parties' colloquy with the Court on NFTs at the March 4, 2025 summary judgment hearing (Dkt. No. 321 at 22:10-23). The parties' efforts to resolve these claims, unfortunately, have not been fruitful to date, even though StockX is no longer actively engaged in the NFT/digital market and Nike seeks only injunctive relief.

**Bifurcation Of The NFT-Related Trademark Claims**

The parties agree that Nike's NFT claims should be bifurcated from the October 14, 2025 jury trial on the remaining false advertising and counterfeiting claims and tried separately to the bench, given that Nike seeks injunctive relief only and there is thus no right to a jury to hear those claims. The NFT claims present issues that are sufficiently separate and distinct from the issues the jury will decide on false advertising and counterfeiting. The evidence is distinct and most of the fact and expert witnesses that Nike anticipates testifying on the NFT claims would not have a role in the counterfeiting and false advertising jury trial. Bifurcation, which is well within the Court's broad discretion to manage trial as it sees fit under Fed. R. Civ. P. 42 ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."), will thus result in a more efficient and orderly presentation of issues, it will streamline the jury trial, minimizing the amount of trial time for the jury, and avoiding juror confusion or unfair prejudice to either party that could result from presentation of evidence on all issues at once. Finally, it is possible that the outcome of the jury trial on false advertising and counterfeiting would encourage a settlement between the parties, rendering a bench trial on the NFT claims unnecessary.

Hon. Valerie Caproni
July 22, 2025
Page Three

      While the parties agree that bifurcation is appropriate here, they disagree on *when* the bench trial on the NFT claims should take place. Nike's position is that the bench trial on the NFT claims should be scheduled at the Court's convenience following the jury trial on false advertising and counterfeiting. StockX's position is that the bench trial on the NFT claims should begin immediately after the jury renders its verdict on the false advertising and counterfeiting claims.

      Nike anticipates a 5-6 day jury trial on the false advertising and counterfeiting claims and 4-5 day bench trial on the NFT claims. If the jury trial begins on October 14, 2025, then Nike anticipates the case going to the jury by October 21, 2025, following the presentation of evidence. Nike does not presume that the currently scheduled trial period beginning on October 14, 2025 is sufficient to encompass a 5-6 day jury trial and a separate bench trial that may take another 4-5 days, likely taking trial into a third week. While some of the parties' witnesses may have cleared their schedules to appear at trial starting on October 14, 2025, most of the anticipated fact and expert witnesses for the NFT bench trial will have no role in the counterfeiting and false advertising trial. As such, there is no added efficiency for these witnesses on the NFT claims if the bench trial were held immediately after the jury trial on the false advertising and counterfeiting claims. Having consecutive trials would require the parties to prepare the separate NFT witnesses and the presentation of the separate NFT evidence at the same time they are preparing witnesses and the presentation of evidence on the false advertising and counterfeiting jury trial. The parties would also need to prepare the required Proposed Findings of Fact and Conclusions of Law on the NFT claims at the same time they are preparing the required Joint Pretrial Order on the false advertising and counterfeiting claims. StockX's proposal forces the parties to undertake this work when the parties may ultimately agree that a bench trial on NFTs is unnecessary based on the outcome of the jury trial on false advertising and counterfeiting, and it may very well encourage a settlement between the parties, rendering the bench trial phase unnecessary.

      It is unlikely that either party would be prejudiced from any delay associated with a bench trial scheduled at the Court's convenience following the jury trial on false advertising and counterfeiting, even if that trial did not start for several weeks or months later. StockX has suggested that it would be prejudiced by a delay of the bench trial on the NFT claims, "given the uncertainties to StockX's business created by Nike's claims." But "uncertainties to StockX's business" is not an articulation of any specific prejudice to StockX that would befall it were a bench trial scheduled at a later date. StockX's suggestion is also undermined by the current bear market conditions surrounding NFTs, plus the fact that StockX effectively halted its Vault NFT program, terminated its entire Vault NFT team, and has not launched any new "Vault NFT" products since Nike initiated this action in February 2022. The Court also recognized these market realities surrounding NFTs at the March 4, 2025 summary judgment hearing (Hr'g Tr. 22:10-23). There is no suggestion that the status quo will change before the NFT claims are tried and resolved.

Hon. Valerie Caproni
July 22, 2025
Page Four

      Therefore, Nike respectfully submits that the Court should bifurcate Nike's NFT claims from the October 14, 2025 jury trial on the remaining false advertising and counterfeiting claims and, if necessary, try them separately to the bench, at the Court's convenience. Nike remains available to discuss this matter further with the Court or to submit briefing on any issues should the Court find that helpful. Nike files this letter motion to raise this issue as early as possible prior to the October 14, 2025 trial date and preparation of the Joint Pretrial Order materials, but should the Court prefer a formal motion to bifurcate, Nike will promptly file one.

      Nike thanks the Court for its attention to this matter.

Respectfully submitted,

By: */s/ Tamar Y. Duvdevani*

Tamar Y. Duvdevani
*Counsel for Plaintiff Nike, Inc.*

cc. Counsel of Record via ECF